UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | |
|---|---|
| COMMISSIONERS OF PUBLIC WORKS OF THE CITY OF CHARLESTON (d.b.a. Charleston Water System), Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br> vs.<br><br>COSTCO WHOLESALE CORPORATION, CVS HEALTH CORPORATION, KIMBERLY-CLARK CORPORATION, THE PROCTER & GAMBLE COMPANY, TARGET CORPORATION, WALGREENS BOOTS ALLIANCE, INC. and WAL-MART, INC.,<br><br>      Defendants. | Civil Action No. 2:21-cv-00042-RMG<br><br><u>CLASS ACTION</u><br><br>PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT |

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ....................................................................................1

II.    BACKGROUND OF THE LITIGATION.................................................2

    A.     Summary of Plaintiff's Claims and the Settlement Negotiations ............2

    B.     Terms of the Settlement ...........................................................................6

III.   PRELIMINARY SETTLEMENT APPROVAL .......................................7

    A.     The Law Favors Class Action Settlements ..............................................7

    B.     The Relevant Factors for Preliminary Approval......................................8

    C.     The Proposed Settlement Meets Each of the Rule 23(e)(2) Factors......................10

        1.     The Settlement Was Negotiated at Arm's Length .....................10

        2.     The Settlement Is Adequate in Light of the Costs, Risks, and Delay of Trial and Appeal .......................................................12

        3.     The Remaining Rule 23(e)(2) Factors Are Also Met ...............14

            a.     Plaintiff and Class Counsel Have Adequately Represented the Settlement Class.........................................................14

            b.     The Proposed Method of Distributing Relief to the Settlement Class Is Effective .........................................15

            c.     Attorneys' Fees .........................................................15

            d.     The Settling Parties Have No Other Agreements .........................15

            e.     Settlement Class Members Are Treated Equitably......................15

IV.    PROPOSED PLAN OF NOTICE TO THE SETTLEMENT CLASS.............................16

V.     CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE.....................17

    A.     The Proposed Settlement Class Satisfies Rule 23(a) .............................18

        1.     Numerosity................................................................................18

        2.     Commonality..............................................................................19

        3.     Typicality ...................................................................................19

**Page**

4.    Adequacy ................................................................................................20

B.    The Settlement Class Satisfies Rule 23(b)(2) ........................................22

VI.    CONCLUSION................................................................................................23

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ballard v. Blue Shield of S.W. Va., Inc.*,
    543 F.2d 1075 (4th Cir. 1976) ...................................................................18

*Beaulieu v. EQ Indus. Servs., Inc.*,
    No. 5:06-cv-00400BR, 2009 WL 2208131
    (E.D.N.C. July 22, 2009) .......................................................................16

*Berry v. LexisNexis Risk & Info. Analytics Grp., Inc.*,
    No. 3:11-cv-754, 2014 WL 4403524 (E.D. Va. Sept. 5, 2014)
    *aff'd sub nom.*, *Berry v. Schulman*, 807 F.3d 600 (4th Cir. 2015) .............10, 19, 22

*Brady v. Thurston Motor Lines*,
    726 F.2d 136 (4th Cir. 1984) ...................................................................18

*Calderon v. GEICO Gen. Ins. Co.*,
    279 F.R.D. 337 (D. Md. 2012)..................................................................17

*Case v. French Quarter III LLC*,
    No. 2:12-cv-02518-DCN, 2015 WL 12851717
    (D.S.C. July 27, 2015) .......................................................................9, 11, 20

*Clark v. Duke Univ.*,
    No. 1:16-cv-1044, 2019 WL 2588029
    (M.D.N.C. June 24, 2019)...................................................................12, 13

*Comcast Corp. v. Behrend*,
    569 U.S. 27 (2013)................................................................................13

*Cotton v. Hinton*,
    559 F.2d 1326 (5th Cir. 1977) ....................................................................7

*Covarrubias v. Captain Charlie's Seafood, Inc.*,
    No. 2:10-cv-10-F, 2011 WL 2690531
    (E.D.N.C. July 6, 2011) ............................................................................7

*Crandell v. U.S.*,
    703 F.2d 74 (4th Cir. 1983) ......................................................................7

*Deiter v. Microsoft Corp.*,
    436 F.3d 461 (4th Cir. 2006) ...................................................................19

**Page**

*Gaston v. LexisNexis Risk Sols. Inc.*,
No. 5:16-cv-0009-KDB-DCK, 2021 WL 244807
(W.D.N.C. Jan. 25, 2021) ................................................................................9, 10

*Grunin v. Int'l House of Pancakes*,
513 F.2d 114 (8th Cir.1975) ................................................................................16

*Gunnells v. Healthplan Servs., Inc.*,
348 F.3d 417 (4th Cir. 2003) ...............................................................................17

*Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
855 F. Supp. 825 (E.D.N.C. 1994)........................................................................8

*In re Checking Acct. Overdraft Litig.*,
275 F.R.D. 666 (S.D. Fla. 2011)..........................................................................18

*In re Jiffy Lube Sec. Litig.*,
927 F.2d 155 (4th Cir. 1991) .......................................................................*passim*

*In re NeuStar, Inc. Sec. Litig.*,
No. 1:14cv885, 2015 WL 5674798
(E.D. Va. Sept. 23, 2015)......................................................................................9

*Kurtz v. Kimberly-Clark Corp.*,
414 F. Supp. 3d 317 (E.D.N.Y. 2019) .................................................................19

*Mashburn v. Nat'l Healthcare, Inc.*,
684 F. Supp. 660 (M.D. Ala. 1988) .....................................................................16

*Olden v. LaFarge Corp.*,
203 F.R.D. 254 (E.D. Mich. 2001)
*aff'd*, 383 F.3d 495 (6th Cir. 2004).....................................................................21

*Owens v. Metro. Life Ins. Co*.,
323 F.R.D. 411 (N.D. Ga. 2017)..........................................................................17

*Reed v. Big Water Resort, LLC*,
No. 2:14-cv-01583-DCN, 2016 WL 7438449
(D.S.C. May 26, 2016)........................................................................7, 9, 10, 20

*Rowe v. E.I. Dupont De Nemours & Co.*,
262 F.R.D. 451 (D.N.J. 2009)..............................................................................12

*S.C. Nat'l Bank v. Stone*,
749 F. Supp. 1419 (D.S.C. 1990).........................................................................7

Page

*Sims v. BB&T Corp.*,
  No. 1:15-cv-732, 2019 WL 1995314
  (M.D.N.C. May 6, 2019)...........................................................................13

