UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | |
|---|---|
| COMMISSIONERS OF PUBLIC WORKS OF THE CITY OF CHARLESTON (d.b.a. Charleston Water System), Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>COSTCO WHOLESALE CORPORATION, CVS HEALTH CORPORATION, KIMBERLY-CLARK CORPORATION, THE PROCTER & GAMBLE COMPANY, TARGET CORPORATION, WALGREENS BOOTS ALLIANCE, INC. and WAL-MART, INC.,<br><br>Defendants. | Civil Action No. 2:21-cv-00042-RMG<br><br><u>CLASS ACTION</u><br><br>PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...........................................................................................................1

II.  STATEMENT OF FACTS .............................................................................................3

III. LEGAL STANDARD......................................................................................................7

IV.  ARGUMENT ...................................................................................................................7

    A.   Plaintiff Adequately Alleges Article III Standing .................................................7

        1.   Plaintiff Has Adequately Demonstrated Injury-in-Fact..............................8

        2.   Plaintiff Has Adequately Pleaded Injury Fairly Traceable to
            Defendants ................................................................................................12

        3.   Plaintiff Has Adequately Pleaded Redressability .....................................14

    B.   Plaintiff Has Sufficiently Alleged that Each Defendant Proximately
        Caused Plaintiff's Injury .....................................................................................15

    C.   Proximate Causation Is Also Satisfied Through the Application of
        Collective Liability Theories ...............................................................................18

    D.   Plaintiff's Claims Are Sufficiently Pled .............................................................21

        1.   Plaintiff States Actionable Nuisance Claims ............................................21

        2.   Plaintiff States an Actionable Trespass Claim..........................................25

        3.   Plaintiff States an Actionable Negligence Claim......................................26

        4.   Plaintiff States Actionable Strict Products Liabilities Claims ..................28

            a.   Defective Design........................................................................28

            b.   Failure to Warn ..........................................................................31

    E.   Plaintiff Has Established that It Is Entitled to a Permanent Injunction ................32

    F.   Plaintiff's Claims Can Be Certified as a Nationwide Class..................................34

V.   CONCLUSION...............................................................................................................35

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................7

*Bank of Am. Corp. v. City of Miami, Fla.*,
  137 S. Ct. 1296 (2017)............................................................................17

*Beck v. McDonald*,
  848 F.3d 262 (4th Cir. 2017) ....................................................................9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................................7

*Brightview Grp., LP v. Teeters*,
  441 F. Supp. 3d 115 (D. Md. 2020).........................................................33

*Brooks v. GAF Materials Corp.*,
  41 F. Supp. 3d 474 (D.S.C. 2014)................................................15, 26, 27

*Charleston Dry Cleaners & Laundry, Inc. v. Zurich Am. Ins. Co.*,
  355 S.C. 614 (2003)................................................................................27

*Chelton v. Keystone Oilfield Supply Co.*,
  777 F. Supp. 1252 (W.D. Pa. 1991)........................................................18

*City of Charleston, W. Va. v. Joint Comm'n*,
  473 F. Supp. 3d 596 (S.D. W. Va. 2020)................................12, 15, 16

*City of Greenville v. W.R. Grace & Co.*,
  640 F. Supp. 559 (D.S.C. 1986)..............................................................24

*City of Perry, Iowa v. Procter & Gamble Co.*
  188 F. Supp. 3d 276 (S.D.N.Y. 2016)............................................ *passim*

*City of Wyoming v. Procter & Gamble Co.*
  210 F. Supp. 3d 1137 (D. Minn. 2016)........................................... *passim*

*Clapper v. Amnesty Int'l USA*,
  133 S.Ct. 1138 (2013)............................................................................14

*Cody P. v. Bank of Am., N.A.*,
  395 S.C. 611 (App. Ct. 2011) .................................................................15

**Page**

*Cox v. AGCO Corp.*,
  2020 WL 3473636
  (E.D.N.C. June 25, 2020) ........................................................................................17

*Crider v. Infinger Transportation Co.*,
  248 S.C. 10 (1966) ..................................................................................................19

*Davis v. Safe Streets USA LLC*,
  2020 WL 8514280
  (E.D.N.C. Sept. 18, 2020) .........................................................................................8

*Dominion Carolina Gas Transmission, LLC v. 1.169 Acres, in Richland Cnty., S.C.
  located on Parcel R39100-02-05*,
  218 F. Supp. 3d 476 (D.S.C. 2016) .........................................................................33

*Finnigan v. U.S.*,
  2016 WL 5858715
  (D.S.C. Aug. 5, 2016) ..............................................................................................26

*Fisher v. Pelstring*,
  817 F. Supp. 2d 791 (D.S.C. 2011) ..........................................................................28

*Good v. Am. Water Works Co.*,
  2015 WL 3506957
  (S.D. W. Va. June 3, 2015) ......................................................................................23

*Hall v. E.I. Du Pont De Nemours & Co.*,
  345 F. Supp. 353 (E.D.N.Y. 1972) ..........................................................................20

*Hamilton v. Accu-tek*,
  935 F. Supp. 1307 (E.D.N.Y. 1996) .........................................................................18

*Hencely v. Fluor Corp., Inc.*,
  475 F. Supp. 3d 464 (D.S.C. 2020) ..........................................................................35

*Holland v. Consol Energy, Inc.*,
  781 Fed. Appx. 209 (4th Cir. 2019) .....................................................................9, 10

*Hulsizer v. Magline, Inc.*,
  2018 WL 5617873
  (D.S.C. Oct. 29, 2018) ..............................................................................................28

*Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*,
  892 F.3d 613 (4th Cir. 2018) .................................................................................8, 9

**Page**

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
175 F. Supp. 2d 593 (S.D.N.Y. 2001) ....................................................................31

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
447 F. Supp. 2d 289 (S.D.N.Y. 2006) ....................................................................18

*King v. J. C. Penney Co.*,
238 S.C. 336 (1961) ....................................................................................................19

*Lawing v. Univar, USA, Inc.*,
415 S.C. 209 (2015) ..............................................................................................29, 30

*Libertarian Party of Va. v. Judd*,
718 F.3d 308 (4th Cir. 2013) ....................................................................................13

*Lillge v. Johns-Manville Corp.*,
602 F. Supp. 855 (E.D. Wis. 1985) ..........................................................................21

*Matherly v. Andrews*,
859 F.3d 264 (4th Cir. 2017) ....................................................................................10

*Mayor & City Council of Baltimore v. Monsanto Co.*,
2020 WL 1529014
(D. Md. Mar. 31, 2020) ..............................................................................................24

*Messier v. Adicks*,
251 S.C. 268 (1968) ....................................................................................................16

*Meyer v. McMaster*,
394 F. Supp. 3d 550 (D.S.C. 2019) ....................................................................12, 14

*Mirant Potomac River, LLC v. U.S. E.P.A.*,
577 F.3d 223 (4th Cir. 2009) ....................................................................................14

*Molock v. Whole Foods Mkt. Grp., Inc.*,
952 F.3d 293 (D.C. Cir. 2020) ..................................................................................34

*Moore v. Barony House Restaurant, LLC*,
382 S.C. 35 (2009) ......................................................................................................31

*Muhler Co. v. Ply Gem Holdings, Inc.*,
637 F. App'x 746 (4th Cir. 2016) ..............................................................................16

Page

*N. Nat. Gas Co. v. L.D. Drilling, Inc.*,
  759 F. Supp. 2d 1282 (D. Kan. 2010), *aff'd*,
  697 F.3d 1259 (10th Cir. 2012) ...........................................................33

*Norfolk S. Ry. Co. v. City of Pittsburgh*,
  235 F. App'x 907 (3d Cir. 2007) ...........................................................33

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985)...........................................................35

*Preserve at Connetquot Homeowners Association, Inc. v. Costco Wholesale Corp.*,
  2019 WL 337093
  (E.D.N.Y. Jan. 28, 2019), *appeal withdrawn*,
  2019 WL 4025726
  (2d Cir. Aug. 21, 2019) ...........................................................11, 12

*Prince George's Cnty., Md. v. Wells Fargo & Co.*,
  2021 WL 633380
  (D. Md. Feb. 17, 2021) ...........................................................18

*Proctor & Schwartz, Inc. v. Rollins*,
  634 F.2d 738 (4th Cir. 1980) ...........................................................35

*Richards v. NewRez LLC*,
  2021 WL 1060286
  (D. Md. Mar. 18, 2021)...........................................................34

*Russo v. Material Handling Specialties Co.*,
  1995 WL 1146853
  (Mass. Super. Aug. 29, 1995) ...........................................................19

*Ryan v. Eli Lilly & Co.*,
  514 F. Supp. 1004 (D.S.C. 1981)...........................................................16, 19

*Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*,
  73 F.3d 546 (5th Cir. 1996) ...........................................................13

*Silvester v. Spring Valley Country Club*,
  344 S.C. 280 (App. Ct. 2001) ...........................................................21, 22

*Sindell v. Abbott Labs.*,
  26 Cal. 3d 588 (1980), *cert. denied*,
  449 U.S. 912 (1980)...........................................................19

**Page**

*Small v. Pioneer Machinery, Inc.*,
  329 S.C. 448 (App. Ct. 1997) .............................................................15, 17, 18, 28

*South Carolina Ins. Co. v. James C. Greene & Co.*,
  290 S.C. 171 (1986) ....................................................................................17

*State v. Exxon Mobil Corp.*,
  406 F. Supp. 3d 420 (D. Md. 2019) .................................................................20, 24

*State v. Turner*,
  18 S.E.2d 372 (S.C. 1942) .............................................................................22

*Suffolk Cnty. Water Auth. v. Dow Chemical Co.*,
  987 N.Y.S.2d 819 (Sup. Ct. Suffolk Cnty. 2014) .............................................19, 20

*Tillman v. Highland Indus., Inc.*,
  2020 WL 6709974
  (D.S.C. Sept. 8, 2020) ..................................................................................25

*Tuttle Dozer Works, Inc. v. Gyro-Trac (USA), Inc.*,
  463 F. Supp. 2d 544 (D.S.C. 2006) ..................................................................34

*Wikimedia Found. v. Nat'l Sec. Agency*,
  857 F.3d 193 (4th Cir. 2017) .........................................................................8

*Winpisinger v. Watson*,
  628 F.2d 133 (D.C. Cir. 1980) .......................................................................14

*Wolford v. Bos. Sci. Corp.*,
  2015 WL 5838504
  (S.D. W. Va. Oct. 5, 2015) ...........................................................................31

**STATUTES, RULES AND REGULATIONS**

South Carolina's Defective Products Act, S.C. Code
  §15-7310 ...................................................................................................28, 29

South Carolina's Door-Closing Statute, S.C. Code
  §15-5-150 ..................................................................................................34

Federal Rule of Civil Procedure
  Rule 12(b)(1) ...............................................................................................1
  Rule 12(b)(6) ...............................................................................................1

Plaintiff, the Commissioners of Public Works of the City of Charleston (d.b.a. "Charleston Water System") ("Plaintiff" or "CWS"), respectfully submits this memorandum of law in opposition to the joint motion of defendants Costco Wholesale Corporation ("Costco"), CVS Health Corporation ("CVS"), The Procter & Gamble Company ("P&G"), Target Corporation ("Target"), Walgreens Boots Alliance, Inc. ("Walgreens") and Wal-Mart, Inc. ("Wal-Mart") (collectively, "Defendants") to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of standing, and, in the alternative, to dismiss pursuant to Rule 12(b)(6) for failure to state a claim.[1]

## I.     INTRODUCTION

This case arises from Defendants' fraudulent practice of manufacturing, marketing and selling their moist wipes as "flushable" when in fact they fail to break down and disperse sufficiently to pass through wastewater conveyance, collection and treatment systems.  As a result of Defendants' continued sale of their so-called Flushable Wipes[2] in and around the Charleston area, CWS has suffered, and continues to suffer, clogs, blockages, backups and other damage to its wastewater facilities, including increased routine maintenance and emergency service costs. Through this class action, CWS seeks appropriate injunctive relief – in the form of ***accurate*** and truthful labeling of Defendants' Flushable Wipes – to remedy its costly and ongoing injury.

