UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | |
|---|---|
| COMMISSIONERS OF PUBLIC WORKS OF THE CITY OF CHARLESTON (d.b.a. Charleston Water System), Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　　　Plaintiff,<br><br>vs.<br><br>COSTCO WHOLESALE CORPORATION, CVS HEALTH CORPORATION, KIMBERLY-CLARK CORPORATION, THE PROCTER & GAMBLE COMPANY, TARGET CORPORATION, WALGREENS BOOTS ALLIANCE, INC. and WAL-MART, INC.,<br><br>　　　　　　　　Defendants. | Civil Action No. 2:21-cv-00042-RMG<br><br><u>CLASS ACTION</u><br><br>PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO COSTCO WHOLESALE CORPORATION, CVS HEALTH CORPORATION, AND TARGET CORPORATION'S MOTION TO DISMISS |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION .................................................................................................1

II.   FACTUAL BACKGROUND ................................................................................3

III.  ARGUMENT .......................................................................................................7

    A.    The Primary Jurisdiction Doctrine Is Inapplicable to Plaintiff's Claims................7

        1.    Plaintiff's Legal Claims Are Within the Court's Expertise ......................8

        2.    Plaintiff's Claims Are Not Within the FTC's Discretion .........................11

        3.    There Is No Risk of Inconsistent Rulings ...................................................12

        4.    There Is No Pending FTC Application .....................................................14

IV.   CONCLUSION...................................................................................................16

## TABLE OF AUTHORITIES

**Page**

## CASES

*Abingdon Livestock Exch., Inc. v. Smith*,
    No. 1:06-cv-96, 2007 WL 3146504
    (W.D. Va. Oct. 26, 2007) ................................................................................... 9, 15

*AT & T Corp. v. Nudell*,
    No. RDB-07-1603, 2008 WL 2986776
    (D. Md. July 30, 2008) ................................................................................... 7, 8, 9

*Ault v. J.M. Smucker Co.*,
    No. 13 Civ. 3409(PAC), 2014 WL 1998235
    (S.D.N.Y. May 15, 2014) ...................................................................................... 15

*AVX Corp. v. Corning Inc.*,
    No. 5:15-cv-543-FL, 2018 WL 1950425
    (E.D.N.C. Apr. 25, 2018) ............................................................................. 8, 11, 15

*Belfiore v. Procter & Gamble Co.*,
    311 F.R.D. 29 (E.D.N.Y 2015) ....................................................................... 4, 6, 9

*Boger v. Citrix Sys., Inc.*,
    No. 8:19-cv-01234-PX, 2020 WL 1939702
    (D. Md. Apr. 22, 2020) ..................................................................................... 7, 11

*Broadvox-CLEC, LLC v. AT & T Corp.*,
    98 F. Supp. 3d 839 (D. Md. 2015) ......................................................................... 10

*Canale v. Colgate-Palmolive Co.*,
    258 F. Supp. 3d 312 (S.D.N.Y. 2017) ............................................................... 13, 16

*Cent. Tel. Co. of Va. v. Sprint Commc'ns Co. of Va.*,
    759 F. Supp. 2d 772 (E.D. Va. 2011), *aff'd*,
    715 F.3d 501 (4th Cir. 2013) ................................................................................. 14

*de Lacour v. Colgate-Palmolive Co.*,
    No. 16-cv-8364 (RA), 2017 WL 6550690
    (S.D.N.Y. Dec. 22, 2017) ...................................................................................... 13

*Dean v. Colgate-Palmolive Co.*,
    No. EDCV 15-0107 JGB (DTBx), 2015 WL 3999313
    (C.D. Cal. June 17, 2015) ............................................................................... 10, 13

**Page**

*Env't Tech. Council v. Sierra Club,*
98 F.3d 774 (4th Cir. 1996) ............................................................................8

*Eric B. Fromer Chiropractic, Inc. v. Inovalon Holdings, Inc.,*
329 F. Supp. 3d 146 (D. Md. 2018) ...............................................................8

*Gentry v. Hyundai Motor America, Inc.,*
No. 3:13-cv-00030, 2017 WL 354251
(W.D. Va. Jan. 23, 2017), *aff'd in part, dismissed in part sub nom.,*
*Adbul-Mumit v. Alexandria Hyundai, LLC,*
896 F.3d 278 (4th Cir. 2018) ....................................................................12, 13

*Glob. Naps N.C., Inc. v. Bellsouth Telecomms., Inc.,*
455 F. Supp. 2d 447 (E.D.N.C. 2006) ...........................................................11

*Goya Foods, Inc. v. Tropicana Prods., Inc.,*
846 F.2d 848 (2d Cir. 1988).............................................................................7

*In re Frito-Lay N. Am., Inc. All Nat. Litig.,*
No. 12-md-2413 (RRM)(RLM), 2013 WL 4647512
(E.D.N.Y. Aug. 29, 2013) ............................................................................9, 11

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.,*
476 F. Supp. 2d 275 (S.D.N.Y. 2007).............................................................12

*Jovel v. i-Health, Inc.,*
No. 12-cv-5614 (JG), 2013 WL 5437065
(E.D.N.Y. Sept. 27, 2013) .............................................................................10

