UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| COMMISSIONERS OF PUBLIC WORKS OF THE CITY OF CHARLESTON (d.b.a. Charleston Water System), Individually and on Behalf of all Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>COSTCO WHOLESALE CORPORATION; CVS HEALTH CORPORATION; KIMBERLY-CLARK CORPORATION; THE PROCTER & GAMBLE COMPANY; TARGET CORPORATION; WALGEENS BOOTS ALLIANCE, INC.; and WAL-MART, INC.,<br><br>Defendants. | CASE No. 2:21-cv-00042-RMG |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT AGAINST DEFENDANTS COSTCO WHOLESALE CORPORATION, CVS HEALTH CORPORATION, AND TARGET CORPORATION**

# **TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................. 1

II. LAW AND ARGUMENT ................................................................................................. 2

    A.    The core of Plaintiff's lawsuit is a request for relief enjoining the "marketing and selling" of Defendants' flushable wipes as "flushable." .................................................................................................................. 2

    B.    Plaintiff understates the scope of the Consent Order, which governs the conditions under which Nice-Pak's wipes may be marketed and sold as "flushable" through 2035. ............................................. 4

    C.    Publicly available documents and proceedings confirm that the FTC is not "inactive" in its oversight of its Consent Order with Nice-Pak. ................................................................................................................. 5

        1.    The Eastern District of New York proceedings in the *Belfiore* and *Kurtz* cases are not relevant to the FTC's enforcement of the Consent Order. ......................................................... 5

        2.    The FTC's commitment to "closely monitor" the Consent Order refutes Plaintiff's unsupported claim that the FTC is "inactive." .................................................................................................. 7

    D.    The primary jurisdiction factors favor dismissal. ........................................... 9

        1.    Plaintiff's injunctive relief request asks this Court to decide an issue—the "flushability" of Nice-Pak's flushable wipes—that is within the FTC's particular field of expertise to address. ........................................................................ 9

        2.    The specific question at issue is particularly within the FTC's discretion to resolve. ................................................................ 10

        3.    Court-ordered injunctive relief would create a substantial danger of inconsistent rulings. ........................................................... 11

        4.    The "prior application" factor is irrelevant to this case. .................... 12

III. CONCLUSION ............................................................................................................... 13

**TABLE OF AUTHORITIES**

**Cases**

*Access Telecomm. v. Southwestern Bell Tel. Co.*, 137 F.3d 605, 609 (8th Cir. 1998) .................... 9

*B.H. Gold Fields Mining Corp.*, 506 F. Supp. 2d 792, 805 (N.D. Okla. 2007) .............................. 2

*Belfiore*, 311 F.R.D. 42, 43-44 (E.D.N.Y. 2015) ...................................................................... 5, 6

*Bey v. Genano*, No. PWG-16-2800, 2017 WL 1315530, at *2 (D. S.C. April 10, 2017) ............... 8

*Callum v. CVS Health Corp.*, 137 F. Supp. 3d 817, 859 (D. S.C. 2015) ........................................ 8

*City of Wyoming, et al. v. Procter & Gamble Co., et al.*, No. 15-cv-02101 JRT-TNL (D. Minn.)
 ................................................................................................................................................ 11

*Clark v. Time Warner cable*, 523 F.3d 1110, 1114 (9th Cir. 2008) ................................................ 9

*Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 495 (E.D.N.Y. 2017) ........................... 1, 5, 6, 10

*Lindsey-Grobes v. United Airlines, Inc.*, No. GJH-14-00857, 2014 WL 5298030, at *5 (D. Md. Oct. 14, 2014) ........................................................................................................................... 8

*Meta v. Target Corp.*, 4:14-cv-00832 (N.D. Ohio Mar. 29, 2018) ................................................ 3

*Reiter v. Cooper*, 507 U.S. 258, 268 (1993) ................................................................................... 9

*Schwartzman, Inc. v. Atchison, Topeka & Santa Fe Ry. Co.*, 857 F. Supp. 838, 843 (D. N.M. 1994) ......................................................................................................................................... 3

*Shinault v. American Airlines, Inc.*, 936 F.2d 796, 804 (5th Cir. 1991) ........................................ 2

*Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997) ............................................... 8

## I.    **INTRODUCTION**

Plaintiff asks this Court to enjoin the retailers and manufacturers of various brands of flushable wipes from marketing and selling wipes that, it alleges, are not "flushable." But for three Defendants—Costco, CVS, and Target—that issue is already being addressed by the Federal Trade Commission ("FTC"), which is overseeing a 20-year Consent Order with the company that manufactures the flushable wipes they sell—Nice-Pak Products, Inc. Plaintiff does not dispute that the FTC committed on the record to "closely monitor" Nice-Pak's compliance with the Order.

