**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**

| | | |
|---|---|---|
| COMMISSIONERS OF PUBLIC WORKS OF THE CITY OF CHARLESTON, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) ) | No. 2:21-cv-00042-RMG |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| COSTCO WHOLESALE CORPORATION, CVS HEALTH CORPORATION, KIMBERLY-CLARK CORPORATION, THE PROCTER & GAMBLE COMPANY, TARGET CORPORATION, WALGREENS BOOTS ALLIANCE, INC. and WAL-MART INC., | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

---

**REPLY IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS PURSUANT TO RULE 12(b)(1) FOR LACK OF STANDING, AND, IN THE ALTERNATIVE, TO DISMISS PURSUANT TO RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM**

---

## **TABLE OF CONTENTS**

Page

INTRODUCTION ...................................................................................................1

LAW AND ARGUMENT ..........................................................................................3

     I.     This Court should disregard or strike Plaintiff's evidence attached to its Opposition because they are improper at the motion to dismiss stage. .....................................................................................................3

     II.     Nothing in Plaintiff's Opposition overcomes the Charleston Water System's failure to allege facts sufficient to establish Article III standing. ...................................................................................................4

          A.     The Complaint's vague allegation of "ongoing" expenses does not demonstrate that the Charleston Water System fears an "imminent," "concrete" injury in fact caused by Defendants' flushable wipes. ............................................4

          B.     Any alleged harm is not "fairly traceable" to Defendants or "redressable" by the relief Plaintiff seeks. ..................................5

     III.     Plaintiff has failed to state a claim sufficient to survive a Rule 12(b)(6) motion to dismiss. ..................................................................8

          A.     Plaintiff's proximate cause allegations are legally insufficient. ................................................................................8

          B.     South Carolina law does not recognize any type of nuisance claim—public or private—arising out of the sale or use of a product. ........................................................................................9

          C.     The Complaint fails to state a claim for trespass. ....................11

          D.     Plaintiff has failed to state a claim for strict liability design defect or failure to warn under South Carolina law. ................12

               1.     A fatal pleading deficiency requires dismissal of both of Plaintiff's strict liability claims. ................................12

               2.     Plaintiff's design-defect claim should be dismissed because Plaintiff concedes that it fails to allege a reasonable alternative design. ......................................14

i

3.    Plaintiff's strict liability failure-to-warn claim must be dismissed. ................................................................15

E.    Plaintiff's negligence claim fails because the Complaint alleges a duty of care that is not recognized by South Carolina law. ................................................................17

IV.    The allegations in the Complaint do not support Plaintiff's request for a nationwide permanent injunction. ................................18

V.    Application of South Carolina's door-closing statute to Plaintiff's nationwide class claims is not premature ...............................19

CONCLUSION ................................................................20

# **TABLE OF AUTHORITIES**

Page

**Cases**

*Bey v. Genano*, No. PWG-16-2800, 2017 WL 1315530
    (D. S. C. April 10, 2017) .......................................................................... 1, 3

*Brading v. Cnty of Georgetown*, 327 S.C. 107, 90 S.E.2d 4 (1997) ............................................. 10

*Brooks v. GAF Materials Corporation*, 41 F.Supp.3d 474 (D.S.C. 2014) .................................... 17

*Callum v. CVS Health Corp.*, 137 F. Supp. 3d 817 (D. S. C. 2015) ............................................ 1, 3

*Camden Cnty. Bd. Of Chosen Freeholders v. Beretta, U.S.A. Corp.*,
    273 F.3d 536 (3d Cir. 2001) ...............................................................11

*Charleston Dry Cleaners & Laundry, Inc. v. Zurich Am. Ins. Co.*,
    355 S.C. 614, 586 S.E.2d 586 (2003) ............................................. 17

*Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532 (4th Cir. 2007) ......................... 18

*City of Greenville v. W.R. Grace & Co.*, 640 F.Supp. 559 (D.S.C. 1986) ................................10, 11

*City of Perry, Iowa v. Procter & Gamble Co.*, 188 F. Supp. 3d 276 (S.D.N.Y. 2016) .............. 6, 10

*City of Wyoming v. Procter & Gamble Co.*, 210 F. Supp. 3d 1137 (D. Minn. 2016) ..................... 6

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ................................................. 4, 6

*Crider v. Infinger Transportation Co.*, 248 S.C. 10, 148 S.E.2d 732 (1966) .................................. 9

*Dominion Carolina Gas Transmission, LLC v. 1.169 Acres, in Richland Cnty.,
    S.C. located on Parcel R39100-02-05*, 218 F. Supp.3d 476 (D.S.C. 2016) .............. 18, 19

*Edwards v. City of Goldsboro*, 178 F.3d 231 (4th Cir. 1999) ........................................................ 1

*Farmer v. Monsanto Corporation*, 353 S.C. 553 S.E.2d 325 (2003) .................................... 19, 20

*Finnigan v. U.S.*, No. 5:15-cv-3515, 2016 WL 5858715 (D.S.C. Aug. 5, 2016) ......................... 17

*Fisher v. Pelstring*, 817 F. Supp. 2d 791 (D. S.C. 2011) .............................................................. 14

*Good v. Am. Water Works Co.*, No. CIV.A. 2:14-01374,
    2015 WL 3506957 (S.D.W. Va. June 3, 2015) ........................................................10, 11

*Hilaire v. DeWalt Indus. Tool Co.*, 54 F. Supp. 3d 223 (E.D.N.Y. 2014) ..................................... 14

iii

*Holland ex rel. Knox v. Morbark, Inc.*, 407 S.C. 227, 754 S.E.2d 714 (Ct. App. 2014)............... 16

*In re PEC Solutions, Inc. Sec. Litig.*, 418 F.3d 379 (4th Cir. 2005)............................................. 15

*King v. J. C. Penney Co.*, 238 S.C. 336, 120 S.E.2d 229 (1961) ..................................................... 9

*Lawing v. Univar, USA, Inc.*, 415 S.C. 209, 781 S.E.2d 548 (2015) ................................ 12, 13, 16

*Lee v. Stewart*, 218 N.C. 287, 10 S.E.2d 804 (1940) ...................................................................... 12