*Thorn v. Jefferson-Pilot Life Ins., Co.*,
  445 F.3d 311 (4th Cir. 2006) ..................................................................15

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S.Ct. 2541 (2011)............................................................................22

*Williams v. Henderson*,
  129 F. App'x 806 (4th Cir. 2005) ............................................................18

## STATUTES, RULES AND REGULATIONS

Federal Rule of Civil Procedure
  Rule 23(a)..............................................................................................17
  Rule 23(a)(1).........................................................................................17
  Rule 23(a)(2)....................................................................................17, 18
  Rule 23(a)(3).........................................................................................19
  Rule 23(a)(4)....................................................................................19, 21
  Rule 23(b).............................................................................................17
  Rule 23(b)(1).........................................................................................15
  Rule 23(b)(2)................................................................................. *passim*
  Rule 23(b)(3).........................................................................................15
  Rule 23(b)(2)...........................................................................................1
  Rule 23(c)(2)(A)....................................................................................15
  Rule 23(e)...............................................................................................8
  Rule 23(e)(1).................................................................................1, 2, 8, 16
  Rule 23(e)(1)(B).......................................................................................8
  Rule 23(e)(2)................................................................................. *passim*
  Rule 23(e)(2)(A)....................................................................................14
  Rule 23(e)(2)(B).......................................................................................9
  Rule 23(e)(2)(C)(i)...............................................................................9, 11
  Rule 23(e)(2)(C)(ii)...............................................................................14
  Rule 23(e)(2)(C)(iii)..............................................................................14
  Rule 23(e)(2)(C)(iv)..............................................................................15
  Rule 23(e)(3)...........................................................................................8
  Rule 23(e)(2)(D)....................................................................................15
  Rule 23(g).............................................................................................21

**Page**

## SECONDARY AUTHORITIES

Andrew Brown, *Charleston Water System sues manufacturers, retailers, over 'flushable' toilet wipes*, THE POST AND COURIER (Jan. 8, 2021), https://www.postandcourier.com/business/charleston-water-system-sues-manufacturers-retailers-over-flushable-toilet-wipes/article_99b29254-51c5-11eb-b7fa-eb9a98184e11.html ..................................................................................................................................20

*Guidelines for Assessing the Flushability of Disposable Nonwoven Products*, INDA & EDANA (May 2018), https://www.edana. org/docs/default-source/product-stewardship/guidelines-for-assessing-the-flushability-of-disposable-nonwoven-products-ed-4-finalb76f3ccdd5286df88968ff0000bfc5c0.pdf?sfvrsn=34b4409b_2 ......................................6

*Publicly Available Specification (PAS) 3:2020 Disintegration Test Methods – Slosh Box*, INTERNATIONAL WATER SERVICES FLUSHABILITY GROUP (Dec. 2020), https://www.iwsfg.org/wp-content/uploads/2021/02/2020-IWSFG-PAS-3-Slosh-Box-Test.pdf ................................................................................................................................6

*U.S. Wastewater Treatment*, UNIVERSITY OF MICHIGAN CENTER FOR SUSTAINABLE SYSTEMS (Oct. 2020), http://css.umich.edu/factsheets/us-wastewater-treatment-factsheet ...................18

*What Not to Flush*, CHARLESTON WATER SYSTEM, http://charlestonwater.com/361/What-Not-to-Flush (last visited Apr. 25, 2021).............................................................................................20

Representative plaintiff, the Commissioners of Public Works of the City of Charleston (d.b.a. "Charleston Water System") ("Plaintiff"), submits this memorandum of law in support of its motion for preliminary approval of the proposed Settlement.[1]  The terms of the Settlement are set forth in the Settlement Agreement between Plaintiff and defendant Kimberly-Clark Corporation ("Kimberly-Clark" or "Defendant").

## I.    INTRODUCTION

The Settlement provides significant injunctive relief – including a first-ever commitment by a flushable wipes manufacturer to meet a national municipal wastewater industry flushability standard and industry-leading labeling improvements – to resolve all of Plaintiff's Released Claims against Defendant during the Settlement Class Period.  The Settlement is the result of extensive arm's-length negotiations between Class Counsel and Defense Counsel that began well before the Action was filed.  Plaintiff and Class Counsel believe that the Settlement, discussed in greater detail herein, presents a highly beneficial result for the Settlement Class in the face of substantial uncertainty.

In determining whether preliminary approval is warranted, the issue before the Court is whether the Court will likely be able to approve the Settlement under Rule 23(e)(2) and certify the Settlement Class for purposes of settlement and entering a judgment.  Fed. R. Civ. P. 23(e)(1).  The Settlement satisfies each of the elements of Rule 23(e)(2) as well as the factors set forth in *In re Jiffy Lube Securities Litigation*, 927 F.2d 155 (4th Cir. 1991).  Accordingly, notice of the Settlement should be given to Settlement Class Members, and a hearing scheduled to consider final settlement approval.

---

[1]  Capitalized terms not defined herein are defined in the Stipulation of Settlement ("Settlement Agreement"), dated April 21, 2021.  Citations and internal quotations are omitted and emphasis is added throughout unless otherwise noted.  A proposed order granting the relief requested herein (the "Notice Order") is attached to the Settlement Agreement, filed herewith, as Exhibit D.

Because the Settlement meets the foregoing criteria and is well within the range of what might be approved as fair, reasonable, and adequate, Plaintiff asks this Court to enter an Order: (1) granting preliminary approval of the Settlement; (2) certifying a Rule 23(b)(2) class for settlement purposes; (3) appointing Plaintiff as Class representative; (4) appointing Robbins Geller Rudman & Dowd LLP ("Robbins Geller") and AquaLaw PLC ("AquaLaw") as Class Counsel; (5) approving the Settling Parties' proposed form and method of giving notice of pendency of the Settlement to the Settlement Class under Federal Rule of Civil Procedure 32(e)(1); and (6) scheduling a Settlement hearing for final approval of the Settlement and Class Counsel's application for an award of attorneys' fees and expenses incurred in representing the Settlement Class.