The fact that Defendants' Flushable Wipes are incompatible with CWS and other Class members' wastewater systems, and are thus falsely labeled as flushable, is not mere conjecture. Aside from repeated past testing failures (¶¶40-45), recurring incidents of damage to wastewater collection systems caused in large part by Flushable Wipes (¶¶50-53, 59-92), and state and

---

[1] "Complaint" refers to Plaintiff's Class Action Complaint, ECF No. 1.  References to "¶" and "¶¶" refer to the Complaint.  Citations to "Jt. Mem." refer to the Memorandum of Law in Support of Defendants' Joint Motion to Dismiss Plaintiff's.  ECF No. 46-1.  Citations are omitted and emphasis is added throughout unless otherwise noted.

[2] "Flushable Wipes" refers to moist wipe products marketed and labeled as safe to flush, safe for plumbing, safe for sewer and/or septic systems and/or biodegradable.  ¶1.

municipal warnings not to flush Flushable Wipes (¶¶51, 59, 62, 67, 75, 80-81), CWS's expert conducted testing, following the filing of the Complaint, of each defendant's Flushable Wipes products sold in the Charleston area in accordance with a leading international wastewater association's flushability specifications and determined that, with the exception of non-moving defendant Kimberly-Clark Corporation ("Kimberly-Clark"), "***none of [Defendants'] products . . . labeled as flushable adequately break down or disperse in sewer systems as advertised***."[3] Defendants' Flushable Wipes are, therefore, highly likely to remain intact and cause significant problems when they reach Plaintiff and other utilities' wastewater collection facilities in South Carolina and throughout the country. *See* Orr Decl. at ¶20.[4]

Tellingly, Defendants do not dispute that their Flushable Wipes are ***not*** in fact flushable according to wastewater industry standards. Nor do they provide any support for the assertion that their Flushable Wipes are flushable according to ***any*** relevant definition or standard, including the standard set forth by their industry's own self-regulating trade group. Rather, Defendants argue that CWS lacks standing because it has not alleged an imminent injury given the Complaint's reference to CWS suffering two major blockages, the last of which occurred in June 2019, that required divers to make repeated dives into the Plum Island treatment plant's wet well to remove the clogs and cost Plaintiff more than $200,000 in damage and cleanup expenses. ¶¶50, 53. But Plaintiff's allegations make clear, and CWS has confirmed, that in addition to the two clogs highlighted in the Complaint, Defendants' Flushable Wipes cause "***ongoing*** damage to Plaintiff and Class members' property,"

---

[3] *See* Declaration of Barry Orr ("Orr Decl."), submitted herewith, at ¶12. Mr. Orr is the Sewer Compliance Officer and Sewer Outreach and Control Inspector for the City of London, Ontario, has over 25 years' experience in the wastewater treatment and collection fields and is a leading voice on flushability. *See id* at ¶¶2-4.

[4] *See also* Affidavit of Baker S. Mordecai, P.E. in Support of Plaintiff's Opposition to Defendants' Joint Motion to Dismiss ("Mordecai Aff."), submitted herewith, at ¶¶7-24; Affidavit of Michael Fu Man Yip in Support of Plaintiff's Opposition to Defendants' Joint Motion to Dismiss ("Yip Aff."), submitted herewith, at ¶¶7-17; Affidavit of Chadwick Abrams in Support of Plaintiff's Opposition to Defendants' Joint Motion to Dismiss ("Abrams Aff."), submitted herewith, at ¶¶7-17.

and continue to threaten CWS's collection system with further damage, repairs and maintenance. ¶¶8, 54-55, 150; *see also* Mordecai Aff. at ¶¶7-24.

Plaintiff also satisfies its proximate causation burden at the pleading stage. Under South Carolina law, only in ***exceptional*** circumstances – *i.e.*, when only one inference can be drawn from the record – may courts rule on proximate causation as a matter of law. Defendants attempt to persuade the Court, however, that the damage caused by their Flushable Wipes – which misleadingly encourage users to flush the wipes into sewer systems leading to Plaintiff and Class members' wastewater treatment facilities – is not the direct result of Defendants' conduct, simply because Plaintiff is harmed by more than one actor and more than one "potential clogging causes." Jt. Mem. at 12-13. But Plaintiff has never maintained that Defendants' Flushable Wipes are the ***sole*** cause of their injury, only that they are at least one direct and significant cause. Nor can Defendants escape liability simply because their wipes jointly contribute to CWS's damages. Plaintiff plausibly alleges that each defendant's Flushable Wipes products – which comprise a significant market share in both Charleston and throughout the country – pose a real, imminent and substantial continuing threat to Plaintiff and Class members' wastewater collection systems.

Because CWS has sufficiently alleged standing, causation and the elements of its claims for nuisance, trespass, negligence and products liability, Defendants' motion should be denied.

## II.    STATEMENT OF FACTS

Defendants manufacture, market and/or sell wipes labeled as "flushable" and/or "safe" for sewer systems. ¶¶93-108. Defendants' Flushable Wipes, which dominate the flushable wipes market, are widely available for sale in and around Charleston, South Carolina, and throughout the United States. ¶11; *see also* Orr Decl. at ¶¶6, 20. ***All*** Defendants advertise and label their Flushable Wipes with the same word, often ***in the name of the product itself***: "flushable." ¶¶93-108. Marketing for Defendants' Flushable Wipes also includes claims such as "safe for sewer and septic

systems" and similar language directing consumers to discard the wipes in the toilet.  *Id*.  Plaintiff alleges that Defendants' Flushable Wipes are unsuitable for flushing, making them improperly labeled as "flushable" and "safe" for sewer systems.  ¶¶28-46.  The term "flushable" is commonly understood to mean "***suitable*** for disposal by flushing down a toilet," requiring more than simply clearing a toilet or home plumbing system.  ¶28.  Thus, a product's ability to clear a toilet does not mean it is flushable.  Golf balls, for example, can clear a toilet, but they are not flushable.

Although there are many definitions of the word "flushable," sources generally agree that for a product to be deemed "flushable" and "safe" for sewer systems it must disperse in a sufficiently short amount of time to prevent damage to both home plumbing ***and*** sewer systems.  ¶¶30-32; *see also id*. at ¶30 (discussing the FTC's guidance that "flushable" means a product must "disperse[] in a sufficiently short amount of time after flushing to avoid clogging, or other operational problems in, household and municipal sewage lines, septic systems, and other standard wastewater equipment").  Because Defendants' Flushable Wipes do not meet this basic threshold, they are, therefore, not flushable under any available definition or guideline because, *inter alia*, they cannot safely pass through municipal sewage lines, pumps and treatment facilities due to their nondispersability.

Numerous independent tests have confirmed that Defendants' Flushable Wipes will not actually break down or dissolve in sewer systems.  ¶39.  For example, Ryerson University conducted a study in 2019 where researchers examined 101 single-use wipes products, including 23 wipes products labeled as "flushable" by the manufacturer, following specifications set out by the International Water Services Flushability Group ("IWSFG") - an international coalition of national and regional wastewater services associations and organizations and individual wastewater utilities – and found that none of the products fell apart or dispersed enough to safely pass through an average home's plumbing system to the public sewer, or through the sewer system for 30 minutes.  ¶40.

Significantly, Plaintiff commissioned an expert to conduct testing earlier this year to determine whether Defendants' Flushable Wipes sufficiently break down and whether those wipes meet the Publicly Available Specification (PAS) 3: 2020 Disintegration Test Methods – "Slosh Box" Disintegration Test, developed by IWSFG ("IWSFG PAS 3"). *See generally* Orr Decl. The Slosh Box test is a testing metric widely used in the Flushable Wipes industry, including by certain Defendants' own trade group – the Association of the Nonwoven Fabrics Industry ("INDA") – to determine flushability.[5] The IWSFG PAS 3 test assesses the disintegration performance of wipes when subjected to hydraulic forces found in wastewater transport systems, after a product is flushed into a public sewer. ¶37; Orr Decl. at ¶¶8-9. Plaintiff's expert conducted IWSFG PAS 3 testing on products purchased in both the Charleston area as well as in New York, and **none** of Defendants' Flushable Wipes passed the IWSFG standard of 80 percent dissolvability. Orr Decl. at ¶¶11-19.[6]

Unsurprisingly – given their inability to sufficiently break down quickly enough (or at all) – Flushable Wipes are known to cause a variety of plumbing issues to septic tanks, piping, sewers and wastewater collection and treatment facilities across the country, and around the world. ¶¶50-92.[7] Utilities in the United States continue to spend hundreds of millions of dollars per year to address and fix damages caused in large part by Flushable Wipes. ¶¶5, 38. And rather than seeing

---

[5] While Plaintiff alleges that Defendants base their flushability claims on the ability to pass the INDA flushability guidelines (¶33), Defendants do not make that claim in their motion. In fact, they do not claim that their Flushable Wipes are flushable under any standard or definition. In any event, the INDA flushability guidelines are far less stringent than those of the IWSFG, and not supported by the wastewater industry. *See, e.g.*, ¶46; ECF No. 45-7 at 5.

[6] The only wipes labeled as "flushable" that passed the IWSFG PAS 3 test were those manufactured and sold by defendant Kimberly-Clark. Orr Decl. at ¶19. Kimberly-Clark did not join in Defendants' motion. On April 26, 2021, Plaintiff filed a motion for preliminary approval of a settlement between it and Kimberly-Clark given the exceedingly better performance of its Cottonelle Flushable Wipes and commitment to meet the IWSFG PAS 3 specifications. ECF No. 59.