*Kurtz v. Kimberly-Clark Corp.,*
315 F.R.D. 157 (E.D.N.Y. 2016) .....................................................................6

*Kurtz v. Kimberly-Clark Corp.,*
321 F.R.D. 482 (E.D.N.Y. 2017) ..................................................................6, 9

*Manuel v. Pepsi-Cola Co.,*
No. 17 Civ. 7955 (PAE), 2018 WL 2269247
(S.D.N.Y. May 17, 2018), *aff'd,*
763 F. App'x 108 (2d Cir. 2019) ..............................................................8, 9, 11

*Moore v. Equitrans, L.P.,*
49 F. Supp. 3d 456 (N.D. W. Va. 2014) ..........................................................8

**Page**

*Nader v. Allegheny Airlines, Inc.*,
   426 U.S. 290 (1976)............................................................................................8

*Nat'l Commc'ns Ass'n, Inc. v. Am. Tel. & Tel. Co*.,
   46 F.3d 220 (2d Cir. 1995)................................................................................11

*Piney Run Pres. Ass'n v. Cnty. Comm'rs of Carroll Cnty. Md.*,
   268 F.3d 255 (4th Cir. 2001) ............................................................................7

*Robinson v. Carealliance Health Servs*.,
   No. 2:13-cv-01916-RMG, 2014 WL 4402684
   (D.S.C. Sept. 4, 2014) *report and recommendation adopted in part, rejected in part*,
   2014 WL 4389641 (D.S.C. Aug. 5, 2014) ..................................................11, 12

*Robles v. Domino's Pizza, LLC*,
   913 F.3d 898 (9th Cir. 2019) ............................................................................15

*U.S. E.P.A. v. City of Green Forest, Ark.*,
   921 F.2d 1394 (8th Cir. 1990), *cert. denied*,
   *Work v. Tyson Foods, Inc.*,
   502 U.S. 956 (1991)...........................................................................................15

*Wilson v. PL Phase One Operations L.P.*,
   422 F. Supp. 3d 971 (D. Md. 2019) ....................................................................9

Plaintiff, the Commissioners of Public Works of the City of Charleston (d.b.a. "Charleston Water System") ("Plaintiff"), respectfully submits this memorandum of law in opposition to defendants Costco Wholesale Corporation ("Costco"), CVS Health Corporation ("CVS") and Target Corporation's ("Target") (collectively, the "Moving Defendants") motion to dismiss the Complaint.[1]

## I.   INTRODUCTION

The Moving Defendants separately move to dismiss the Complaint based solely on the limited grounds that, under the primary jurisdiction doctrine, the Federal Trade Commission ("FTC") has "taken jurisdiction over Nice-Pak's labeling" and thus, "this Court should refuse to issue contrary injunctive relief."  Def. Mem. at 5.[2]  Primary jurisdiction, which courts have determined should be invoked sparingly, typically applies to *stay* cases and allocate *initial* decision-making responsibility to administrative agencies where issues of fact are not within the conventional experience of judges.  Put differently, the doctrine does not apply to legal questions such as those at issue here – *e.g*., whether Defendants' mislabeling of Flushable Wipes cause clogs and other damage to Plaintiff and Class members' wastewater collection facilities that require increased maintenance and repair-related expenses – which *are* within the conventional competence of the courts.  Given the Moving Defendants' extraordinary request for total dismissal of this action under the primary jurisdiction doctrine, and the fact that the FTC has already implemented its initial decision-making with respect to Nice-Pak-manufactured Flushable Wipes, this case does not present the narrow

---

[1] "Complaint" refers to Plaintiff's Class Action Complaint, ECF No. 1.  References to "¶" and "¶¶" refer to the Complaint.  "Flushable Wipes" refers to moist wipe products marketed and labeled as safe to flush, safe for plumbing, safe for sewer and/or septic systems and/or biodegradable.  ¶1. Citations are omitted and emphasis is added throughout unless otherwise noted.

[2] Citations to "Def. Mem." refer to the Memorandum of Law in Support of Motion to Dismiss Plaintiff's Complaint Against Defendants Costco, CVS and Target.  ECF No. 45-1.  All references to "Ex. __" are to exhibits attached to the Declaration of John Q. Lewis submitted in connection with the Moving Defendants' Motion to Dismiss.  ECF No. 45-2.  "Nice-Pak" refers to non-party Nice-Pak Products, Inc., which, according to the Moving Defendants, manufactures flushable wipes that they then sell under their own private labels.  *See* Def. Mem. at 4.

circumstances where application of the doctrine is appropriate.

Defendants' central argument is that Plaintiff's requested injunctive relief is "inconsistent with the FTC's oversight of the Consent Order" (defined below) because the order permits the continued marketing of Nice-Pack-manufactured Flushable Wipes and the FTC is purportedly closely monitoring those wipes. Def. Mem. at 11. But the ostensible "oversight" rests almost entirely on an FTC letter from over five years ago, responding to comments by the New York City Law Department that expressed "concerns regarding the [Consent] Order" (Ex. E), stating that the FTC will "closely monitor Nice-Pak's future activities to determine whether any violations occur." *See* Def. Mem. at 4 (quoting Ex. A). Yet, the FTC's subsequent communications make clear that it has declined to exercise jurisdiction over the subject matter of the claims at issue here and there is no indication that it is actively monitoring the activities of any Flushable Wipes manufacturer or retailer, let alone those of Nice-Pak and the Moving Defendants. Indeed, when Judge Jack B. Weinstein (Ret.) referred analogous flushability-related issues to the FTC to allow it to exercise jurisdiction over the matters and provide administrative guidance, the FTC refused.