Plaintiff takes the position that this Court should not believe the FTC. Plaintiff ignores the FTC's written commitment and argues that the agency is *not* in fact monitoring Nice-Pak's compliance with the Consent Order, or its flushable products, because: (1) the Consent Order does not apply to the categories of products at issue in this litigation, and (2) the FTC has been "inactive" ever since concluding its investigation and entering the Consent Order. But publicly available FTC documents refute Plaintiff's attempt to disregard the Consent Order. Specifically:

- Plaintiff wrongly claims that the FTC's Consent Order process "*only* addressed Nice-Pak wipes made of 'non-woven fabric, specifically non-elemental chlorine bleached wood pulp, bicomponent fibers, and EP907 repulpable binder," Pl's Opp. Doc. 65 at 5, and does not apply to products on the market today. But the plain text of the Consent Order covers "all wipes" that Nice-Pak markets as "flushable" over the Consent Order's 20-year duration. *See* Consent Order p. 2, Lewis Decl., Ex. B (Doc. 45-4), *available at* https://www.ftc.gov/system/files/documents/cases/150518nice-pakorder.pdf (last accessed May 28, 2021);

- Plaintiff's discussion of the referral to the FTC in the *Kurtz* and *Belfiore* cases in the Eastern District of New York is not evidence that the FTC is "inactive." To the contrary, the FTC expressly directed the parties and the court to look to its Consent Order with Nice-Pak for guidance on "flushability." *See Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 495 (E.D.N.Y. 2017); and

- Plaintiff's claim that the FTC is "inactive" is irreconcilable with the agency's written commitment to "closely monitor Nice-Pak's future activities to determine whether any violations of the Consent Order occur. *See* Lewis Decl., Ex. A (Doc. 45-3), *available at* https://www.ftc.gov/system/files/documents/cases/151102nice-pakletter.pdf (last accessed May 28, 2021).

These documents prove that the Consent Order *does* apply to the flushable wipes currently sold by Costco, CVS, and Target, rendering injunctive relief against those Defendants inappropriate. Further, these documents—in combination with Plaintiff's own statements in its Opposition—expose Plaintiff's motives for seeking injunctive relief. Plaintiff disbelieves the FTC when it says it will "closely monitor" Nice-Pak and thinks its Consent Order did not go far enough. This attempt to "second-guess" the FTC's judgment is precisely what the doctrine of primary jurisdiction exists to prevent.

## II.     LAW AND ARGUMENT

### A.     The core of Plaintiff's lawsuit is a request for relief enjoining the "marketing and selling" of Defendants' flushable wipes as "flushable."

The core of Plaintiff's lawsuit, including the only requests for relief against Costco, CVS, and Target, is a claim asking this Court to "enjoin Defendants from marketing and selling their Flushable Wipes" as "flushable," "safe for sewer systems," or "biodegradable" "until their labeling is truthful or otherwise not deceptive." Compl., Prayer for Relief ¶¶ C, D, E. Such claims naturally implicate the doctrine of primary jurisdiction by overlapping with issues that are within the province of an administrative agency, like the FTC. *See, e.g.*, *B.H. Gold Fields Mining Corp.*, 506 F. Supp. 2d 792, 805 (N.D. Okla. 2007) ("Primary jurisdiction will often be invoked when a plaintiff seeks injunctive relief, because there is the greatest likelihood that a court's order will interfere with administrative agency's proceedings."); *Shinault v. American Airlines, Inc.*, 936 F.2d 796, 804 (5th Cir. 1991) (permitting plaintiff to proceed with damages claim against airline carrier, but invoking primary jurisdiction to stay claim for injunctive relief); *Schwartzman, Inc. v.*