*Lindsey-Grobes v. United Airlines, Inc.*, No. GJH-14-00857,
     2014 WL 5298030 (D. Md. Oct. 14, 2014)............................................................ 2, 3, 4

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ...................................................................... 7

*Messier v. Adicks*, 251 S.C. 268 (1968) ........................................................................................... 8

*Mirant Potomac River, LLC v. U.S. E.P.A.*, 577 F.3d 223 (4th Cir. 2009) ...................................... 6

*Moore v. Duke*, 84 Vt. 401, 80 A. 194 (1911) ................................................................................ 12

*Preserve at Connetquot Homeowners Ass'n, Inc. v. Costco Wholesale Corp.*,
     No. 17-CV-7050 (JFB) (AYS), 2019 WL 337093 (E.D.N.Y. Jan. 28, 2019)...................... 7

*Proctor & Schwartz, Inc. v. Rollins*, 634 F.2d 738 (4th Cir. 1980)......................................... 19, 20

*Rayfield v. S.C. Dep't of Corr.*, 297 S.C. 95, 374 S.E.2d 910 (Ct. App. 1988) ............................ 17

*Republican Party v. Martin*, 980 F.2d 943 (4th Cir. 1992) ............................................................ 1

*Rife v. Hitachi Const. Machinery Co., Ltd.*, 363 S.C. 209,
     609 S.E.2d 565 (Ct. App. 2005)...................................................................................... 9

*Ryan v. Eli Lilly & Co.*, 514 F. Supp. 1004 (D. S.C. 1981)..................................................... 2, 8, 9

*Safety-Kleen, Inc. (Pinewood) v. Wyche,* 274 F.3d 846 (4th Cir. 2001) ....................................... 18

*Snow v. City of Columbia*, 305 S.C. 544, 409 S.E.2d 797 (Ct. App. 1991) .................................. 12

*Tioga Pub. Sch. Dist. v. U.S. Gypsum Co.*, 984 F.2d 915 (8th Cir. 1993).....................................11

*Tuttle Dozer Works, Inc. v. Gyro-Trac (USA), Inc.*, 463 F. Supp. 2d 544 (D.S.C. 2006).............. 19

*Veney v. Wyche*, 293 F.3d 726 (4th Cir. 2002) .............................................................................. 15

*Zachair, Ltd. v. Driggs*, 965 F. Supp. 741 (D. Md. 1997) ......................................................... 1, 3

**Rules**

Fed. R. Civ. P. 12(b)(1) ............................................................................................ 20

Fed. R. Civ. P. 12(b)(6) ............................................................................ 1, 2, 8, 20

Fed. R. Civ. P. 12(f) ................................................................................................... 4

**Other Authorities**

S.C. Code § 15–5–150 ...................................................................................... 19, 20

S.C. Code Ann. § 15–73–10 ............................................................................. 12, 13

S.C. Code Ann. § 15–73–20 (2005) ....................................................................... 16

S.C. Code Ann. § 15–73–30 (2005) ....................................................................... 13

**Treatises**

1 G. Addison, A TREATISE ON THE LAW OF *553 TORTS, 388 (Wood ed. 1881) ............... 12

Restatement (Second) of Torts § 402A ................................................................... 13

Restatement (Second) of Torts § 821B ................................................................... 10

Restatement (Second) of Torts, § 158, comment i, illustration 3 (1965) ...................... 12

## INTRODUCTION

Faced with a challenge to the legal sufficiency of its Class Action Complaint, Plaintiff, the Commissioners of Public Works of the City of Charleston ("Charleston Water System"), attempts to cure its pleading deficiencies through a combination of new damages theories (which were not asserted in the Complaint), affidavits, and an expert witness declaration procured to oppose the Defendants' Motion to Dismiss (none of which was referenced in or attached to the Complaint). A Motion to Dismiss, however, "test[s] the sufficiency of a complaint," not the merits or the plaintiff's ability to procure expert witnesses. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999) ("[I]mportantly, [a Rule 12(b)(6) motion] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.") (quoting *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)).

When the allegations in a Complaint are legally deficient, all the expert witnesses in the world cannot resuscitate the Plaintiff's claims because the Court may not consider material beyond the pleadings at the motion to dismiss stage. *See, e.g.*, *Bey v. Genano*, No. PWG-16-2800, 2017 WL 1315530, at *2 (D. S.C. April 10, 2017) ("Where, as here, a plaintiff attempts to cure pleading deficiencies by making factual assertions in a memorandum opposing the motion to dismiss, the Court may not consider them with respect to determining whether plaintiff has filed a plausible claim."); *Callum v. CVS Health Corp.*, 137 F. Supp. 3d 817, 859 (D. S.C. 2015) (recognizing that a "plaintiff 'is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint'") (quoting *Zachair, Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997)). This Court should therefore disregard the declaration and affidavits attached to Plaintiffs' Opposition, which are irrelevant to the issue of whether Plaintiff's *Complaint* is legally

sufficient. *See Lindsey-Grobes v. United Airlines, Inc.*, No. GJH-14-00857, 2014 WL 5298030, at *5 (D. Md. Oct. 14, 2014) ("An affidavit attached to an opposition to a motion to dismiss, however, is no place for Plaintiff to add material facts to a deficient complaint.").

Without the support of the new evidence attached to Plaintiff's brief—and even with it—Plaintiff's factual allegations fall well short of what it must allege to establish Article III standing. The Charleston Water System's attempt to leverage *one word*—"ongoing"—in its Complaint, *see* Compl. ¶ 150, is not enough to establish that a future flushable wipes-related injury is both "concrete" and "imminent," as the well-established standard for Article III standing requires. Nor has Plaintiff identified anything in the Complaint to overcome the traceability problems identified in the Defendants' Motion to Dismiss, particularly in light of the fact that the Charleston Water System itself has admitted—in its own Complaint—that the damages it so vaguely alleges are contributed to by any number of non-flushable materials that users put into its system *unrelated* to flushable wipes.