## II.    BACKGROUND OF THE LITIGATION

### A.    Summary of Plaintiff's Claims and the Settlement Negotiations

Plaintiff brought this putative class action on January 6, 2021, ECF No. 1, on behalf of all entities that own and/or operate sewage or wastewater conveyance and treatment systems, including municipalities, authorities and wastewater districts (sewage treatment plant, or "STP Operators") in the United States whose systems were in operation between January 6, 2018 and the date of preliminary approval ("Settlement Class" and the "Settlement Class Period"). Defendants are the settling Defendant Kimberly-Clark and additional non-settling defendants Costco Wholesale Corporation, CVS Health Corporation, The Procter & Gamble Company, Target Corporation, Walgreens Boots Alliance, Inc. and Wal-Mart, Inc. ("Non-Settling Defendants") (together with Kimberly-Clark, "Defendants"). Plaintiff alleges that Defendants' deceptive, improper, or unlawful conduct in the design, marketing, manufacturing, distribution, and/or sale

of flushable wipes caused recurring property damage, thus constituting nuisance, trespass, defective design, failure to warn and negligence.  ¶¶137-180.[2]

In the Complaint, Plaintiff alleges that Defendants' Cottonelle-branded flushable wipes (the "Product")[3] are unsuitable for flushing, making them improperly labeled as "flushable" or "safe for sewer and septic systems."  ¶¶28-46.  Plaintiff alleges that the Product does not disperse in a sufficiently short amount of time to avoid clogging or other operational problems, as indicated by independent testing and numerous instances of clogs in wastewater systems nationwide, and thus causes ongoing damage to sewer treatment facilities and STP Operators.  ¶¶39-92.  Plaintiff based its allegations on a thorough factual analysis, based in part on its own experience with multiple clogs containing flushable wipes and tests conducted regarding the inability of flushable wipes to perform as advertised, shedding light on the likelihood of additional future clogs containing flushable wipes.  Plaintiff's experience with flushable wipes includes a massive 12-foot-long clog removed from its system in October 2018 (causing over $140,000 in damage) and another clog in June 2019 (causing approximately $60,000 in damage).  ¶¶50-53.

Class Counsel recognized the strength of Plaintiff's claims and initiated settlement discussions with Defendant well before filing suit, beginning in late 2019.  Specifically, in December 2019, Class Counsel informed Defense Counsel that it was preparing to file a putative class action in federal court on behalf of a nationwide class of STP Operators, seeking injunctive relief in connection with several companies' manufacturing, design, marketing and/or sale of

---

[2]  The use of "Complaint" refers to Plaintiff's Class Action Complaint, ECF No. 1.  Citations to "¶___" refer to the Complaint.  The use of "flushable wipes" refers to moist wipe products marketed and labeled as safe to flush, safe for plumbing, safe for sewer and/or septic systems, and/or biodegradable.  ¶1.

[3]  The Product is defined by the Settling Parties as "Kimberly-Clark's Cottonelle-branded flushable wipes manufactured in the United States, including any FreshCare or GentlePlus-branded Cottonelle flushable wipes."  Settlement Agreement, ¶1.19.

flushable wipes, including Kimberly-Clark's Cottonelle-branded flushable wipes (the "Proposed Action"). These discussions, which included some limited information sharing between Plaintiff and Kimberly-Clark, picked up where earlier discussions between counsel for Plaintiff and Kimberly-Clark in *The Preserve at Connetquot Homeowners Association, Inc. v. Costco Wholesale Corporation, et al.*, 2:17-cv-07050-JFB-AYS (E.D.N.Y.) left off. In *Preserve*, in which counsel for Plaintiff represented a different STP Operator in a similar class action against the same Defendants here, plaintiff's consultants received testing data from, and conducted testing in coordination with, Kimberly-Clark in December 2018 in connection with settlement discussions. These same consultants – prominent officials in the wastewater industry, including members of the International Water Services Flushability Group ("IWSFG"), a group of water associations, utilities, and professionals focused on flushability – advised Plaintiff here in connection with Plaintiff's investigation and settlement negotiations.

In April 2020, counsel for Plaintiff and Kimberly-Clark began discussing the possibility of resolving the Proposed Action as part of an anticipated mediation in another separate, but related case: *Kurtz v. Kimberly-Clark Corporation, et al.*, No. 1:14-cv-01142-PKC-RML (E.D.N.Y.), a certified consumer class action on behalf of New York purchasers of Kimberly-Clark and Costco Wholesale Corporation's flushable wipes. In May 2020, counsel for Plaintiff and Kimberly-Clark set a date for the mediation in *Kurtz* and thereafter continued their discussions about settlement of the Proposed Action in the months and weeks leading up to the mediation. On July 15, 2020, in connection with the mediation, Plaintiff provided Kimberly-Clark with a formal proposal to resolve the Proposed Action, including proposed labeling changes and independent testing of the Product in consultation with their consultants. Despite their good-faith efforts, Plaintiff and Kimberly-Clark did not reach an agreement to settle the Proposed Action at the time.

After Plaintiff filed the Complaint, the Settling Parties continued engaging in arm's-length settlement discussions. On February 4, 2021, Class Counsel provided Kimberly-Clark with updated proposed settlement terms. Over the ensuing approximately seven weeks, Class Counsel and Defense Counsel exchanged more than a half-dozen drafts of a proposed term sheet and engaged in approximately a half-dozen teleconferences to discuss the terms of the proposed settlement. During this time, Class Counsel continued to develop the agreed-to injunctive relief terms in consultation with prominent members of the wastewater industry and IWSFG. By March 29, 2021, Class Counsel and counsel for Kimberly-Clark formally executed the term sheet. On April 9, 2021, Plaintiff, Class Counsel, Defense Counsel and various Kimberly-Clark business and legal personnel met virtually to discuss the performance of the Product. This discussion covered both the current performance, and the future performance changes that would be made pursuant to the term sheet. The discussion also covered Kimberly-Clark's commitment to educate consumers not to flush non-flushable wipes, including its agreement under the term sheet to enhance its labeling of non-flushable wipes.

Thus, after approximately sixteen months of negotiations on behalf of and between the Settling Parties – which followed and/or were conducted in tandem with discussions in other related flushable wipes actions – Plaintiff ultimately ensured that Kimberly-Clark would commit to meeting certain flushability standards (including the IWSFG Publicly Available Specification (PAS) 3 ("Slosh Box" Disintegration Test)) ("IWSFG 2020: PAS 3"), submit to periodic independent testing, implement modifications to the packaging of both flushable and non-flushable products and promote content instructing consumers not to flush non-flushable wipes. Settlement Agreement, ¶2.1.