[7] *See also* ECF No. 45-7 at 2 ("Following the introduction of 'flushable' sanitary wipes into the consumer market, the City noted a significant increase in the number of sanitary wipes found in its sewer and wastewater treatment infrastructure, and the volume of wipes in the City's systems continues to rise every year.").

improvements, sewage treatment facilities have been experiencing increased wipes-based blockages over the past approximately fourteen months. *See* ¶¶67-70; Mordecai Aff. at ¶24.[8]

The Complaint details that, "[i]n addition to other expenses incurred related to Flushable Wipes," Plaintiff experienced two recent, major clogs caused in substantial part by Defendants' Flushable Wipes. ¶50. In October 2018, divers removed a massive 12-foot long clog from Plaintiff's system, which put Plaintiff's sewage treatment plant in jeopardy of massive sewer overflows and cost Plaintiff more than $140,000 in damage and cleanup costs. *Id*. Despite Plaintiff's efforts to educate consumers on Defendants' misleading labeling, the issue occurred again in June 2019, costing Plaintiff approximately $60,000 in response costs. ¶53. This incident also required divers to make three separate dives to remove the clogs and/or blockages. ¶¶50, 53. As recently as April 23, 2021, *The Washington Post* reported that CWS spent an additional $110,000 in 2020 – a 44 percent increase – "to prevent and clear wipe-related blockages and expects to do so again this year." *See supra* n.9. Plaintiff alleges that, given the repeated clogs and "ongoing damage to Plaintiff and Class members' property," it faces a continued threat of further repairs, maintenance and/or other damage caused by Defendants' Flushable Wipes. ¶¶8, 54-55, 150.

Since the beginning of 2021 alone, according to the Director of the Wastewater Collection Department for CWS, wipes-related blockages – including both flushable and non-flushable wipes – have required Plaintiff's expenditure of significant manpower and financial resources. *See* Mordecai Aff. at ¶¶15-23. From January 1, 2021 to April 28, 2021, Plaintiff has encountered *37* wipes-related pump clogs and/or pump failures and 29 wipes-related mainline blockages within its collection system. *Id*. at ¶¶15-16. During this time, the combined costs to Plaintiff to manage wipes mainline

---

[8] *See also* Katherine Shaver, *A nasty pandemic problem: More flushed wipes are clogging pipes, sending sewage into homes*, THE WASHINGTON POST (Apr. 23, 2021), https://www.washingtonpost.com/local/trafficandcommuting/flushable-wipes-clogging-sewers/2021/04/23/5e8bbc82-a2c9-11eb-a774-7b47ceb36ee8_story.html (discussing increased wipe-related backups in various municipal wastewater systems through the country).

blockages and pump clogs/failures was $24,991.  *Id.* at ¶16.  And the costs of preventive maintenance specific to wipes (both flushable and non-flushable) management within the collection system have totaled $121,506 since the beginning of this year alone.  *Id.* at ¶¶8, 19.  Since the onset of COVID-19, CWS has experienced increased blockages and was forced to supplement its in-house crews to manage the increase in wipes in its collection system.  *Id.* at ¶¶23-24.  Despite these and other targeted wipes-related mitigation measures, Plaintiff continues to experience an average of nine pump clogs and/or wipe-related pump failures each month.  *Id.* at ¶23.  Plaintiff's experience with Flushable Wipes is consistent with that of other water systems and sewer districts in South Carolina and throughout the United States.  *See* Abrams Aff. at ¶¶7-17; Yip Aff. at ¶¶7-17; ¶¶59-92.

## III.    LEGAL STANDARD

In deciding a motion to dismiss, courts accept, as true, all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally.  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009).  The question is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 583, n.8 (2007).  And "a short and plain statement of the claim . . . giv[ing] the defendant fair notice of what the . . . claim is and the grounds upon which it rests" will satisfy that question.  *Id.* at 545, 556 (holding "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely").

## IV.    ARGUMENT

### A.    Plaintiff Adequately Alleges Article III Standing

Plaintiff has standing to maintain this lawsuit and seek injunctive relief against Defendants to ensure that it does not incur further harm stemming from the entrance of Defendants' Flushable Wipes into Plaintiff's sewage treatment facilities where they cause significant damage, including but

not limited to clogs, backups and equipment failures.  To establish standing under Article III of the

Constitution, a plaintiff must show: "(1) an injury in fact; (2) a sufficient causal connection between

the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by a

favorable decision."  *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 207 (4th Cir. 2017).[9]

### 1.     Plaintiff Has Adequately Demonstrated Injury-in-Fact

To establish an injury-in-fact, plaintiffs must show that they "suffered an invasion of a

legally protected interest that is concrete and particularized and actual or imminent, not conjectural

or hypothetical."  *Hutton*, 892 F.3d at 621.  Defendants argue, however, that Plaintiff has not pleaded

facts showing imminent injury and, curiously, that by pleading harm from past incidents involving

Defendants' Flushable Wipes, Plaintiff has "plead[ed] itself out of any ability to establish injury-in-

fact standing."  Jt. Mem. at 6.  Defendants are wrong.

The Complaint highlights that Plaintiff suffered not one, but *two* major clogs in the span of

just eight months, and details various expenses and measures taken to respond to and otherwise

cleanup the blockages.  ¶¶50-53.  But those are not the only allegations with respect to costs and

damage incurred associated with Defendants' Flushable Wipes.  Indeed, the Complaint clarifies that

the two examples of major clogs detailed therein were "*[i]n addition to* other expenses incurred

related to Flushable Wipes" (¶50) – which presumes that Plaintiff suffered other harm associated

with Defendants' Flushable Wipes.  This is consistent with language elsewhere in the Complaint

referencing the "ongoing" nature of the damages that Plaintiff experiences.  *See, e.g.*, ¶150

("Defendants are each a substantial factor causing the *ongoing* damage to Plaintiff and Class

---

[9] Courts in this Circuit have conferred standing on plaintiffs seeking injunctive relief for future harms, in class and non-class settings, in matters that involve, *e.g.*, nuisance and negligence.  *See, e.g., Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*, 892 F.3d 613, 616 (4th Cir. 2018) (vacating dismissal of data breach-related claims for negligence based on finding of standing); *Davis v. Safe Streets USA LLC*, 2020 WL 8514280, at *3-*5 (E.D.N.C. Sept. 18, 2020) (allegations that plaintiff suffered invasion of privacy and private nuisance as a result of receiving a single unsolicited text message were sufficient to plead standing for TCPA violation).

members' property . . .").[10]  This is precisely the type of non-speculative harm that the Fourth Circuit

has held constitutes "an imminent threat of injury [that] satisf[ies] Article III standing." *Hutton*, 892

F.3d at 622 ("the Court has recognized standing to sue on the basis of costs incurred to mitigate or

avoid harm when a substantial risk of harm actually exists").[11]

    Contrary to Defendants' unfounded conclusion that Plaintiff's problems with Flushable

Wipes have ***improved*** because "Plaintiff has now gone nearly two years without alleging any further

incident" (Jt. Mem. at 6), the Complaint alleges that – in addition to the "other expenses" and

"ongoing" problems Plaintiff experienced as a result of Defendants' Flushable Wipes ending up in

its system – problems with flushable wipes have actually ***worsened*** in recent years with the onset of

the COVID-19 pandemic.  ¶¶67-70.  Indeed, Plaintiff itself "spent an additional $110,000 — a 44

percent increase — [in 2020] to prevent and clear wipe-related blockages." *Supra* n.9.  And, since

the beginning of this year alone, Plaintiff has incurred significant labor and equipment costs (both

from in-house and contracted work) specific to wipes management, further evidencing a growing

problem with Flushable Wipes.  *See* Mordecai Aff. at ¶¶15-21; *see also supra* n.9 ("Wipe-catching

screens that used to need cleaning once a week are requiring it three times a week").[12]

---

[10] *See also* ¶8 ("Plaintiff and other STP Operators experienced and will ***continue*** to experience
clogging and other disruption of their sewage or wastewater treatment plants . . . Flushable Wipes
will ***continue*** to create excessive maintenance and repair-related expenses"); ¶10 ("Plaintiff has been
and will ***continue*** to be burdened with unnecessary expenses in connection with repairs,
maintenance and/or other damage to its sewage treatment plants").

[11] Given the repeated past clogging incidents, along with other ongoing Flushable Wipes-related
expenses, Plaintiff logically alleges that it "anticipates experiencing future clogging and increased
costs associated with operating its sewer treatment plant and removing clogs caused by the buildup
of Flushable Wipes." ¶54.  Plaintiff's allegations that it is "'likely to sustain . . . future injuries'" are
thus neither "fact-free" nor set forth the "*wrong standard*." Jt. Mem. at 5-6 (emphasis in original).

[12] For these same reasons, Defendants' argument that Plaintiff's past incidents of harm are
insufficient to support imminence is misplaced.  Plaintiff does not allege speculative harm "at some
point in the future" or "someday" as Defendants contend.  Jt. Mem. at 6-7.  The cases Defendants'
cite in support of this proposition are thus factually distinguishable. *See Beck v. McDonald*, 848
F.3d 262, 276-77 (4th Cir. 2017) (no substantial risk of harm where 66% of identity theft victims
will suffer no additional harm); *Holland v. Consol Energy, Inc*., 781 Fed. Appx. 209, 212-13 (4th

In the only two similar flushable wipes-related putative class actions brought on behalf of municipal wastewater systems, both courts denied motions to dismiss and determined that plaintiffs had standing to pursue their injunctive claims against flushable wipes manufacturers (including defendant P&G and Nice-Pak Products, Inc., which manufactures flushable wipes for defendants Costco, CVS and Target).  In *City of Perry, Iowa v. Procter & Gamble Co*., like here, plaintiff alleged that as a result of the mislabeling of Flushable Wipes, defendants caused their products to be inappropriately flushed into plaintiff's water system, causing clogs and backed ups of its sewer pipes and lift stations.  188 F. Supp. 3d 276, 281 (S.D.N.Y. 2016).  The court in *City of Perry* determined that, with respect to plaintiff's claims for "injunctive relief against *future* injury," the "Defendants do not (and, at this stage, cannot) dispute that their products are sold in and around Perry, so there is a significant risk that their products could end up in the City's pipes even if they have not already."  *Id*. at 284 (emphasis in original).

Plaintiffs in *City of Wyoming v. Procter & Gamble Co.* likewise sought both injunctive relief and monetary damages in the form of costs and property damage to sewer systems and water treatment facilities allegedly suffered due to the entrance of flushable wipes into the systems as a result of the false advertising by the same defendants as in *City of Perry*.  210 F. Supp. 3d 1137, 1149 (D. Minn. 2016).  There, the court found that plaintiffs had standing to pursue relief for future harm that "they imminently ***expect*** to suffer when defendants' wipes find their way into their sewer systems."  *Id.* at 1152 n.2.  According to the court, allegations of "the imminent threat of Defendants' wipes being flushed into Plaintiffs' sewers, causing Plaintiffs harm, is sufficient" at the motion to dismiss stage.  *Id*. ("The imminent-injury rule for standing doctrine means that a plaintiff

---

Cir. 2019) (no imminent injury where plaintiff failed to present evidence that beneficiaries would seek coverage from benefit plan); *Matherly v. Andrews*, 859 F.3d 264, 277 (4th Cir. 2017) (allegation that contact with prisoners "***could*** very likely" cause harm "at some point in the future" insufficient to establish harm is certainly impending).

is not required to 'destroy a large building' or 'bet the farm' before litigating his or her concerns.").