While the Moving Defendants argue that the FTC's purported monitoring of Nice-Pak's activities "is dispositive" (Def. Mem. at 15), they cannot point to any supporting authority or evidence demonstrating that the FTC is actively monitoring the specific iterations of the Moving Defendants' ***current*** Flushable Wipes products, or any details on ***how*** the FTC is implementing its oversight. Indeed, in the over five years since the Consent Order, the FTC has not taken ***any*** known steps to enforce its terms against, or regulate (or even investigate), ***any*** manufacturer or retailer of Flushable Wipes. This is true despite recent findings by Plaintiff's expert that Defendants' Flushable Wipes fail to meet the wastewater industry's flushability specifications and therefore should not be labeled flushable because they are not compatible with municipal wastewater collection systems.

Finally, applying primary jurisdiction to dismiss Plaintiff's claims only as to the Moving Defendants, and not the remaining defendants (who did not move themselves based on this theory), would itself be inconsistent with the doctrine and contradictory to Defendants' own arguments. Were the Court to grant the Moving Defendants' requested relief, this Court would have to agree that this action involves matters beyond the conventional realm of the Court and that fall within the specialized expertise of the FTC. Yet, in this scenario, while Plaintiff's claims against the Moving Defendants' would be dismissed on primary jurisdiction grounds, its claims against the remaining defendants would proceed. Consequently, granting the Moving Defendants' requested relief would undermine the purpose of primary jurisdiction, which, under appropriate circumstances, works to create uniform solutions to initial questions requiring specialized expertise. Denying the Moving Defendants' motion, by contrast, would be ***consistent*** with the Consent Order, which sought the same relief that Plaintiff seeks here – true and accurate labeling of the Moving Defendants' Flushable Wipes.

For these reasons and those discussed further below, the Moving Defendants' motion should be denied.

## II.     FACTUAL BACKGROUND

The FTC initiated an investigation into retailers' and manufacturers' advertising claims associated with Flushable Wipes in or about early 2014. On May 18, 2015, the FTC entered into a settlement with Nice-Pak and publicly issued the Agreement Containing Consent Order ("Consent Order").[3] On October 5, 2015, Judge Jack B. Weinstein stayed two coordinated flushable wipes actions – *Kurtz v. Kimberly-Clark Corp.*, No. 1:14-cv-1142 (E.D.N.Y.) (ECF No. 183) and *Belfiore v. Proctor & Gamble Co.*, No. 2:14-cv-4090 (E.D.N.Y.) – "while the FTC exercises jurisdiction, if it

---

[3] Ex. B (*In the Matter of Nice-Pak Products, Inc.*, No. C-4556 (F.T.C. May 18, 2015), Agreement Containing Consent Order).

chooses to do so[,]" and referred "[t]he issue of an appropriate definition of 'flushable' wipes and related issues . . . to the FTC." *Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 39 (E.D.N.Y 2015). The settlement between the FTC and Nice-Pak was effectuated on October 30, 2015, after a notice and comment period.[4]

As part of the notice and comment period, the New York City Law Department submitted comments describing, *inter alia*, "the impact of flushable wipes on New York City's sewer and wastewater treatment infrastructure," and expressing "concerns regarding the [Consent] Order." Ex. E at 1-3 ("NYC Comments"). In the NYC Comments, the City explained that:

> Following the introduction of "flushable" sanitary wipes into the consumer market, the City noted a ***significant increase*** in the number of sanitary wipes found in its sewer and wastewater treatment infrastructure, and the volume of wipes in the City's systems continues to rise every year. Many wipes marketed as flushable are not truly "flushable," in that ***they do not disintegrate before they reach the City's treatment systems***, where they then interfere with the treatment process. In addition, the widespread marketing of so-called flushable wipes appears to have created confusion with nonflushable wipes.

*Id*. at 2. The NYC Comments also described the importance of "ensur[ing] that wastewater utilities are not saddled with significant expenses resulting from disingenuous marketing practices of wipes manufacturers and brands and the inadequate design of wipes marketed as flushable" and noted that "it is essential that [Nice-Pak] establish rigorous performance standards for wipes that it markets as flushable." *Id*. at 3. Accordingly, the NYC Comments requested that the FTC: (1) "***rigorously monitor***" Nice-Pak's compliance with the Consent Order (*id*. at 3); (2) should not permit Nice-Pak "to rely on the INDA standard . . . developed by representatives of the nonwoven fabrics industry" (*id*. at 4-6);[5] (3) consult wastewater treatment utilities and "incorporate their recommendations into

---

[4] Ex. C (*In the Matter of Nice-Pak Products, Inc.*, No. C-4556 (F.T.C. Oct. 30, 2015); Consent Order at 3.

[5] In connection with its comments about relying on the Association of the Nonwoven Fabrics Industry's ("INDA") performance standards, the City explained that:

dispersal parameters and performance requirements" (*id*. at 6); and (4) pursue penalties against Nice-Pak and other manufacturers that had or have notice that their flushable wipes caused or cause harm to wastewater collection and treatment systems (*id*. at 6-7).