*Atchison, Topeka & Santa Fe Ry. Co.*, 857 F. Supp. 838, 843 (D. N.M. 1994) ("[T]he doctrine of primary jurisdiction is more readily applicable to claims for injunctive relief.").[1]

In response to the motion filed by Costco, CVS, and Target, Plaintiff seeks to move the goalposts by mischaracterizing the injunctive relief sought in its Complaint. *Now*, Plaintiff states that the questions at issue include "whether Defendants' mislabeling of Flushable Wipes cause clogs and other damage to Plaintiff and Class members' wastewater collection facilities that require increased maintenance and repair-related expenses"— which Plaintiff characterizes as "within the conventional competence of the courts." Pl's Opp., Doc. 65 at 1. But those cannot be the central issues because Plaintiff *does not seek damages* for "increased maintenance and repair-related expenses." It is not even clear that Plaintiff has experienced any such expenses other than in October 2018 and June 2019, which are the only two dates for which Plaintiff alleges any *facts* related to clogs which Plaintiff attributes to flushable wipes. *See* Compl. ¶¶ 50, 53; *see also* Def's Joint Mot. to Dismiss, Doc. 46 at 3-4. The issue here—at least at the motion to dismiss stage—is the one framed by Plaintiff's prayer for relief, which asks for injunctive relief defining what it means for a flushable wipe to be "flushable." That is an issue uniquely within the FTC's experience to address, and one that it already *has* addressed in the context of its Consent Order with Nice-Pak.

---

[1] At one point in its Opposition, Plaintiff references the fact that Nice-Pak has "continued to litigate and settle similar claims in subsequent actions" as inconsistent with its request for primary jurisdiction, citing a settlement in *Meta v. Target Corp.*, 4:14-cv-00832 (N.D. Ohio Mar. 29, 2018), Doc. No. 169-2. To be clear, *Meta* proves Defendants' point. Unlike Plaintiff, the plaintiff in *Meta* sought damages allegedly attributable to flushable wipes sold between the years 2010 and 2014 (the EP907 substrate) and discontinued prior to the Consent Order, as opposed to the prospective injunctive relief sought by Plaintiff here related to products currently on the market and subject to the Content Order.

3

**B.    <u>Plaintiff understates the scope of the Consent Order, which governs the conditions under which Nice-Pak's wipes may be marketed and sold as "flushable" through 2035.</u>**

In an attempt to cast the Consent Order as irrelevant, Plaintiff states that the FTC's draft complaint, which began the process that led to the Consent Order, only addressed a no-longer-marketed, type of wipe "made of 'non-woven fabric, specifically non-elemental chlorine bleached wood pulp, bicomponent fibers, and EP907 repulpable binder.'" While that is true for the draft complaint, it is untrue for the Consent Order itself, which imposed prospective, *ongoing* obligations on Nice-Pak relevant to *all* of its flushable wipes, including future product.

The Consent Order imposes a continuing obligation on Nice-Pak—still in force today—to market wipes as "flushable" only if Nice-Pak "possesses and relies upon competent and reliable evidence . . . to substantiate that the representation is true." Consent Order p. 2 § I. Plaintiff acknowledges this. Compl. ¶ 120. In addition to prescribing specific standards for these tests,[2] Consent Order p. 3, § I.A-I.B, requires that Nice-Pak "shall, for five (5) years after the last date of dissemination of any representation covered by this order, maintain and upon request make available to" the FTC:

> A.    All advertisements, labeling, packaging, and promotional materials containing the representation;

---

[2] Plaintiff acknowledges some of the standards set by the FTC, including guidance that to be considered "flushable," Nice-Pak's wipes must "disperse[] in a sufficiently short amount of time after flushing to avoid clogging, or other operations problems in, household and municipal sewage lines, septic systems, and other standard wastewater equipment." Pl's Opp., Doc. 65 at 5-6. Plaintiff, however, argues that the FTC did not go far enough because it "did not address of establish: (1) testing protocols that must be followed; (2) how often testing must be performed, if ever; (3) which independent third party or parties can be used for testing; or (4) any enforcement mechanisms for products that fail testing (*e.g.*, penalties, re-labeling, or removal from retail shelves)." *Id.* at 5. This argument is plainly inconsistent with Plaintiff's argument that the Consent Order did not apply no prospectively and demonstrates the way in which Plaintiff's request for relief reflect nothing more than a policy disagreement with the FTC's standard.