The same is true for Plaintiff's inability to survive Defendants' Rule 12(b)(6) motion to dismiss for failure to state a claim. The vague and speculative allegations in Plaintiff's Complaint remain insufficient to establish causation for *any* of the Charleston Water System's claims as a matter of law, both because Plaintiff has not alleged any facts to connect any "particular defendant" to its alleged injuries, *Ryan v. Eli Lilly & Co.*, 514 F. Supp. 1004, 1018 (D. S.C. 1981), and because South Carolina has rejected the collective liability theories on which Plaintiff admittedly depends. Each of Plaintiff's claims likewise fail individually for the reasons identified in Defendants' opening motion, which Plaintiff's Opposition simply fails to refute.

## LAW AND ARGUMENT

**I.**     **This Court should disregard or strike Plaintiff's evidence attached to its Opposition because they are improper at the motion to dismiss stage.**

To begin, this Court should reject Plaintiff's attempt to cure pleading deficiencies by attaching evidence beyond the pleadings, which has been designed to bolster and fill in missing allegations from Plaintiff's Complaint. Specifically, Plaintiff has attached the declaration of an expert witness, Barry Orr, and three affidavits (Baker S. Mordecai, P.E., Michael Fu Man Yip, and Chadwick Abrams), to which Plaintiff cites liberally throughout its brief in opposition. Indeed, virtually all of Plaintiff's arguments regarding Article III standing—and the requirement that Plaintiff allege facts sufficient to demonstrate a concrete, imminent injury in fact—rely on these affidavits, rather than the actual allegations in Plaintiff's Complaint.

Plaintiff's strategy of curing pleading deficiencies with a declaration and affidavits outside the pleadings is improper. Courts within the Fourth Circuit generally, and the District of South Carolina specifically, have rejected this very approach. *Bey*, 2017 WL 1315530 at *2 ("Where, as here, a plaintiff attempts to cure pleading deficiencies by making factual assertions in a memorandum opposing the motion to dismiss, the Court may not consider them with respect to determining whether plaintiff has filed a plausible claim."); *Callum v. CVS Health Corp.*, 137 F. Supp. 3d at 859 ("plaintiff 'is bound by the allegations contained in its complaint and cannot, through the use of motion briefs, amend the complaint'") (quoting *Zachair,* 965 F. Supp. at 748 n.4); *Lindsey-Grobes*, 2014 WL 5298030, at *5 ("[I]t is well-established that a plaintiff cannot amend his complaint by asserting new facts or exhibits in an opposition to a motion to dismiss.") (citing *Zachair*, 965 F. Supp. 741 74 n.4)).

Not only are Plaintiff's affidavits and declaration irrelevant to this Court's consideration of a Rule 12 motion, they also constitute grounds for this Court to exercise its authority to strike immaterial matters from the pleadings under Rule 12(f). As the court in *Lindsey-Grobes v. United Airlines, Inc.* explained:

> The Court will not consider the portions of Plaintiff's affidavit that add new facts and effectively amend Plaintiff's complaint to reflect statements regarding Plaintiff's job performance. As such, the Court will grant, in part, United's Motion to Strike Plaintiff's Affidavit Submitted in Opposition to United's Motion to Dismiss (ECF No. 13–2) by striking paragraphs 1 through 20 of the affidavit, which address Plaintiff's job performance and which were not included in the original complaint.

2014 WL 5298030 at *5. A Motion to Strike under Rule 12(f) can be raised on the trial court's own authority. To the extent that this Court does not disregard this new evidence, Defendants request that this Court exercise its independent authority to strike these materials from the docket.

## II. Nothing in Plaintiff's Opposition overcomes the Charleston Water System's failure to allege facts sufficient to establish Article III standing.

### A. The Complaint's vague allegation of "ongoing" expenses does not demonstrate that the Charleston Water System fears an "imminent," "concrete" injury in fact caused by Defendants' flushable wipes.

As Defendants explained in their opening Motion, a plaintiff's burden to prove Article III standing requires factual allegations of an "actual" (*i.e.*, present) or "imminent" injury. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Plaintiff's allegations are insufficient to show either. The gravamen of Plaintiff's Complaint focused on the latter category, with allegations that the Charleston Water System is "likely to sustain . . . future injuries," Compl. ¶¶ 133, 162. In their Motion to Dismiss, Defendants illustrated the attenuated bases for Plaintiff's claimed "imminent" future injury, prompting Plaintiff to respond that its lawsuit is *also* about present, ongoing injuries.

But Plaintiff failed to—and still does not—allege any basis for recovering damages for past or even present costs or expenses allegedly caused by flushable wipes.

In its Opposition, Plaintiff attempts to retroactively shift its damages theory to suggest that the Charleston Water System is also claiming "other expenses incurred related to Flushable Wipes" caused by "ongoing damage." *See* Pl's Opp, Doc. 64 at 8. But Plaintiff does not seek any such relief in the Complaint. Nor does the Complaint have *any* factual allegations to support this new present-injury theory. The only two allegations in the Complaint to which the Charleston Water System points are open-ended allegations in the form of legal conclusions without any supporting *factual* allegations:

- "In addition to other expenses incurred related to Flushable Wipes, in October 2018, Plaintiff incurred unnecessary expenses in connection with major maintenance of its sewage facilities due to clogs caused by Flushable Wipes. . . ." Compl. ¶ 50.

- "Defendants are each a substantial factor causing the ongoing damage to Plaintiff and Class members' property . . . ." Compl. ¶ 150.

Nothing in Plaintiff's Complaint offers any factual detail as to what these "other expenses" and "ongoing damage" are, much less any factual allegations demonstrating that such alleged expenses and damage are in fact caused by Defendants' flushable wipes, as opposed to the wide variety of other non-flushable materials that are disposed of in the Charleston Water System by its users. *See* Defs' Mot. to Dismiss, Doc. 46-1 at 10.

**B.     Any alleged harm is not "fairly traceable" to Defendants or "redressable" by the relief Plaintiff seeks.**

Defendants' opening brief also showed that the Charleston Water System's Complaint fails to establish Article III's "fairly traceable" requirement because Plaintiff:

- Failed to plead a link between *each* Defendant's flushable wipes and the supposedly imminent future harm;

5

- Acknowledged many other factors that could cause any future harm; and

- Admitted that Plaintiff informed residents not to flush any flushable wipes, confirming that its supposed injury stems from *those residents'* decision to disregard Plaintiff's instructions, *see* Compl. ¶¶ 51-53.