### B.    Terms of the Settlement

The Settlement provides meaningful injunctive relief in response to Plaintiff's claims, including: (1) enhanced Product performance; (2) confirmatory Product performance testing; (3) Product labeling improvements; and (4) public outreach about flushable and non-flushable wipes. *First*, Kimberly-Clark has agreed to certain product and testing criteria, including implementing manufacturing improvements to ensure that the Product meets the IWSFG 2020: PAS 3 flushabilty specifications by May 1, 2022, and ensuring that the Product currently meets all other IWSFG 2020 specifications and a modified PAS 3 specification of an average pass-through percentage of at least 70% after 30 minutes of testing, with all other parameters remaining the same. Settlement Agreement, ¶2.1(a).[4]

*Second*, Kimberly-Clark has agreed to certain testing implementation and monitoring, including two years of confirmatory testing to verify that the Product continues to meet the IWSFG 2020 specifications after May 2, 2022, either by (1) hosting periodic independent testing of the Product or (2) submitting the Product to a mutually acceptable lab for independent testing beginning May 1, 2022. Settlement Agreement, ¶2.1(b).

---

[4] The Slosh Box Disintegration Test is a testing metric widely used in the flushable wipes industry, including by certain Defendants' own trade association – "INDA," the Association of the Nonwoven Fabrics Industry – to determine flushability. The IWSFG 2020: PAS 3 Slosh Box Disintegration Test contains a testing methodology and acceptance criteria far more stringent than INDA's own Slosh Box Disintegration Test contained in the Guidelines for Assessing the Flushability of Disposable Nonwoven Products (GD4) given, *inter alia*, the IWSFG's significantly shorter test duration, lower RPMs (causing less disturbance to the wipes during the test period) and higher percentage "pass through" threshold. *Cf. Publicly Available Specification (PAS) 3:2020 Disintegration Test Methods – Slosh Box*, INTERNATIONAL WATER SERVICES FLUSHABILITY GROUP (Dec. 2020), https://www.iwsfg.org/wp-content/uploads/2021/02/2020-IWSFG-PAS-3-Slosh-Box-Test.pdf at 13 *with Guidelines for Assessing the Flushability of Disposable Nonwoven Products*, INDA & EDANA (May 2018), https://www.edana.org/docs/default-source/product-stewardship/guidelines-for-assessing-the-flushability-of-disposable-nonwoven-products-ed-4-finalb76f3ccdd5286df88968ff0000bfc5c0.pdf?sfvrsn=34b4409b_2 at 9.

*Third*, Kimberly-Clark has agreed to labeling changes for both flushable and non-flushable products. For flushable products (*i.e.*, the Product), upon verification that the Product meets IWSFG 2020 specifications (including PAS 3), Kimberly-Clark will modify the packaging and websites for the Product to add language specifying the bases or sources for the "flushable" claim that appears on its labeling, including that the Product complies with IWSFG 2020 and INDA GD4 guidelines. Settlement Agreement, ¶2.1(c)(i). For non-flushable labeling, Kimberly-Clark will add prominent language or illustration on its non-flushable wipes products (*e.g.*, baby wipes) identifying the non-flushable products as "nonflushable" or instructing users not to flush the non-flushable products (*e.g.*, "Do Not Flush"), and will meet the "do not flush" labeling standards set forth in Section 3 of House Bill 2565 of Washington State, enacted March 26, 2020 ("HB2565"). *Id*. Kimberly-Clark also agreed that it would exceed the standards of HB2565 insofar as it will include "do not flush" symbols or warnings on not only the principal display panel, but also at least two additional panels of packaging for "non-flushable" wipes products, and will include certain high contrast coloring to its "Do Not Flush" symbol. *Id.*, ¶2.1(c)(ii).

*Fourth*, beyond product improvements and labeling enhancements, Kimberly-Clark has agreed to work with Plaintiff to instruct consumers not to flush non-flushable wipes and to conduct outreach to help educate consumers about which wipes are truly flushable, including promoting its compliance with IWSFG 2020: PAS 3. *Id*. at ¶2.1(b)(i)-(iii).

## III.    PRELIMINARY SETTLEMENT APPROVAL

### A.    The Law Favors Class Action Settlements

In determining whether to approve the Settlement, the Court should be guided by the principle that "[t]here is a strong judicial policy in favor of settlements, particularly in the class action context." *Reed v. Big Water Resort, LLC*, No. 2:14-cv-01583-DCN, 2016 WL 7438449, at *5 (D.S.C. May 26, 2016); *see also Covarrubias v. Captain Charlie's Seafood, Inc.*, No. 2:10-cv-10-F, 2011 WL 2690531, at *2 (E.D.N.C. July 6, 2011) ("There is a strong judicial policy in favor

of settlement, in order to conserve scarce resources that would otherwise be devoted to protracted litigation."); *Crandell v. U.S.*, 703 F.2d 74, 75 (4th Cir. 1983) ("Public policy, of course, favors private settlement of disputes."). Indeed, "[t]he voluntary resolution of litigation through settlement is strongly favored by the courts and is 'particularly appropriate' in class actions." *In re LandAmerica 1031 Exch. Servs. Inc. Internal Revenue Service §1031 Tax Deferred Exch. Litig.*, MDL No. 2054, 2012 WL 13124593, at *4 (D.S.C. July 12, 2012) (quoting *S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990)). Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties, and also reduces the strain such litigation imposes upon already scarce judicial resources. *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977).

As set forth below, Plaintiff and Class Counsel respectfully submit that the proposed Settlement merits preliminary approval and warrants notice apprising Settlement Class Members of the Settlement and the scheduling of a final Fairness Hearing.

**B.    The Relevant Factors for Preliminary Approval**

Rule 23(e) requires judicial approval for a settlement of claims brought as a class action. Fed. R. Civ. P. 23(e) ("The claims . . . of a certified class – or a class proposed to be certified for purposes of settlement – may be settled . . . only with the court's approval."). The approval process typically takes place in two stages. In the first stage, a court provides preliminary approval of the settlement, pending a final settlement hearing, certifies the class for settlement purposes and authorizes notice of the settlement to be given to the class. *See Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1994).