Here, as discussed above, Plaintiff alleges that: (1) Defendants' Flushable Wipes are currently available for sale in the Charleston area and represent a significant share of the market; (2) Defendants advertise and label Flushable Wipes as "flushable" and "safe" for sewer systems so as to encourage consumers to flush Flushable Wipes down the toilet; (3) consumers discard Defendants' Flushable Wipes down the toilet; and (4) as a direct result of Defendants' representations, the Flushable Wipes have caused and *continue to cause* harm to Plaintiff and other wastewater facilities or treatment plants.  These facts are virtually indistinguishable from those in *City of Wyoming* and *City of Perry*.  *See, e.g.*, *City of Wyoming*, 210 F. Supp. 3d at 1150 (finding allegations that plaintiffs "are injured by wipes marketed as flushable, that Defendants each produce and sell these 'flushable' wipes, and that it is 'Defendants' continued sale and promotion of wipes as 'flushable' and 'sewer and septic safe' that has caused and is causing Plaintiffs' injury" sufficiently detailed to establish standing).  Defendants provide no basis for why the Court should depart from the reasoning set forth in these highly relevant precedents.

Defendants argue instead that the Court should follow the holding in *Preserve at Connetquot Homeowners Association, Inc. v. Costco Wholesale Corp.*, 2019 WL 337093 (E.D.N.Y. Jan. 28, 2019), *appeal withdrawn*, 2019 WL 4025726 (2d Cir. Aug. 21, 2019), despite a significantly more tenuous threat posed to the plaintiff in that case.  Jt. Mem. at 8.  In *Preserve*, plaintiff – a forty unit homeowners association with sewage treatment facilities – brought claims based on a single clog suffered in 2012, after which Plaintiff installed new equipment and issued an ongoing directive to residents to refrain from flushing purportedly flushable wipes down their toilets.  2019 WL 337093, at *9.  In concluding that "plaintiff has failed to plead any facts from which the Court could conclude that it will suffer harm of any kind attributable to flushable wipes, let alone imminent harm sufficient

to confer Article III standing," the court explained that plaintiff "has entirely failed to show that flushable wipes are being flushed at all by residents (who have every incentive not to flush the wipes because of the risk of increasing their homeowners association dues to fund repairs to the system), or that the sewage system is compromised in any way after *six* clog-free years." *Id*. Here, in stark contrast to *Preserve*, the Complaint alleges that Plaintiff suffered repeated recent clogs in its system, consumers continue to flush Defendants' Flushable Wipes into the sewer system in and around Charleston and Plaintiff is suffering, and reasonably expects to continue to suffer, ongoing harm from Defendants' Flushable Wipes. *See supra* §II; Mordecai Aff. at ¶¶7-24.

### 2.     Plaintiff Has Adequately Pleaded Injury Fairly Traceable to Defendants

"Traceability is a lower standard than proximate cause" as "[a] plaintiff must merely show that a particular defendant's [actions] has affected or has the potential to affect his interests." *Meyer v. McMaster*, 394 F. Supp. 3d 550, 561 (D.S.C. 2019); *see also City of Charleston, W. Va. v. Joint Comm'n*, 473 F. Supp. 3d 596, 612 (S.D. W. Va. 2020) (Article III's fairly traceable requirement "does not require a showing of proximate cause"). But despite the lower standard and the direct connection between Defendants' actions and the harm at issue in this case, Defendants argue that Plaintiff failed to establish that its injury is "fairly traceable" to each defendant. Jt. Mem. at 9-11. This argument is factually and legally flawed because it "wrongly equates injury 'fairly traceable' to the defendant with injury as to which the defendant's actions are the very last step in the chain of causation." *City of Wyoming*, 210 F. Supp. 3d at 1151. In *City of Wyoming*, the court recognized the future and imminent threat posed by the sale and use of flushable products and, significantly, reasoned that "allegations of future harm necessarily could not and are not required to be accompanied by the detailed chain of causation that Defendants suggest, because the imminent threat of Defendants' wipes being flushed into Plaintiffs' sewers, causing Plaintiffs harm, is sufficient." *Id.*

at 1152 n.2.  That same logic applies to Plaintiff's analogous claims here.

The fact that each defendant is only partially responsible for past or future damages caused by their Flushable Wipes does not protect Defendants from liability for their contribution to the harm their products cause.  Whether Defendants are solely responsible or, alternatively, hold only a contributory share of responsibility, does not defeat Plaintiff's claim.  *See Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 558 (5th Cir. 1996) ("'[T]he fairly traceable element does not require that the plaintiffs 'show to a scientific certainty that [the] defendant's effluent, and [the] defendant's effluent alone, caused the precise harm suffered by the plaintiffs.'").

Likewise, the fact that the imminent harm alleged by Plaintiff has "many other known causes" (Jt. Mem. at 10), does not "immunize each Defendants from liability for the contribution to the harm that its own products may have made." *City of Perry*, 188 F. Supp. 3d at 284.  In response to this same argument – that "other waste may be partially responsible for the clogs" – the court in *City of Perry* concluded that "the combination of flushable wipes found in Perry's water system clogs and the widespread availability of Defendants' flushable wipes products in and around the City makes the link between Defendants' conduct and Plaintiff's injury more than mere conjecture, crossing 'the line from conceivable to plausible.'"  188 F. Supp. 3d at 284-85.  The court in *City of Wyoming* unsurprisingly reached the same conclusion, sustaining similar claims against multiple flushable wipes manufacturers where plaintiffs alleged that 25% of clogs can be attributed to Flushable Wipes, reasoning that "[a] plaintiff is not deprived of standing merely because he or she alleges a defendant's actions were a contributing cause instead of the lone cause of the plaintiff's injury."  210 F. Supp. 3d at 1151-52 (citing cases); *see also Libertarian Party of Va. v. Judd*, 718 F.3d 308, 316 (4th Cir. 2013) (finding that plaintiff had standing to challenge a petition-collection ballot-access requirement, even though plaintiff's knee injury likely also contributed to his failure to

collect a sufficient number of signatures).[13]

Defendants also argue that traceability is not met because "a favorable judicial decision depends on the unfettered choices made by independent actors not before the court." Jt. Mem. at 9. But this argument is misplaced because Plaintiff here has not alleged that damages will stem from "'a third party beyond the Court's control.'" Jt. Mem. at 9. Rather, Plaintiff alleges that **Defendants'** conduct (the manufacturing, advertising and/or selling of flushable products), has and will continue to result in damages to Plaintiff and class members' sewage collection and treatment facilities.[14] **Defendants'** Flushable Wipes are marketed and designed to be flushed into the sewer system that leads to Plaintiff's facilities where they interfere with and wreak havoc on Plaintiff's sewer system operation. Thus, there is no speculative chain of possibilities that undermines injury.[15]

### 3.     Plaintiff Has Adequately Pleaded Redressability

Finally, Defendants argue that Plaintiff has not met the redressability element because Plaintiff attempted to inform the public not to flush Defendants' Flushable Wipes, and like their argument as to traceability, those third parties make "independent decisions" that are "not before the Court." Jt. Mem. at 10-11. In a somewhat confusing articulation of this contention, Defendants suggest that Plaintiff's injury cannot be remedied without "further action against [unknown] entities

---

[13] *Cf. Winpisinger v. Watson*, 628 F.2d 133, 139 (D.C. Cir. 1980) ("The **endless number** of diverse factors potentially contributing to the outcome of state presidential primary elections, caucuses and conventions forecloses any reliable conclusion that voter support of a candidate is 'fairly traceable' to any particular event.").

[14] *Clapper v. Amnesty Int'l USA*, 133 S.Ct. 1138, 1148 (2013), cited by Defendants, is inapposite. In *Clapper*, Plaintiffs' argument rested on a "highly attenuated chain of possibilities" of whether the government would record their communications under The Foreign Intelligence Surveillance Act. *Id*.

[15] This case is unlike *Meyer*, 394 F. Supp. at 561-62, in which the Court found traceability lacking because Tesla and not the Governor and Attorney General of South Carolina was "the true trace" of Plaintiff's alleged injury – that he was harmed by defendants' enforcement of a law banning direct-to-consumer sales. It is also unlike *Mirant Potomac River, LLC v. U.S. E.P.A.*, 577 F.3d 223, 230 (4th Cir. 2009), where the court found that plaintiff failed to demonstrate a causal link between its injury and the EPA's approval of a Virginia clean air rule because plaintiff's injury flowed from entirely separate emissions standards adopted under the authority of the Virginia legislature.

who are 'not parties to the case.'" *Id.* To the contrary, Plaintiff seeks to prevent **Defendants** from selling their products with misleading labeling that directs consumers to flush wipes that are not truly flushable. And it is irrelevant that Defendants' intended customers "did not change their behavior after being advised by **Plaintiff** to do so" (*id.* at 10) because that is not the relief that Plaintiff seeks. Corrective labeling or the removal of Defendants' Flushable Wipes from Plaintiff's sewer system until the labeling is truthful, coupled with enhanced labeling on Defendants' non-flushable wipes, will provide redress to Plaintiff. **That** relief depends on the actions of Defendants, not third parties.

Thus, Plaintiff has sufficiently pleaded that it has standing to seek its injunctive claims, and Defendants' motion to dismiss on this issue should be rejected.

### B. Plaintiff Has Sufficiently Alleged that Each Defendant Proximately Caused Plaintiff's Injury

Courts in South Carolina and elsewhere in this Circuit generally treat proximate cause as a factual question for the jury. *See Brooks v. GAF Materials Corp.*, 41 F. Supp. 3d 474, 484 (D.S.C. 2014); *Cody P. v. Bank of Am., N.A.*, 395 S.C. 611, 621 (App. Ct. 2011); *Small v. Pioneer Machinery, Inc.*, 329 S.C. 448, 464 (App. Ct. 1997); *City of Charleston*, 473 F. Supp. 3d at 627. Only "when there is **no** conflicting evidence and reasonable minds could not differ on the facts" may a court rule on proximate causation as a matter of law. *Id.*; *see also Cody P.*, 395 S.C. at 621 ("Only in **rare** or **exceptional** cases may the question of proximate cause be decided as a matter of law."); *Small*, 329 S.C. at 464 ("Only when the evidence is susceptible to only one inference does it become a matter of law for the court.").