The FTC's Complaint **only** addressed Nice-Pak wipes made of "non-woven fabric, specifically non-elemental chlorine bleached wood pulp, bicomponent fibers, and EP907 repulpable binder" ("EP907 Wipes").[6]  The substrate used in the EP907 iteration was sold by various retailers under private labels between 2011 and 2015.  The FTC Complaint alleged that EP907 Wipes "do not break down in water in a reasonably short amount of time" and, as a result, they can clog household plumbing systems, household septic systems, public sewer systems, and sewage treatment plant systems after being flushed.  *Id*. ¶2.  According to the FTC Complaint, EP907 Wipes were labeled with unsubstantiated claims that the wipes were: (1) safe for sewer systems; (2) safe for septic systems; (3) capable of breaking apart shortly after being flushed; and (4) safe to flush.  *Id*.

The Consent Order provided recommendations for what is considered an accurate means for substantiating representations about wipes' dispersability and defined "flushable" as "disperses in a sufficiently short amount of time after flushing to avoid clogging, or other operational problems in,

---

While the INDA standard has been embraced by certain manufacturers and owners of wipes brands, the City does not consider the INDA standard to be a "standard[] generally accepted" in the wastewater treatment field, does not believe the dispersal standards used by the INDA standard are representative of the "physical conditions of the environment" that wipes meet in sewer and wastewater treatment infrastructure, and does not consider the evidence on which the INDA standard relies to be "competent and reliable."  The INDA standard tests wipes using dispersal parameters that allow for significantly more time and agitation than wipes actually encounter in the City's sewer and wastewater treatment infrastructure.  Many sanitary wipes that have passed the INDA assessment do not disperse prior to their reaching the City sewer and wastewater treatment infrastructure, and other municipal wastewater utilities report similar findings.

Ex. E at 5.

[6] Ex. D (*In the Matter of Nice-Pak Products, Inc.*, No. C-4556 (F.T.C. Oct. 30, 2015), Complaint ("FTC Complaint").

household and municipal sewage lines, septic systems, and other standard wastewater equipment." *See* Consent Order at 3. The Consent Order, however, did not address or establish: (1) testing protocols that must be followed; (2) how often any testing must be performed, if ever; (3) which independent third party or parties can be used for testing; or (4) any enforcement mechanisms for products that fail testing (*e.g.*, penalties, re-labeling, or removal from retail shelves). The FTC also did not – explicitly or implicitly – bless, permit or allow any other or future iteration of wipes to be marketed or sold as "flushable." *See id*.

On June 28, 2016, Judge Weinstein told the parties in *Kurtz* and *Belfiore* "to explore the opportunity for aggregate adjudication of their claims before the FTC[.]" *Kurtz v. Kimberly-Clark Corp.*, 315 F.R.D. 157, 159 (E.D.N.Y. 2016). In response, on July 6, 2016, counsel in *Belfiore* contacted the FTC to inquire as to whether it intended to formally define "flushability" and whether aggregate adjudication by the FTC was feasible. *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 505 (E.D.N.Y. 2017). The FTC responded, by letter dated July 27, 2016, stating that: (1) it cannot engage in "aggregate adjudication" of claims, due to its administrative design; (2) it does not intend to prescribe trade regulation rules in relation to issues raised by the court's referral; and (3) the parties and the court can look to the Consent Order for guidance on their views regarding "flushability" representations. *See Belfiore*, ECF No. 184-2.

Although Judge Weinstein had previously referred the issue of defining "flushability" and other related issues to the FTC, "[i]n the absence of an administrative . . . approach," he concluded that "the court is compelled to address these consumers' claims on a state-by-state basis." *Kurtz*, 321 F.R.D. 482 at 495-96. Over four years have passed since that statement, and the FTC has taken no further action to regulate the advertising or manufacture of Flushable Wipes despite the pendency of approximately a dozen flushable-wipes related actions during that time. Based on publicly

available information, the FTC has not opened any investigations relating to Flushable Wipes and has not sought to enforce or set enforcement mechanisms relating to the testing of Flushable Wipes or the manner in which they are labeled; the FTC has not requested that Flushable Wipes retailers or manufacturers submit proposed advertisements, labels or formulations for their wipe products or ordered testing on Flushable Wipes; nor has the FTC offered further guidance on the definition of "flushable" to the courts handling actions relating to damages resulting from Flushable Wipes.

Yet the Moving Defendants' Flushable Wipes remain – to this day – falsely and improperly labeled as flushable when they are not.  Indeed, Plaintiff's expert – the Sewer Outreach and Control Inspector for the City of London, Ontario, with over 25 years' experience in the wastewater treatment and collection fields – conducted testing following the filing of the Complaint and determined that the Moving Defendants' Flushable Wipes do not sufficiently break down and disperse sufficiently to meet the International Water Services Flushability Group's ("IWSFG") Publicly Available Specifications.  *See* Declaration of Barry Orr ("Orr Decl."), submitted herewith, at ¶¶11-13, 16, 18, 20.