4

      B.      All materials that were relied upon in disseminating the representation; [and]

      C.      All tests, reports, studies, surveys, demonstrations, or other evidence in its possession or control that contradict, qualify, or call into question the representation, or the basis relied upon for the representation, including complaints and other communications with consumers or with governmental or consumer protection organizations.

*Id.* p. 4, § IV. These obligations are not limited to the EP907 substrate, as Plaintiff suggests; the Consent Order defines "Covered Product" to include "all wipes, including but not limited to Kirkland Signature Moist Flushable Wipes, and any moist toilet tissue or cloth." *Id.* p. 2.

Plaintiff's argument that the Consent Order process between Nice-Pak and the FTC "was limited to Nice-Pak's EP907 Wipes and does not (and could not) address the current iterations of the Moving Defendants' Flushable Wipes at issue in this litigation," Pl's Opp, Doc. 65 at 14, likewise fails by the plain language of the Consent Order itself. The FTC knew the EP907 substrate was being taken off the market and acknowledged such in the template letter it required Nice-Pak to send retailers under the terms of the Consent Order. *See* Consent Order, p. 7, Attachment A. Consequently, the only real reason to impose a 20-year enforcement period for the Consent Order was to maintain jurisdiction over Nice-Pak's *future* product. Plaintiff completely ignores this 20-year enforcement period in their Opposition, presumably because it is irreconcilable with their argument that the Consent Order process related only to the EP907 substrate.

    **C.**    **Publicly available documents and proceedings confirm that the FTC is not "inactive" in its oversight of its Consent Order with Nice-Pak.**

          **1.**    **The Eastern District of New York proceedings in the *Belfiore* and *Kurtz* cases are not relevant to the FTC's enforcement of the Consent Order.**

In its Opposition, Plaintiff repeatedly references proceedings in two Eastern District of New York cases, *Kurtz v. Kimberly-Clark Corp.* and *Belfiore v. Procter & Gamble Co.*, as

5

evidence that the FTC is inactive and "has taken no further action to regulate the advertising or manufacture of flushable wipes." Pl's Opp., Doc. 65 at 6. *Kurtz* and *Belfiore*, however, have no bearing on either the Consent Order or the FTC's oversight of Nice-Pak. Plaintiff's blurring of the lines between those proceedings and the Consent Order is a transparent attempt to misdirect this Court from the heart of the primary jurisdiction issue. A short procedural overview of the *Kurtz* and *Belfiore* litigation helps dispel this confusion.

*Kurtz* and *Belfiore* were the lead cases filed in the Eastern District of New York before Judge Jack Weinstein. *See Belfiore*, 311 F.R.D. 42, 43-44 (E.D.N.Y. 2015). On October 5, 2015, Judge Weinstein entered an order in *Belfiore* invoking the primary jurisdiction doctrine, staying the litigation, and referring "[t]he issue of an appropriate definition of 'flushable' and related issues" to the FTC. *Id.* at 79. Plaintiff implies in its Opposition that Judge Weinstein's referral to the FTC was a response to the Consent Order with Nice-Pak, interspersing the references to *Belfiore* and *Kurtz* with factual characterizations of the Consent Order. *See* Pl's Opp., Doc. 65 at 6. In reality, however, the referral to the FTC in *Belfiore* had nothing to do with the Consent Order; Nice-Pak was not even a defendant in the action. Judge Weinstein acknowledged the FTC's then-tentative Agreement Containing Consent Order with Nice-Pak in his *Belfiore* opinion, noting that the public comment period was ongoing, but did not base any portion of his reasoning on those proceedings. *See Belfiore*, 311 F.R.D. at 45-47.

The FTC declined to respond to Judge Weinstein's referral, but that is not evidence that it is "inactive" in monitoring the Consent Order. Quite the contrary. When the FTC responded to a query from counsel in the *Belfiore* action, the Commission *directed* the parties to "look to the Nice-Pak final consent order for guidance on the Commission's views regarding representations of 'flushability.'" *Kurtz*, 321 F.R.D. at 495. Plaintiff concedes this point, having alleged in its

6

Complaint: "The FTC refers to its Consent Order with Nice-Pak for guidance on the Commission's views regarding representations of 'flushability.'" Compl. ¶ 127. So, while Plaintiff argues that the FTC "has taken no further action" since the Consent Order, they are really referring to the FTC's regulation of *other manufacturers* who have not joined in this motion. The only parties to this motion to dismiss are retailers who market and sell flushable wipes manufactured subject to the Consent Order, to which the FTC has pointed to as its gold standard for "flushability."