Plaintiff responds only to the first and third points. In doing so, it mischaracterizes the Complaint and improperly disaggregates the reasons why Plaintiff's claim of causation is unduly attenuated. *See Clapper*, 568 U.S. at 414 (considering the causal picture as a whole); *Mirant Potomac River, LLC v. U.S. E.P.A.*, 577 F.3d 223, 226 (4th Cir. 2009) ("An injury sufficient to meet the causation and redressability elements of the standing inquiry must result from the actions of the respondent, not from the actions of a third party beyond the Court's control.")

First, Plaintiff's argument about traceability rests entirely on two flushable wipes cases, *City of Wyoming v. Procter & Gamble Co.*, 210 F. Supp. 3d 1137 (D. Minn. 2016) and *City of Perry, Iowa v. Procter & Gamble Co.*, 188 F. Supp. 3d 276 (S.D.N.Y. 2016), that bear little resemblance to the Complaint here. While Plaintiff focuses on injunctive relief requests made in those cases, the core of both the *Wyoming* and *Perry* cases were factual allegations that each of the defendants *sold* flushable wipes in and around the municipalities in question and that those wipes were *actively identified* as the source of *present damages* for which the plaintiffs were seeking compensation. *See City of Wyoming*, 210 F. Supp. 3d at 1152 ("Plaintiffs have pleaded that 'flushable' wipes are physically and literally clogging their water treatment facilities and that those wipes make up 25% of the respective clogs"); *City of Perry*, 188 F. Supp. 3d at 283-84 (recognizing that while standing presented a "close" question, "at the motion to dismiss stage, however, Perry's allegations of concrete injury to its water management systems (and its allegations that flushable wipes were at least partially responsible for the clogs), combined with its allegations about the

availability and sale of Defendants' products, suffices to show an injury that is fairly traceable to Defendants' conduct."). The Charleston Water System's limited factual allegations, lacking any detail regarding "ongoing" injuries, contrast starkly with *Wyoming* and *Perry*.

Plaintiff's Complaint is much more akin to the Complaint found deficient in *Preserve at Connetquot Homeowners Ass'n, Inc. v. Costco Wholesale Corp.*, No. 17-CV-7050 (JFB) (AYS), 2019 WL 337093 (E.D.N.Y. Jan. 28, 2019), which is no surprise given that the Complaint contains the same requests for relief and was filed by the same counsel. Plaintiff's unpersuasive attempt to distinguish *Preserve* relies on nothing other than Plaintiff's own *ipse dixit* legal argument and an improper affidavit outside of the pleadings:

> Here, in stark contrast to *Preserve*, the Complaint alleges that Plaintiff suffered repeated recent clogs in its system, consumers continue to flush Defendants' Flushable Wipes into the sewer system in and around Charleston and Plaintiff is suffering, and reasonably expects to continue to suffer, ongoing harm from Defendants' Flushable Wipes. *See supra* §II; Mordecai Aff. at ¶¶7-24.

Pl's Opp., Doc. 64 at 12. If the Complaint in fact "alleges" these things, Plaintiff could cite to a paragraph of their pleading that says so. They cannot.

Second, Plaintiff attempts to respond to Defendants' redressability challenge by suggesting that the independent decisions of its residents to disregard the Charleston Water System's requests and instructions not to dispose of flushable wipes down their toilets is somehow immaterial. That is baseless. Plaintiff pleads that its injury *necessarily* stems from residents independently flushing certain products down their toilets. *See* Compl. ¶ 50 (alleging that one of the masses of alleged flushable wipes removed from Plaintiff's system resulted "from residents flushing Flushable Wipes down their toilets"). The Charleston Water System's allegations confirm that its injuries going forward would stem from "the unfettered choices" of Charleston residents to disregard

Plaintiff's instructions to them. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992) (finding lack of standing where "regulation (or lack of regulation) of *someone else* was implicated").

### III.    Plaintiff has failed to state a claim sufficient to survive a Rule 12(b)(6) motion to dismiss.

#### A.    Plaintiff's proximate cause allegations are legally insufficient.

Article III standing aside, Plaintiff fails to plead a cognizable injury under South Carolina law. *See* Defs' Mot., Doc. 46-1 at 11-14. Rather than point to any allegations in the Complaint sufficient to meet Plaintiff's proximate cause burden, which requires allegations "that the injury or damage was caused by the actionable conduct *of the particular defendant*," *Eli Lilly & Co.*, 514 F. Supp. at 1018, instead of an ambiguous group of potential tortfeasors, Plaintiff merely asserts that courts generally treat proximate case "as a factual question for the jury." Pl's Opp., Doc. 64 at 15. That principle may be true when a plaintiff has sufficiently alleged proximate cause, but it does not preclude dismissal when the allegations are legally insufficient on the face of the Complaint.

Indeed, Plaintiff largely disregards *Ryan v. Eli Lilly*, in which the District of South Carolina unequivocally articulated this burden, and attempts to distinguish *Messier v. Adicks*, 251 S.C. 268 (1968), as having been postured after a "jury verdict" and by suggesting that dismissal is premature before discovery takes place. Pl's Opp., Doc. 64 at 16. In making this argument, Plaintiff essentially *admits* its pleading inadequacies on the issue of proximate cause. It cannot cure its failure to allege proximate cause with speculation about what discovery may show or references to the evidence belatedly attached to its Opposition. *See id.*

Nor can Plaintiff satisfy proximate cause by relying on collective liability theories, *see* Pl's Opp., Doc. 64 at 18-21, because South Carolina courts have uniformly rejected such arguments.

*Ryan*, 514 F. Supp. at 1018-19 (rejecting market-share liability as "violat[ing] established public policy and fundamental principles of tort law and procedure [in South Carolina] in a variety of ways."); *King v. J. C. Penney Co.*, 238 S.C. 336, 120 S.E.2d 229 (1961); *Crider v. Infinger Transportation Co*., 248 S.C. 10, 148 S.E.2d 732 (1966). Tellingly, Plaintiff does not cite *a single state or federal South Carolina case* applying market-share liability, enterprise liability, or *any* other collective liability theory. There is no case because, as the district court made clear in *Ryan*, South Carolina courts have uniformly rejected such theories. 514 F. Supp. at 1018.