Pursuant to Rule 23(e)(1), the issue at preliminary approval is whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for

purposes of judgment on the proposal."  Fed. R. Civ. P. 23(e)(1)(B).  Fed. R. Civ. P. 23(e)(2)

provides:

> (2)    ***Approval of the Proposal***.  If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
>> (A)    the class representatives and class counsel have adequately represented the class;
>>
>> (B)    the proposal was negotiated at arm's length;
>>
>> (C)    the relief provided for the class is adequate, taking into account:
>>
>>> (i)    the costs, risks, and delay of trial and appeal;
>>>
>>> (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>>
>>> (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and
>>>
>>> (iv)    any agreement required to be identified under Rule 23(e)(3); and
>>
>> (D)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Overlapping with Rule 23(e)(2)(B) (arm's-length negotiation) and Rule 23(e)(2)(C)(i)

(adequacy of the settlement based on the costs, risks, and delay of trial and appeal) is the two-level

analysis in the Fourth Circuit which includes "consideration of the fairness of settlement

negotiations and the adequacy of the consideration to the class."  *Gaston v. LexisNexis Risk Sols.*

*Inc.*, No. 5:16-cv-0009-KDB-DCK, 2021 WL 244807, at *5 (W.D.N.C. Jan. 25, 2021) (quoting

*Jiffy Lube*, 927 F.2d at 158-59).  "However, at the preliminary approval stage, the Court need only

find that the settlement is within 'the range of possible approval.'"  *Id*.  As discussed below, the

proposed Settlement satisfies each of the factors identified under Rule 23(e)(2), as well as the

Fourth Circuit's "fairness" and "adequacy" analysis, and the standard for certification of a class

for settlement purposes is met, such that Notice of the proposed Settlement should be sent to the

Settlement Class in advance of a final Fairness Hearing.

### C. The Proposed Settlement Meets Each of the Rule 23(e)(2) Factors

#### 1. The Settlement Was Negotiated at Arm's Length

The Rule 23(e)(2)(B) factor and the first hurdle under the Fourth Circuit's analysis is a

procedural one – "whether the settlement was reached through good-faith bargaining at arm's

length." *In re NeuStar, Inc. Sec. Litig.*, No. 1:14cv885 (JCC/TRJ), 2015 WL 5674798, at *10

(E.D. Va. Sept. 23, 2015); *see* Rule 23(e)(2)(B) ("the proposal was negotiated at arm's length").

In making this determination, courts in the Fourth Circuit look at four factors: "(1) the posture of

the case at the time settlement was proposed, (2) the extent of discovery that had been conducted,

(3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area

of [] class action litigation." *Reed*, 2016 WL 7438449, at *6 (quoting *Jiffy Lube*, 927 F.2d at 158-

59); *see also Case v. French Quarter III LLC*, No. 2:12-cv-02518-DCN, 2015 WL 12851717, at

*7 (D.S.C. July 27, 2015) (quoting same). "Where a settlement is the result of genuine arm's-

length negotiations, there is a presumption that it is fair. *Gaston*, 2021 WL 244807, at *6; *see also

Reed*, 2016 WL 7438449, at *6 (there is a presumption of fairness when settlement "is achieved

through arms-length negotiations"). Here, there can be no question the Settlement was the result

of arm's-length negotiation in which there is no hint of collusion.

Looking to the first *Jiffy Lube* factor, as discussed herein, the Settling Parties engaged in

vigorous negotiations for approximately sixteen months – which followed earlier discussions

between counsel for Plaintiff and Defense Counsel in a related flushable wipes action surrounding

the same issues – and Plaintiff would have continued litigating the Action rather than accept

Settlement terms that would not take meaningful steps to remedy the recurring harm Plaintiff

alleges. As to the second *Jiffy Lube* factor, while the Action has not yet proceeded to discovery,

the Settling Parties engaged in numerous discussions concerning the merits of Plaintiff's claims,

including the ongoing exchange of information and testing data (that would have likely been provided in connection with future discovery) that proved instrumental in reaching a resolution that includes enhanced Product performance and testing thereof.  The review of this information, combined with the significant pre-suit negotiations with Defendant, gave Plaintiff a meaningful understanding of the merits of its factual allegations, and the strengths and weaknesses of its legal claims.[5]

The third *Jiffy Lube* factor (the circumstances surrounding the negotiations) is also readily met here.  As detailed above, there can be no question that the Settlement is the result of arm's-length negotiations in which there is no hint of collusion.  Those negotiations were vigorous and adversarial throughout, and the Settling Parties drew on their extensive knowledge of the merits of their respective arguments and counsel's involvement in several previous flushable wipes-related actions.  The fact that the Settlement was negotiated at arm's length strongly supports preliminary approval.

Finally, the fourth *Jiffy Lube* factor (the experience of counsel in the area of class action litigation) is easily met.  As discussed further below, Robbins Geller has an extensive record of success in complex cases and similar class actions, and their experience is discussed at length in the Robbins Geller firm resume, which can be found at www.rgrdlaw.com.  Likewise, AquaLaw is a specialty law firm with one of the broadest municipal water practices of any U.S. law firm, representing utilities, water districts and related industry associations nationwide.[6]  Class Counsel

---

[5]  This is the fourth class action suit brought against Kimberly-Clark by counsel for Plaintiff related to Kimberly-Clark's flushable wipes, the first of which (*Kurtz*) involved significant discovery.  "These factors alone could be enough to demonstrate the fairness of the Settlement[.]"  *Berry v. LexisNexis Risk & Info. Analytics Grp., Inc*., No. 3:11-cv-754, 2014 WL 4403524, at *14 (E.D. Va. Sept. 5, 2014), *aff'd sub nom*., *Berry v. Schulman*, 807 F.3d 600 (4th Cir. 2015) (plaintiff's counsel's involvement in two prior class actions against the same defendants related to the same challenged practices following extensive discovery supported a finding of fairness).

[6]  More information about AquaLaw can be found at www.aqualaw.com.

believes that their reputation and experience gave them a strong position in engaging in settlement negotiations with Defendant.

### 2. The Settlement Is Adequate in Light of the Costs, Risks, and Delay of Trial and Appeal

The Rule 23(e)(2)(C)(i) factor (adequacy of relief, taking into account the "costs, risks, and delay of trial and appeal") and the second hurdle under the Fourth Circuit's analysis is the substantive adequacy of the settlement. This factor is also readily satisfied. Here, the Court considers the following:

> (1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement.

*Case*, 2015 WL 12851717, at *7 (quoting *Jiffy Lube*, 927 F.2d at 158-59). These factors weigh heavily in favor of finding the proposed Settlement adequate.