Here, Plaintiff alleges that each Defendant sells purportedly flushable wipes in and around the Charleston area, Defendants' Flushable Wipes direct consumers to flush the wipes into the sewer systems and, because the Flushable Wipes are not in fact flushable, they accumulate in Plaintiff and Class members' sewer collection facilities causing substantially increased clogging, maintenance,

expenses, sewer overflows and/or other damage to their systems. *See supra* §V.A.2. Although the parties dispute the extent to which Defendants' Flushable Wipes contribute to Plaintiff's injuries, Defendants do not – and cannot at this stage – argue that each of their Flushable Wipes products cause no harm to Plaintiff's wastewater treatment facilities. At a minimum, there is a legitimate question about the ***extent*** that Defendants' Flushable Wipes contribute to Plaintiff's injuries upon which reasonable minds ***could*** in fact differ. But that causation question need not be determined now, let alone provide grounds to dismiss Plaintiff's Complaint at this stage.[16] It is enough that there is a reasonable dispute about causation based on the facts before the Court.

Defendants argue, however, that Plaintiff cannot meet its proximate cause burden because it "fails to allege any facts to support a finding that any 'particular defendant' is responsible for the City's alleged injury" (Jt. Mem. at 12), relying heavily on *Messier v. Adicks*, 251 S.C. 268, 271 (1968) and its progeny. But the court in *Messier* reversed a ***jury verdict*** for plaintiff for actual damages because there was ***no evidence*** of actionable negligence on the part of defendant. 251 S.C. at 270-71. Here, by contrast, no discovery has been taken and the record is undeveloped, yet the evidence already demonstrates a significant likelihood, as detailed in the Complaint and Orr Decl., that each of Defendants' Flushable Wipes products are not only mislabeled, but have contributed to and continue to contribute to Plaintiff and Class member's injuries. ¶¶40-45; Orr Decl. at ¶¶12-20; Mordecai Aff. at ¶¶7-24; Abrams Aff. at ¶¶7-17; Yip Aff. at ¶¶7-17.[17]

---

[16] *Cf. City of Charleston*, 473 F. Supp. 3d at 630-31 (finding plaintiff municipalities failed to allege proximate causation where "defendants had no role in manufacturing, distributing, or marketing opioids" and the "independent medical judgment of [] prescribing physicians further br[oke] the chain of causation").

[17] Defendants' cited cases are thus inapposite. *See Ryan v. Eli Lilly & Co*., 514 F. Supp. 1004, 1006 (D.S.C. 1981) (granting summary judgment after three-and-a-half years of discovery revealed plaintiff's "inability to identify the manufacturer of the DES tablets taken by her mother nearly 28 years ago"); *Muhler Co. v. Ply Gem Holdings, Inc*., 637 F. App'x 746, 748 (4th Cir. 2016) (affirming summary judgment in favor of manufacturer where "undisputed evidence" supported finding that plaintiff failed to establish proximate cause for Lanham Act and unfair trade practices claims).

Defendants again argue that Plaintiff's injury could have resulted from "any other number of potential clogging causes." Jt. Mem. at 12-13. This argument fails for the same reasons discussed above, *supra* §V.A.2, namely because the fact that there are other contributory causes to Plaintiff's injuries does not foreclose Defendants' liability given the allegations and other evidence demonstrating proximate causation. Under South Carolina law,

> [I]f a person's negligence is a proximate cause of an injury to another, the fact that the negligence of a third party concurred with his own negligence to produce the harm does not relieve him of liability. . . . In such cases, both tortfeasors are in breach of a duty of care owed to the plaintiff and, because the negligence of both concurred to produce the injury, both are liable . . . .

*South Carolina Ins. Co. v. James C. Greene & Co.*, 290 S.C. 171, 176 (1986); *see also Small*, 329 S.C. at 464 (asserting that "proximate cause does not mean the sole cause"). Thus, under controlling law, "the defendant's conduct can be a proximate cause if it was ***at least*** one of the direct, concurring causes of the injury." *Id.* Here, Plaintiff alleges that each defendant's sale of flushable wipes contributes to Plaintiff's injury, "making [Defendants' Flushable Wipes] a ***significant or primary cause*** of clogging and disruption of sewer lines, pump stations, lift stations and wastewater treatment plants owned and/or operated by Plaintiff and Class members." ¶158; *see also* ¶56 (Flushable Wipes "are a ***major reason*** why wastewater systems clog"). These allegations are sufficient to satisfy Plaintiff's proximate causation burden at the pleading stage.[18]

Finally, the fact that Plaintiff alleges injunctive relief only, and not damages, is a significant factor that the Court may take into consideration in determining whether Plaintiff has adequately alleged proximate cause. *See, e.g., Bank of Am. Corp. v. City of Miami, Fla.*, 137 S. Ct. 1296, 1305 (2017) ("Proximate-cause analysis is controlled by the nature of the statutory cause of action."). Indeed, courts in this Circuit have upheld claims for injunctive relief while dismissing claims for

---

[18] Moreover, "[t]he Fourth Circuit has recognized that requiring direct evidence of product identification is unreasonable and that circumstantial evidence can instead be used to establish a plaintiff's regular exposure to a specific product over an extended period of time." *Cox v. AGCO Corp.*, 2020 WL 3473636, at *4 (E.D.N.C. June 25, 2020).

damages based on the proximate cause requirement being "'less strict'" for injunctive claims.  *See, e.g., Prince George's Cnty., Md. v. Wells Fargo & Co*., 2021 WL 633380, at *9 (D. Md. Feb. 17, 2021).  This makes sense given that when a plaintiff does not seek to recover monetary damages from specific past injuries, the causation analysis will focus on the ongoing harm being suffered by Plaintiff and whether defendants' conduct "was at least one of the direct, concurring causes of the injury" (*Small*, 329 S.C. at 464), without having to determine the precise allocation of each contributing cause or the monetary damage associated therewith.

## C.     Proximate Causation Is Also Satisfied Through the Application of Collective Liability Theories

Plaintiff has adequately alleged that each of Defendants' Flushable Wipes products – which are widely available in and around Charleston, South Carolina – is the proximate cause of Plaintiff's injury.  However, even if the Court determines that Plaintiff's traditional allegations of proximate causation were insufficient, Plaintiff has also adequately alleged proximate causation through the application of at least two collective liability theories – market-share liability and enterprise liability. *See, e.g., Hamilton v. Accu-tek*, 935 F. Supp. 1307 (E.D.N.Y. 1996) (recognizing 4 distinct theories of collective liability including market share liability and enterprise liability).

Market-share liability "means that, where the plaintiff cannot identify the individual tortfeasor that caused his injury, the burden shifts to the defendants to exculpate themselves." *Chelton v. Keystone Oilfield Supply Co*., 777 F. Supp. 1252, 1257-58 (W.D. Pa. 1991).  Where multiple manufactures' products are interchangeable, generic, or substantially similar – meaning, "fungible" – *at the time they cause harm*, and it is impractical for a plaintiff to identify the degree to which a particular defendant caused the particular harm, market-share liability can be applied.  *See In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig*., 447 F. Supp. 2d 289, 299 (S.D.N.Y. 2006) (market-share liability applies "when the product in question is fungible, and as a result, the

plaintiff cannot identify which defendant proximately caused her harm"). Market share liability has been adopted by courts throughout the Country. *See, e.g., Suffolk Cnty. Water Auth. v. Dow Chemical Co.*, 987 N.Y.S.2d 819, 820-21 (Sup. Ct. Suffolk Cnty. 2014) (applying market-share liability in denying motion to dismiss where municipality sued manufacturers of toxic chemical (perc) which contaminated plaintiff's water wells but could not "identify each precise defendant whose allegedly defective product injured the plaintiff and how the conduct of such party was the 'cause-in-fact' of such injury"); *Russo v. Material Handling Specialties Co*., 1995 WL 1146853, at *4 (Mass. Super. Aug. 29, 1995) (recognizing the relaxation of conventional causation or identification requirement to permit plaintiffs to recover from negligent defendants based on a market-share liability theory).[19]

Here, Defendants' Flushable Wipes are alleged to be fungible because they are all manufactured for an identical purpose – a flushable personal hygiene wipe – and are interchangeable for that purpose. None of these wipes, however, disperse and degrade before reaching Plaintiff's wastewater treatment system. As such, the wipes reach Plaintiff's system intact, causing substantial harm. Plaintiff alleges that Defendants' Flushable Wipes dominate the market for mislabeled

---

[19] *See also Sindell v. Abbott Labs.*, 26 Cal. 3d 588, 612 (1980) (finding "market share" liability theory was appropriate as the plaintiffs joined a "substantial share" of the appropriate market as defendants"), *cert. denied*, 449 U.S. 912 (1980). While the Supreme Court of South Carolina has not specifically adopted market-share liability, it has not affirmatively ruled that courts ***cannot*** apply the theory. Defendants citation to *Ryan*, 514 F. Supp. 1004 at 1018-19, for the proposition that South Carolina courts have "uniformly rejected market-share liability" is unavailing. Jt. Mem. at 13. In *Ryan*, the court granted ***summary judgement***, after significant discovery, against a plaintiff who sought to recover from prenatal exposure to diethyestilbestro ("DES") ***28*** years earlier, and found that "***Plaintiff has neither alleged nor offered any evidence*** to show that the defendants . . . accounted for a 'substantial share' of the relevant [] market." 514 F. Supp. at 1006-07, 1018. The Court concluded that "plaintiff has offered ***nothing*** to show that one of these seven, and not one of the other ***one hundred eleven***, manufacturers produced the drug in question." *Id*. at 1007. Defendants' citations to *King v. J. C. Penney Co*., 238 S.C. 336, 340 (1961) and *Crider v. Infinger Transportation Co*., 248 S.C. 10 (1966) are likewise inapposite because they merely stand for the unremarkable proposition that in order to ultimately recover ***damages***, there must be proof that the injury was caused by the actionable negligence of Defendants.

flushable wipes. ¶11; *see also* Orr Decl. at ¶¶6, 20. These allegations are sufficient for Plaintiff to avail itself of market-share liability for pleading purposes.

Defendants maintain, however, that Flushable Wipes have discerning characteristics and, therefore, should not qualify as a product for which market-share liability should apply. Jt. Mem. at 14. Defendants' asserted differences, however, include only brand names and technology. *Id.* None of these ostensible ***pre-use*** differences concern discernibility of the products to consumers. Branding and technology have no bearing on what the Flushable Wipes look like – or, more accurately stated, what they indecipherably, do not look like – ***after use***, and flushed into Plaintiff's sewer system and collection/treatment facilities. The doctrine applies to indiscernibility or fungibility at the point of harm, not what the product may have looked like in a manufacturer's package on a store shelf. *See Suffolk Cnty. Water Auth.*, 987 N.Y.S.2d at 819.[20]

Plaintiff's allegations regarding industry-wide practices and joint control of the risk by all Defendants also gives rise to enterprise liability. *See Hall v. E.I. Du Pont De Nemours & Co.*, 345 F. Supp. 353, 376-78 (E.D.N.Y. 1972). In *Hall*, the court found that enterprise liability exists when (1) a small number of manufacturers, virtually all of which are named defendants, produced the injury-causing product; (2) defendants had joint knowledge of the risks inherent in the product and possessed a joint capacity to reduce the risks; and (3) each delegated the responsibility to set safety standards to a trade association, which failed to reduce the risk. *Id.* at 378.