## III.    ARGUMENT

### A.    The Primary Jurisdiction Doctrine Is Inapplicable to Plaintiff's Claims

The primary jurisdiction doctrine can be appropriate where a cause of action "raises a difficult, technical question that falls within the expertise of a particular agency."  *Boger v. Citrix Sys., Inc.*, No. 8:19-cv-01234-PX, 2020 WL 1939702, at *2 (D. Md. Apr. 22, 2020) (citing *Piney Run Pres. Ass'n v. Cnty. Comm'rs of Carroll Cnty. Md.*, 268 F.3d 255, 262 n.7 (4th Cir. 2001)).  Under the doctrine, a court may *stay* proceedings to allow the parties to seek administrative guidance.  *Id.*  "The doctrine should be invoked *sparingly*, as it often results in added expense and delay."  *AT & T Corp. v. Nudell*, No. RDB-07-1603, 2008 WL 2986776, at *6 (D. Md. July 30, 2008); *see also Goya Foods, Inc. v. Tropicana Prods., Inc*., 846 F.2d 848, 851 (2d Cir. 1988) ("The

doctrine has been applied *only* when a lawsuit raises an issue, frequently the validity of a commercial rate or practice, committed by Congress in the first instance to an agency's determination.") (citing *Nader v. Allegheny Airlines, Inc*., 426 U.S. 290, 304 (1976)). Despite its name, the doctrine is not jurisdictional and its "central aim is to allocate *initial* decisionmaking responsibility between courts and agencies and to ensure that they do not work at cross-purposes." *Manuel v. Pepsi-Cola Co*., No. 17 Civ. 7955 (PAE), 2018 WL 2269247, at *6 (S.D.N.Y. May 17, 2018), *aff'd*, 763 F. App'x 108 (2d Cir. 2019).

Although no "fixed formula exists for applying the doctrine," courts may consider the following factors in determining whether deference to an administrative agency is appropriate under the doctrine: whether the case involves a matter: (1) that falls "within the conventional experience of judges" or the agency's particular field of expertise; (2) is particularly "within the agency's discretion"; (3) gives rise to "substantial danger of inconsistent rulings"; and (4) concerns a pending agency application for guidance." *AT & T Corp.*, 2008 WL 2986776, at *6 (citing *Eric B. Fromer Chiropractic, Inc. v. Inovalon Holdings, Inc.*, 329 F. Supp. 3d 146, 155 (D. Md. 2018)); *see also AVX Corp. v. Corning Inc.*, No. 5:15-cv-543-FL, 2018 WL 1950425, at *4 (E.D.N.C. Apr. 25, 2018). Each of these four discretionary factors weigh decidedly against the application of the primary jurisdiction doctrine in this case.

### 1.    Plaintiff's Legal Claims Are Within the Court's Expertise

Referral to an administrative agency is only appropriate where the "issues of fact [are] not within the conventional experience of judges or cases which require the exercise of administrative discretion." *Env't Tech. Council v. Sierra Club*, 98 F.3d 774, 789 (4th Cir. 1996); *see also Moore v. Equitrans, L.P.*, 49 F. Supp. 3d 456, 476 (N.D. W. Va. 2014) ("[p]rimary jurisdiction does not apply to legal questions 'within the conventional competence of the courts'"). There is no basis to conclude that the FTC has greater technical expertise or experience than this Court to answer the

questions posed by Plaintiff's claims. In fact, Judge Weinstein in the *Kurtz* and *Belfiore* actions, even after probing the application of primary jurisdiction and going so far as to invite the FTC's position on flushability and aggregate adjudication, concluded that the same technical and factual issues were within the purview and conventional experience of the court. *Kurtz*, 321 F.R.D. at 495 (addressing plaintiff's claims in the absence of FTC action); *see also Wilson v. PL Phase One Operations L.P.*, 422 F. Supp. 3d 971, 986 (D. Md. 2019) ("Referral to the FCC is not appropriate at this time as the matters here, although technical, are within the conventional expertise of judges."); *Abingdon Livestock Exch., Inc. v. Smith*, No. 1:06-cv-96, 2007 WL 3146504, at *2 (W.D. Va. Oct. 26, 2007) (that "courts have been deciding" a particular issue "belies the argument that such a determination is within the particular discretion of the [administrative agency]").[7]

Courts routinely find that common law claims and issues pertaining to false and misleading labeling or advertising do not require the FTC's particular field of "expertise." *See, e.g., AT&T Corp.*, 2008 WL 2986776, at *7 (denying motion to dismiss under the primary jurisdiction doctrine, finding that common law breach of contract, fraud and unjust enrichment claims are "fully within the purview of this Court" and noting that "it is clear to this Court that this particular case does not involve any highly technical or policy matters that would require deference to the FCC"); *Manuel*, 2018 WL 2269247, at *6 ("[t]he Court is therefore 'reluctant to declare that issues of alleged consumer deception are necessarily outside the conventional wisdom of judges (or even juries)'"); *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-md-2413 (RRM)(RLM), 2013 WL 4647512, at *8 (E.D.N.Y. Aug. 29, 2013) (refusing to adopt primary jurisdiction for claims relating to defendants' misleading and deceptive misrepresentations that the products were made of all natural ingredients).