### 2.     **The FTC's commitment to "closely monitor" the Consent Order refutes Plaintiff's unsupported claim that the FTC is "inactive."**

Plaintiff's argument that the FTC is "inactive" clashes with the FTC's written commitment to "closely monitor" its Consent Order with Nice-Pak, which amounts to an agency statement that it will *not* be inactive. As Defendants explained in their Motion, the FTC committed in written correspondence to the New York City Law Department to "closely monitor Nice-Pak's future activities to determine whether any violations" of the Consent Order occur, and enforce the Order as necessary with civil monetary penalties.³ Even though this letter was the centerpiece of the Motion to Dismiss filed by CVS, Costco, and Target, Plaintiff ignores it but for a single sentence dismissing the letter as stale because it was sent "over five years ago." Pl's Opp., Doc. 65 at 2.

The letter from the FTC to the New York City Law Department provides a point-by-point response to the City's concerns. *Compare* Doc. 45-3 *with* Doc. 45-7. Before this Court entertains Plaintiff's argument that the FTC did not mean what it said when it committed to "closely monitor" the Consent Order, Defendants encourage this Court to review the 71 pages of correspondence between the FTC and entities that provided comments over the six-month comment period, which

---

³ Lewis Decl., Ex. A (Doc. 45-3), *available at* https://www.ftc.gov/system/files/documents/cases/151102nice-pakletter.pdf (last accessed May 28, 2021).

7

is publicly available at https://www.ftc.gov/system/files/documents/cases/151102nice-pakletter.pdf (last accessed May 28, 2021).

Unable to prove that the FTC is "inactive," Plaintiff suggests that the Consent Order is inadequate and the FTC's oversight insufficient based on testing done "by Plaintiff's expert," which Plaintiff characterizes as showing "that Defendants' Flushable Wipes fail to meet the wastewater industry's flushability specifications and therefore should not be labeled flushable." Pl's Opp., Doc. 65 at 2. Setting aside the fact that this is a motion to dismiss and must be decided on the *allegations in the Complaint*, not undisclosed testing done by Plaintiff's expert witness,[4] all this assertion accomplishes is unmask Plaintiff's true motive—mere disagreement with the standards put into place by the FTC. Plaintiff wishes that the FTC had prescribed more rigorous or more specific testing standards than it did, and now asks that this Court agree with it and displace the FTC's judgment with the testing standards for which Plaintiff advocates. Put another way, even though the FTC has said it is actively regulating Nice-Pak's flushable wipes, Plaintiff asks this Court to take control from the FTC and set its own, different, standard. That is the very heart of the problem that the primary jurisdiction doctrine was created to cure.

---

[4] At this stage of the case, this Court should ignore the multiple affidavits and the declaration attached to Plaintiff's Opposition, which are irrelevant to the issue of whether Plaintiff's *Complaint* is legally sufficient. *See, e.g.*, *Bey v. Genano*, No. PWG-16-2800, 2017 WL 1315530, at *2 (D. S.C. April 10, 2017) ("Where, as here, a plaintiff attempts to cure pleading deficiencies by making factual assertions in a memorandum opposing the motion to dismiss, the Court may not consider them with respect to determining whether plaintiff has filed a plausible claim."); *Callum v. CVS Health Corp.*, 137 F. Supp. 3d 817, 859 (D. S.C. 2015) (recognizing that a "plaintiff 'is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint'") (quoting *Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997)). *See Lindsey-Grobes v. United Airlines, Inc.*, No. GJH-14-00857, 2014 WL 5298030, at *5 (D. Md. Oct. 14, 2014) ("An affidavit attached to an opposition to a motion to dismiss, however, is no place for Plaintiff to add material facts to a deficient complaint.").