###   B.   South Carolina law does not recognize any type of nuisance claim— public or private—arising out of the sale or use of a product.

As Defendants outlined in their initial motion, South Carolina law does not recognize a claim for nuisance arising out of the sale or use of an allegedly defective product placed in the stream of commerce. Together, the South Carolina courts and General Assembly have developed a robust body of product liability law permitting litigants to recover for product-related injuries on one of three recognized theories: "negligence, strict liability, and warranty." *Rife v. Hitachi Const. Machinery Co., Ltd.*, 363 S.C. 209, 215, 609 S.E.2d 565, 568 (Ct. App. 2005). Neither has expanded that list of recognized products-related claims to include a nuisance claim, and for good reason. South Carolina law requires proof of common elements for these three recognized theories;[1] a nuisance claim, however, does not comport with those elements and does not equip courts with the tools needed to adjudicate damages caused by legal and regulated conduct, like the

---

[1] Regardless of the theory of recovery alleged by the plaintiff, he must establish the following three elements: (1) the plaintiff was injured by the product; (2) the injury occurred because the product was in a defective condition, unreasonably dangerous to the user; and (3) the product, at the time of the accident, was in essentially the same condition as when it left the hands of the defendant. *Rife,* 363 S.C. at 215, 609 S.E.2d at 568.

sale of a product placed in the stream of commerce. *See Brading v. Cnty of Georgetown*, 327 S.C. 107, 115, 90 S.E.2d 4, 8 (1997) ("Nothing is a public nuisance which the law itself authorizes"); *see also* Restatement (Second) of Torts § 821B cmt. e ("If a defendant's conduct in interfering with a public right does not come within one of the traditional categories of the common law crime of public nuisance or is not prohibited by a legislative act, the court is acting without an established and recognized standard.").

Nor is there any support for Plaintiff's bald assertion that "case law from South Carolina and other courts within the Fourth Circuit clearly" have recognized "'a nuisance claim arising out of the sale or use of a product as opposed to the use of property.'" Pl's Opp., Doc. 64 at 30 (quoting *City of Perry,* a case cited by Defendants in their initial motion). Plaintiff's opposition cites exclusively to federal cases applying the law of states *other than South Carolina*, which does nothing to advance the interpretation of South Carolina law that Plaintiff urges. Pl's Opp., Doc. 64 at 30-31.

Moreover, the *only* case addressing South Carolina law referenced in Plaintiff's Opposition has nothing to do with validity of a nuisance claim arising out of the sale or use of a product. Plaintiff relies on *Good v. Am. Water Works Co.*, No. CIV.A. 2:14-01374, 2015 WL 3506957 (S.D.W. Va. June 3, 2015), presumably because it included, among many others, a claim for nuisance and because it later cited a District of South Carolina case recognizing the existence of negligence and strict liability tort claims arising out of the sale of an allegedly-defective product. *Id.* at *3 (citing *City of Greenville v. W.R. Grace & Co.*, 640 F.Supp. 559, 563 (D.S.C. 1986)). What Plaintiff fails to mention, however, is that these two things have nothing to do with one another: *Good* does not invoke South Carolina law when assessing validity of the nuisance claims

10

pled in that case, *id.* at *17, but rather relies on the analysis of South Carolina law in *W.R. Grace* when assessing the *negligence and strict liability* claims arising out of product-related property damage (because, of course, negligence and strict liability are two of South Carolina's approved products-related tort theories), 2015 WL 3506957, at *3-5. Similarly, *W.R. Grace* involved only negligence and warranty theories—not a nuisance claim—and considered whether, under South Carolina law, the plaintiff had "suffered . . . 'property damage' actionable in *negligence*." 640 F. Supp. at 563 (emphasis added). Plaintiff's citation to *Good* and *W.R. Grace*, which both considered tort theories squarely within South Carolina's limited sphere of claims available for damages arising out of the sale or use of a product, in fact strengthens *Defendants'* argument that South Carolina law has not and would not expand that limited sphere to include nuisance.

This Court must "enforce the boundary between the well-developed body of product liability law and public nuisance law… [lest] nuisance law 'would become a monster that would devour in one gulp the entire law of tort.'" *Camden Cnty. Bd. Of Chosen Freeholders v. Beretta, U.S.A. Corp.*, 273 F.3d 536, 540 (3d Cir. 2001) (quoting *Tioga Pub. Sch. Dist. v. U.S. Gypsum Co.*, 984 F.2d 915, 921 (8th Cir. 1993)). South Carolina already authorizes and regulates the sale and distribution of products within a body of well-developed theories that do not include nuisance claims. Plaintiff's nuisance claim in this case must be dismissed because it is nothing more than a product liability claim cloaked in a theory South Carolina law does not recognize.

### C.     The Complaint fails to state a claim for trespass.

Plaintiff's trespass arguments miss the forest for the trees. In South Carolina, trespass only lies when there is an unpermitted intrusion onto another's property – a physical or metaphorical "breaking" of one's enclosed property by unwarrantable entry:

11

> The unwarrantable entry on land in the peaceable possession of another is a trespass, without regard to the degree of force used, the means by which the enclosure is broken, or the extent of the damage inflicted. *Lee v. Stewart*, 218 N.C. 287, 10 S.E.2d 804 (1940). The entry itself is the wrong. Thus, for example, if one without license from the person in possession of land walks upon it, or casts a twig upon it, or pours a bucket of water upon it, he commits a trespass by the very act of breaking the enclosure. *See Moore v. Duke*, 84 Vt. 401, 80 A. 194 (1911); 1 G. Addison, A TREATISE ON THE LAW OF *553 TORTS, 388 (Wood ed. 1881); Restatement 2d of Torts, 158, comment i, illustration 3 (1965).