In assessing the proposed Settlement, the Court should balance the benefits afforded to the Settlement Class – including the immediacy and certainty of obtaining injunctive relief – against the significant costs, risks, and delay of proceeding with the Action. For example, class actions alleging nuisance and trespass can present numerous hurdles to proving liability that can be difficult for plaintiffs to meet in the class action context. *See, e.g, Rowe v. E.I. Dupont De Nemours & Co.*, 262 F.R.D. 451, 457 (D.N.J. 2009) (finding that claims for injunctive relief based on nuisance, trespass, and gross negligence did not meet the requirements for class certification under Rule 23(b)(2)). While Defendant did not file a motion to dismiss given the ongoing settlement discussions, the Non-Settling Defendants' joint motion to dismiss (ECF No. 46) (the "Joint Motion") highlights the arguments that Kimberly-Clark would likely vigorously make in the absence of the Settlement. For example, Defendant would likely argue that Plaintiff failed to allege that Kimberly-Clark's Product proximately caused Plaintiff's injury, and the Court's ruling on this

issue is uncertain.  Additionally, as the Non-Settling Defendants point out in their Joint Motion, claims for injunctive relief in some similar cases involving flushable wipes have been dismissed by courts in other jurisdictions, including for lack of standing.  While Plaintiff and Class Counsel believe that Plaintiff adequately alleges standing here given that it experienced repeated and recent clogs caused in part by the buildup of Defendants' flushable wipes, and because it alleges that it anticipates incurring additional expenses associated with future clogging, Complaint at ¶¶50-55, continued litigation against Defendant poses substantial risks that make any recovery uncertain. *See Clark v. Duke Univ.*, No. 1:16-cv-1044, 2019 WL 2588029, at *6 (M.D.N.C. June 24, 2019) (noting the significant risks to continued litigation posed by "recent dismissals in similar actions").

Furthermore, even if Plaintiff was permitted to proceed with discovery, hurdles to proving liability or even proceeding to trial would remain.  For instance, Plaintiff would ultimately need to rely extensively on several expert witnesses to prevail at class certification and ultimately prove its claims.  Each expert's testimony would be critical to demonstrating Defendant's liability, and the conclusions of each expert would be hotly contested.  If, for some reason, the Court determined that even one of Plaintiff's experts should be excluded from testifying at trial, Plaintiff's case would become more difficult to prove.  *See Comcast Corp. v. Behrend*, 569 U.S. 27 (2013).  Even if successful, this process presents considerable expenses.  *See Duke Univ.*, 2019 WL 2588029, at *6 ("The parties would almost certainly incur substantial additional litigation expense if [the litigation] proceeds through summary judgment briefing to trial[.]").

While Plaintiff believes its claims are strong, it cannot ignore the risks of protracted litigation.  With the Action remaining in its earliest stages, there is a fair probability that the Court may accept one or more of Defendant's arguments at any point, including at the motion to dismiss, class certification, summary judgment and trial stages.  Even if Plaintiff prevails, there is no guarantee that it would be provided the relief afforded by the Settlement, particularly the enhanced

labeling changes to both the Product and non-flushable products.  *See Sims v. BB&T Corp.*, No. 1:15-cv-732, 2019 WL 1995314, at *5 (M.D.N.C. May 6, 2019) ("the settlement includes . . . terms beneficial to the class that might not be included in any recovery at trial").  Thus, without the Settlement, there is a very real risk that the Settlement Class will receive lesser relief or nothing at all (*e.g.*, Defendant could choose to forgo further flushability performance improvements in order to retain other Product characteristics, such as strength, in their current form).  The immediate benefits presented by the Settlement, particularly when viewed in the context of the risks, costs, delay and uncertainties of further proceedings, weigh heavily in favor of preliminary approval.

The remaining factor – the degree of opposition to the Settlement – will be addressed at the final approval stage, after the Settlement Class Members have been given notice of the proposed Settlement and an opportunity to comment.  To date, Plaintiff is unaware of any potential objections to the Settlement by any Settlement Class Member.

### 3.    The Remaining Rule 23(e)(2) Factors Are Also Met

#### a.    Plaintiff and Class Counsel Have Adequately Represented the Settlement Class

Plaintiff and its counsel have adequately represented the Settlement Class as required by Rule 23(e)(2)(A) by diligently investigating and prosecuting this action on their behalf.  Among other things, Plaintiff and Class Counsel investigated and assessed the relevant factual events, including developments in the flushable wipes industry, instances of harm to STP Operators attributable to flushable wipes, the testing of Defendants' flushable wipes, and flushability standards; researched the legal issues underlying Plaintiff's claims; drafted a detailed complaint; and participated in extensive settlement negotiations with Defendant.  These efforts ultimately resulted in Kimberly-Clark's agreement to substantial and unprecedented injunctive relief, including a commitment for its Product to comply with the wastewater industry's preferred

flushability standard, submission to confirmatory Product performance testing, Product labeling improvements and public outreach about flushable and non-flushable wipes.

### b. The Proposed Method of Distributing Relief to the Settlement Class Is Effective

As the Settlement does not provide for monetary relief, no method of distribution is necessary here. Relatedly, as demonstrated below in §IV, the method of the proposed notice (Rule 23(e)(2)(C)(ii)) is effective. The notice plan includes direct email notice to major wastewater industry groups and numerous state wastewater associations. Settlement Agreement, ¶7.2. In addition, the notice plan includes issuing a press release containing the Summary Notice and the creation of a settlement-specific website where key documents will be posted, including the Settlement Agreement, Notice and Notice Order. *Id*. at ¶¶7.3-7.4.

### c. Attorneys' Fees

Rule 23(e)(2)(C)(iii) addresses the terms of any proposed award of attorneys' fees. As stated in the Notice and the Settlement Agreement, Class Counsel intends to apply to the Court for separate awards of attorneys' fees and actual expenses (including the court costs) not to exceed $600,000. Settlement Agreement, ¶6.1. If approved by the Court, Kimberly-Clark will pay Class Counsel up to $600,000 in attorneys' fees and expenses, as the Fee and Expense Award. *Id.*, ¶6.2. This provision does not impact the Settlement Class Members' relief.

### d. The Settling Parties Have No Other Agreements

Rule 23(e)(2)(C)(iv) requires the disclosure of any other agreements. The Settling Parties have not entered into any other agreements here.

### e. Settlement Class Members Are Treated Equitably

The final factor under Rule 23(e)(2) is whether Settlement Class Members are treated equitably. Fed. R. Civ. P. 23(e)(2)(D). As discussed above, the nature of the Settlement's terms

- 15 -

(providing for injunctive relief) ensure that the Settlement equitably applies to all Settlement Class Members.

*    *    *

Thus, each factor identified under Rule 23(e)(2) and *Jiffy Lube* is satisfied.  For all of the foregoing reasons, the Court should find that the Settlement is fair, adequate and reasonable, and in Settlement Class Members' best interests.