Plaintiff alleges that Defendants' Flushable Wipes dominate the market. ¶11. Further, the

---

[20] Courts in this Circuit have recently applied alternative liability theories where a "compelling case [exists] for modification of the traditional product identification requirement." *State v. Exxon Mobil Corp.*, 406 F. Supp. 3d 420, 458 (D. Md. 2019) (concluding that "rather than support the rigid application of traditional causation principles, Maryland courts would endorse the application of an alternative theory of liability in this case where product identification is a necessary element for relief"). In *Exxon Mobil*, the court allowed the State to proceed on a commingled product theory where "(1) the product of each defendant is present in the commingled product, and; (2) the commingled product caused the plaintiff's harm." *Id.* Plaintiff has also adequately alleged causation based on this theory. *See* ¶56.

Complaint alleges that Defendants rely on the fact that their Flushable Wipes meet guidelines published by the trade association of which Defendants are members, INDA, despite Defendants' knowledge of the serious problems the wipes cause to public sewer systems and waste treatment plants. ¶¶33-35, 46. INDA developed test standards without input from the wastewater industry, to determine whether a wipe is "flushable" under its own contrived guidelines and tests. *Id.* Moreover, the Complaint alleges that "INDA was created and is funded by the manufacturers and retailers of 'flushable' products, and its guidelines are fundamentally flawed" in that they "do not address dispersibility" and "fail to replicate real world conditions, exclude independent input from members of the wastewater community or any independent industry personnel, and allow the 'flushable' products to fail one or more tests without repercussions." ¶35. Indeed, these very arguments were adopted by the court in *City of Wyoming* to reject defendants' nearly-identical causation argument. *See* 210 F. Supp. 3d at 1150-51 ("if Defendants' manufacture and sale of allegedly non-flushable flushable wipes cannot be called the cause of Plaintiffs' injuries, then Defendants' manipulation of INDA can"). Therefore, Plaintiff has adequately alleged an enterprise liability theory here and its claims may proceed against all Defendants. *See Lillge v. Johns-Manville Corp.*, 602 F. Supp. 855, 856 (E.D. Wis. 1985) (recognizing enterprise liability where the number of defendants is limited).

### D.    Plaintiff's Claims Are Sufficiently Pled

#### 1.    Plaintiff States Actionable Nuisance Claims

Defendants created a private and public nuisance by manufacturing and selling Flushable Wipes marketed as "flushable" knowing that consumers would flush the product resulting in damages, including to sewer lines, pump stations, lift stations, wastewater treatment plants and/or waste disposal equipment. ¶¶137-146.

"[N]uisance is a substantial and unreasonable interference with the plaintiff's use and enjoyment of his property." *Silvester v. Spring Valley Country Club*, 344 S.C. 280, 286 (App. Ct.

2001). "[N]uisance requires a landowner to demonstrate that the defendant unreasonably interfered with his ownership or possession of the land." *Silvester*, 344 S.C. at 286. "A public nuisance exists wherever acts or conditions are subversive of public order, decency, or morals, or constitute an obstruction of public rights." *State v. Turner*, 18 S.E.2d 372, 375 (S.C. 1942) ("The difference between a public nuisance and a private nuisance does not consist in any difference in the nature or character of the thing itself. It is public because of the danger to the public. It is private only because the individual as distinguished from the public has been or may be injured.").

As manufacturers and sellers of purported Flushable Wipes, ***all*** Defendants substantially participate in the nuisance, acting in a manner that unreasonably and substantially interferes with Plaintiff's use, benefit and enjoyment of its property. Each and every defendant maintains, assists, and/or participates in the manufacture or sale of the Flushable Wipes in and around Charleston and throughout the Country and, therefore, substantially contributes – individually and collectively – to the nuisance. The mislabeling of Defendants' Flushable Wipes as flushable entices consumers to purchase the products over competing, or safer, alternatives (*e.g.*, toilet paper; regular, non-flushable wipes). The result of Defendants' conduct is continuing damage to Plaintiff's sewer facilities (sewer lines, pump stations, lift stations, wastewater treatment plants and/or waste disposal equipment) in the form of clogs, blockages, increased maintenance and related costs, in addition to the loss of taxpayer money and unauthorized sewer overflows.

These are precisely the type of allegations that persuaded the court in *City of Wyoming* to deny defendants' motion to dismiss with respect to plaintiff's Wisconsin public nuisance claim. *See* 210 F. Supp. 3d at 1137. There, plaintiffs alleged that defendants' flushable wipes were "sold throughout Wisconsin, that flushable wipes were causing problems in Plaintiffs' sewer systems and that Defendants continued their sales after gaining knowledge of the alleged problems (and entering

litigation about the alleged problems in other districts), and that flushable wipes account for 25% of Plaintiffs' clogs." *See id*. at 1162. These allegations, the court held, were consistent with a finding "that a substantial interference with a community's publicly funded, publicly operated wastewater treatment is an interference with an activity of the entire community." *Id*.

Defendants make three arguments in support of their contention that Plaintiff's nuisance claims fail. *First*, Defendants claim that public nuisance does not extend to legal or regulated conduct. Jt. Mem. at 24. But nowhere do Defendants explain how the manufacture and/or sale of a falsely labeled product that causes physical damage to one's property is lawful, let alone regulated. Instead, they make the conclusory assertion that "[t]he law already authorizes and regulates the sale and distribution of such products." *Id*. at 25. Given Plaintiff's allegations, which must be taken as true at the pleading stage – namely, that Defendants' Flushable Wipes are neither regulated (¶¶125-127) nor lawful (Complaint, Prayer for Relief, B.) – Defendants' argument and the cases it cites in support thereof, are inapposite.

*Second*, Defendants argue that Plaintiff "repackages," "camouflages" and attempts "to mask its products liability claims as a cause of action for nuisance." Jt. Mem. at 25. Defendants are wrong. Plaintiff's cause of action for nuisance is an independent, stand-alone claim. Defendants cite *City of Perry*, 188 F. Supp. 3d at 291, which dismissed a nuisance claim under Iowa law, to support its misplaced contention. But the court's conclusion in *City of Perry* was based on the fact that it found that no cases applying ***Iowa law*** had ever recognized "a nuisance claim arising out of the sale or use of a product as opposed to the use of property." 188 F. Supp. 3d at 291. Defendants ignore, however, case law from South Carolina and other courts within the Fourth Circuit clearly holding otherwise. *See Good v. Am. Water Works Co*., 2015 WL 3506957, at *5 (S.D. W. Va. June 3, 2015) (denying motion to dismiss nuisance claim and applying reasoning of South Carolina

law that "despite a clear-cut contract for the sale of goods, the fact that the goods included a toxic substance that could damage the owner's property gave rise to an independent tort claim") (discussing *City of Greenville v. W.R. Grace & Co*., 640 F. Supp. 559, 563 (D.S.C. 1986)); *see also Exxon Mobil*, 406 F. Supp. 3d at 436, 462, 465, 469 (denying motion to dismiss based on product liability (design defect and failure to warn) ***and*** public nuisance claims based on allegations that MTBE included in reformulated gasoline sold in Maryland contaminated groundwater).

*Lastly*, Defendants argue that Plaintiff "does not allege special injury to its real or personal property." Jt. Mem. at 26. As an initial matter, "[t]he Restatement (Second) of Torts provides that 'a public official or public agency' that 'represent[s] the state or a political subdivision in the matter' need not show special harm." *Mayor & City Council of Baltimore v. Monsanto Co*., 2020 WL 1529014, at *9 (D. Md. Mar. 31, 2020). Moreover, with respect to Plaintiff's private nuisance allegations (or assuming the requirement applies to Plaintiff's public nuisance allegations), and taking Defendants' definition of "special injury" at face value – specifically, that it is "an individual or specific damage in addition to that suffered by the public" that is "distinct and different from the injuries suffered by the public generally" – Plaintiff has adequately pled special injury. Notably, while Plaintiff's nuisance claims allege substantial and unreasonable interference with "Plaintiff and Class members' rights to use and enjoy their sewer lines, pump stations, lift stations, wastewater treatment plants and/or waste disposal equipment" (¶139), the Complaint describes public harm that is both "in addition to" and "distinct" from these injuries. For example, while Plaintiff's injury is specific to its sewage facilities, the Complaint alleges public injury in the form of: (1) "***other*** problems, such as causing spills to flow onto public and private property as well as into lakes, rivers, and oceans, where they can harm public health and the environment" (¶5); and (2) economic injuries to taxpayers for increased costs associated with the harm caused to Plaintiff and other utilities by

Defendants' Flushable Wipes (¶88).

### 2.    Plaintiff States an Actionable Trespass Claim

Trespass involves "[t]he unwarrantable entry on land in the peaceable possession of another." *Tillman v. Highland Indus., Inc.*, 2020 WL 6709974, at *10 (D.S.C. Sept. 8, 2020). To establish trespass, Plaintiff must show: (1) an affirmative act; (2) that the entry/invasion be intentional; and (3) that the harm caused be the direct result of that invasion. *Id.* The requisite level of intent is shown if the defendant acted voluntarily and that they knew or should have known that the result would follow from their act. *Id.*

Here, Defendants' intentional manufacture, marketing and/or sale of Flushable Wipes to consumers under the pretext that the products are flushable, even though they are not, is the affirmative act constituting the direct unlawful invasion of Plaintiff's property. That Defendants' Flushable Wipes must first be flushed down a toilet to reach Plaintiff and Class members' sewer facilities does not diminish Defendants' affirmative act as they suggest. *See* Jt. Mem. at 27. Because the Flushable Wipes are not flushable, these products are highly likely to continue to cause clogs, blockages and other harm. Simply put, Defendants interfere with Plaintiff and Class members' property with every sale of Flushable Wipes that carries with it the false and misleading representation that the wipes are flushable. *See* ¶¶147-153. Given Defendants' knowledge of their Flushable Wipes' inability to break down, as advertised, a reasonable inference that the Flushable Wipes entered CWS's wastewater system was, and is, a substantial certainty. Nothing more is needed to sustain an actionable claim of trespass and Plaintiff has, therefore, satisfactorily pled this cause of action. Defendants' suggestion that Plaintiff's trespass claim fails because the Complaint only asserts "nonfeasance or failure to perform a duty" (Jt. Mem. at 27), consequently, fails.

Defendants' argument that "the Complaint fails to state a claim for trespass because the act of flushing is not an unauthorized entry or invasion onto Plaintiff's property" is similarly misplaced. Jt.