---

[7] The adjudication of similar claims pertaining to the labeling and advertising of Flushable Wipes in *Pettit v. Proctor & Gamble Co.*, No. 3:15-cv-02150 (N.D. Cal. 2019) and *Davidson v. Kimberly Clark*, No. 15-16173 (9th Cir. 2017) and other similar litigations further demonstrates this Court's competence to rule on Plaintiff's claims.

Even if the subject matter of this litigation implicates the expertise of the FTC, the mere existence of the Consent Order does not support the application of primary jurisdiction. *See Dean v. Colgate-Palmolive Co.*, No. EDCV 15-0107 JGB (DTBx), 2015 WL 3999313, at *4 (C.D. Cal. June 17, 2015) ("not every case that implicates the expertise of federal agencies warrants invocation of primary jurisdiction"). "In other words, the doctrine is not designed to secure expert advice from agencies merely because the issue is conceivably within an agency's ambit." *Id.* Notably, Plaintiff's claims neither include a cause of action under the FTC Act nor require an interpretation of any FTC definition. *See id.* at *5 (refusing to invoke primary jurisdiction where "[p]laintiff is not pursuing a cause of action under the Food Drug and Cosmetic Act (the "FDCA"), the FTC Act, or the Fair Packaging and Labeling Act [and] her claims do not require reference to or interpretation of any FDA or FTC definition"); *see also Jovel v. i-Health, Inc.*, No. 12-cv-5614 (JG), 2013 WL 5437065, at *7 (E.D.N.Y. Sept. 27, 2013) (refusing to invoke the doctrine where "proof of [defendant's] deceptive advertisements does not depend on violation of, or compliance with, the FDA . . . or threaten the uniform application of FDA labeling guidelines").

Here, the relevant questions posed by this action fall within the competency and domain of the Court, including whether Defendants' Flushable Wipes are in fact "flushable"; whether the use of the word "flushable" and similar terms on product labeling by Defendants is false and misleading and consequently cause damage to Plaintiff and Class members' wastewater collection systems; and whether injunctive relief, such as appropriate labeling changes, is appropriate. These issues do not fall within the unique expertise of the FTC. For these reasons, factor one weighs against application of the primary jurisdiction doctrine.[8]

---

[8] The Moving Defendants' citation to *Broadvox-CLEC, LLC v. AT & T Corp.*, 98 F. Supp. 3d 839 (D. Md. 2015) (*see* Def. Mem. at 12) is misplaced, as the court there ***declined*** to apply the doctrine of primary jurisdiction, holding that the issue of discriminatory and unfair practices should not be referred to the FCC.

### 2.     Plaintiff's Claims Are Not Within the FTC's Discretion

As discussed above, the FTC has already explicitly declined to provide any further clarification or interpretation of the definition of "flushable" when asked by a court to do so.  *See supra* §II.  Nor is it actively or rigorously regulating manufacturers, marketers and/or retailers of Flushable Wipes.  *Id*.  Rather, there is "every indication [] that the [FTC] will ***not*** exercise that discretion as to the matter at hand."  *Manuel*, 2018 WL 2269247, at *7; *see also Robinson v. Carealliance Health Servs*., No. 2:13-cv-01916-RMG, 2014 WL 4402684, at *5 (D.S.C. Sept. 4, 2014) *report and recommendation adopted in part, rejected in part*, 2014 WL 4389641 (D.S.C. Aug. 5, 2014) (adopting Magistrate Judge's ruling rejecting application of primary jurisdiction and concluding that "[t]he Court is not persuaded that the [Medical Executive Committee] is an administrative body that will promote national uniformity in the field of regulation").  Thus, consideration as to whether the questions at issue are "particularly within the agency's discretion," *AVX Corp.*, 2018 WL 1950425, at *4, also favors Plaintiff.

Moreover, given the FTC's inaction, Plaintiff's claims will be most expeditiously resolved by this Court.  *See, e.g.*, *Boger*, 2020 WL 1939702, at *3 ("The FCC has been wrestling with the definition of ATDS for six years with no clear conclusion in sight. Accordingly, this Court joins other courts that have refused to stay proceedings on this ground."); *Nat'l Commc'ns Ass'n, Inc. v. Am. Tel. & Tel. Co*., 46 F.3d 220, 225 (2d Cir. 1995) (concluding that where the district court can conclude the matter more expeditiously, a potential delay outweighs the benefit that might be achieved by deferral); *Glob. Naps N.C., Inc. v. Bellsouth Telecomms., Inc.*, 455 F. Supp. 2d 447, 450 (E.D.N.C. 2006) ("[s]taying this action would perhaps continue delays in this case"); *In re Frito-Lay*, 2013 WL 4647512, at *9 (denying request to stay case on the grounds of primary jurisdiction and noting that "the FDA is unlikely to respond in a timely manner to any referral from this Court"); *Manuel*, 2018 WL 2269247, at *7 ("primary jurisdiction is not required when a referral to the agency

would significantly postpone a ruling that a court is otherwise competent to make"). Therefore, factor two also weighs against application of the primary jurisdiction doctrine.