### D.     The primary jurisdiction factors favor dismissal.

Even though there is no "fixed formula" for applying primary jurisdiction, the most frequently addressed factors support dismissal. Plaintiff suggests both that primary jurisdiction can be used only to stay (and not dismiss) a case, and that the factors all disfavor primary jurisdiction. Plaintiff is wrong on both counts. Courts *dismiss* cases citing primary jurisdiction when doing so will further the purposes of the doctrine without prejudicing the parties. *See, e.g.*, *Access Telecomm. v. Southwestern Bell Tel. Co.*, 137 F.3d 605, 609 (8th Cir. 1998) (A district court 'has discretion either to [stay the case and] retain jurisdiction or, if the parties would not be unfairly disadvantaged, to dismiss the case without prejudice.'") (quoting *Reiter v. Cooper*, 507 U.S. 258, 268 (1993)); *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008) ("The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice . . . ."). Here, dismissal makes more sense than a stay given the 20-year term of the Consent Order, which keeps the FTC in charge of overseeing Nice-Pak's compliance through October 2035.

### 1.     Plaintiff's injunctive relief request asks this Court to decide an issue—the "flushability" of Nice-Pak's flushable wipes—that is within the FTC's particular field of expertise to address.

Plaintiff claims that "[t]here is no basis to conclude that the FTC has greater technical expertise or experience than this Court to answer the questions posed by Plaintiff's claims," but this argument fails as a matter of common sense. Pl's Opp., Doc. 65 at 8. Plaintiff admits—and indeed, *alleges in its Complaint*—that the FTC investigated Nice-Pak as part of the process that led up to the entry of its Consent Order. Compl. ¶¶ 112-22. It is undisputed that Nice-Pak cooperated with the FTC during that investigation. Thereafter, the FTC undertook a six-month public comment period, which included evaluating and responding to concerns expressed by some

55 different entities. Together, the FTC's investigation and public comment period give the FTC "greater technical expertise" on the issues involved in this litigation.

Indeed, Plaintiff concedes in the Complaint that the FTC has—at least as to Nice-Pak—defined the very term, "flushable," that Plaintiff asks this Court to define in its request for injunctive relief. In paragraph 119 of the Complaint, Plaintiff alleges: "The Consent Order *defined 'flushable'* as 'disperses in a sufficiently short amount of time after flushing to avoid clogging, or other operational problems in, household and municipal sewage lines, septic systems, and other standard wastewater equipment.'" Compl. ¶ 119. Thus, as to Nice-Pak, Plaintiff has alleged that a definition of "flushable" and standards for making that determination are not only within the FTC's technical expertise, but areas the FTC has already addressed.

### 2. The specific question at issue is particularly within the FTC's discretion to resolve.

Plaintiff wrongly argues that the agency discretion factor disfavors primary jurisdiction because "[t]he FTC has explicitly declined to provide any further clarification or interpretation of the definition of 'flushable' when asked by a court to do so." Pl's Opp., Doc. 65 at 11. This is untrue. Plaintiff bases this statement on the FTC's response to the Eastern District of New York in the *Kurtz* and *Belfiore* cases. Yet, as Plaintiff itself acknowledges, the FTC responded by referring the parties and the court to the FTC Consent Order with Nice-Pak "for guidance on the Commission's views regarding representations of 'flushability.'" Compl. ¶ 127. Put another way, the FTC *itself* has said that the Consent Order with Nice-Pak is the most up-to-date guidance on the definition of flushability. Any attempt by Plaintiff to second-guess that definition by suggesting that the Consent Order is insufficient, as they do in this case, thus relates directly to an issue particularly within the FTC's discretion to resolve.

10

### 3. Court-ordered injunctive relief would create a substantial danger of inconsistent rulings.

Plaintiff's claim that "[t]here is no risk of inconsistent rulings" posed by this Court presiding over injunctive relief that would overlap with the FTC's Consent Order is belied by the correspondence between the FTC and the New York City Law Department. Here, Plaintiff's request for court-ordered injunctive relief is an argument that the FTC's Consent Order does not go far enough to regulate Nice-Pak's sale of flushable wipes. That is the *very same argument* made by the New York City Law Department to the FTC when, as part of the notice-and-comment process, it asked the FTC to require Nice-Pak to provide greater substantiation for its "flushability" representations and to take additional enforcement action, including pursuing statutory penalties for violations of the Order. (*See generally* Ex. E to the Lewis Decl., Doc. 45-7.) In response, the FTC committed to "closely monitor" Nice-Pak's compliance with the Consent Order, but reiterated its position that the Consent Order *itself* provides an adequate set of remedies for New York City's concerns. *See* Ex. A to the Lewis Decl., Doc. 45-3 ("After consideration of your comment, the Commission has determined that the relief set forth in the consent agreement is appropriate and sufficient to remedy the violations alleged in the complaint.").