*Snow v. City of Columbia*, 305 S.C. 544, 552–53, 409 S.E.2d 797, 802 (Ct. App. 1991).  In this case, although Plaintiff describes the "costly consequences" of clogged wipes as "unwanted," Plaintiff does not explain how the flushing of waste—even if allegedly "mislabeled"—is "unwanted" for a sewer system designed to receive flushed waste. Pl's Opp., Doc. 64 at 33.  Plaintiff's theory apparently is that the act of flushing generally is not a trespass, but could be depending upon the quality of what is flushed.  But if that theory were recognized under South Carolina law, a trespass would occur each and every time a homeowner flushes an item Plaintiff deems "not flushable." Plaintiff's theory simply does not fit within the parameters of a trespass claim under South Carolina law.

    **D.**    **Plaintiff has failed to state a claim for strict liability design defect or failure to warn under South Carolina law.**

        **1.**    **A fatal pleading deficiency requires dismissal of both of Plaintiff's strict liability claims.**

Plaintiff's Opposition cannot salvage its strict liability claims because Plaintiff cannot remedy its fundamental pleading deficiency:  Plaintiff is not a "user or consumer" that can recover under South Carolina's strict liability statute, S.C. Code Ann. § 15–73–10, cause none of the products at issue reached Plaintiff in "substantially the same condition" as when sold.  *Lawing v. Univar, USA, Inc.*, 415 S.C. 209, 221–22, 781 S.E.2d 548, 554–55 (2015).

First, Plaintiff disregards *Lawing*'s explanation of what a "user" must be—one whom the product "reaches" while in substantially the same condition as when sold. Plaintiff's protestations that it need not have "acquired the product directly from the seller" or have "handled" the product prior to injury, (Pl's Opp., Doc. 64 at 36) are a red herring; there is no dispute that *Lawing* requires neither of a "user." What *Lawing* and § 15–73–10 do require, however, is physical proximity to the substantially unchanged product before the harm occurs—which Plaintiff cannot ever establish. Here, Plaintiff admittedly never was in physical proximity to the unchanged wipes prior to "flushing"—which is what Plaintiff defines as the wipes' only "foreseeable use." Pl's Opp., Doc. 64 at 38. Plaintiff's lack of direct interaction with the unchanged product pretermits recovery under *Lawing* as well as the comments to Section 402A of the Restatement of Torts (Second), which South Carolina's General Assembly expressly adopted as the expression of legislative intent for that section. S.C. Code Ann. § 15–73–30 (2005); Restatement (Second) of Torts § 402A cmt. *l* (1965)("'User' includes those who are *passively enjoying the benefit* of the product . . . as well as those who are *utilizing it* for the purpose of doing work upon it . . . .") (emphasis added).

Second, Plaintiff all but admits it must interact with the substantially unchanged product to recover under § 15–73–10 when it claims that the wipes "end up in Plaintiff's wastewater collection system *in virtually the same form in which they were sold*." Pl's Opp., Doc. 64 at 37 (emphasis added). Plaintiff's own Complaint undermines any suggestion the wipes are "in virtually the same form" by the time they reach Plaintiff, admitting that "as customers flush the wipes, they are often covered in grease, oil, hair and waste, which coat them in a thick layer of grime and hinder them from breaking down, creating 'ropelike clumps that have incredible strength.'" Compl. ¶ 52. Even viewing Plaintiff's current assertion that the wipes "do not sufficiently break

down and disperse" in the light most favorable to it, Pl's Opp., Doc. 64 at 37, by Plaintiff's own admission, the purported harm is not caused by the product as sold by Defendants. Both of Plaintiff's strict liability claims fail for this reason, and dismissal is warranted.

### 2. Plaintiff's design-defect claim should be dismissed because Plaintiff concedes that it fails to allege a reasonable alternative design.

Plaintiff acknowledges that it is "require[d]" to plead a feasible alternative design in order to state a design defect claim under South Carolina law. Pl's Opp., Doc. 64 at 28. However, Plaintiff does not dispute that its Complaint fails to identify a single alternative product or design. *See* Defs' Mot., Doc. 46-1 at 18-19. Instead, Plaintiff advances a series of wholly unsupported arguments outside the four corners of the Complaint that readily fail.

Plaintiff argues that Defendants can remove the word "flushable" from the product labels, but Plaintiff disregards that "an alternative design for the product's label" is insufficient under South Carolina law. Defs' Mot., Doc. 46-1 at 19 (citing *Fisher v. Pelstring*, 817 F. Supp. 2d 791, 817-18 (D. S.C. 2011). Nor are "non-flushable wipes" or "toilet paper" feasible alternative designs. Pl's Opp., Doc. 64 at 30-31; *see Hilaire v. DeWalt Indus. Tool Co.,* 54 F. Supp. 3d 223, 248 (E.D.N.Y. 2014) (dismissing claim where alternative was "an entirely different device from [the one complained about]").[2]

Conceding its failure to plead a feasible alternative design, Plaintiff attaches to its opposition brief a declaration that purports to identify a new, un-pleaded design alternative— namely, defendant Kimberly-Clark's Cottonelle Flushable Wipes. *See* Pl's Opp., Doc. 64 at 30

---

[2]     New York, like South Carolina, requires plaintiffs making design defect claims to demonstrate a "feasible alternative design" for the product at issue. *Id.* at 252.

(citing Orr Decl.). In doing so, Plaintiff completely disregards that it "cannot cure pleading deficiencies in its Complaint with such later-filed supporting documentation. *See* Section I, *supra*. Thus, the Court must disregard Plaintiff's improper declaration.

Even if the Court considers Plaintiff's improper declaration—and it should not—Plaintiff's new assertion that Kimberly-Clark's wipes are a feasible alternative cannot support its claim, because it contradicts Plaintiff's prior representation to the Court that Kimberly-Clark's wipes presently *do not* meet Plaintiff's flushability standards. *See Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (on motion to dismiss, courts need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit"). In their stipulation of settlement, Plaintiff and Kimberly-Clark stipulated that Kimberly Clark's wipes *do not* currently pass the IWSFG 2020: PAS 3 disintegration test (ECF No. 59-2 § 2.1(a)(ii)-(iv)), which directly contradicts Plaintiff's newfound assertion that Kimberly Clark's wipes "pass" the IWSFG 2020: PAS 3 disintegration test. *See* Orr. Decl. ¶¶ 11, 12, 19; *see also* Compl. ¶ 40 (alleging that testing showed "that none of the products" passed the purported IWSFG standard for flushability). Plaintiff's design defect claim should therefore be dismissed with prejudice. *See In re PEC Solutions, Inc. Sec. Litig.,* 418 F.3d 379, 391 (4th Cir. 2005) ("Leave to amend need not be given when amendment would be futile.").