## IV.    PROPOSED PLAN OF NOTICE TO THE SETTLEMENT CLASS

Rule 23(c)(2)(A) states, "[f]or any class certified under Rule 23(b)(1) or (b)(2), the court may direct appropriate notice to the class."  Fed. R. Civ. P. 23(c)(2)(A).  When a class is certified under Rule 23(b)(2), the court may "direct appropriate notice to the class," but need not follow the strict requirements of class notice for classes certified under Rule 23(b)(3).  Fed. R. Civ. P. 23(c)(2)(A); *see also Thorn v. Jefferson-Pilot Life Ins., Co*., 445 F.3d 311, 330 n.25 (4th Cir. 2006) ("Unlike Rule 23(b)(3), Rule 23(b)(2) neither requires that absent class members be given notice of class certification nor allows class members the opportunity to opt-out of the class action.").

When a class claim is settled, notice must be provided in a "reasonable manner to all class members who would be bound by the [proposed settlement]."  Fed. R. Civ. P. 23(e)(1).  "While the rule does not spell out the required contents of the settlement notice, it must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings."  *Beaulieu v. EQ Indus. Servs., Inc*., No. 5:06-cv-00400BR, 2009 WL 2208131, at *28 (E.D.N.C. July 22, 2009) (quoting *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 122 (8th Cir.1975)).  Likewise, the due process clause also requires that in a class action, notice of the settlement and an opportunity to be heard must be given to absent class members.  *Cf. Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 667 (M.D. Ala. 1988) ("This Court is of the opinion that the notice given to members of the plaintiff class by publication and by mail, as aforesaid, complied with all requirements of due process, all

- 16 -

requirements of Rule 23 of the Federal Rules of Civil Procedure, and constituted the best notice practicable under the circumstances.").

Here, the Settlement provides for three forms of notice, which will include a description of the material terms of the Settlement, Class Counsel's Fee and Expense Application, the date of the Final Approval Hearing and the date by which any objection by Settlement Class Members to any aspect of the Settlement and/or the Fee and Expense Award must be received. Settlement Agreement, ¶7.1. First, the Notice (attached to the Settlement Agreement as Exhibit B) will be provided by email to numerous state wastewater associations and major industry groups. *Id.*, ¶7.2. Second, the Settling Parties will establish a case-specific website dedicated to the Settlement, which will contain the Notice, the Settlement Agreement and other relevant documents and information. Third, a Summary Notice (attached to the Settlement Agreement as Exhibit C) will be published through a press release issued by the Settling Parties. *Id.*, ¶7.5. The contents and method of the Notice therefore satisfy all applicable requirements.

Accordingly, in granting preliminary settlement approval, the Court should also approve the Settling Parties' proposed form and method of giving notice to the Settlement Class.

## V.    CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

Under the terms of the Settlement Agreement, the Settling Parties have agreed, for the purposes of the Settlement only, to the certification of the Settlement Class. The Settlement Class is defined as: "All STP Operators in the United States whose systems were in operation between January 6, 2018 and the date of preliminary approval." Settlement Agreement, ¶1.23.[7]

The Fourth Circuit encourages federal courts to "give Rule 23 a liberal rather than a restrictive construction, adopting a standard of flexibility in application which will in the particular

---

[7]    STP Operators refers to "entities that own and/or operate sewage or wastewater conveyance and treatment systems, including municipalities, authorities and wastewater districts." Settlement Agreement at 1.

case best serve the ends of justice for the affected parties and . . . promote judicial efficiency." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 424 (4th Cir. 2003). In order to obtain class certification, a plaintiff must establish the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation and demonstrate that the action may be maintained under one of the three subsections of Rule 23(b). *See Calderon v. GEICO Gen. Ins. Co.*, 279 F.R.D. 337, 345 (D. Md. 2012). Here, the Settling Parties assert for settlement purposes only that the requirements of Federal Rule of Civil Procedure 23(a) and (b)(2) have been satisfied.

### A.    The Proposed Settlement Class Satisfies Rule 23(a)

The proposed Settlement Class here satisfies the requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation.

#### 1.    Numerosity

Rule 23(a)(1) permits class treatment where "the class is so numerous that joinder of all members is impracticable[.]" *See Owens v. Metro. Life Ins. Co*., 323 F.R.D. 411, 415 (N.D. Ga. 2017). "No consistent standard has been developed for establishing numerosity in class actions." *Ballard v. Blue Shield of S.W. Va., Inc.*, 543 F.2d 1075, 1080 (4th Cir. 1976) (citing 7 C. Wright & A. Miller, *Federal Practice & Procedures* §1762 (1972)); *Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984) (no specific size is necessary).

By one metric, the number of STP Operators in the United States is estimated to be over 14,000.[8]    Thus, numerosity is easily satisfied here. *See Williams v. Henderson*, 129 F. App'x 806, 811 (4th Cir. 2005) (indicating that a class with over 30 members justifies a class).

---

[8] *See U.S. Wastewater Treatment*, UNIVERSITY OF MICHIGAN CENTER FOR SUSTAINABLE SYSTEMS (Oct. 2020), http://css.umich.edu/factsheets/us-wastewater-treatment-factsheet (citing 2016 U.S. EPA statistics for Publicly Owned Treatment Works, or "POTWs").

### 2.    Commonality

To meet the commonality requirement, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This does not require that all, or even most issues be common, but only that common issues exist. "The commonality element is generally satisfied when a plaintiff alleges that '[d]efendants have engaged in a standardized course of conduct that affects all class members.'" *In re Checking Acct. Overdraft Litig.*, 275 F.R.D. 666, 673 (S.D. Fla. 2011).

The proposed Settlement Class also easily satisfies Rule 23(a)(2). Common questions include, but are not limited to:

a)    whether Defendants mislabel their flushable wipes so as to have consumers believe that their flushable wipes will not cause harm to sewer systems in their area;

b)    whether Defendants' business practices violate South Carolina law;

c)    whether Defendants knew or should have known that the labeling on their flushable wipes was false, misleading or deceptive when issued;

d)    whether Defendants' flushable wipes cause adverse effects on STP Operators' systems;

e)    whether Defendants sell, distribute, manufacture or market flushable wipes in South Carolina and nationwide that are in fact flushable;

f)    whether Defendants' flushable wipes are safe for sewer systems; and

g)    whether Plaintiff and Class members are entitled to injunctive relief.

Similar actions centering on the labeling of flushable wipes have been found to present common questions of law and fact. *See Kurtz v. Kimberly-Clark Corp.*, 414 F. Supp. 3d 317, 321 (E.D.N.Y. 2019) (finding consumer allegations that Flushable Wipes do not perform as advertised to present common issues of fact and law).