Mem. at 27. In support of this argument, Defendants contend that CWS's property "is not an actual or metaphorical enclosure that the public 'breaks' by the act of flushing." *Id*. at 27-28. But Defendants do not explain, nor do they provide any legal basis for, why the public needs to "break" an "enclosure" to support Plaintiff's trespass claim. Rather, they brazenly argue that Defendants' conduct was "*invited*" and the flushing of Defendants' mislabeled Flushable Wipes into CWS's wastewater collection system "is exactly the purpose for which Plaintiff's property *was intended*." *Id*. at 28 (emphasis in original). Aside from Defendants seeking to blame the victims of its false advertising for their injuries, Defendants' argument ignores that the Complaint details the **unwanted** and costly consequences resulting directly from Defendants' mislabeling of their Flushable Wipes, including the entry of the wipes into CWS's property and wastewater system without permission.

### 3.    Plaintiff States an Actionable Negligence Claim

To succeed on a cause of action for negligence a plaintiff must allege: "(1) a duty of care owed by defendant to plaintiff; (2) breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach of duty." *Finnigan v. U.S.*, 2016 WL 5858715, at *5 (D.S.C. Aug. 5, 2016). Under South Carolina law, the duty of care is the standard of conduct the law requires of an actor to protect others against the risk of harm from their actions. *See Brooks*, 41 F. Supp. 3d at 484. The duty of care embodies "the principle that the plaintiff should not be called to suffer a harm to his person or property which is foreseeable and which can be avoided by the defendant's exercise of reasonable care." *Id*. "The defendant may be held liable for anything which appears to have been a natural and probable consequence of his negligence." *Id*.

Here, it is undisputed that Defendants have a duty to accurately label their products, including so that use of their products at the direction of the labels does not cause foreseeable harm. Plaintiff has comprehensively alleged a breach of that duty, and that breach directly causes damage to its property in the form of clogs, blockages, back-ups and other costs associated with remediating

the damage from Defendants' Flushable Wipes. *See supra* §§II, IV.B. Defendants argue, however, that no duty exists because Plaintiff's allegations are non-specific and based on "two isolated 'clogging' incidents that occurred in 2018 and 2019" and the "risk of some *future* event that has not yet occurred, and may never occur." Jt. Mem. at 29 (emphasis in original). But Defendants are mistaken given the allegations in the Complaint, which assert ongoing harm associated with Defendants' Flushable Wipes, along with the extensive detail of recent clogging and other Flushable Wipes-related expenditures Plaintiff has suffered during this year alone. *See supra* §§II, IV.B.; Mordecai Aff. at ¶¶7-24. Thus, Defendants' argument that Plaintiff is asking the Court to "legislate a duty of care" owed to public sewer systems based on the risk of "some future event that has not yet occurred, and may never occur," misconstrues Plaintiff's allegations and related evidence.[21]

While it may be true, as Defendants argue, that foreseeability alone "does not create a duty between parties" (Jt. Mem. at 29),[22] Defendants ignore that "[i]n South Carolina, a manufacturer has the duty to use reasonable care throughout the manufacturing process, including making sure the product is free of any potentially dangerous defect in manufacturing or design." *Brooks*, 41 F. Supp. 3d at 484. Accordingly, Defendants owe CWS and other wastewater collection utilities a duty of reasonable care in manufacturing, advertising and selling their Flushable Wipes such that their products – which are designed to be flushed into sewer systems that lead directly to the collection sites – will not cause foreseeable harm to Plaintiff and Class members' wastewater collection

---

[21] That "South Carolina courts have been cautious when examining the issue of whether the defendant owes a duty to the plaintiff," as all courts are, does not absolve Defendants of their duty to exercise reasonable care in their marketing and sale of Flushable Wipes. Jt. Mem. at 29.

[22] *Charleston Dry Cleaners & Laundry, Inc. v. Zurich Am. Ins. Co.*, 355 S.C. 614 (2003) is factually and legally inapposite. In that case, the court declined to recognize "a general duty of due care" from an independent insurance adjuster where a claim against the insurer remained as a viable source of recovery for the plaintiff. *Id.* at 618-19. Thus, *Charleston Dry Cleaners & Laundry* was limited to its narrow facts in the context of "a bad faith action against the insurer." *Id.* at 619.

systems.[23] *See City of Perry*, 188 F. Supp. 3d at 290-91 (finding City's complaint against flushable wipes manufactures adequately alleged the elements of negligence).

### 4.    Plaintiff States Actionable Strict Products Liabilities Claims
#### a.    Defective Design

Regardless of the theory recovery (*i.e*., design defect or failure to warn), a plaintiff must prove the following three elements for a products liability claim: (1) they were injured by the product; (2) the product, at the time of the injury, was in essentially the same condition as when it left the hands of defendants; and (3) the injury occurred because the product was in a defective condition unreasonably dangerous to the user. *Hulsizer v. Magline, Inc*., 2018 WL 5617873, at *3 (D.S.C. Oct. 29, 2018). In South Carolina, "the exclusive test in a products liability design case is the risk-utility test with its requirement of showing a feasible alternative design." *Id.* The risk-utility test states that "a product is unreasonably dangerous and defective if the danger associated with the use of the product outweighs the utility of the product." *Id.* Defendants make two main arguments with respect to Plaintiff's defective design claim: (1) that Plaintiff is not a "user or consumer" under South Carolina's Defective Products Act, S.C. Code §15-7310; and (2) the failure to plead a feasible or reasonable alternative design. Jt. Mem. at 15-19.[24] Neither of these arguments warrant dismissal of Plaintiff's defective design cause of action.

First, with respect to whether Plaintiff is a "user or consumer" for purposes of its defective design claim, Defendants' misconstrue the statute's requirement and, importantly, the South

---

[23] Defendants' assertions that the harm suffered by CWS resulted from, and continues to result from, a "speculative series of allegations" is similarly misplaced for the reasons set forth above, and their claim that South Carolina law does not confer a duty of care to a non-user of a product is inapposite for the reasons below, *infra* §IVD.4. Jt. Mem. at 29-30.

[24] Defendants also argue that the failure to mention §15-7310 "requires dismissal outright," but cites no support for its contention. Jt. Mem. at 15. Indeed, one of the cases upon which Defendants rely – *Fisher v. Pelstring*, 817 F. Supp. 2d 791, 817 (D.S.C. 2011) – in turn relies on and quotes (as Defendants acknowledge) *Small*, 329 S.C. at 463, which discusses the elements of a products liability action without ever mentioning §15-7310.

Carolina Supreme Court's interpretation of the meaning of "user" under §15-7310.  Relying primarily on *Lawing v. Univar, USA, Inc.*, Defendants seem to acknowledge that a manufacturer which "sells any product in a defective condition unreasonably dangerous to the user or consumer . . . is subject to liability for physical harm caused to the ***ultimate user*** or consumer. . . ." and that §15-7310 "imposes strict liability upon the manufacturer and seller of a product for an injury to ***any*** 'user or consumer' if the product reaches the user or consumer without substantial change in the condition in which it is sold."  415 S.C. 209, 221 (2015).  Additionally, far from concluding that the user or consumer must be "*both* the one who suffered an injury *and* the one to receive the product" (Jt. Mem. at 16) (emphasis in original), as Defendants suggest, the *Lawing* court's analysis of the statutory interpretation of "user" in the products liability context renders precisely the opposite conclusion.  415 S.C. at 221 ("'it is not necessary that the ultimate user or consumer have acquired the product directly from the seller'") (quoting Restatement of Torts (Second)).  Indeed, the court concluded that an employee who neither purchased nor actually handled sodium bromate received by his employer was in fact a user of the product because he was "'not a mere bystander but a primary and direct victim of the product defect.'"  *Id*. at 221-23.

Similarly here, the analysis does not turn on whether CWS both suffered the injury and received the product.  The focus is on whether CWS was and is a direct victim of Defendants' defectively designed Flushable Wipes, which do not break down and disperse as designed, and which are intended to be flushed into sewer systems that lead to Plaintiff's wastewater collection facilities.  Thus, Plaintiff has adequately pled it was a direct victim of Defendants' defectively designed product.[25]  Defendants seem to argue that Plaintiff is not a direct victim, however, because

---

[25] Nor does the analysis turn on whether someone else flushed Defendants' wipes down the toilet before reaching Plaintiff's facilities.  Rather, as the court in *Lawing* held, "[a] case-by-case analysis is more appropriate for courts' determination of who constitutes a 'user' under section 15–73–10."  415 S.C. at 225.  In any event, the determination of whether a plaintiff is a "user" of a defective

their wipes comingle with grease, oil and other waste to create "ropelike clumps" at Plaintiff's collection facilities, and thus "the harm is not caused by the product *as sold* by Defendants." Jt. Mem. at 16 (emphasis in original) (quoting ¶52). But that is precisely what Plaintiff alleges – *i.e.*, because Defendants' Flushable Wipes do not sufficiently break down and disperse as advertised, they end up in Plaintiff's wastewater collection system in virtually the same form in which they were sold. Otherwise, the wipes would not be a substantial factor in Plaintiff's ongoing clogs, which they are. *See* Mordecai Aff. at ¶¶7-27; Abrams Aff. at ¶¶7-17; Yip Aff. at ¶¶7-17; Orr Decl. at ¶20.

*Second*, with respect to the feasibility to design the product in a safer manner, Plaintiff has alleged that "Defendants knew, or should have known, of appropriate redesigns and/or modifications to protect against the clogging associated with flushing anything stronger than toilet paper, especially a tightly woven wet wipe, down the toilet[, and that] Defendants negligently and/or consciously disregarded this knowledge and failed to redesign and/or modify the Flushable Wipes." ¶159(d). Moreover, evidence uncovered following the filing of the Complaint has revealed a feasible and reasonable alternative design – Kimberly-Clark's Cottonelle Flushable Wipes. Testing conducted by Plaintiff's expert following the filing of the Complaint has revealed that, in stark contrast to Defendants' Flushable Wipes, Cottonelle Flushable Wipes in fact break down and disperse "so that they can be labeled flushable under the IWSFG flushability specifications." Orr Decl. at ¶13.[26] Another viable alternative is to correct the labeling of the Flushable Wipes. Defendants would then be free and clear to sell and market their Flushable Wipes without using the word "flushable" or proclaiming that they are safe for sewers. Purchasers can also use Defendants' "non-flushable wipes," which can be discarded in trash cans. And consumers have the traditional

---

product should not be made at the pleading stage. *See id*. at 220-25.

[26] Moreover, in *Preserve*, a prominent wastewater figure and flushability specialist identified at least five other safer flushable wipe alternatives. No. 2:17-cv-7050-JFB-AYS, ECF No. 62-1 at ¶¶15-17 ((1) Haso, (2) Kao, (3) A.S. Nonwovens, (4) Papel Aralar, and (5) SATU Laboratory OU).

option for flushing: toilet paper, which is also a safer alternative.