### 3.     There Is No Risk of Inconsistent Rulings

Defendants rely heavily on the unfounded contention that the requested injunctive relief is "inconsistent with the FTC's oversight of the Consent Order." Def. Mem. at 11. But there is no risk of inconsistent rulings here. An assessment of this factor focuses on risks of inconsistent rulings that are real, not remote. *See In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 476 F. Supp. 2d 275, 283 (S.D.N.Y. 2007) ("the mere possibility of inconsistency is not sufficiently grave a concern to warrant deferral, as application of the primary jurisdiction doctrine is warranted only when the requested relief 'create[s] a substantial danger of inconsistency'"); *see Carealliance Health Servs.*, 2014 WL 4402684, at *5 (rejecting application of primary jurisdiction and finding no risk of inconsistent outcomes with regulatory agency). As discussed above, the FTC is not actively regulating the Flushable Wipes industry and, in the event that the FTC decides to take action in the future, there is nothing to suggest that this would result in inconsistent rulings. *See In re MTBE*, 476 F. Supp. 2d at 284 ("any injunctive or equitable relief which might eventually issue from this Court [can] take into account the need for consistency and coordination with the actions of the involved state agencies"). Moreover, the injunctive relief sought here is in fact ***consistent with*** what the FTC endeavored to accomplish with the Consent Order – namely, clarity and truthfulness about the efficacy of the Moving Defendants' Flushable Wipes. Given that the FTC has been dormant for years on this issue despite continued harm from these products, Plaintiff now seeks relief consistent with the goals of the Consent Order.

*Gentry v. Hyundai Motor America, Inc.* is instructive. No. 3:13-cv-00030, 2017 WL 354251, at *6 (W.D. Va. Jan. 23, 2017), *aff'd in part, dismissed in part sub nom., Adbul-Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278 (4th Cir. 2018). In *Gentry*, defendant argued "that EPA fuel economy

estimates for Hyundai vehicles are the subject of *ongoing* regulatory activity" and defendant "is subject to the consent decree with EPA requiring it to take corrective measures for its EPA fuel economy." *Id*. But the court found that "[p]rimary jurisdiction presents little problem" and adjudication of the issues in the case would not interfere with the EPA's efforts where the EPA had neither "appeared in or suggested this litigation would intrude upon its regulatory prerogatives," despite defendant's assertion that "orders by this Court have the potential to interfere and possibly conflict with the agency's oversight." *Id*.

Relatedly, the Moving Defendants' purported concern regarding this action interfering with FTC regulation of flushable products is unfounded. *See* Def. Mem. at 5. The Moving Defendants warn that "Plaintiff's allegations . . . conflict with – and invite this Court to second-guess – the FTC's commitment to 'closely monitor' Nice-Pak's compliance with the Consent Order." *Id*. But there has been no regulatory action undertaken by the FTC since the Consent Order and it has already once turned down an offer to weigh-in on flushable wipes-related litigation. Where an agency gives no indication that it is taking regulatory action or providing further guidance, "there is little danger that the Court will be 'work[ing] at cross-purposes' with the [agency.]" *de Lacour v. Colgate-Palmolive Co.*, No. 16-cv-8364 (RA), 2017 WL 6550690, at *4 (S.D.N.Y. Dec. 22, 2017); *see also Canale v. Colgate-Palmolive Co.*, 258 F. Supp. 3d 312, 325 (S.D.N.Y. 2017) ("a court should not invoke primary jurisdiction when the agency is aware of but has expressed no interest in the subject matter of the litigation"); *Dean*, 2015 WL 3999313, at *6 ("The Court does not find the commencement of the FTC investigation dispositive, especially when Defendant has not provided any specifics about that investigation—for example, its breadth, its progress so far, or when it is expected to conclude. Moreover, although Defendant warns the Court that continued litigation in this case may 'result in inconsistent findings,' it does not provide any specifics about this either.").

Thus, factor three also weighs against application of the primary jurisdiction doctrine.

### 4. There Is No Pending FTC Application

As the Moving Defendants seem to acknowledge, Plaintiff's claims do not concern a pending FTC application. Regardless, "[t]he fourth prong of the four-factor test outlined above contemplates that a **party** to the present suit made prior application to the [administrative department]." *Cent. Tel. Co. of Va. v. Sprint Commc'ns Co. of Va.*, 759 F. Supp. 2d 772, 788 (E.D. Va. 2011), *aff'd*, 715 F.3d 501 (4th Cir. 2013). No prior applications to the FTC have been made by the parties. In fact, there is no known procedure for Plaintiff or Class members to petition the FTC for injunctive relief from damages caused by the Moving Defendants' Flushable Wipes. While aggrieved consumers of Flushable Wipes are free to submit complaints to the FTC, "[t]he FTC cannot resolve individual complaints." *See Consumer Complaints*, CONSUMER FEDERATION OF AMERICA, https://consumerfed.org/consumer-complaints/#:~:text=The%20FTC%20cannot%20resolve%20individual,and%20stopping%20unfair%20business%20practices (last visited May 13, 2021).