In other words, Plaintiff's request for injunctive relief is a transparent second-guessing of the FTC. Plaintiff is asking this Court to conclude that the FTC's Consent Order with Nice-Pak did not go far enough to ensure that the wipes it manufactures are "flushable." Granting the injunctive relief that Plaintiff requests will therefore *necessarily* conflict with the Consent Order.

Tellingly, plaintiffs in other flushable wipes litigation have conceded that the Consent Order renders injunctive relief "duplicative" and therefore inappropriate. In similar litigation filed against flushable wipes manufacturers in the District of Minnesota, *City of Wyoming, et al. v. Procter & Gamble Co., et al.*, No. 15-cv-02101 JRT-TNL (D. Minn.), the plaintiffs took the

11

position during class certification briefing that the Consent Order between Nice-Pak and the FTC leaves them unable to pursue injunctive relief claims against Nice-Pak: "Obviously, any injunctive relief Plaintiffs could obtain against Nice-Pak would be duplicative of the FTC's relief." (Pls.' Reply in Supp. of Class Cert., Doc. 681 at 31, publicly available version attached as Exhibit A.)

### 4. The "prior application" factor is irrelevant to this case.

Finally, Plaintiff advances a procedural objection to primary jurisdiction, arguing that there is no "pending FTC application." Pl's Opp., Doc. 65 at 14. Yet, Plaintiff fails to cite any authority to suggest that the prior application factor is a fixed requirement. Indeed, Plaintiff concedes there is no "fixed formula" for applying the doctrine of primary jurisdiction. *Id.* at 8. More importantly, the need for a "prior application" goes out the window when there is undisputed evidence of an *ongoing* Consent Order between the FTC and the regulated entity on whose behalf the parties are seeking to invoke the doctrine of primary jurisdiction.

Against all of this, Plaintiff attempts to force Defendants to prove a negative. Repeatedly Plaintiff asserts, without support, that the FTC is "inactive" and faults Defendants because they "have not provided the Court with a single instance" of evidence in which the FTC has requested information from Nice-Pak, imposed a fine, or taken enforcement measures. Pl's Opp., Doc. 65 at 15. But Defendants have provided this Court with evidence (1) in the form of the FTC's own public commitment to "closely monitor Nice-Pak's future activities" and enforce the Consent Order, and (2) in the form of direction provided from the FTC to the parties in *Belfiore* that they should look to the Consent Order for guidance on the FTC's definition of "flushable." In light of those undisputed statements by the agency, the most direct conclusion from agency inaction is not that the FTC is asleep at the wheel, but that the agency is doing what it has said it would do and, simply, has concluded that Nice-Pak is complying with its Consent Order obligations.

### III. <u>CONCLUSION</u>

Plaintiff's attempts to evade primary jurisdiction by mischaracterizing the Consent Order between Nice-Pak and the FTC underscores the fact that the agency has committed to "closely monitor" the very issues that Plaintiff claims merit injunctive relief. For that reason, Defendants respectfully request that this Court grant their Motion to Dismiss and dismiss Plaintiff's claims as inconsistent with the Consent Order.

Respectfully submitted,

**/s/ Molly H. Craig**
Molly H. Craig (6671)
172 Meeting St.
Charleston, CS 29401
Tel:     843.577.1215
Email:  molly.craig@hoodlaw.com


John Q. Lewis, admitted *pro hac vice*
Michael R. Ruttinger, admitted *pro hac vice*
Chelsea M. Croy Smith, admitted *pro hac vice*
Tucker Ellis LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113
Tel:     216.592.5000
Fax:     216.592.5009
Email:  john.lewis@tuckerellis.com
            michael.ruttinger@tuckerellis.com
            chelsea.smith@tuckerellis.com

*Attorneys for Defendants Costco Wholesale Corporation, CVS Health Corporation, and Target Corporation*