### 3. Plaintiff's strict liability failure-to-warn claim must be dismissed.

Although Plaintiff has labeled this claim as one for "failure to warn," Plaintiff's theory—that Defendants should have warned "of the dangers that flushing the Flushable Wipes will cause," (Pl's Opp., Doc. 64 at 39)—is not a recognized "warning" theory under South Carolina law. Plaintiff takes issue not with the adequacy of a warning that was (or should have been) provided

with the product, but with the *nature of the product itself*. (Pl's Opp., Doc. 64 at 39)("the dangerous conduct is within the name of the product *itself*")(emphasis in original). This is not a claim for failure to warn; by Plaintiff's own definition, no "warning" would have made a "flushable wipe" safer.

Moreover, Plaintiff is not a "user" for whom any warning would have been intended in the first instance. *Lawing,* 415 S.C. at 223, 781 S.E.2d at 555-56 (agreeing with Petitioners that a "user" under the strict liability statute is the person "for whom any warnings . . . should have been intended"); Compl ¶ 150(a) (admitting the allegedly-deficient warning in this case—"instructing users to dispose of Flushable Wipes directly into the toilet"—was not intended for Plaintiff). Indeed, it is undisputed the wipes do not contain any warnings when they reach Plaintiff. *Holland ex rel. Knox v. Morbark, Inc*., 407 S.C. 227, 239, 754 S.E.2d 714, 721 (Ct. App. 2014) (affirming summary judgment in favor of manufacturer on failure to warn claim when the decals and warnings on the product were not present at the time of injury).

Finally, there is no duty under South Carolina law to warn of an open and obvious danger, and Plaintiff devotes a significant portion of its Complaint to establishing just that—the danger of flushing flushable wipes is widely known as "public enemy No. 1 for sewer systems nationwide." Compl. ¶ 27; *see also* ¶¶ 39-92. South Carolina's strict liability statute is clear: "[i]f the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery." *See* S.C. Code Ann. § 15–73–20 (2005). Plaintiff has stated no claim for failure to warn that is recognized by South Carolina law, and dismissal is required.

> **E.     Plaintiff's negligence claim fails because the Complaint alleges a duty of care that is not recognized by South Carolina law.**

Plaintiff concedes that South Carolina courts proceed with caution when deciding whether the defendant owes a duty of care to the plaintiff based on alleged negligence. *Rayfield v. S.C. Dep't of Corr.*, 297 S.C. 95, 374 S.E.2d 910 (Ct. App. 1988). In addition, the foreseeability of an injury alone is not sufficient to create a duty of care pursuant to South Carolina law. *Charleston Dry Cleaners & Laundry, Inc. v. Zurich Am. Ins. Co.*, 355 S.C. 614, 586 S.E.2d 586 (2003).

Instead of attempting to rebut these principles, Plaintiff cites two cases that involve facts and circumstances that are inapplicable to the allegations of the Complaint: *Finnigan v. U.S.*, No. 5:15-cv-3515, 2016 WL 5858715 (D.S.C. Aug. 5, 2016) and *Brooks v. GAF Materials Corporation*, 41 F.Supp.3d 474 (D.S.C. 2014). "Whether the law recognizes a particular duty is an issue of law to be determined by the court." *Brooks*, 41 F.Supp.3d at 478. In both the *Finnigan***Error! Bookmark not defined.** and *Brooks* cases, the plaintiffs had a direct relationship with the defendant that triggered a duty of care pursuant to South Carolina law. Finnigan was a federal prisoner who relied on a federal statute to assert that the United States failed to provide him with a safe environment, thereby causing a slip and fall injury followed by substandard medical care. 2016 W.L. 5858715 at *1. And in *Brooks*, the defendant manufacturer of roofing shingles had an obligation to the direct users of the shingles. Not surprisingly, the court found that if in fact the shingles were defective, the plaintiffs had a cause of action for negligence and other theories of recovery. *Brooks*, 41 F.Supp.3d at 484.

The case at bar is far different. Plaintiff has not alleged that it purchased defective flushable wipes from Defendants. Instead, Plaintiff invites this Court to find a duty of care owed by Defendants to Plaintiff, and other STP Operators nationwide, because it is theoretically possible,

based on opinion and speculation, that the defendants' products have been used by consumers, then combined with non-flushable wipes and multiple other substances, in proportions unknown, causing damages to the Charleston Water System. This is an invitation the Court should decline.

## IV.   The allegations in the Complaint do not support Plaintiff's request for a nationwide permanent injunction.

Plaintiff does not contest the key elements required to secure injunctive relief. Specifically, Plaintiff must establish: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Christopher Phelps & Assocs., LLC v. Galloway,* 492 F.3d 532 (4th Cir. 2007); *Safety-Kleen, Inc. (Pinewood) v. Wyche,* 274 F.3d 846 (4th Cir. 2001). Plaintiff cannot establish any of these factors. Notably, Plaintiff attempts to assert irreparable harm by citing monetary damages "estimated at tens (if not hundreds) of millions of dollars a year nationwide, caused by the directed use of Defendants' Flushable Wipes." *See* Pl's Opp, Doc. 64 at 32. Setting aside the speculation required to infer that Defendants' products have caused damages of "tens (if not hundreds) of millions of dollars" nationwide, Plaintiff alleges no *facts* to support this assertion. Indeed, Plaintiff does not even request damages in the Complaint. Instead, Plaintiff seeks a nationwide, permanent injunction that will require the Court to regulate the standards and utilization of flushable wipes from Florida to Alaska. The facts alleged in the Complaint simply do not support the extraordinary injunctive relief sought by the Plaintiff.