### 3.    Typicality

Rule 23(a)(3)'s typicality requirement asks whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). To be typical, the class representative's claims "cannot be so different from the claims of absent

class members that their claims will not be advanced by plaintiff's proof of his own individual claim." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466-67 (4th Cir. 2006).

Here, Plaintiff's and other Settlement Class Members' claims arise out of the same course of conduct by Defendants and are based on identical legal theories. As discussed above, Plaintiff alleges that Defendants' flushable wipes did not conform to the representations on their packaging, which caused excessive and recurring harm to Settlement Class Members' facilities. These claims are identical to the legal claims belonging to all Settlement Class Members and would present proof of Defendants' liability on the basis of common facts supporting the appropriateness of injunctive relief. *See Schulman*, 807 F.3d at 608-09 ("[B]ecause of the group nature of the harm alleged and the broad character of the relief sought, the (b)(2) class is, by its very nature, assumed to be a homogenous and cohesive group with few conflicting interests among its members.").

### 4. Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To meet this requirement, the named class representatives must show that "they will fairly and adequately protect the interests of every putative claimant by showing that they have no interests that are antagonistic to other class members and that they are competent to undertake the case." *Reed*, 2016 WL 7438449, at *4. "The Court should also consider the adequacy of representation by Class Counsel." *Id*. For the first requirement (adequacy of class representatives), Fourth Circuit courts have required that plaintiffs merely show that "Named Plaintiffs' interests are directly aligned with the interests of absent class members." *Id*. For the second requirement (adequacy of class counsel), courts in the Fourth Circuit generally presume adequacy is met "in the absence of specific proof to the contrary." *Id*.; *see also Case*, 2015 WL 12851717, at *5 (quoting same).

Plaintiff easily satisfies both prongs of the adequacy requirement.  The interests of Plaintiff and absent Settlement Class Members align because they each have been harmed by, and/or are at risk of being harmed by, the same course of conduct, and each Settlement Class Member will benefit from the terms of the Settlement.  Plaintiff has demonstrated its adequacy and dedication through its active involvement in the case (including meeting with Defense Counsel and Defendant) and its own attempts to remedy the Complaint's allegations, including publicly discussing flushable wipes-related problems at issue in the Action and attempting to educate the public on related flushability issues (and commitment to further do so through the Settlement).[9] Plaintiff, which has incurred expenses and anticipates incurring additional expenses due to flushable wipes in its capacity as a wastewater utility system, has no interests that are antagonistic to the interests of any of the Settlement Class Members.

Plaintiff also meets the second prong of the adequacy requirement.  To date, Class Counsel has invested significant attorney and staff time to this matter.  Robbins Geller is a preeminent nationwide plaintiffs' firm specializing in complex class action litigation, and currently serves as lead counsel in other flushable wipes-related litigation.  *See* www.rgrdlaw.com.  Robbins Geller has served as lead or co-lead counsel in hundreds of class actions in almost every state in the country, and has achieved considerable success, including attaining one of the five largest recoveries in the Fourth Circuit at the time in *Nieman v. Duke Energy Corp., et al.*, No. 12-cv-00456  (W.D.N.C.).    *See*  https://www.rgrdlaw.com/cases-nieman-v-duke-energy-corp.html. Likewise, AquaLaw is a preeminent firm with a wide-ranging municipal water practice, serving

---

[9]    *See, e.g.*, *What Not to Flush*, CHARLESTON WATER SYSTEM, http://charlestonwater.com/361/What-Not-to-Flush (last visited Apr. 25, 2021); Andrew Brown, *Charleston Water System sues manufacturers, retailers, over 'flushable' toilet wipes*, THE POST AND COURIER (Jan. 8, 2021), https://www.postandcourier.com/business/charleston-water-system-sues-manufacturers-retailers-over-flushable-toilet-wipes/article_99b29254-51c5-11eb-b7fa-eb9a98184e11.html; Settlement Agreement, ¶2.1(b)((ii).

public utilities and other entities nationwide and litigating a wide range of disputes in State and federal courts involving water and infrastructure. *See* www.aqualaw.com.

Accordingly, both Rule 23(a)(4) and Rule 23(g) are satisfied. Plaintiff should be designated as Class Representative of the Settlement Class, and Robbins Geller and AquaLaw should be designated as Class Counsel.

### B.    The Settlement Class Satisfies Rule 23(b)(2)

Rule 23(b)(2) permits certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Class actions alleging claims for nuisance, trespass, and/or negligence are commonly certified under Rule 23(b)(2). *See, e.g., Olden v. LaFarge Corp.*, 203 F.R.D. 254, 271 (E.D. Mich. 2001), *aff'd*, 383 F.3d 495 (6th Cir. 2004) (certifying class alleging claims for nuisance and negligence under Rule 23(b)(2)). Here, Plaintiff has similarly requested injunctive relief (from harm caused by the continued design, marketing, manufacturing, distribution and/or sale of flushable wipes), and alleges that Defendants have "refused to act" by failing to adopt and implement appropriate product improvements and labeling changes. *See id*.

Additionally, "Rule 23(b)(2) classes are 'mandatory,' in that 'opt-out rights' for class members are deemed unnecessary and are not provided under the Rule." *Schulman*, 807 F.3d at 609 (citing *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2558 (2011)). Indeed, all Settlement Class Members will benefit equally from the injunctive relief presented by the Settlement. While Settlement Class Members thus cannot opt out of the Settlement, they may object to the Settlement or express any concerns they may have before final Court approval.

Therefore, Plaintiff respectfully submits that there is good reason and just cause to certify the Settlement Class, for settlement purposes, under Rule 23(b)(2).

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully asks that the Court grant preliminary approval of the proposed Settlement and enter the proposed Order Granting Motion for Preliminary Approval of Class Action Settlement, submitted as Exhibit D to the Stipulation.

DATED:  April 26, 2021

AQUALAW PLC
F. PAUL CALAMITA (ID #12740)


*/s/ F. Paul Calamita*
F. PAUL CALAMITA

6 South Fifth Street
Richmond, VA  23219
Telephone:  804/716-9021
804/716-9022 (fax)
paul@aqualaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
VINCENT M. SERRA
SARAH E. DELANEY
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
vserra@rgrdlaw.com
sdelaney@rgrdlaw.com

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 26, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all counsel of record.

*/s/ F. Paul Calamita*

AQUALAW PLC
F. PAUL CALAMITA (ID #12740)
6 South Fifth Street
Richmond, VA 23219
Telephone: 804/716-9021
804/716-9022 (fax)
paul@aqualaw.com