### b.    Failure to Warn

Plaintiff has also established a claim for failure to warn because "the warnings accompanying [Defendants' Flushable Wipes] are inadequate." *Wolford v. Bos. Sci. Corp.*, 2015 WL 5838504, at *4 (S.D. W. Va. Oct. 5, 2015). "'[A] manufacturer has a duty to warn against latent dangers resulting from foreseeable uses of its product of which it knew or should have known.'" *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 175 F. Supp. 2d 593, 625 (S.D.N.Y. 2001). Defendants mistakenly assert that Plaintiff's failure to warn claim fails because "there is no duty to warn of open and obvious dangers" and because "Plaintiff cannot establish proximate cause by showing that a warning would have prevented the harm that occurred." Jt. Mem. at 19-20.[27]

Here, Defendants created the duty to warn by labeling their Flushable Wipes precisely what they are not: flushable or safe for sewer and plumbing systems. This is not an instance in which a duty may arise because of a relationship between Defendants and purchasers, or Defendants and third-parties (as Defendants argue, Jt. Mem. at 20), but, instead, Defendants themselves make overt statements that create the very need for a warning. Worse, Defendants know that their labeling will lead to the foreseeable use ("flushing") that continues to directly cause the harm at issue in this litigation (damage to wastewater collection facilities). Yet Defendants seek to blame or burden Plaintiff with the knowledge that their Flushable Wipes do not work as advertised, and claim that they have no duty to warn Plaintiff. Jt. Mem. at 20. Indeed, Defendants' Flushable Wipes do not have an "open and obvious" danger that is "generally known and recognized" as in *Moore v. Barony House Restaurant, LLC*, 382 S.C. 35, 41 (2009). While reports of harm caused by Defendants' Flushable Wipes undoubtedly exist, those reports are countered by the sale of every package of Defendants' Flushable Wipes containing a label that instructs consumers to flush them because they

---

[27] Defendants also argue that Plaintiff's failure to warn claims fails because it is not a "user of the product." Jt. Mem. at 19. This argument is unavailing for the reasons discussed *supra*, §IV.D.4.a.

are purportedly safe for home plumbing and sewer systems. Those same reports also discuss the manufactures' position, often through their trade group INDA, which further asserts that the Flushable Wipes are indeed flushable and contends that harm to municipal wastewater systems is overwhelmingly caused by other improperly flushed items such as non-flushable wipes.

Defendants' "warnings causation" argument –that Plaintiff has not established that a warning would have made a difference or prevented the harm alleged – likewise fails. Jt. Mem. at 21-22. Here, instead of warning of the danger of flushing Defendants' Flushable Wipes, Defendants urge the damaging conduct (*e.g.*, "flushable" and "safe for sewer and septic systems"). Indeed, the dangerous conduct is within the name of the product *itself*. Removal of that instruction to consumers and users directing them to flush the Flushable Wipes into the sewer system that leads directly to CWS's collection facilities would prevent the very harm caused by the sale of Defendants' wipes. With a truthful label warning of the dangers that flushing the Flushable Wipes will cause, or instructing users to dispose of the wipes in the trash, Defendants could eradicate the damage caused by their Flushable Wipes. That *CWS* made efforts to spread awareness about Flushable Wipes and later suffered an additional clog does not eliminate the ability to prevent further clogs with adequate warnings by *Defendants* themselves. Plaintiff's warnings are generalized. Defendants' warnings could be prominently placed on the front panel of their wipes urging consumers not to flush the products – as Kimberly-Clark has agreed to with respect to its non-flushable wipes.

### E.     Plaintiff Has Established that It Is Entitled to a Permanent Injunction

A permanent injunction is warranted here to prevent the ongoing costs, estimated at tens (if not hundreds) of millions of dollars a year nationwide, caused by the directed use of Defendants' Flushable Wipes. Enjoining Defendants from marketing their products as "flushable" while the labeling is deceptive, and creating appropriate labeling changes to Defendants' non-flushable products to avoid confusion, is necessary to prevent further damage to Plaintiff and the Classes.

Plaintiff is likely to succeed on the merits of its nuisance, trespass, products liability and negligence claims, is likely to suffer irreparable harm in the absence of preliminary relief (in the form of continued damage to its wastewater collection and treatment system), the balance of equities tips in Plaintiff's favor and an injunction is in the public interest.

Recurring harms and unreasonable costs and/or complications have been found to constitute irreparable harm. *See Norfolk S. Ry. Co. v. City of Pittsburgh*, 235 F. App'x 907, 910 (3d Cir. 2007) (granting preliminary injunction in nuisance case, emphasizing that "expert witnesses for both parties testified that, without immediate action, more landslides will occur"); *Dominion Carolina Gas Transmission, LLC v. 1.169 Acres, in Richland Cnty., S.C. located on Parcel R39100-02-05*, 218 F. Supp. 3d 476 (D.S.C. 2016) (granting injunction giving interstate natural gas company easements for a pipeline project, finding it would likely suffer irreparable harm by additional project complication and cost due to delay, and by its customers' reduced ability to meet federal environmental and emissions standards). The public interest in ensuring that its wastewater treatment systems operate free and clear of costly damage resulting from the sale of falsely-labeled Flushable Wipes may "not [be] protected unless the legal system 'prevent[s] unethical business behavior.'" *Brightview Grp., LP v. Teeters*, 441 F. Supp. 3d 115, 142 (D. Md. 2020); *see also N. Nat. Gas Co. v. L.D. Drilling, Inc.*, 759 F. Supp. 2d 1282, 1298-99 (D. Kan. 2010), *aff'd*, 697 F.3d 1259 (10th Cir. 2012) ("The gravity of the harm from the continued operation of defendants' wells in the expansion area weighs in favor of a finding of nuisance. Federal and state law recognize the importance of underground gas storage facilities and the public interests they further.").

Here, CWS serves an important function as a public utility body tasked with operating municipal wastewater treatment and collection systems and has shown far more than the mere possibility of harm. The Complaint highlights two major clogs caused – at least in significant part –

by Defendants' Flushable Wipes and alleges ***ongoing*** and ***recurring*** damages as a direct result of Defendants' false and misleading labeling of their Flushable Wipes. ¶¶47-53. CWS has confirmed that this harm continues to this day and is significant, with no end in sight. Mordecai Aff. at ¶¶7-24; Abrams Aff. at ¶¶7-17; Yip Aff. at ¶¶7-17; Orr Decl. at ¶20. Without a permanent injunction, Defendants' Flushable Wipes will continue to cause Plaintiff and other members of the Classes unnecessary damage. Thus, a permanent injunction is necessary to ensure the proper functioning of wastewater collection and treatment facilities without the added burden and expense of dealing with the significant and ongoing problems caused by Defendants' Flushable Wipes.

### F.     Plaintiff's Claims Can Be Certified as a Nationwide Class

Defendants argue that Plaintiff's putative nationwide class claims are barred by South Carolina's door-closing statute, S.C. Code §15-5-150, (Jt. Mem. at 32), and attempt to characterize the nationwide Class as "a foreign cause of action brought by a foreign plaintiff against a foreign corporation." *See* Jt. Mem. at 32. This argument is premature, as the applicability of the door-closing statute is a "fact-sensitive analysis[.]" *Tuttle Dozer Works, Inc. v. Gyro-Trac (USA), Inc.*, 463 F. Supp. 2d 544, 551 (D.S.C. 2006) (declining to apply "door-closing statute" before the discovery phase). Additionally, jurisdictional analyses concerning absent class members is premature prior to class certification. *See Richards v. NewRez LLC*, 2021 WL 1060286, at *18 (D. Md. Mar. 18, 2021) (declining to dismiss non-resident, absentee putative class claims at the motion to dismiss stage, as "[i]t is class certification that brings the unnamed class members into the action"); *Molock v. Whole Foods Mkt. Grp., Inc.*, 952 F.3d 293, 298 (D.C. Cir. 2020) (denying motion to dismiss nonresident putative class members as premature, stating that: "[o]nly after . . . the action is certified as a class under Rule 23 . . . should the district court entertain Whole Foods's motion to dismiss the nonnamed class members").

Further, as Defendants acknowledge, countervailing federal considerations can preclude the

statute's application.  *See* Jt. Mem. at 32.  These countervailing federal considerations have included: "(1) the purpose in the grant of diversity jurisdiction of avoiding discrimination against nonresidents; (2) the policy of encouraging a state to enforce the laws of its sister states; and (3) the fact that South Carolina was the only state in the country in which the two defendants could be joined." *Proctor & Schwartz, Inc. v. Rollins*, 634 F.2d 738, 740 (4th Cir. 1980).  Here, Defendants' entire argument appears to rest on the putative nationwide class's status as nonresidents.  *See* Jt. Mem. at 33. Declining to dismiss the nationwide class also furthers the interests of the second and third prong, as the Court would be enforcing the laws of its sister states and Defendants are already joined in this forum against the putative South Carolina Class.  Further, as in *Hencely v. Fluor Corp., Inc.*, 475 F. Supp. 3d 464, 469 (D.S.C. 2020), "there is no evidence that maintenance of the suit here would discourage activity and investment within the State by foreign corporations by subjecting them to actions unrelated to their activity in South Carolina."

Notably, while Defendants balk at the idea that a nationwide class can be certified for Plaintiff's claims, they failed to exhibit even a single conflict or material difference between the consumer fraud statutes of South Carolina and any other state.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 816 (1985) ("no injury" in applying single state's law unless that state's law conflicts with other jurisdictions implicated in suit).  Under these circumstances, it is more ***appropriate*** to defer ruling on this issue until class certification.

V.     **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully submits that this Court should deny Defendants' motion in its entirety.[28]

---

[28] In the event that this Court grants the motion, however, this Court should also grant Plaintiff leave to amend to correct any deficiencies identified by the Court.

DATED:  May 17, 2021                    Respectfully submitted,

                                        AQUALAW PLC
                                        F. PAUL CALAMITA (ID #12740)


                                        _____
                                            */s/ F. Paul Calamita*
                                         F. PAUL CALAMITA

                                        6 South Fifth Street
                                        Richmond, VA  23219
                                        Telephone:  804/716-9021
                                        804/716-9022 (fax)
                                        paul@aqualaw.com

                                        ROBBINS GELLER RUDMAN
                                           & DOWD LLP
                                        SAMUEL H. RUDMAN
                                        VINCENT M. SERRA (admitted *pro hac vice*)
                                        SARAH E. DELANEY
                                        58 South Service Road, Suite 200
                                        Melville, NY  11747
                                        Telephone:  631/367-7100
                                        631/367-1173 (fax)
                                        srudman@rgrdlaw.com
                                        vserra@rgrdlaw.com
                                        sdelaney@rgrdlaw.com

                                        *Attorneys for Plaintiff*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on May 17, 2021, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.

*/s/ F. Paul Calamita*
F. PAUL CALAMITA

AQUALAW PLC
F. PAUL CALAMITA (ID #12740)
6 South Fifth Street
Richmond, VA  23219
Telephone:  804/716-9021
804/716-9022 (fax)
paul@aqualaw.com