Moreover, the FTC Complaint – issued six years ago – was limited to Nice-Pak's EP907 Wipes and does not (and could not) address the current iterations of the Moving Defendants' Flushable Wipes at issue in this litigation. *See supra* §II. While the Moving Defendants argue that the "FTC permitted Nice-Pak to *continue* to advertise and label its post-Buckeye generation" so long as the representations regarding the products are "'non-misleading'" (Def. Mem. at 8) (emphasis in original), they provide no evidence or facts proving that its representations are in fact "'non-misleading,'" let alone suggesting that the current generation of their wipes is indeed permitted by the FTC. In fact, recent flushability testing conducted by Plaintiff's expert resoundingly found that Defendants representations about their Flushable Wipes are in fact currently misleading. *See* Orr Decl. at ¶¶11-13, 16, 18, 20. Where, as here, it is undisputed that an administrative body's

regulatory action does not cover the scope of the claims before the Court, the doctrine of primary jurisdiction cannot apply. *See Abingdon*, 2007 WL 3146504, at \*2 (declining to apply the doctrine of primary jurisdiction because the "scope of the [the government's] investigation [did] not [] reach the subject of this lawsuit"); *see also Ault v. J.M. Smucker Co*., No. 13 Civ. 3409(PAC), 2014 WL 1998235, at \*3 (S.D.N.Y. May 15, 2014) (when an agency "is unable to address a potentially deceptive practice, state claims are one of the few means of safeguarding consumers and therefore should not be preempted by the [agency's] inaction").

Additionally, although the Moving Defendants argue that the FTC has taken an active role in regulating the Flushable Wipes industry, the Consent Order requires Nice-Pak to submit advertising materials to the FTC upon request, and the Moving Defendants have not provided the Court with a single instance in which a request was made. *See* Def. Mem. at 9. Likewise, while the FTC has the stated power to enforce a fine of $16,000 per violation, *see id*. at 10, the theoretical ability to enforce a fine does nothing to show that the FTC intends to act. Indeed, no fines have been imposed. The Moving Defendants also do not cite to any testing or enforcement measures taken by the FTC relating to the initial investigation. Inaction on an agency's part commonly forms the basis for denying application of primary jurisdiction. *See AVX Corp.*, 2018 WL 1950425, at \*5 (declining to apply primary jurisdiction because of administrative inaction); *see also Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 910 (9th Cir. 2019) ("[e]ven when agency expertise would be helpful, a court should not invoke primary jurisdiction when the agency is aware of but has expressed no interest in the subject matter of the litigation"); *U.S. E.P.A. v. City of Green Forest, Ark*., 921 F.2d 1394, 1405 (8th Cir. 1990), *cert. denied*, *Work v. Tyson Foods, Inc.*, 502 U.S. 956 (1991) ("agency inaction is precisely the circumstance in which private action is appropriate"); *Ault*, 2014 WL 1998235, at \*3 (when an agency "is unable to address a potentially deceptive practice, state claims are one of the

few means of safeguarding consumers and therefore should not be preempted by the [agency's] inaction").[9]

Further, although the Moving Defendants argue that the FTC has presently assumed jurisdiction over the claims at issue, they also acknowledge that the Consent Order was a resolution, and suggest that Plaintiff's claims are inconsistent with that resolution. *See, e.g.*, Def. Mem. at 12 ("Plaintiff effectively challenges the FTC's decision-making"). However, Nice-Pak itself has continued to litigate and settle similar claims in subsequent actions. *See Meta v. Target Corp.*, 4:14-cv-00832 (N.D. Ohio Mar. 29, 2018), ECF No. 169-2 (compensating purchasers of Up&Up™ wipes manufactured by Nice-Pak for the price premium of Flushable Wipes sold under Target Corporation's private label). As a result, the Moving Defendants' argument that this Court cannot hear Plaintiff's claims falls flat. Therefore, factor four also weighs against application of the primary jurisdiction doctrine.

## IV.    CONCLUSION

For the foregoing reasons, the doctrine of primary jurisdiction is inapplicable to Plaintiff's claims and, therefore, Plaintiff respectfully requests that the Court deny the Moving Defendants' motion to dismiss on that basis.

DATED:  May 17, 2021                    Respectfully submitted,

                                        AQUALAW PLC
                                        F. PAUL CALAMITA (ID #12740)


                                        */s/ F. Paul Calamita*
                                        F. PAUL CALAMITA

---

[9] The Moving Defendants' reliance on *Canale*, 258 F. Supp. 3d 312, to support their application of primary jurisdiction here is misplaced. *See* Def. Mem. at 12-13. The *Canale* court granted a limited six-month stay "given that the FTC [was] ***currently*** investigating the issue of which Plaintiff complain[ed]." 258 F. Supp. 3d at 324 (emphasis added). Unlike in *Canale*, there is no known pending active FTC investigation that could conceivably lead to an inconsistent ruling, and the Moving Defendants are seeking to ***dismiss*** – not stay – the entirety of Plaintiff's claims.

6 South Fifth Street
Richmond, VA  23219
Telephone:  804/716-9021
804/716-9022 (fax)
paul@aqualaw.com

ROBBINS GELLER RUDMAN
   & DOWD LLP
SAMUEL H. RUDMAN
VINCENT M. SERRA (*admitted pro hac vice*)
SARAH E. DELANEY
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
vserra@rgrdlaw.com
sdelaney@rgrdlaw.com

*Attorneys for Plaintiff*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on May 17, 2021, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.

*/s/ F. Paul Calamita*
F. PAUL CALAMITA

AQUALAW PLC
F. PAUL CALAMITA (ID #12740)
6 South Fifth Street
Richmond, VA  23219
Telephone:  804/716-9021
804/716-9022 (fax)
paul@aqualaw.com