The only case cited by Plaintiff that interprets South Carolina and federal law regarding injunctive relief involved different facts, and a statutory right to injunctive relief. *Dominion*

*Carolina Gas Transmission, LLC v. 1.169 Acres, in Richland Cnty., S.C. located on Parcel R39100-02-05*, 218 F. Supp.3d 476 (D.S.C. 2016). In that action, the court granted plaintiff's request for injunctive relief based primarily on the Federal Natural Gas Act, which authorized the plaintiff utility to exercise eminent domain and take immediate possession of property easements. *Id.* at 478.

In the case at bar, Plaintiff has not alleged irreparable harm or a likelihood of success on the merits. Plaintiff's opinion that Defendants' products may have combined with non-flushable wipes and other debris is not sufficient. Speculation is no substitute for facts, so the Complaint should be dismissed.

## V.     Application of South Carolina's door-closing statute to Plaintiff's nationwide class claims is not premature.

Plaintiff's principal argument against application of South Carolina's door-closing statute—that it is "premature" and that the door-closing statute requires a "fact-sensitive analysis"— disregards multiple decisions applying the statute in the context of motions to dismiss and class allegations. In fact, the main case on which Plaintiff relies—*Tuttle Dozer Works, Inc. v. Gyro-Trac (USA), Inc.*, 463 F. Supp. 2d 544, 551 (D.S.C. 2006)—is not a class action decision at all. On the other hand, both the Fourth Circuit and the South Carolina Supreme Court have held that South Carolina's door-closing statute may be applied to class-action allegations on the pleadings.

In *Proctor & Schwartz, Inc. v. Rollins*, 634 F.2d 738 (4th Cir. 1980), the Fourth Circuit applied South Carolina's door-closing statute, S.C. Code § 15-5-150, on the pleadings, a fact Plaintiff tellingly disregards. And in *Farmer v. Monsanto Corporation*, 353 S.C. 553, 579 S.E.2d 325 (2003), cited prominently in Defendants' opening brief (but disregarded by Plaintiff), the

2:21-cv-00042-RMG    Date Filed 06/04/21    Entry Number 75    Page 26 of 28

South Carolina Supreme Court likewise applied the door-closing statute at the outset of the case *and in the context of a class action*. In doing so, the Supreme Court held unequivocally that the plaintiffs' putative class "may include only those eligible under § 15-5-150," thus limiting the ability of non-residents to join class action lawsuits pending in South Carolina courts. *Id.* at 559.

None of the defendants sued by Plaintiff are alleged to be created by or formed under the laws of South Carolina and, indeed, Plaintiff alleges that all of the moving defendants are residents of states other than South Carolina. *See* Compl. ¶¶ 12-18. Consequently, no discovery is necessary to resolve application of the door-closing statute and this Court should strike the nationwide class claims as a matter of South Carolina law.

## <u>CONCLUSION</u>

For the foregoing reasons, and those set forth in Defendants' Memorandum, Plaintiff's Complaint should be dismissed with prejudice for failure to allege Article III standing pursuant to Federal Rule of Civil Procedure 12(b)(1) or, alternatively, for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). To the extent any of Plaintiff's claims survive dismissal, Plaintiff's nationwide class claims should be stricken consistent with South Carolina's door-closing statute, S.C. Code § 15-5-150.

Respectfully submitted,

/s/ Molly H. Craig
Molly H. Craig (6671)
172 Meeting St.
Charleston, CS 29401
Tel:    843.577.1215
Email:  molly.craig@hoodlaw.com

John Q. Lewis, admitted pro hac vice
Michael R. Ruttinger, admitted pro hac vice
Chelsea M. Croy Smith, admitted pro hac vice
Tucker Ellis LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113
Tel:      216.592.5000
Fax:      216.592.5009
Email:  john.lewis@tuckerellis.com
          michael.ruttinger@tuckerellis.com
          chelsea.smith@tuckerellis.com

*Attorneys for Defendant Costco Wholesale
Corporation, CVS Health Corporation, and Target
Corporation*

/s/ Lisa A. Reynolds
Lisa A. Reynolds
W. Coleman Lawrimore
Anderson, Reynolds & Stephens, Llc
P.O. Box 87
37 ½ Broad Street
Charleston, SC 29401
Phone:  843.723.0185
Email:  lreynolds@arslawsc.com
          clawrimore@arslawsc.com

/s/ David J. Tecson
David J. Tecson (IL ARDC #6198108)
Loretto M. Kennedy (IL ARDC #6199092)
Chuhak & Tecson, P.C.
30 s. Wacker Drive, Suite 2600
Chicago, IL 60606
Phone:  312.444.9300
Email:  dtecson@chuhak.com
          lkennedy@chuhak.com

*Attorneys for Defendant Walgreens Boots Alliance,
Inc.*

/s/ Robert W. Foster, Jr.
Robert W. Foster, Jr. (Federal Bar No. 875)
Scott D. MacLatchie, Jr. (Federal Bar No. 13028)
Nelson Mullins Riley & Scarborough, LLP
1320 Main Street – 17th Floor
Post Office Box 11070 (29211-1070)
Columbia, SC 29201
Phone:  803.799.2000
Email:  robbie.foster@nelsonmullins.com
        scott.maclatchie@nelsonmullins.com

and

Andrew M. Connor (Federal Bar No. 11191)
Nelson Mullins Riley & Scarborough, LLP
151 Meeting Street, Suite 600
Charleston, SC 29401
Phone:  843.853.5200
Email:  Andrew.connor@nelsonmullins.com

/s/ Eileen M. Patt
Harold P. Weinberger, admitted *pro hac vice*
Eileen M. Patt, admitted *pro hac vice*
Harry P. Morgenthau, admitted *pro hac vice*
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of Americas
New York, NY 10036
Phone:  212.715.9132
Email:  hweinberger@kramerlevin.com
        epatt@kramerlevin.com

*Attorneys for Defendant The Proctor & Gamble Company*

/s/ Gray T. Culbreath
Gray T. Culbreath (Federal Bar No. 5647)
Gallivan, White & Boyd, P.A.
PO Box 7368
Columbia, SC 29202-7368
Phone:  803.779.1833
Email:  gculbreath@gwblawfirm.com

*Attorney for Wal-Mart, Inc.*

013715\000025\5160892.1