UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | |
|---|---|
| COMMISSIONERS OF PUBLIC WORKS OF THE CITY OF CHARLESTON (d.b.a. Charleston Water System), Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>COSTCO WHOLESALE CORPORATION, CVS HEALTH CORPORATION, KIMBERLY-CLARK CORPORATION, THE PROCTER & GAMBLE COMPANY, TARGET CORPORATION, WALGREEN CO. and WAL-MART, INC.,<br><br>Defendants. | Civil Action No. 2:21-cv-00042-RMG<br><br>CLASS ACTION<br><br>AMENDED CLASS ACTION COMPLAINT<br><br><br><br>JURY TRIAL DEMANDED |

The Commissioners of Public Works of the City of Charleston (d.b.a. "Charleston Water System") ("Plaintiff") brings this action on behalf of itself and all other similarly situated entities that own and/or operate sewage or wastewater conveyance and treatment systems, including municipalities, authorities, and wastewater districts (collectively, "STP Operators"), and alleges upon information and belief, formed after an inquiry reasonable under the circumstances, except as to those allegations which pertain to the named Plaintiff (which are alleged on personal knowledge), as follows:

## NATURE OF THE ACTION

1.     Plaintiff brings this class action against defendants Costco Wholesale Corporation ("Costco"), CVS Health Corporation ("CVS"), Kimberly-Clark Corporation ("Kimberly-Clark"), The Procter & Gamble Company ("Procter & Gamble"), Target Corporation ("Target"), Walgreen Co. ("Walgreens"), and Wal-Mart, Inc. ("Wal-Mart") (collectively, "Defendants") to seek injunctive relief from ongoing and recurring damage caused in large part by Defendants' deceptive, improper or unlawful conduct in the design, marketing, manufacturing, distribution and/or sale of wipes labeled as "flushable."  Purportedly flushable wipes (referred to herein as "Flushable Wipes") include all moist wipe products marketed and labeled as safe to flush, safe for plumbing, safe for sewer systems, and/or biodegradable.

2.     The term "flushable" is commonly defined and understood to mean suitable for disposal by flushing down a toilet.  For example, "flushability" is defined as: disperses in a sufficiently short amount of time after flushing to avoid clogging, or other operational problems in, household and municipal sewage lines, septic systems, and other standard wastewater equipment.

3.     To be suitable for flushing, an item needs to be able to disperse into smaller pieces rapidly enough to pass through sewer systems and be appropriate for treatment.

4.     Toilet paper has historically been considered the benchmark for flushability because it begins to break apart upon contact with water.  Its small enough pieces pass through sewer and septic systems without causing clogs.  Flushable Wipes, on the other hand, do not perform as advertised or marketed.  As a result, they do not disperse as effectively as toilet paper and can comingle to cause clogs and treatment problems, making them costly and difficult to manually remove.  Flushable Wipes should not be labeled as "flushable" or safe for sewer or septic systems.

5.     Because Flushable Wipes are not in fact suitable for flushing, they have caused countless clogs and damage to Plaintiff, STP Operators, and consumers alike.  Clogged sewer lines can also lead to other problems, such as causing spills to flow onto public and private property, as well as into lakes, rivers, and oceans, where they can harm public health and the environment.  The Environmental Protection Agency has taken the stance that the public should not flush any type of wipe.[1]  Local municipalities and governments spend millions of dollars a year to address and remediate sewer systems and repair plant equipment that has been damaged by "non-flushable items (like wet wipes)" and has warned, "[w]hen wipes and other stuff aren't busy making fatbergs in our sewers, they are wreaking havoc on our wastewater treatment plants!  These materials don't break down in the sewer system like toilet paper, so they arrive at our plants jamming mechanisms, clogging pumps, and breaking critical machinery."[2]

6.     In response to the associated costs, municipalities, wastewater districts, and organizations throughout the country and abroad have attempted to increase public awareness of the

---

[1]     United States Environmental Protection Agency, *Is it okay to flush disinfecting wipes?*, https://www.epa.gov/coronavirus/it-okay-flush-disinfecting-wipes (last visited Aug. 11, 2021). Unless otherwise noted, internal citations are omitted and emphasis is added throughout.

[2]     *Trash it. Don't Flush it.*, NYC ENVIRONMENTAL PROTECTION, https://www1.nyc.gov/site/dep/whats-new/trash-it-dont-flush-it.page?utm_source=FB&fbclid=IwAR39RXn1VE6ku-dzLbfdqZXa0uE5scaO_-CIZrPR-PETTvxw5ffpw8kEcyA (last visited Aug. 11, 2021).

harmful effects of Flushable Wipes, and their message is further supported by a growing body of empirical evidence indicating that Flushable Wipes are not suitable for flushing. Defendants, however, continue to push a contradictory message. Despite knowledge of the massive damage and costs caused by Flushable Wipes, Defendants continue to falsely market, advertise, label, and/or sell Flushable Wipes as suitable for flushing, intending for consumers to use the product accordingly and for the product to continue to enter Plaintiff's and other STP Operators' sewer and septic systems.

7.     Absent Defendants' actions and marketing tactics, Flushable Wipes would not be discarded in toilets and, in turn, would not damage, clog, and/or disrupt pump stations, lift stations, sewer lines and/or wastewater treatment plants' systems. As long as Defendants continue to claim that Flushable Wipes are "flushable," consumers will continue to use them in accordance with Defendants' instructions and many may never realize the property damage and risks to public health and the environment caused by flushing Flushable Wipes.

8.     Through the ordinary and directed use of Defendants' Flushable Wipes, Plaintiff and other STP Operators experienced and will continue to experience clogging and other disruption of their sewage or wastewater treatment plants, pump stations, lift stations, and/or sewer lines due to consumers flushing Flushable Wipes as directed by Defendants. Flushable Wipes will continue to create excessive maintenance and repair-related expenses borne by STP Operators, and ultimately, the public. Wet wipes are costing an estimated "***billions of dollars a year in worldwide maintenance***"[3] and there is no end in sight.

9.     For the reasons detailed herein, Defendants' conduct constitutes nuisance, trespass, negligence, and strict products liability for defective design and failure to warn.

---

[3]     Matt Kessler, *Are Wet Wipes Wrecking the World's Sewers?*, THE ATLANTIC (Oct. 14, 2016), https://www.theatlantic.com/science/archive/2016/10/are-wet-wipes-wrecking-the-worlds-sewers/504098/.

## THE PARTIES

**Plaintiff**

10.     Plaintiff Commissioners of Public Works of the City of Charleston (doing business as Charleston Water System) is a corporate body politic formed pursuant to the South Carolina Code of Laws, Sections 5-31-210, -220, and -250.  It has its principal place of business at 103 St. Philip Street, Charleston, South Carolina 29403.  Plaintiff is, and was at all relevant times, a public water and wastewater utility providing clean water and sewer services to the Greater Charleston area. Plaintiff provides water service through its Hanahan Water Treatment Plant, which produces high quality drinking water delivered to customers through 1,800 miles of water mains.  Plaintiff provides sewer service through 800 miles of collection mains, over 209 pump stations, and 12 miles of deep tunnels that carry wastewater to Plaintiff's Plum Island Wastewater Treatment Plant.  The Plum Island plant treats an average of 25 million gallons a day and discharges that highly treated water into Charleston harbor.  Plaintiff is committed to protecting public health and the environment, and maintaining reliable sewer services is integral to that goal.  Plaintiff has been and will continue to be burdened with unnecessary expenses in connection with repairs, maintenance and/or other damage to its sewage treatment plants caused by Defendants' design, distribution, manufacture, marketing and/or sale of Flushable Wipes.  Defendants' Flushable Wipes have caused sewer overflows (which put Plaintiff in violation of its federal and state sewerage permits), necessitated increased maintenance of Plaintiff's sewer system, damaged the system, and interfered with the treatment of wastewater at the Plum Island facility.

**Defendants**

11.     The Defendants listed in the following paragraphs design, manufacture, market, distribute and/or sell (directly or indirectly) wipes products labeled as being "flushable."  These Flushable Wipes have caused clogging and other damage to Plaintiff's and Class members' sewer

systems.  Flushable Wipes manufactured and/or sold by Defendants are widely available for sale in and around the City of Charleston, in South Carolina and throughout the United States, and dominate the market for such products.[4]

12.    Defendant Costco is a Washington corporation headquartered in Issaquah, Washington.  Together with its subsidiaries, Costco operates membership warehouses.  The company offers branded and private-label products in a range of merchandise categories, including Kirkland Signature, its generic line, under which Costco manufactures through third parties and sells Kirkland Signature Flushable Wipes.

13.    Defendant CVS is a Delaware corporation headquartered in Woonsocket, Rhode Island.  Together with its subsidiaries, CVS provides integrated pharmacy health care services in the United States.  CVS offers branded and private-label products in a range of merchandise categories, including Total Home, its generic line.  CVS manufactures through third parties and sells CVS Total Home Flushable Moist Wipes, CVS Flushable Cleansing Wipes and CVS Ultra Soft Flushable Cleansing Wipes under its generic brand.

14.    Defendant Kimberly-Clark is a Delaware corporation headquartered in Dallas, Texas. Together with its subsidiaries, Kimberly-Clark manufactures and markets personal care, consumer tissue, and health care products worldwide.  The company operates in four segments: Personal Care, Consumer Tissue, K-C Professional, and Health Care.  Kimberly-Clark manufactures and sells

---

[4]    *See, e.g.*, *Global Flushable Wipes Market Growth, 2021 Top Countries Data Analysis, Growth Factors, Business Challenges, Covid-19 Impact, Future Demand, Development Trends and Forecast to 2025*, WBOC (May 13, 2021), https://www.wboc.com/story/43878765/global-flushable-wipes-market-growth-2021-top-countries-data-analysis-growth-factors-business-challenges-covid-19-impact-future-demand-development (referencing defendants Kimberly-Clark and Procter & Gamble, along with Nice-Pak Products, Inc. ("Nice-Pak"), which manufactures Flushable Wipes for defendants Costco, CVS and Target, and Equate – defendant Wal-Mart's Flushable Wipes brand – as the "Top Manufactures of [the] Flushable Wipes Market"); *see also* ECF No. 65-1 (Declaration of Barry Orr) at ¶6 (noting that Defendants' Flushable Wipes "represent a substantial share of the U.S. market for flushable wipes").

Flushable Wipes under the Cottonelle brand. Kimberly-Clark manufactures Flushable Wipes at its Beech Island, South Carolina plant, which is the company's "largest and most technologically advanced manufacturing plant in North America."[5] On April 26, 2021, Plaintiff filed a motion for preliminary approval of a settlement between it and Kimberly-Clark (the "Kimberly-Clark Settlement") given the exceedingly better dispersibility performance of Kimberly-Clark's Cottonelle Flushable Wipes and commitment to fully comply with the IWSFG flushability specifications (discussed below) by May 1, 2022. ECF No. 59.

15.     Defendant Procter & Gamble is an Ohio corporation headquartered in Cincinnati, Ohio. Together with its subsidiaries, Procter & Gamble manufactures and sells branded consumer packaged goods. Procter & Gamble operates through five segments: Beauty Care, Grooming, Health Care, Fabric & Home Care, and Baby & Family Care. The Baby & Family Care segment offers baby wipes, diapers, paper towels, tissues, and toilet paper under brand names such as: Bounty, Charmin, and Pampers. Procter & Gamble manufactures and sells Flushable Wipes under its Charmin and Pampers Kandoo brands.

16.     Defendant Target is a Minnesota corporation headquartered in Minneapolis, Minnesota, and it operates general merchandise stores in the United States. Target offers household essentials, hardlines (consisting of music, movies, books, computer software, sporting goods, toys and electronics), apparel and accessories, food and pet supplies, and home furnishings and décor. The company manufactures through third parties and sells Flushable Wipes under its generic, Up&Up brand.

---

[5]     *See* Damon Cline, *Kimberly-Clark plant celebrates 50 years in Beech Island*, THE AUGUSTA CHRONICLE (Nov. 8, 2018), https://www.augustachronicle.com/news /20181108/kimberly-clark-plant-celebrates-50-years-in-beech-island.

17. Defendant Walgreens is a subsidiary of Walgreens Boots Alliance, Inc. ("WBA") and is headquartered in Deerfield, Illinois. Walgreens operates one of the largest pharmacy store chains in the United States, and operates stores in the greater Charleston, South Carolina area that sell Flushable Wipes.

18. Defendant Wal-Mart is a Delaware corporation headquartered in Bentonville, Arkansas, with stores and distribution centers located throughout the United States. The company is a retail business offering a range of merchandise categories. It offers candy, snack foods, tobacco, alcoholic and nonalcoholic beverages, and cleaning and institutional supplies; appliances, electronics, health and beauty aids, hardware, office supplies, toys, seasonal items, and automotive supplies; and dry and institutionally packaged foods. Wal-Mart manufactures through third parties and sells Flushable Wipes under the Equate and Great Value brands.

19. Defendants, upon becoming involved with the manufacturing, distributing, advertising, marketing and/or sale of Flushable Wipes, knew or should have known that their representations regarding Flushable Wipes have been and continue to be false and misleading.

## JURISDICTION AND VENUE

20. The Court has jurisdiction under 28 U.S.C. §1332(d) - the Class Action Fairness Act of 2005 ("CAFA") - because the amount in controversy exceeds $5 million exclusive of interest and costs, and this action is brought as a class action of more than 100 potential Class members. Moreover, the Court has jurisdiction under CAFA because there is minimal diversity of citizenship between the Plaintiff and the Defendants.

21. The amount in controversy exceeds the $5 million threshold under Section 1332(d) because the value of the injunctive relief sought would provide at least this much in value to members of the Classes (defined below).

22.    This Court also has jurisdiction over this matter, pursuant to 28 U.S.C. §1332(a), in that the matter in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between the Plaintiff and Defendants.

23.    Venue properly lies in this District pursuant to 28 U.S.C. §1391(b) and in the Charleston Division pursuant to Local Civ. Rule 3.01 (D.S.C.), because Plaintiff resides and Defendants reside, or are found, have their principal place of business, have an agent, or have transacted substantial business within the District of South Carolina within the meaning of 28 U.S.C. §1391(b) and the Charleston Division within the meaning of Local Civ. Rule 3.01 (D.S.C.) as defined in 28 U.S.C. §1391(c), and because a substantial part of the events giving rise to the claims alleged herein occurred in the District of South Carolina and the Charleston Division.

## FACTUAL ALLEGATIONS

### Background on the "Flushable" Wipes Industry

24.    In the mid-1990s, Kimberly-Clark first began selling a form of purportedly "flushable" wipes.  In 2001, *The New York Times* reported that Kimberly-Clark spent $100 million to develop a new flushable moistened toilet paper product and had budgeted another $40 million to market it.  At the time, J.P. Morgan Chase analyst commented on the effort, "[y]ou would not think of this as a category that they could do innovation, and here they are. . . .  They are swinging for a big one here."[6]

25.    The launch of Kimberly-Clark's Rollwipes flushable product in the early 2000s triggered competition by branded and private label companies who sought to enter the "flushable"

---

[6]    Julian E. Barnes, *Kimberly-Clark to Sell Moistened Toilet Paper*, THE NEW YORK TIMES (Jan. 17, 2001), https://www.nytimes.com/2001/01/17/business/kimberly-clark-to-sell-moistened-toilet-paper.html.

space.[7]    While the premoistened wipe-on-a-roll format proved unsuccessful, Kimberly-Clark reformatted the product as a sheeted wipe in a tub that was "flushable by size."[8]  Today, Defendants endeavor, albeit largely unsuccessfully, to make their wipes break apart or disperse naturally, or more commonly, with agitation in water.

26.    The Flushable Wipes industry is growing at over twice the rate of all nonwovens and all nonwoven wipes.  In 2010, Flushable Wipes accounted for $796 million in sales, increasing to $1.4 billion in sales by 2015.  Sales were projected to reach $2.7 billion by 2020, indicating that the market is approximately doubling every five years.[9]

27.    However, as the industry continues to grow, a fundamental product flaw has become more apparent and problematic – Defendants' Flushable Wipes, with the exception of Kimberly-Clark's Cottonelle Flushable Wipes once they achieve the IWSFG 2020 specification (discussed below), are not in fact flushable under the wastewater industry's flushability standard.  Indeed, given that "package labelling influences both consumers' decision to buy [wipes] and their choice of disposal methods,"[10] Flushable Wipes have become "public enemy No. 1 for water reclamation."[11]

---

[7]    *One of the most important trends in flushable wipes is the move away from "flushable by size" to truly dispersible wipes*, INNOVATION IN TEXTILES (Aug. 18, 2017), https://www.innovationintextiles.com/key-trends-driving-flushable-wipes-market/.

[8]    *Id*.

[9]    *Id*.

[10]    Darko Joksimovic, Anum Khan, Barry Orr, *Inappropriate disposal of 'flushable' consumer products – reasons for concern*, IWA PUBLISHING (Feb. 26, 2020), https://iwaponline.com/wst/article/81/1/102/72457/Inappropriate-disposal-of-flushable-consumer.

[11]    Stacey Marquis, *Flushed But Not Forgotten*, WUFT NEWS, https://www.wuft.org/specials/water/flushed-but-not-forgotten/ (last visited Aug. 11, 2021).

**Defendants' Wipes are Unsuitable for Flushing**

28.    The word "flushable" is commonly understood to mean "suitable for disposal by flushing down a toilet," meaning that it would not only clear the user's home plumbing system, but that it would not harm the downstream sewer system – whether municipal, septic or otherwise.

29.    Many items have been shown to clear a toilet, and perhaps even a home's plumbing system, that are not and should not be labeled as flushable, including golf balls and matchbox cars.[12] Those items are not flushable, because, despite the fact that they might clear a toilet or a home piping system, they will not break down in the toilet, in the plumbing system, or at any point in the sewer system.  They will clog sewers and arrive intact at pump stations and/or downstream treatment facilities.

30.    A product labeled as "flushable" ***must break apart or disperse in a reasonable period of time***.  Defendants' Flushable Wipes do not break apart or disperse in a reasonable period of time, resulting in massive continuous damage, as described herein.

31.    There are multiple definitions for "flushability" and the term "flushable."  They include:

(a)    Public testimony in federal litigation by Robert Villée, the Executive Director of the Plainfield Area Regional Sewerage Authority ("PARSA") and former chair of the Water Environment Federation.  He stated that for a product to be labeled "flushable," the "product should clear the homeowner's toilet and piping without causing problems and quickly begin to lose strength

---

[12]    PlumbersSurplus, *American Standard Chamipon4 Flushing Demo*, YOUTUBE, https://www.youtube.com/watch?v=gaWDH16SqVs (last visited Aug. 11, 2021) (demonstrating an American Standard toilet's ability to clear 18 golf balls, at 0:45); Metcraft, *Flushing 40 Golf Balls*, YOUTUBE, https://www.youtube.com/watch?v=6Tk1I0u0SVs (last visited Aug. 11, 2021) (demonstrating an Metcraft HET toilet's ability to clear 40 golf balls); 105.7 the Point, *Will it Flush – Matchbox Cars*, YOUTUBE, https://www.youtube.com/watch?v=xV_1K_znAoE (last visited Aug. 11, 2021) (demonstrating Kohler toilet's ability to flush matchbox cars, at 1:58).

and/or disperse so it doesn't cause problems for either the homeowner []or the municipal sewer system."[13]

(b)      As part of its Final Consent Order with Nice-Pak – which manufactures Flushable Wipes for defendants Costco, CVS and Target – in October 2015, the Federal Trade Commission ("FTC") provided guidance that "flushable" means a product must "disperse[] in a sufficiently short amount of time after flushing to avoid clogging, or other operational problems in, household and municipal sewage lines, septic systems, and other standard wastewater equipment."[14]

(c)      The Water Environment Foundation ("WEF"), an international nonprofit association of approximately 35,000 water quality professionals worldwide, has stated that for a product to be truly "flushable," it must be dispersible.  In an interview, one of its employees discussed the term:

> The industry reference for dispersability is two-ply toilet paper . . . [which] starts to break apart when the toilet is flushed and is indistinguishable in the wastewater system in a matter of seconds. . . . Anything labeled as flushable should start to break apart during the flush and completely disperse within 5 minutes. . . . Our mantra is, "It's not flushable if it's not dispersible[.]"[15]

(d)      More than 25 countries and several hundred organizations and municipalities have joined together to publish a November 2020 statement regarding so-called flushable wipes products, concluding that: (1) only human waste and toilet paper should be flushed; (2) "[w]ipes labeled 'Flushable' based on passing a manufacturers' trade association guidance document should

---

[13]      The testimony was provided in two related cases against flushable wipes manufacturers pending in the Eastern District of New York: *Kurtz v. Kimberly-Clark Corp., et al.*, No. 1:14-cv-01142 (PKC)(RML) and *Belfiore v. Procter & Gamble Co.*, No. 2:14-cv-04090 (PKC)(RML).

[14]      *In the Matter of Nice-Pak Products, Inc.,* No. C-4556, (F.T.C. Oct. 30, 2015), Decision and Order at 3 (the "Consent Order"), available at https://www.ftc.gov/system/files/ documents/cases/151102nice-pakdo.pdf.

[15]      Jennifer Fulcher, *Stop, Don't Flush That*, WATER ENVIRONMENT FEDERATION HIGHLIGHTS (June 12, 2013), https://news.wef.org/stop-dont-flush-that/.

be labelled '**Do Not Flush**' until there is a standard agreed by the water and wastewater industry";
(3) any product that might be labeled in the future as "flushable" should "pass a technical standard
[which has been] developed and agreed to by the water and wastewater industry . . . [p]referably . . .
under the banner of the International Standards Organization (ISO)"; and (4) "[k]ey requirements for
any standard include that the product:

        (i)       breaks into small pieces quickly;

        (ii)      must not be buoyant; [and]

        (iii)     does not contain plastic or regenerated cellulose and only contains

materials which will readily degrade in a range of natural environments."[16]

        32.     Defendants' Flushable Wipes – with limited exceptions (discussed below) – do not
meet the tests set by any of these recognized, neutral standards.

        33.     To support their "flushable" claims, some Defendants have attempted to rely on the
fact that many of their products meet guidelines published by "INDA," the Association of the
Nonwoven Fabrics Industry.  For example, INDA's fourth edition guidelines state that for a product
to be "deemed flushable there must be evidence indicating that it: [(1)] clear toilets and properly
maintained drainage pipe systems when the suppliers recommended usage instructions are correctly
followed; [(2)] passes through properly maintained wastewater conveyance systems and is
compatible with wastewater treatment, reuse and disposal systems without causing system blockage,
clogging or other operational problems; and [(3)] is unrecognizable in effluent leaving on-site and

---

[16]     *International water industry position statement on non- flushable and 'flushable' labeled
products*, WATER ENVIRONMENT FEDERATION, https://www.wef.org/globalassets/assets-wef/5---
advocacy/policy-statements/position-statements/international-flushability-statement-jan-2017.pdf
(last visited Aug. 11, 2021).

municipal wastewater treatment systems and in digested sludge from wastewater treatment plants that are applied to soil.[17]

34.    Even under this standard, Defendants' Flushable Wipes largely fail, because they cause system blockages and clogs and otherwise interfere with the proper conveyance and treatment of sewage.

35.    Additionally, INDA was created and is funded by the manufacturers and retailers of "flushable" products, and its guidelines are fundamentally flawed.  Most notably, they do not address dispersibility.  They also fail to replicate real world conditions, exclude independent input from members of the wastewater community or any independent industry personnel, and allow the "flushable" products to fail one or more tests without repercussions.  In fact, during the notice and comment period prior to entry of the Final Consent Order between the FTC and Nice-Pak (discussed below), the New York City Law Department requested that Nice-Pak not be permitted "to rely on the INDA standard … developed by representatives of the nonwoven fabrics industry[.]"  *See* ECF No. 65 at 4-5 (citing *In the Matter of Nice-Pak Products, Inc.*, No. C-4556 (F.T.C. Oct. 30, 2015); Consent Order at 3).  The City explained that it "does not consider the INDA standard to be a 'standard[] generally accepted' in the wastewater treatment field, does not believe the dispersal standards used by the INDA standard are representative of the 'physical conditions of the environment' that wipes meet in sewer and wastewater treatment infrastructure, and does not consider the evidence on which the INDA standard relies to be 'competent and reliable.'"  ECF No. 65 at n.5.

---

[17]    *See Guidelines for Assessing the Flushability of Disposable Nonwoven Products*, EDANA Fourth Edition (May 2018), https://www.edana.org/docs/default-source/product-stewardship/guidelines-for-assessing-the-flushability-of-disposable-nonwoven-products-ed-4-finalb76f3ccdd5286df88968ff0000bfc5c0.pdf?sfvrsn=34b4409b_2.

36.    The fact that Defendants' Flushable Wipes are not suitable for flushing down a toilet is also corroborated by the fact that they do not meet other international standards, including the published guidelines of the International Water Services Flushability Group ("IWSFG") – an "international coalition of national and regional wastewater services' associations, organizations and individual wastewater services."[18]

37.    The IWSFG recently published three specifications for determining "the criteria that a product should meet to be compatible with being flushed down a toilet."[19]  "Publicly Available Specification (PAS) 1," establishes five requirements, all of which must be met: environmental protection; toilet and drain line clearance; disintegration ("PAS 3 2020"); settling; and biodisintegration.[20]   On information and belief, Defendants' Flushable Wipes violate these guidelines, which were established directly as a result of the wipe-related crisis many sewer operators are facing.  As discussed further below, while defendant Kimberly-Clark's Flushable Wipes performed exceedingly better than other Defendants' Flushable Wipes in recent PAS 3 2020 testing, at this time, Kimberly-Clark has not committed to meeting the IWSFG Flushability Specifications (specifically, PAS 3 2020) until May 2022.  *See* ECF No. 59-2 (Stipulation of Settlement), ¶2.1(a).

38.    Recent studies further highlight the mislabeling of Flushable Wipes.  For example, the National Association of Clean Water Agencies ("NACWA") conducted a nationwide study

---

[18]    IWSFG, *Publicly Available Specification (PAS) 1: 2020 Criteria for Recognition as a Flushable Product* (Dec. 2020), https://www.iwsfg.org/wp-content/uploads/2021/06/IWSFG-PAS-1-Criteria-for-Recognition-as-a-Flushable-Product.pdf.

[19]    IWSFG, *IWSFG Flushability Specifications*, https://www.iwsfg.org/iwsfg-flushability-specification/ (last visited Aug. 11, 2021).

[20]    PAS 1, *supra* note 18 at 8.

addressing the cost of wipes in 2019, working closely with other national and state organizations.[21] The study was designed to provide conservative estimates of the likely cost of wipes in the United States at both the national and state levels, and is based on data collected from 25 utilities in 19 states, broadly representative of the population of utilities in the United States. Ultimately, NACWA estimates that wipes result in about $441 million per year in additional operating costs in the collection systems of clean water utilities in the U.S. and impose over $30,000 in additional collection system operating costs on the average utility per year. In some states, such as California and New Jersey, with relatively few utilities and high flows, the average utility pays significantly more. Plaintiff has paid in excess of $100,000 to remediate wipes in a single event.

### Testing Highlights the Lack of Empirical Support
### for Defendants' "Flushable" Claims

39.     Numerous tests demonstrate and confirm that wipes labeled and sold as being "flushable" and/or safe for sewer systems will not actually break down or dissolve in any sewer system. For example, Plaintiff retained Barry Orr, the Sewer Compliance Officer and Sewer Outreach and Control Inspector for the City of London, Ontario and the Canadian Water and Wastewater Association representative on IWSFG, to perform flushability testing on various Flushable Wipes products manufactured and/or sold by Defendants and labelled as being flushable and safe for sewer systems. Mr. Orr tested products purchased from retail locations in both South Carolina and New York, including Flushable Wipes manufactured and/or sold by Costco (Kirkland), Procter & Gamble (Charmin), Wal-Mart (Equate), Target (Up&Up), Walgreens (Well Beginnings/Cleansing wipe), CVS Health (Total Home/Ultra-Soft Toddler) and Kimberly-Clark

---

[21]     *The Cost of Wipes on America's Clean Water Utilities*, NACWA (Sept. 2020), https://www.nacwa.org/docs/default-source/resources---public/govaff-3-cost_of_wipes-1.pdf?sfvrsn=b535fe61_2#:~:text=This%20special%20report%20presents%20the%20results%20of%20NACWA's%20work.&text=It%20is%20estimated%20that%20North,on%20personal%20wipes%20in%202019.

(Cottonelle).  The testing was designed to determine whether the products are safe for wastewater infrastructure.  Mr. Orr performed the testing in the first three months of 2021 in the flushability lab at Ryerson University in Toronto, Ontario.

40.    Mr. Orr's testing included subjecting five wipes from each package to the toilet and drain line test, and evaluating the recaptured wipes using IWSFG's Public Available Specification (PAS) 3: 2020 Disintegration Test Methods – Slosh Box test (PAS 3 2020), which evaluates the wipes' likelihood of causing harm to wastewater conveyance systems or treatment plants.  If a wipe meets two criteria – line clearance and dispersibility – they are considered unlikely to cause harm.  A result of at least 80% dispersibility is required to pass PAS 3 2020.  According to Mr. Orr's testing, all of Defendants' Flushable Wipes – other than Kimberly-Clark's Cottonelle Flushable Wipes – failed the PAS 3 2020 test of 80% dispersibility and thus cannot be considered "flushable" under the IWSFG standard as they are likely to cause harm to wastewater conveyance systems or treatment plants, and to add an additional expense to municipalities.[22]  Based on the large Flushable Wipes market share that these Defendants possess and the fact that they do not adequately disperse in sewer systems, Mr. Orr found that it was likely that Defendants' (other than Kimberly-Clark) Flushable Wipes are a significant cause of wipes-related clogs, blockages, and increased maintenance and other costs.

---

[22]    While Mr. Orr determined that the Cottonelle Flushable Wipes he tested passed the IWSFG's 80% PAS 3 2020 flushability acceptance criteria and other IWSFG flushability specifications, as part of the Kimberly-Clark Settlement, Kimberly-Clark has only confirmed that it currently meets a slightly lower pass-through percentage of at least 70%, and has committed to meet the 80% criteria by May 1, 2022.  Thus, while Plaintiff has acknowledged the exceedingly **better** performance of Cottonelle Flushable based on Mr. Orr's testing, as part of the Kimberly-Clark Settlement, Kimberly-Clark has not agreed to ensure that its Flushable Wipes will be fully IWSFG compliant until May 2022, at which point it has further agreed to confirmatory testing for a period of two years. *See* ECF No. 59-2 (Stipulation of Settlement), ¶2.1(a)-(b).

41.     In another study conducted at Ryerson University in 2019, researchers examined 101 single-use wipes products, including 23 wipes products labeled as "flushable" by the manufacturer, and found that none of the products fell apart or dispersed enough to safely pass through an average home's plumbing system to the public sewer, or through the sewer system for 30 minutes."[23]  The research team followed the specifications set out by IWSFG at the time.  Ultimately, they concluded that "it is evident that none of the products other than bathroom tissue are 'flushable.'"[24]

42.     Consumer Reports performed independent disintegration tests on Flushable Wipes that simulated toilet flushing conditions.  A video clip depicting the tests shows that toilet paper broke down in about eight seconds, but after ten minutes, the Flushable Wipes did not break down, and still did not break down after being placed in a Kitchen Aid mixer for another ten minutes.[25] The video concludes: "Our advice: If you use these products, don't flush them down the toilet."[26]

43.     CBS4 Miami, after investigating damage caused by Flushable Wipes, hired I-P-S testing, an independent testing facility, to conduct a slosh box test.  I-P-S put toilet paper, Flushable Wipes and non-flushable wipes through the same slosh box test.  After one hour, the toilet paper was barely visible, but the Flushable Wipes and non-flushable wipes were fully intact.  After two hours,

---

[23]     *See* Anum Khan, Barry Orr, Darko Joksimovic, *Defining "Flushability" for Sewer Use, Ryerson University, Final Report*, RYAN UNIVERSITY URBAN WATER (Mar. 31, 2019), https://cwwa.ca/wp-content/uploads/2020/04/Ryerson_flushable_report2019.pdf.

[24]     *Id*. at 16.

[25]     *Think twice about flushing wet wipes*, CONSUMER REPORTS (Dec. 27, 2013), https://www.consumerreports.org/cro/news/2013/12/think-twice-about-flushing-wet-wipes/index.htm.

[26]     *Consumer Reports: Flushable Wipes*, EYEWITNESS NEWS, https://abc7ny.com/consumer-reports-plumbing-flushable-wipes-eyewitness-news/29868/ (last visited Aug. 11, 2021).

the toilet paper had dispersed completely, the Flushable had "shredded some, but visible chunks still remain[ed]" and the non-flushable wipes had not changed at all.[27]

44.    In 2016, the City of Vancouver, Washington conducted a series of "in-sewer" tests of allegedly "flushable" wipes, dropping them into a manhole and observing their conditions at a downstream collection point.  The study concluded that ***nearly all flushable wipes currently on the market in the United States* "*cannot be considered safe to flush since they travel through real sewers intact, with no dispersion*."**[28]    The test found Flushable Wipes completely or nearly completely intact.[29]

45.    In a video posted by the WEF, pretreatment technician Tracy Stevens performed a "spin test" on multiple household products, including: one ply tissue, three ply tissue, regular toilet paper, plush toilet paper and multiple brands of Flushable Wipes.[30]  The products were placed in beakers filled with water and a spinning blade to simulate flushing, and only toilet paper dispersed almost immediately.[31]  After a few minutes, the Flushable Wipes were still completely intact, with some cloudiness in the beaker that was attributed to lotion on the wipe.[32]

---

[27]    *The Trouble With Wipes In Your Pipes*, CBS4 MIAMI (Feb. 4, 2014), https://miami.cbslocal.com/2014/02/04/the-trouble-with-wipes-in-your-pipes/.

[28]    *See* Testimony of Cynthia A. Finley, Ph.D., Summary of Field Dispersion Tests, Attachment B at 9 (Mar. 15, 2017), https://www.nacwa.org/docs/default-source/resources---public/2017-03-15mdemtest.pdf?sfvrsn=4.

[29]    *Id*. at 11-12.

[30]    Water Environment Federation, *Will it Flush? Video*, YOUTUBE (Jan. 4, 2012), http://www.youtube.com/watch?v=SLTVqkXVvNk&feature=youtu.be.

[31]    *See id.*

[32]    *See id.*

46.    The Orange County Sanitation District also conducted its own test to evaluate the dispersibility of Flushable Wipes.  According to a Staff Report, one sheet of Costco's Kirkland Signature Flushable Wipes was placed in a one liter sized beaker filled with tap water and containing a stir bar, stirring at a speed of 120 rotations per minute.[33]  The Orange County Sanitation District found that the wipe did not break down after a full 24 hours, had remained intact with no change in the wipe's initial dimensions, and was still recognizable after such time.  The Orange County Sanitation District also evaluated toilet paper using the same test and found that the toilet paper rapidly dispersed after about 20 seconds.  The Orange County Sanitation District concluded that because wipes are not able to disperse, they adversely affect sewer systems, lift stations and wastewater treatment plants.[34]

47.    INDA's guidelines for flushability as they relate to the slosh box test allow for the wipes to undergo far more turbulent conditions than they would typically experience in sewer systems.  Quoting a leading wastewater industry official, a *The New York Times* article aptly described the problem with the manufacturers' version of the slosh box test:

> Critics say the test, which rocks wipes back and forth in a crate of water, does not properly mimic the wastewater system, allowing manufacturers to claim flushability for a product that may be too sturdy for treatment systems.  ***The test is "a lot more turbulent than the flow that you find in a wastewater pipe***," said Cynthia Finley, director of regulatory affairs for the National Association of Clean Water Agencies.  Flushed materials, she added, generally move "on very gentle slopes."[35]

---

[33]    Nick Arhontes, P.E., *Update on "Flushable but not dispersible,"* ORANGE COUNTY SANITATION DISTRICT (Mar. 17, 2011), https://www.ocsd.com/Home/ShowDocument?id=12438.

[34]    *Id.*

[35]    Matt Flegenheimer, *Wet Wipes Box Says Flush. New York's Sewer System Says Don't*, THE NEW YORK TIMES (Mar. 13, 2015), https://www.nytimes.com/2015/03/15/nyregion/the-wet-wipes-box-says-flush-but-the-new-york-city-sewer-system-says-dont.html.

**Plaintiff's Experience with Defendants' Wipes**

48.     Plaintiff is, and was at all relevant times, a public water and wastewater utility serving the Greater Charleston, South Carolina area.

49.     Plaintiff owns and/or operates two sewage treatment plants, the Plum Island Wastewater Treatment Plant, its main facility, and the Daniel Island Plant, a pre-treatment facility.

50.     Plaintiff provides its sewer service through 800 miles of collection mains, 209 wastewater pump stations, and 12 miles of deep tunnels that carry wastewater to the Plum Island Wastewater Treatment Plant.

51.     In addition to other expenses incurred related to Flushable Wipes, for example, in October 2018, Plaintiff incurred unnecessary expenses in connection with major maintenance of its sewage facilities due to clogs caused by Flushable Wipes.  Divers made three separate dives, 90 feet down into the wet well of the main pump station bringing sewage to the plant, in order to remove a mass of wipes resulting from residents flushing Flushable Wipes down their toilets.[36]  The massive 12-foot long clog containing Flushable Wipes put the plant in significant jeopardy of massive sewer overflows and cost Plaintiff more than $140,000 in damage and cleanup costs.[37]

52.     In response, Plaintiff actively addressed the issue on social media, attempting to inform the public that just because a wipe says it is "flushable," does not mean that it breaks down before reaching Plaintiff's system.  Indeed, they do not break down, as evidenced by the blockage.

---

[36]     Drew Tripp, *'Flushable' Wipes Clog Charleston Water System Pipes Again, and the Photos are Gross*, ABC4 NEWS (June 18, 2019), https://abcnews4.com/news/local/flushable-wipes-clog-charleston-water-system-pipes-again-and-the-photos-are-gross.

[37]     Ryan W. Miller, *You're probably using disposable wipes wrong. How to avoid harming the planet, the sewers*, USA TODAY (Sept. 7, 2019), https://www.usatoday.com/story/news/nation/2019/09/07/disposable-wipes-can-impact-sewers-landfills-waterways-and-health/1777416001/.

53.    Mike Saia, Plaintiff's communications manager, stated, "all wipes will easily flush down your toilet, but that's where the unseen problems begin."[38] He elaborated that problems occur because as customers flush the wipes, they are often covered in grease, oil, hair and waste, which coat them in a thick layer of grime and hinder them from breaking down, creating "ropelike clumps that have incredible strength." When those clumps reach a choke point, such as a pump at a wet well in Charleston, they can completely disrupt the system.[39]

54.    Despite Plaintiff's efforts to spread awareness, the issue occurred again in June 2019, with Flushable Wipes blocking pumps in one of Plaintiff's wastewater processing tanks. Again, divers made three separate dives into 80-90 feet of sewage to remove the clog.[40] The clog disrupted the sewage system and cost about $60,000 in response costs.[41]

55.    Plaintiff's employees routinely clean its wastewater collection system and remove large quantities of wipes from Plaintiff's sewers, pump stations, and other assets. Ex. A (Affidavit of Baker S. Mordecai, P.E.), at ¶7. Baker S. Mordecai, P.E., Plaintiff's Director of the Wastewater Collection Department, believes that these wipes are a combination of flushable and non-flushable wipes, and that the related blockages are an ongoing problem, can occur at any time, and may lead to system reliability failures and sewer overflows into public and private property, as well as area waterways. *Id.* at ¶10.

---

[38]    *Id.*

[39]    *Id.*

[40]    Alissa Holmes, *For second time, 'flushable wipes' cause major clog at Charleston Water System*, Live5WCSC (June 19, 2019), https://www.live5news.com/2019/06/19/second-time-flushable-wipes-cause-major-clog-charleston-water-system/.

[41]    *See* Miller, *supra* note 37.

56.     Plaintiff has invested more than $2 million over the past 8 years to install a Supervisory Control and Data Acquisition ("SCADA") system at each of its 213 pump stations, to allow for continuous remote monitoring of each pump station to provide early notification of potential wipe-related clogs. *Id.* at ¶11. Plaintiff has also installed screens and/or bar screen overlays within approach channels at vortexes to capture and remove wipes, which cost $120,000 in the past five years. *Id.* at ¶12.

57.     Plaintiff has increased its collection system inspection and maintenance to reduce operational risks associated with both flushable and non-flushable wipes, with the cost of preventative maintenance specific to wipes management within the collection system totaling $121,506 in 2021 as of May 11, 2021. *Id.* at ¶19. During this same time period, 201 wheelbarrows of wipes were removed from Plaintiff's bar screens at vortex approach channels. *Id.* at ¶20. The average annual cost to Plaintiff for wipes-related cleaning of tunnel shafts is $110,000, and from January 1 through April 28, 2021 alone 2,205 tons of wipes have been removed from the screening operation and waste disposal pad serving Plaintiff's treatment facilities, costing $13,243. *Id.* at ¶21.

58.     Plaintiff encountered 37 wipes-related clogs and/or pump failures and 29 wipes-related mainline blockages within its collection system from January 1, 2021 to April 28, 2021, alone. *Id.* at ¶¶15-16. During this time, the cost to manage wipes mainline blockages and pump clogs/failures was $24,991. *Id.* at ¶16. Also during this time, four wipes-related pump blockages occurred within the influent pumping stations of Plaintiff's Plum Island Treatment Plant, and significant downtime was required to mobilize equipment and divers to remove the clogs, with the cost of dive services and temporary pumping totally $294,631. *Id.* at ¶17.

59.     In February 2021, Plaintiff encountered its first tunnel approach channel blockage at the Crosstown vortex, which serves Peninsula Charleston. *Id.* at ¶18. Emergency bypass pumping

and specialized cutting equipment were needed to remove the wipes at a contracted cost of $59,013. *Id*.

60.     In addition to blockages of Plaintiff's system, wipes impose costs by causing an inherent loss of pump efficiency, resulting in decreased pumping flow rates and increased energy costs. *Id*. at ¶22. Wipes also cause additional wear on pump impellers, causing reduced efficiencies. *Id*.

61.     Plaintiff anticipates experiencing future clogging and increased costs associated with operating its sewer treatment plant and removing clogs caused by the buildup of Flushable Wipes.

62.     Plaintiff has incurred and anticipates incurring expenses in connection with repairs, maintenance, and/or other damage to its sewage system, including pump stations and its treatment plant, and faces the continued threat of further repairs, maintenance and/or other damage caused by Defendants' design, manufacturing, marketing, distribution and/or sale of Flushable Wipes.

**Flushable Wipes Wreak Havoc on Sewers and Sewage
Treatment Facilities Throughout South Carolina and the Country**

63.     According to sewer system officials from across the country, Flushable Wipes wreak havoc on pumps and machinery in sewers and/or wastewater treatment plants and are a major reason why wastewater systems clog. Such clogs trigger overflows of untreated sewage to public and private property as well as waterbodies. Even if Flushable Wipes make it through home plumbing systems, if they do not fully disintegrate they will inevitably become so comingled and intertwined that it has been difficult to distinguish one wipe from another.

64.     Certain STP Operators have purchased and installed grinder pumps, which act like garbage disposals for tearing up any solid debris flowing through sewage. These grinders are often ineffective at processing Flushable Wipes because the wipe material or fabric gums-up the machinery once inside the grinders. Although grinders are capable of tearing through pieces of

wood, Flushable Wipes can defeat them by getting snagged on various parts of the grinder and building up until the grinder is completely clogged and inoperable.

65.    Cynthia Finley, Director of Regulatory Affairs for NACWA, commented on the effect of Flushable Wipes on STP Operators, saying "'[c]onsumers are being told by the packaging that these things are flushable'" and "[a]lthough the material might make it through the toilet and the pipes leading away from the house, they tend to clog up once in the sewer system. . . .  That can cause huge headaches for the utilities."[42]  According to Finley, the problem is occurring "'all over the country.'"[43]

**South Carolina**

66.    Plaintiff's experience with Flushable Wipes is consistent with that of other water systems and sewer districts in South Carolina.  *See* Ex. B (Affidavit of Chadwick Abrams), at ¶¶7-17; Ex. C (Affidavit of Michael Fu Man Yip), at ¶¶7-17.  For example, both the North Charleston Sewer District ("NCSD") and Georgetown County Water and Sewer District ("GCWSD") routinely clean their wastewater collection systems and remove large quantities of wipes – both flushable and non-flushable – from their sewers, pump stations and other assets.  Ex. B at ¶¶7-8; Ex. C at ¶¶7-8.  NCSD and GCWSD are continually concerned about wipes-related blockages in their sewer lines, pump stations, treatment plants and other facilities as wipes-related blockages can occur at any time and may lead to system reliability failures and sewer overflows.  Ex. B at ¶10; Ex. C at ¶10.

67.    NCSD has spent approximately $1,000,000 to upgrade its SCADA system to keep communication with pump stations within its collection system.  Ex. B at ¶11.  NCSD has

---

[42]    Kirsti Marohn, *Wipes in the pipes snarling sewers*, USA TODAY (July 17, 2013), http://www.usatoday.com/story/news/nation/2013/07/16/wipes-pollution/2522919/.

[43]    *Id.*

preventative maintenance programs in place to clean bars screens of wipes weekly and to pump debris (wipes and other material) on a varied schedule.  *Id*. at ¶12.

68.     NCSD and GCWSD have increased cleaning schedules within their collection systems where wipes collect, including pump station wet wells, pump station wet wells, floats, pumps, mainlines, and/or tunnel system approach channels, vortexes, and shafts.  Ex. B at ¶13; Ex. C at ¶13.  Both flushable and non-flushable wipes pose one of the most significant operational risks within the NCSD and GCWSD collection systems and have required the expenditure of significant manpower and financial resources.  Ex. B at ¶15; Ex. C at ¶15.  While NCSD and GCWSD have increased their collection system inspection and maintenance to reduce operational risks associated with wipes, wipes-related blockages can occur at any time in their systems.  Ex. B at ¶¶16-17; Ex. C at ¶¶16-17.  Concerns about these issues at NCSD and GCWSD have grown during the ongoing COVID-19 pandemic.  Ex. B at ¶17; Ex. C at ¶17.

**North Carolina**

69.     In Raleigh, North Carolina, costly sewer overflows and backups are predominately caused by Flushable Wipes, according to the city's environmental coordinator for wastewater, Marti Gibson.[44]  As a result, Raleigh now has an ordinance prohibiting the flushing of anything except human waste, toilet paper and water.[45]

70.     In February 2017, Raleigh's public utilities department attributed the clogging of a sewage pipe that caused an "estimated 39,000 gallons of raw sewage to spill into an unnamed

---

[44]     *Id*.

[45]     *Id*.

tributary of Crabtree Creek" to flushing Flushable Wipes.[46]  Given that INDA headquarters are 12

miles away in Cary, North Carolina, INDA President David Rousse sent an unsolicited email to the

city Public Utilities Director "decrying the city's assessment that flushable wipes were at fault,"

without any evidence to support his claim.[47]

71.    The Public Utilities Assistant Director, T.J. Lynch, responded to David Rousse's

email later that day by stating, "[w]e have no reason to make up stories about what we are finding in

our collections systems across the country. . . .  But we do have a duty to let our customers know

why their environment is being impacted and why their rates are going up."[48]  This dispute was aptly

summarized in *The News & Observer* report as follows:

> The email exchange highlights a national conflict between the wipes industry and
> sewage utilities.  The industry claims it has developed products that do sufficiently
> break apart when flushed down the toilet.  The utilities say the wipes remain intact
> long enough to get caught up in pipes and pump stations; they say they often become
> magnets for grease and oils that also get improperly washed down the drain to create
> what those in the sewage business call "fatbergs" that gum up pipes.
>
> *            *            *
>
> Lynch says he's been to visit INDA and that INDA representatives have come to the
> public utilities department, without producing any real mutual understanding.[49]

---

[46]    Richard Stradling, *City blames 'flushable wipes' for sewage clog*, THE NEWS &
OBSERVER  (Feb.  10,  2017),  https://www.newsobserver.com/news/local/counties/wake-
county/article131194829.html.

[47]    Richard Stradling, *Are flushable wipes really flushable? Raleigh says no*, THE NEWS &
OBSERVER  (Apr. 9,  2018),  https://www.newsobserver.com/news/local/counties/wake-
county/article134022739.html ("'This is a convenient scapegoat to blame to meet the public
reporting needs, but it is likely not the correct diagnosis.'").

[48]    *Id.*

[49]    *Id.*

**New York**

72.    New York City reportedly spends a staggering $18.8 million *per year* to "degrease the sewers, deal with damage caused by sewer backups, and repair our plant equipment that has been damaged by non-flushable items (like wet wipes) and transport those items to landfill."[50]  The City directly warns the public against the directed use of Flushable Wipes and states that it can cost between $10,000 and $15,000 to repair a sewer line.

73.    Deputy Commissioner, Vincent Sapienza, of the New York Department of Environmental Protection ("D.E.P.") has stated, "'[t]he increase in clogs and problems we've been having in New York City – it seems to almost correlate directly with the increase in sales of these flushable wipes. . . .  They make it all the way to the plant and they just wrap themselves around our equipment.'"[51]

74.    The amount of debris removed from New York City's treatment plants – 110,000 cubic yards worth – is nearly double the amount removed 5 years ago, coinciding with the growing increase in popularity of Flushable Wipes.[52]

75.    Carter Strickland, commissioner of the New York City D.E.P., when interviewed about the problem flushable wipes are causing, told *New York Magazine*: "You can safely say [it's costing us] millions of dollars."[53]

---

[50]    *Trash it. Don't Flush it.*, New York City Environmental Protection, https://www1.nyc.gov/site/dep/whats-new/trash-it-dont-flush-it.page?utm_source=FB&fbclid=IwAR39RXn1VE6ku-dzLbfdqZXa0uE5scaO_-CIZrPR-PETTvxw5ffpw8kEcyA (last visited Aug. 11, 2021).

[51]    Kathianne Boniello, '*Flushable' wipes clogging up drains citywide*, New York Post (Mar. 2, 2014), https://nypost.com/2014/03/02/flushable-wipes-clogging-up-drains-citywide/.

[52]    *Id.*

[53]    Christopher Bonanos, *Public Enemy No. 2*, New York Magazine (Oct. 4, 2013), http://nymag.com/news/intelligencer/flushable-wipes-2013-10/.

**Pennsylvania**

76.     In April 2020, the *Bedford Gazette* reported that "[t]he COVID-19 virus pandemic has aggravated a longstanding headache for sewer plant operators" given that "'Flushable' wipes, along with [other] wipes, are clogging pipes and sewer lines, and especially pumps at sewer treatment facilities."[54] Doug Vitovich, facilities manager for Chestnut Ridge Municipal Authority in Pennsylvania, "issued a plea [] for people to stop putting the disposable wipes into the system." "'People need to realize the damage it can do to any wastewater treatment facility,'" Vitovich said. Vitovich explained that "the problem with the 'flushable' wipes is not a new one . . . This has been an ongoing problem . . . ***They don't break up the way manufacturers claim they do***."[55]

77.     The Pennsylvania Department of Environmental Protection has also warned recently that Flushable Wipes should not be flushed as instructed, and stated that there has been an increase in reports of sewage treatment facilities dealing with clogs since the beginning of the COVID-19 stay-at-home orders in March, 2020.  The Lower Bucks County Joint Municipal Authority said that they recently "experienced a sanitary sewer main blocked entirely by 'flushable' wipes."[56]

**Georgia**

78.     In Columbus, Georgia, John Peebles, Senior Vice President of Water Resource Operations at Columbus Water Works, commented on the enormous amount of money Flushable Wipes have cost the city and consumers, stating, "[h]ere in Columbus, we're seeing a real increase in

---

[54]     Paul Rowan, *Flushable wipes causing headaches for sewer systems*, BEDFORD GAZETTE (Apr. 8, 2020), https://www.bedfordgazette.com/news/flushable-wipes-causing-headaches-for-sewer-systems/article_62590245-c32c-5bc6-a064-bbdb44d57c51.html.

[55]     *Id*.

[56]     *Increase In Sewer Blockages Reported Since Stay-At-Home Order Started*, LEVITTOWN NOW (May 3, 2020), http://levittownnow.com/2020/05/03/increase-in-sewer-blockages-reported-since-stay-at-home-order-started/.

the number of man hours it takes to go and service these pumps. . . . We're looking at probably over *500 man hours annually and a cost of over $100,000 a year* in pulling those pumps, and repairing those pumps, and putting them back into service."[57]  The problem, Peebles says, is "'[flushable wipes] make their way down the sewer system to our pump, and clog our pump before they break down.'"[58]

79.    To combat the clogs, the city of Columbus installed two devices to cut up debris before it can clog pumps at a total cost of $250,000.[59]  Peebles estimates the cost of dealing with clogging caused by Flushable Wipes is "'maybe half a million dollars this year.'"[60]

**Florida**

80.    A spokesperson for Indian River County in Florida said that an increase in required maintenance of the wastewater pumps was, at least in part, attributed to people flushing things that should not be flushed.  The wrong paper products, even those labeled as flushable, attach to solids and clog the gravity system on their way to the pump stations, which causes backups of the pump stream.  The cost is simple as a couple of hours of a mechanic to get to the pump, shut it down and get the debris out.  However, if the entire pump needs to be replaced, the cost is much higher.  A Port St. Lucie Facebook post pleads people to throw wipes away: "septic tanks, grinder or STEP systems, and gravity systems are all susceptible to clogs and backups because of wipes:  Please help us

---

[57]    *Flushable wipes may be costing Columbus Water Works customers extra money*, WTVM.COM (Dec. 11, 2013), https://www.wtvm.com/story/24182046/flushable-toilet-wipes-may-be-costing-columbus-money/.

[58]    *Id.*

[59]    *Id.*

[60]    *Id.*

maintain the integrity of our sewer system and always throw wipes away, even if they say 'flushable.'"[61]

**Texas**

81.     According to Orlandos Spencer, a station operator with the City of Lufkin, Texas, Flushable Wipes are "'technically not flushable.  But, I mean, people flush them anyway.  The reason ***they're not flush-able is because they don't dissolve***.'"[62]  In Rockwall, Texas, officials have stated that clogs caused by Flushable Wipes: "require the City's wastewater crews to shut down the pumps and manually remove the blockages in order to prevent wastewater from backing up into houses, businesses, and the environment.  Removing these blockages can be not only time consuming, but costly to the City."[63]

82.     In San Antonio, Texas, where there is over 9,000 miles of sewer line to keep clog-free, San Antonio Water System ("SAWS") Communications Director Anne Hayden stated: "Ignore the flushable label, because it's not . . . It adds additional layers of cleanup we already have to do to our pipes.  People have to go out in the summer heat and manually extract the buildup and it's not pleasant."[64]  SAWS crews remove three to five tons of debris, enough to fill a 15-foot-long dump

---

[61]     Cheryl Smith, *Toilet paper alternatives clogging sewer systems; don't flush even 'flushable' wipes*, TCPALM (Mar. 27, 2020), https://www.tcpalm.com/story/news/local/2020/03/27/toilet-paper-substitutes-clog-sewer-system-dont-flush-flushables/2926015001/.

[62]     Khyati Patel, *Using 'flushable' wipes? Reconsider what clogs up the sewer*, ABC 9 KTRE (Jan. 17, 2017), https://www.ktre.com/story/34282102/using-flushable-wipes-reconsider-what-clogs-up-the-sewer/.

[63]     *Texans Reminded Flushable Wipes Are Not Really Flushable And Shown The Consequences*, CBS LOCAL NEWS (Mar. 17, 2020), https://dfw.cbslocal.com/2020/03/17/texas-flushable-wipes-not-really-flushable-sewer-systems/.

[64]     Sam Peshek, *'Flushable' wipes clean everything but sewers*, SAN ANTONIO EXPRESS NEWS (Aug. 11, 2013), http://www.expressnews.com/news/local/article/Flushable-wipes-clean-everything-but-sewers-4724397.php#/6.

truck with debris, per day. Joshua Trent, a member of a four-person SAWS crew, explained that when Flushable Wipes get stuck in the sewer system, they "make it easier for items . . . to become lodged in siphon boxes."[65]

**Illinois**

83.    In Germantown Hills, Illinois, Rich Brecklin, the Public Works Director, blames Flushable Wipes for clogging up village pumps. Brecklin said the reason for the clog is simple: the wipes that are labeled flushable are not flushable. "'They're not flushable in a gravity system; they're not flushable in a septic system; and they are especially not flushable in ejection pumps or grinder pump systems,'" explained Brecklin to Peoria, Illinois' *Journal Star*.[66]

84.    Brecklin also stated, "'[i]f you look at these disposable wipes – some say disposable, some say flushable – if you notice, they're thicker. They're woven tighter, and they're already wet and not falling apart. . . . They don't go away. They may make it down to the sewer plant on a gravity system, and then you've got problems at the plant.'"[67]

**Michigan**

85.    Some cities, like Grand Rapids, Michigan, have tried to deal with the problem by educating their citizens and asking them not to flush Flushable Wipes. Grand Rapids officials sent out a mass mailing to homeowners reminding them "'no wipes in the pipes.'"[68]   One public education mailer sent out to Grand Rapids homeowners stated, "[c]onvenience wipes such as baby,

---

[65]    *Id.*

[66]    Laura Nightengale, *Sanitary wipes causing mess for Germantown Hills sewer system*, JOURNAL STAR (Jan. 30, 2014), http://www.pjstar.com/article/20140130/NEWS /140139881/10924/NEWS.

[67]    *Id.*

[68]    Marohn, *supra* note 42.

hygienic, cleaning and disinfectant, as well as toilet bowl scrubbers and even paper towels might be labeled as 'disposable or flushable' but these items should not go down the drain. Products like these do not break down in the sewer system, causing plugs in sewer pipes and pumps, resulting in sewage backups, costly cleanups and environmental consequences that can result in rate increases."[69]

86.    In 2020, Macomb County said that it had been removing 4,000 pounds of wipes a week at one pump station. Candice Miller, the Public Works Commissioner, blamed the problem on so-called flushable wipes failing to break down.[70]

**California**

87.    In California, the blockages caused by Flushable Wipes are becoming increasingly costly for sewer districts. For example, the Orange County Sanitation District – the third largest wastewater treatment agency in California – had 971 "de-ragging" maintenance calls on ten pump stations in 2010 to 2011 costing the Orange County Sanitation District $320,000 in labor costs.[71] Over a more recent five year period, the Orange County Sanitation District spent $2.4 million to unclog pumps.[72]

88.    Moreover, Tyrone Jue, Director of Communications for the San Francisco Public Utilities Commission, has stated that the City of San Francisco has spent over $4 million a year to

---

[69]    *Environment Tip #3, Disposable, Not Flushable*, CITY OF GRAND RAPIDS, https://www.grandrapidsmi.gov/Government/Departments/Environmental-Services/Environmental-Tips#section-3 (last visited Aug. 11, 2021).

[70]    *Not-so-flushable wipes cause big spill in northern Michigan town*, THE DETROIT NEWS (Oct. 17, 2020), https://www.detroitnews.com/story/news/local/michigan/2020/10/17/baby-wipes-sewage-spill-beulah/114428928/.

[71]    *See* Nick J. Arhontes PE, *Wastewater utilities take aim at wet wipes*, PUBLIC WORKS (Oct. 15, 2012), http://www.pwmag.com/wastewater/strangled-by-disposables.aspx.

[72]    Sharon Verbeten, *Toilets Are Not Trashcans, Says NACWA*, MUNICIPAL SEWER & WATER (Feb. 1, 2016), http://www.mswmag.com/online_exclusives/2016/02/toilets_are_not_trashcans_says_nacwa.

clean out "fatbergs," which have been described as "a congealed mass of flushable wipes combined with cooking oil and gunk."[73]

89.    California's Water Board warns that anything other than toilet paper will "clog sewers and cause backups and overflows at wastewater treatment facilities."  The Water Board advises consumers not to flush anything other than toilet paper down the toilet and instead to throw them in the trash because the wastewater treatment plants may get overwhelmed with consumers having plumbing backups and blockages.[74]

90.    The San Francisco Public Utilities Commission published a video and a flyer about what not to flush down toilets: "Toilets are not trashcans! Think Before You Flush."  The flyer lists the top five things that should not be flushed, having flushable wipes as number one in the list: "The biggest headache for our wastewater treatment plants! Wipes are NOT biodegradable, and have to be manually removed from the equipment at our wastewater treatment plants and sent to the landfill."[75]

**Washington**

91.    In Vancouver, Washington, officials estimated that they have spent over $1 million replacing three large sewer pumps and eight smaller sewer pumps that were constantly being clogged.[76]

---

[73]    truTV, *Adam Ruins Everything – Why Flushable Wipes Aren't Flushable*, YOUTUBE (Nov. 2, 2015) https://www.youtube.com/watch?v=TgHVO-RZ8c4.

[74]    *Coronavirus: State Water Board Warns 'Flushable' Wipes Could Clog Sewer Systems*, CBSN LOS ANGELES (Mar. 18, 2020), https://losangeles.cbslocal.com/2020/03/18/coronavirus-flushable-wipes-warning-sewer-system-clogs/.

[75]    *What Not to Flush*, SAN FRANCISCO WATER POWER SEWER, https://www.sfpuc.org/learning/water-pollution-prevention/what-not-flush (last visited Aug. 11, 2021).

[76]    Carolyn Thompson, *What a bummer! 'Flushable' wipes blamed for sewer woes*, THE ASSOCIATED PRESS (Sept. 24, 2013), http://www.today.com/money/what-bummer-flushable-wipes- blamed-sewer-woes-4B11235939.

92.     Frustrated with problems caused by Flushable Wipes, Frank Dick, engineering supervisor for sewer and wastewater services in Vancouver, has conducted his own experiments, including using fabric dyes to mark wipes labeled flushable and not flushable and sending them down toilets.[77]  "He found that neither type broke down on its journey to the treatment plant.  He also dunked the wipes in agitated water for up to 18 hours and came back the next day to find them intact."[78]  Dick stated: "'I haven't found any single product that's (labeled) flushable that's acceptable.'"[79]

93.     Vancouver conducted similar testing in 2016 and, as discussed above, concluded that "flushable wipes currently on the market in the U.S., with one possible exception, cannot be considered safe to flush since they travel through real sewers intact, with no dispersion."[80]

**Massachusetts**

94.     The town of Lexington, Massachusetts identified that flushing wipes – even if they are labeled as "flushable" or "septic-safe" – caused and continues to cause damage to sewer systems, warning that such wipes do not disintegrate like toilet paper.[81]

---

[77]    Eric Apalategui, *Toilet trouble for Portland? Disposable wipes clog region's sewer pipes*, THE OREGONIAN/OREGONLIVE (Mar. 13, 2014), http://www.oregonlive.com/portland/index.ssf/2014/03/flushable_wipes_wreck_havoc_on.html.

[78]    *Id*.

[79]    *Id*.

[80]    Finley, *supra* note 28 (Attachment B).

[81]    *Wipes Labeled as "flushable" Can Cause Damage to Sewer Systems*, TOWN OF LEXINGTON, MA (Apr. 13, 2020), https://www.lexingtonma.gov/water-and-sewer/news/wipes-labeled-%E2%80%9Cflushable%E2%80%9D-can-cause-damage-sewer-systems#:~:text=Wipes%20can%20damage%20sewer%20systems,midst%20of%20the%20coronavirus%20pandemic.

**Iowa**

95.    The Water Pollution Control Facility in the city of Ottumwa, Iowa says that wipes that are sold as "flushable" are in fact not flushable for the city's sewer pipes.  Flushable wipes cause cities to spend thousands of dollars on premature equipment repair and replacement.  Wipes can snag on sewer pipes, catch passing debris and grease, and create a "ball" that will grow to eventually plug the pipe.  The so-called flushable wipes get drawn into sewer lines and wastewater treatment plant pumps and clog and damage the pumps.[82]

**Maryland**

96.    WSSC Water, which services 1,00 square miles in Prince George's and Montgomery counties in Maryland, issued a video in March 2020 to show "what has to be done at waste water treatment plants when the system gets clogged by both 'flushable' wipes and disinfecting wipes."[83] Lyn Riggins, a WSSC Water spokeswoman, stated that it's easy to remember what to flush: "'Flush only the three "Ps",' she said, with the third one being toilet paper. "Nothing else. Keep the wipes out of the pipes.""[84]

97.    Flushable Wipes are also causing major issues in Ocean City, Maryland.  Jim Parsons, Chief Deputy Director of Ocean City's Public Work Department says that although Flushable Wipes may appear to flush just like toilet paper, "'when it gets in there, it doesn't act like

---

[82]    *Flushable Wipes Causing Problems in Sewer Pipes*, O! CITY OF OTTUMWA (Mar. 17, 2020), https://www.ottumwa.us/news/_flushable_wipes_causing_problems_in_sewer_pipes/.

[83]    John Domeen, *Remember: 'Keep the wipes out of the pipes,' regional utility says*, WTOP NEWS (Mar. 20, 2020), https://wtop.com/local/2020/03/remember-keep-the-wipes-out-of-the-pipes-regional-utility-says/.

[84]    *Id*.

it.'"[85] Mr. Parsons said "'the problem has worsened in recent years[, w]hich is why, a couple years ago, the town had to purchase a basket-system to remove the loads of wipes.'"[86]

98.     Pete Jones of Ocean City said that he has to "constantly rake out baskets full of flushed wipes to keep the pumping stations flowing."[87]  Mr. Jones explained, "'[t]hat's a full 5-gallon bucket worth, and I get that on the average twice a week to three times a week . . . [i]t keeps building up and building up . . . It clogs the pumps, it clogs the pipeline but it just doesn't break down. It clogs everything up.'"[88]

**Hawaii**

99.     In Honolulu, Hawaii, Jesse Broder Van Dyke, a spokesperson for Honolulu Mayor Kirk Caldwell, described the problems with Flushable Wipes, saying: "'[t]he wipes clog sewer lines, pump stations and treatment plants.'"[89]  Markus Owens, a Honolulu Department of Environmental Services spokesperson, added, "'[t]hese wipes also contribute to recurring problems at our pumping stations; they do not break down, and create additional work for our crews who have to repeatedly remove them on a monthly or weekly basis.'"[90]

---

[85]     *Delmarvanow.com: Too Many Wipes in Ocean City Pipes*, RURAL COMMUNITY ASSISTANCE PARTNERSHIP (Aug. 8, 2013), https://www.rcap.org/delmarvanow-com-too-many-wipes-in-ocean-city-pipes/.

[86]     *'Flushable' Wipes Clog Ocean City Pipes, Cause Headache*, WBOC 16 (July 28, 2013), http://www.wboc.com/story/22952048/flushable-wipes-cause-problems-for-sewer- system.

[87]     *Id*.

[88]     *Id*.

[89]     Manjari Fergusson, *New Age Toilet Paper Clogging Hanolulu's Sewer Pipes, Causing Headaches*, HONOLULU CIVIL BEAT (Oct. 1, 2013), https://www.civilbeat.org/2013/10/20030-new-age-toilet-paper-clogging-honolulus-sewer-pipes-causing-headaches/.

[90]     *Id.*

**Defendants Misrepresent Their Wipes as
"Flushable" in Marketing Materials and on Packaging**

**Defendant Costco**

100.    Kirkland Signature Flushable Wipes are marketed and sold by Defendant Costco. The packaging depicts, in large letters, "flushable wipes," and the Costco website states that "these wipes pass extensive testing for flushability and are proven, when flushed one wipe at a time, to pass through a home's well-maintained toilet and drain lines or septic system without clogging."[91] Costco also states that its "flushable" wipes are made with "EcoFlush technology" and are "safe for well-maintained sewers and septics."[92] Specifically, Costco states that "these wipes are also proven to pass through sewer systems and are compatible with wastewater treatment plants."[93]

101.    Below are representations of recent packaging of Kirkland Signature Flushable Wipes containing "flushable" and other representations:

---

[91]    Available at: https://www.costco.com/kirkland-signature-moist-flushable-wipes%2C-632-wipes.product.100350650.html (last visited Aug. 11, 2021).

[92]    *See id.*

[93]    *See id.*





102.    The photograph below shows Costco's Kirkland Signature Flushable Wipes sold in

Charleston, South Carolina in January 2021:



**Defendant CVS**

103.    Defendant CVS's Total Home "Flushable Moist Wipes" claim to "***break[] apart when flushed***," and be "Hydraspun dispersible," and "safe for sewer and septic systems."[94]

104.    CVS "Flushable Cleansing Wipes" and CVS "Flushable Cleansing Cloths" claim that they are "safe for well-maintained sewer and septic systems." [95]   CVS's "Flushable Cleansing Wipes" also claim that they are "made with Advanced Flushable Technology[] from 100% plant-based materials."

---

[94]    Available at: https://www.cvs.com/shop/total-home-flushable-moist-wipes-refill-prodid-1010729 (last visited Aug. 11, 2021).

[95]    Available at: https://www.cvs.com/shop/cvs-health-flushable-cleansing-wipes-prodid-843837 (last visited Aug. 11, 2021).

105.   Below are representations of recent packaging of CVS-branded flushable wipes containing "flushable" and other representations:







106.    The photograph below shows CVS's Total Home Flushable Moist Cleansing Cloths

sold in Charleston, South Carolina in January 2021:



**Defendant Kimberly-Clark**

107.    Defendant Kimberly-Clark describes its Cottonelle-branded flushable products on its website, including Cottonelle FreshCare Flushable Wipes and Cottonelle Gentle Plus Flushable Wipes.[96] On its website, Kimberly-Clark states that its Cottonelle flushable wipes use "our patented SafeFlush Technology," and that "these innovative products are engineered to rapidly lose strength as soon as they are flushed."[97]    Additionally, Kimberly-Clark states that its Cottonelle flushable

---

[96]    Available at: https://www.kimberly-clark.com/en/brands/ingredients/consumer/cottonelle (last visited Aug. 11, 2021).

[97]    Available at: https://www.kimberly-clark.com/en/news/media-resources/safe-to-flush (last visited Aug. 11, 2021).

products "exceed the requirements of widely accepted industry guidelines for flushability and will clear properly functioning toilets and drain-lines, and are compatible with sewers, pumps, and septic and municipal treatment systems."[98]

108.    Cottonelle Flushable Wipes are also described as "designed for toilets and tested with plumbers, so you can rest assured they are sewer and septic safe, and immediately start to break down after flushing."[99]

109.    Below are representations of recent packaging of Kimberly-Clark Cottonelle Flushable Wipes containing "flushable" and other representations:



110.    The photograph below shows Kimberly-Clark's Cottonelle Flushable Wipes sold in Charleston, South Carolina in January 2021:

---

[98]    *See id.*

[99]    Available at: https://www.cottonelle.com/en-us/products/cottonelle-flushable-wipes (last visited Aug. 11, 2021).



**Defendant Procter & Gamble**

111.    Charmin Flushable Wipes, manufactured by Defendant Procter & Gamble, are marketed as "flushable" and "safe" for septic systems.[100]

112.    Below is a representation of recent packaging of Procter & Gamble Charmin Flushable Wipes containing "flushable" and other representations:

---

[100]    Available at: https://www.charmin.com/en-us/shop-products/flushable-wipes (last visited Aug. 11, 2021).



113.    The photograph below shows Procter & Gamble's Charmin Flushable Wipes sold in

Charleston, South Carolina in January 2021:



**Defendant Target**

114.    Defendant Target claims that its Up&Up Toddler and Family Flushable Wipes are flushable and "[s]afe" for sewers and septics.[101]  Specifically, Target claims that its flushable wipes are made with "100% plant-based materials" and "[r]efresh" and "clean [] better than dry toilet paper alone."[102]

115.    Below is a representation of recent packaging of Target Up&Up Flushable Toddler Wipes containing "flushable" and other representations:



116.    The photograph below shows Target's Up&Up Flushable Toddler Wipes sold in Charleston, South Carolina in January 2021:

---

[101]    Available  at:  http://www.target.com/p/up-wipes-432ct-toddler/-/A-13991458#prodSlot= medium_1_3 (last visited Aug. 11, 2021).

[102]    *Id*.



**Defendant Wal-Mart**

117.    In addition to claiming that its Flushable Wipes are in fact "flushable," Defendant Wal-Mart purports that its Great Value Flushable Wipes "are an item you'll want to have on hand during every bathroom visit."[103]  Wal-Mart also claims that its Equate Flushable Wipes "easily break apart after flushing, reducing the chance for blockages in waste management systems."[104]

118.    Below are representations of recent packaging of Wal-Mart Equate and Great Value-branded Flushable Wipes containing "flushable" and other representations:

---

[103]    Available at: https://www.walmart.com/ip/Great-Value-Flushable-Wet-Wipes-Fresh-Scent-4-Packs-of-42-Wipes-168-Total-Wipes/188350013 (last visited Aug. 11, 2021).

[104]    Available at: https://www.walmart.com/ip/Equate-Fresh-Scent-Flushable-Wipes-3-pack-144-count/873057 (last visited Aug. 11, 2021).



119.    The photograph below shows Wal-Mart's Equate Flushable Wipes sold in Charleston,

South Carolina in January 2021:



**Defendant Walgreens**

120.    Defendant Walgreens' Flushable Cleansing Wipes claim to be "flushable."[105]

121.    Below is a representation of recent packaging of Walgreens Flushable Cleansing Wipes containing "flushable" and other representations:

---

[105]    Available at: https://www.walgreens.com/store/c/walgreens-flushable-cleansing-wipes-7-x-5/ID=prod6405377-product (last visited Aug. 11, 2021).



122.    The photograph below shows Walgreen's Flushable Cleansing Wipes sold in Charleston, South Carolina in January 2021:



### Premoistened Non-Flushable Wipes Intended to Be
### Thrown in the Trash Should Be Labeled as Non-Flushable

123.    Premoistened, non-woven disposable wipes that are not designed to be flushed should be labeled clearly and conspicuously with the phrase "Do Not Flush" and a related symbol, to send a clear message to consumers that most wipes are not suitable for flushing.  The failure to do so exacerbates the problems suffered by STP Operators due to consumer confusion about which types of wipes, often marketed alongside one another, are suitable for flushing.

124.    The non-flushable products include: (1) premoistened nonwoven disposable wipes marketed as baby wipes or diapering wipes; and (2) premoistened nonwoven disposable wipes that are: (a) composed entirely of or in part of petrochemical-derived fibers; and (b) likely to be used in a bathroom and have significant potential to be flushed, including baby wipes, bathroom cleaning wipes, toilet cleaning wipes, hard surface cleaning wipes, disinfecting wipes, hand sanitizing wipes, antibacterial wipes, facial and makeup removal wipes, general purpose cleaning wipes, personal care wipes for use on the body, feminine hygiene wipes, adult incontinence wipes, adult hygiene wipes, and body cleansing wipes.

125.    Manufacturers, wholesalers, suppliers, retailers, and any other entity responsible for labeling such wipes should comply with "Do Not Flush," or similar, labeling options, while ensuring that the symbol and/or label notice is unobscured and has sufficiently high contrast with the immediate background of the packaging to render it likely to be seen and read by the ordinary individual under customary conditions of purchase and use.

### The FTC Is Not Actively Investigating
### the "Flushable" Wipes Industry

126.    Upon information and belief, the only investigation or inquiry by the FTC that has been closed with formal resolution pertains to the product manufactured by Nice-Pak and sold by Costco between 2011 and 2014.

127.    Based upon publicly available information, the FTC opened investigations and/or inquiries into retailers' and manufacturers' advertising claims associated with so-called "flushable" products in or about early 2014.[106]

128.    On May 18, 2015, the FTC served a complaint on Nice-Pak, alleging that Nice-Pak violated the FTC Act, 15 U.S.C. §§41 et seq., by misrepresenting that the iteration of its wipes described as "moist toilet tissue" composed of "non-woven fabric, specifically non-elemental chlorine bleached wood pulp, bicomponent fibers, and EP907 repulpable binder," which were sold from 2011 to 2014, were: 1) safe for sewer systems; 2) safe for septic systems; 3) capable of breaking apart shortly after being flushed; and 4) safe to flush.[107]

129.    According to the FTC, whatever tests were used and performed by Nice-Pak, its retailers, or anyone on their behalf, to substantiate those representations did not reflect real world household plumbing or septic conditions.

130.    Based upon publicly available information, the FTC complaint was based solely on a prior – no longer marketed or sold – version of Nice-Pak's so-called "flushable" product, manufactured by Buckeye.  The iterations differ based largely on the "substrate" (*i.e.*, the raw

---

[106]    *See, e.g.*, Letter Regarding Similar Flushable Wipes Cases at 2, *Kurtz v. Kimberly-Clark Corp., et al.*, No. 1:14-cv-01142 (PKC)(RML) (E.D.N.Y. Nov. 14, 2016), ECF No. 256; *see also*, Letter Notifying Court the FTC Concluded Its Investigation of the Kimberly-Clark Corporation, *Kurtz v. Kimberly-Clark Corp., et al.*, No. 1:14-cv-01142 (PKC)(RML)(E.D.N.Y. July 15, 2016), ECF No. 228 (discussing closing of investigation).

[107]    *See* Complaint at 1-2, *In the Matter of Nice-Pak Products, Inc.,* No. C-4556, (F.T.C., Oct. 30, 2015), available at: https://www.ftc.gov/system/files/documents/cases/151102nice-pakcmpt.pdf; *see also* Press Release, *Wet Wipe Manufacturer Agrees To Substantiate "Flushability" Advertising Claims under Settlement with FTC*, (May 18, 2015), available at: https://www.ftc.gov/news-events/press-releases/2015/05/wet-wipe-manufacturer-agrees-substantiate-flushability.  The FTC "issues an administrative complaint when it has 'reason to believe' that the law has been or is being violated, and it appears to the Commission that a proceeding is in the public interest." *Id.*

materials or "base sheet" associated with the flushable products) which forms the basis for the flushable products.[108]

131.    The Buckeye iteration was manufactured from 2011 through at least 2013, and was discontinued in early 2014.  A different iteration, manufactured by Sigma in early 2014, used a modified formula and was created in an attempt to improve their performance given the knowledge that the previous product did not break down.

132.    On October 30, 2015, the FTC issued the final Consent Order with Nice-Pak.

133.    The Consent Order defined "flushable" as "disperses in a sufficiently short amount of time after flushing to avoid clogging, or other operational problems in, household and municipal sewage lines, septic systems, and other standard wastewater equipment" and provided recommendations for what is considered an accurate means for substantiating representations about wipes' dispersability.

134.    According to the Consent Order, when marketing, labeling and/or making any "flushable" or related representations, Nice-Pak must possess and rely upon:

> [C]ompetent and reliable evidence, which, when appropriate based on the expertise of professionals in the relevant area must be competent and reliable scientific evidence, that, when considered in light of the entire body of relevant and reliable evidence, is sufficient in quantity and quality based on standards generally accepted in the relevant fields to substantiate that the representation is true.[109]

135.    Under the Consent Order, any tests, analyses, research, studies, or other evidence purporting to substantiate any of the above representations must:

> A.    demonstrate that the Covered Product disperses in a sufficiently short amount of time after flushing to avoid clogging, or other operational problems in, household

---

[108]    Memorandum & Order Certifying Class Actions, *Kurtz v. Kimberly-Clark Corp., et al.*, No. 1:14-cv-01142 (PKC)(RML) (E.D.N.Y. Mar. 27, 2017), ECF No. 296.

[109]    Consent Order at 2.

and municipal sewage lines, septic systems, and other standard wastewater equipment; and

B.      substantially replicate the physical conditions of the environment in which the Covered Product is claimed, directly or indirectly, expressly or by implication, to be properly disposed of; or, if no specific environment is claimed, then in all environments in which the product will likely be disposed of.[110]

136.    The Consent Order also required Nice-Pak to notify all of its customers, wholesalers and retailers that manufactured or advertised its Flushable Wipes products to "immediately stop using all packaging, advertising, and marketing materials previously provided to [them] by Nice-Pak about these wipes."[111]

137.    The Consent Order concluded that Nice-Pak's Buckeye product: (1) should not have been labeled as "flushable;" (2) should not have been labeled as "safe for sewer systems" or "safe for septic systems"; and (3) should not have represented that it "breaks apart shortly after flushing."

138.    However, the Consent Order did not address or establish: (1) testing protocols that must be followed; (2) how often any testing must be performed, if ever; (3) which independent third party or parties can be used for testing; or (4) any enforcement mechanisms for products that fail testing (*e.g.*, penalties, re-labeling, or removal from retail shelves).

139.    The FTC did not – explicitly or implicitly – permit or prohibit any other iteration of wipes to be marketed or sold as flushable.

140.    In the years following the issuance of the Consent Order, the FTC has not acted to prevent other companies from misrepresenting their wipes as "flushable," and has not stepped in to regulate the industry.  Based on publicly available information, there is no indication that the FTC

---

[110]      *Id*. at 3.

[111]      *Id*. at 7 (Attachment A).

plans to open any investigations related to flushable products or create enforcement mechanisms targeted at mislabeled flushable products.

141.    On July 27, 2016, the FTC stated, that it does not intend to prescribe trade regulation rules in relation to flushability issues.[112]  The FTC refers to its Consent Order with Nice-Pak for guidance on the Commission's views regarding representations of "flushability."  Because the FTC has not shown an interest in this subject matter since 2015 and has even expressly declined to act, judicial resolution of Plaintiff's claims is both necessary and appropriate.

## CLASS ACTION ALLEGATIONS

142.    Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(2) individually and as a class action on behalf of the following proposed classes:

> ***South Carolina STP Operators Class:*** All STP Operators in South Carolina in whose systems Defendants' Flushable Wipes are flushed.

> ***Nationwide STP Operators Class:*** All STP Operators in the United States in whose systems Defendants' Flushable Wipes are flushed.

143.    The South Carolina STP Operators Class and the Nationwide STP Operators Class are referred to herein as the "Classes," and members of those classes are referred to herein as "Class members."    Upon completion of discovery with respect to the scope of the Classes, Plaintiff reserves the right to amend the Class definitions.  Excluded from the Classes are Defendants, their parents, subsidiaries and affiliates, directors and officers, and members of their immediate families.  Also excluded are any entities in which Defendants have a controlling interest and any of the legal representatives, heirs, or assigns of Defendants.

144.    Numerosity: The Classes are so numerous that joinder of all individual members is impracticable.  While the exact number and identities of members of the Classes are unknown to

---

[112]    *Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29 (E.D.N.Y. 2015).

- 55 -

Plaintiff at this time and can only be ascertained through appropriate discovery, upon information and belief, Plaintiff alleges that the Classes are comprised of thousands of individual members geographically disbursed throughout the United States. The number of Class members and their geographical disbursement renders joinder of all individual members impracticable if not impossible.

145.    Commonality: There are questions of fact and law common to members of the Classes including, *inter alia*, the following:

(a)    whether Defendants mislabel their Flushable Wipes so as to have consumers believe that their Flushable Wipes will not cause harm to sewer systems in their area;

(b)    whether Defendants' business practices violate South Carolina law;

(c)    whether Defendants knew or should have known that the labeling on their Flushable Wipes was false, misleading or deceptive when issued;

(d)    whether Defendants mislead consumers into believing that flushing their Flushable Wipes will not have adverse effects on sewer systems;

(e)    whether Defendants sell, distribute, manufacture or market Flushable Wipes in South Carolina and nationwide that are in fact flushable;

(f)    whether Defendants' Flushable Wipes are safe for sewer systems; and

(g)    whether Plaintiff and Class members are entitled to injunctive relief.

146.    Typicality: Plaintiff's claims are typical of the Class members it seeks to represent. Plaintiff and all other Class members are likely to sustain similar future injuries, namely, clogging of their sewers or septic systems caused by Flushable Wipes, arising out of Defendants' common course of conduct as described herein.

147.    Adequacy: Plaintiff will fairly and adequately protect the interests of the Classes because Plaintiff's claims correspond with the claims of the other Class members. Plaintiff is

willing and able to vigorously prosecute this action on behalf of the Classes, and Plaintiff has retained competent counsel experienced in litigation of this nature.

148.    Plaintiff brings this action under Rule 23(b)(2) because:

(a)    the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for Defendants;

(b)    the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)    Defendants have acted or refused to act on grounds generally applicable to the Classes, thereby making final declaratory and/or injunctive relief with respect to Class members as a whole appropriate.

149.    The undersigned counsel for Plaintiff and the Classes request that the Court appoint them to serve as Class counsel; first on an interim basis and then on a permanent basis pursuant to Federal Rule of Civil Procedure 23(g).  Undersigned counsel will fairly and adequately represent the interests of the Classes; have identified or investigated the Classes' potential claims; are experienced in handling class actions, other complex litigation, and claims of the type asserted in the action; know the applicable law; will commit sufficient resources to represent the Classes; and are best able to represent the Classes.

## COUNT I

## Nuisance

150.    Plaintiff repeats and realleges the allegations contained in all preceding paragraphs as if fully set forth herein.

151.    Plaintiff and Class members have property rights and privileges in their sewer lines, pump stations, lift stations, wastewater treatment plants and/or waste disposal equipment described herein, including those that have been and/or will be impaired by Flushable Wipes.

152.    The nuisance conditions caused, contributed to, maintained, assisted and/or participated in by Defendants substantially and unreasonably interfere with, obstruct and/or disturb Plaintiff and Class members' rights to use and enjoy their sewer lines, pump stations, lift stations, wastewater treatment plants and/or waste disposal equipment.

153.    Defendants' wrongful actions, as alleged herein, have interfered with Plaintiff and Class members' rights and property interests and their use and enjoyment of those rights and interests by causing clogs.  Once Flushable Wipes travel through sewer systems and sewage treatment plants, they comingle, causing them to become fungible and facilitating/causing blockages.

154.    The wrongful activity of the Defendants, as alleged herein, results in excessive, unnecessary, and costly maintenance and repairs.  This includes additional proactive maintenance and the installation of expensive systems such as grinder pumps in an effort to reduce the impacts of Flushable Wipes.  Thus, the nuisance conditions caused, contributed to, maintained, assisted and/or participated in by Defendants have resulted in significant harm to Plaintiff and Class members' sewer lines, pump stations, lift stations, wastewater treatment plants and/or waste disposal equipment.

155.    The clogging of Plaintiff and Class members' sewer lines, pump stations, lift stations, wastewater treatment plants and waste disposal equipment alleged herein has varied and continues to vary over time.

156.    Each Defendant causes, maintains, assists and/or participates in such nuisance, and is a substantial contributor to such nuisance.

157.    Defendants, each of whom supplies, designs, manufactures, markets, distributes, delivers and/or otherwise sells Flushable Wipes that are used, discharged, disposed of or otherwise flushed into Plaintiff and Class members' sewer lines, pump stations, lift stations, wastewater treatment plants and/or waste disposal equipment, engage in affirmative conduct, namely labeling the wipes as "flushable," that causes, contributes to, maintains and/or assists in the creation of the nuisance alleged herein.

158.    Each Defendant was or should have been aware that the flushing of Flushable Wipes would result in, among other harms, significantly clogging of sewer lines, pump stations, lift stations, wastewater treatment plants and waste disposal equipment.

159.    As a direct and proximate result of Defendants' actions as alleged herein, Plaintiff and Class members' sewer lines, pump stations, lift stations, wastewater treatment plants and waste disposal equipment are clogged by buildups of Flushable Wipes as they continuously comingle and accumulate to form blockages.  As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff and Class members will continue to incur costs and expenses related to the investigation, treatment, remediation and monitoring of problems due to the flushing of Flushable Wipes.

## COUNT II

### Trespass

160.    Plaintiff repeats and realleges the allegations contained in all preceding paragraphs as if fully set forth herein.

161.    Plaintiff and Class members own, possess and actively exercise their rights to appropriate and use their sewer lines, pump stations, lift stations, wastewater treatment plants and/or waste disposal equipment described herein, including those that have been and will be clogged by Flushable Wipes.

- 59 -

162.    It is Defendants' intention when manufacturing and selling Flushable Wipes that the public flush them down their toilets, and they actively encourage customers to flush them by labeling them as "flushable," "safe for sewer and septic systems," or other invitations/representations of flushability. This conduct is the actual and proximate cause of Flushable Wipes' invasion into Plaintiff and Class members' property, including sewer lines, pump stations, lift stations wastewater treatment plans and other waste disposal equipment owned and/or operated by Plaintiff and Class members. The damage to Plaintiff and Class members' property is the direct result of Defendants' intentional conduct.

163.    By designing wipes that do not disperse in a reasonable amount of time and encouraging consumers to flush them, Defendants are each a substantial factor causing the ongoing damage to Plaintiff and Class members' property, and each is jointly responsible for the injuries and damage being caused by the following affirmative conduct:

(a)    Defendants participate in the improper flushing of Flushable Wipes by intentionally instructing consumers about the purportedly proper disposal methods for Flushable Wipes, including instructing users to dispose of Flushable Wipes directly into the toilet and intentionally, recklessly, and/or negligently calibrating, designing and manufacturing Flushable Wipes in such a manner which causes them to be routinely flushed into toilets. As a result of this activity, Flushable Wipes clog Plaintiff and Class members' sewer lines, pump stations, lift stations, wastewater treatment plants and/or waste disposal equipment, and otherwise intrude upon and affect Plaintiff and Class members' possessory interests;

(b)    Defendants intentionally instruct consumers about the disposal of their Flushable Wipes through product labels; advertisements funded, published, and distributed by Defendants; and through other literature. Defendants recommended and continue to recommend that

Flushable Wipes be flushed down the toilet notwithstanding that Defendants know or should know that Flushable Wipes clog sewer lines, pump stations, lift stations, wastewater treatment plants and waste disposal equipment, posing a significant problem for Plaintiff and Class members. As a result, when Flushable Wipes were and are disposed of in toilets pursuant to the techniques recommended by Defendants, they clog and otherwise intrude upon and damage Plaintiff and Class members' property;

(c)     At all relevant times Defendants: (1) knew and/or reasonably should have known, and continue to know, that Flushable Wipes cause property damage; and (2) had either not conducted adequate testing to determine the potential effects Flushable Wipes had on plumbing and sewer systems or unreasonably interpreted any such testing they had conducted. Even though Defendants had sufficient information to determine that Flushable Wipes posed a threat to properly functioning sewer lines, pump stations, lift stations, wastewater treatment plants and waste disposal equipment, they did not modify their disposal instructions or provide the appropriate advice, instruction or information to consumers regarding proper disposal and use needed to avoid build up and clogging of said sewer lines, pump stations, lift stations, wastewater treatment plants and waste disposal equipment; and

(d)     Defendants knew or should have known that Flushable Wipes clog sewer lines, pump stations, lift stations, wastewater treatment plants and waste disposal equipment. Defendants instructed, requested and/or induced these acts (and continue to do so) and are a substantial factor in causing the resulting harm to Plaintiff and Class members' possessory interests, and further aid and abet this conduct.

164.    The damage done to Plaintiff and Class members' sewer lines, pump stations, lift stations, wastewater treatment plants and/or waste disposal equipment alleged herein has varied and continues to vary over time.

165.    Plaintiff and Class members have not consented to, and do not consent to, the invasion of their property by Flushable Wipes.  Based on Plaintiff and other Class members' public statements and requests for the public to stop flushing Flushable Wipes, Defendants know or reasonably should know that Plaintiff and Class members do not consent to this trespass.

166.    As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff and Class members' sewer lines, pump stations, lift stations, wastewater treatment plants and waste disposal equipment are damaged by Flushable Wipes, causing Plaintiff and Class members to incur investigation, treatment, remediation and monitoring costs and expenses.

## COUNT III

### Strict Products Liability – Defective Design

167.    Plaintiff repeats and realleges the allegations contained in all preceding paragraphs as if fully set forth herein.

168.    Each Defendant designs, manufactures, formulates, packages, distributes, promotes, markets and/or sells Flushable Wipes products designed and/or marketed to break up and be safe for use in household and public sewer conveyance and treatment systems.

169.    Consumers use Flushable Wipes in a reasonably foreseeable manner and without substantial change in the condition of such products.

170.    Because Flushable Wipes do not conform to the definition of "flushable," they are unreasonably dangerous and unfit for their intended use.  Defendants knew, or should have known, that the use of Flushable Wipes in their intended manner results in the clogging and disruption of sewer lines, pump stations, lift stations, waste disposal equipment, and wastewater treatment plants.

171.    Defendants' products, which are flushed down toilets and then enter Plaintiff's septic system, are defective in design and unreasonably dangerous, are not designed or adequately designed to break down, and therefore are mislabeled as "flushable."  Defendants' wet wipes result in the direct or indirect harm to Plaintiff and Class members' sewer lines, pump stations, lift stations and wastewater treatment plants because: (a) Defendants did not focus on dispersability when designing their Flushable Wipes, thus ignoring the only definition of "flushable" that would make the wipes "safe for sewer and septic systems;" and (b) Defendants' design of their Flushable Wipes products causes them to comingle and become fungible as they flow through a sewer system, making them a significant or primary cause of clogging and disruption of sewer lines, pump stations, lift stations and wastewater treatment plants owned and/or operated by Plaintiff and Class members.

172.    At all times relevant to this action, including presently:

(a)    Defendants were aware of the typical waste and disposal practices resulting from the intended use of their Flushable Wipes products;

(b)    Defendants were aware of the extended time needed for Flushable Wipes to break down.  Despite such knowledge, Defendants intended their Flushable Wipes to be used in such a manner that would result in clogs and disruptions of sewer systems, pump stations, lift stations and wastewater treatment plants;

(c)    Defendants should not have labeled the products as "flushable" because they failed to design their Flushable Wipes products to appropriately break down, causing a continuous problem for pipes, sewers, treatment plants, pumps and/or other wastewater or sewage equipment;

(d)    Defendants knew, or should have known, of appropriate redesigns and/or modifications to protect against the clogging associated with flushing anything stronger than toilet

paper, especially a tightly woven wet wipe, down the toilet. Defendants negligently and/or consciously disregarded this knowledge and failed to redesign and/or modify the Flushable Wipes;

(e)    Defendants represented to consumers and the general public that the Flushable Wipes products they sold would degrade into harmless substances and would not cause clogging or other harm to sewer lines, pump stations, lift stations and wastewater treatment plants. At the time these representations were made, Defendants knew, or should have known, these representations were false, misleading, and/or that there was no reasonable basis to believe that they were true;

(f)    Flushable Wipes cause clogging of the sewer lines, pump stations, lift stations and wastewater treatment plants owned and/or operated by Plaintiff and Class members when they are used and disposed of by consumers pursuant to Defendants' recommended application and disposal procedures set forth on product packaging, advertisements, oral statements and other means of communication; and

(g)    The Flushable Wipes manufactured by Defendants are defective products, are not designed to break down, and therefore are mislabeled as "flushable," because, among other things: (1) Defendants' Flushable Wipes cause extensive damage to the plumbing of sewer lines, pump stations, lift stations and wastewater treatment plants; (2) the continued use of Defendants' Flushable Wipes poses a significant threat to private and public waste disposal systems; (3) Defendants fail to provide adequate warnings of the known and foreseeable risk of the use of Flushable Wipes; and (4) Defendants fail to conduct adequate scientific studies to evaluate the effects of flushing Flushable Wipes on sewer lines, pump stations, lift stations and wastewater treatment plants.

173.    The above-described defects in Defendants' Flushable Wipes product existed when the Flushable Wipes left Defendants' possession, and still exist today.

174.    Defendants' Flushable Wipes are and will continue to be harmful to an extent beyond that which would be contemplated by the ordinary consumer.  The risk of harm to sewer lines, pump stations, lift stations and wastewater treatment plants posed by Flushable Wipes outweighs and will continue to outweigh the cost to the Defendants of reducing or eliminating such risk.

175.    As a direct and proximate result of the defects alleged herein, certain of Plaintiff and Class members' sewer lines, pump stations, lift stations and wastewater treatment plants have been clogged with Flushable Wipes and will likely be clogged again.

176.    As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff and Class members will incur investigation, treatment, remediation and monitoring costs and expenses related to the effect of Flushable Wipes on Plaintiff and Class members' sewer lines, pump stations, lift stations and wastewater treatment plants.

177.    Plaintiff is informed, believes and alleges that as a further direct and proximate result of the acts and omissions of Defendants alleged herein, Plaintiff and Class members will sustain substantially increased expenses and loss of the use of their sewer lines, pump stations, lift stations, wastewater treatment plants and waste disposal equipment, causing them significant injury and damage.  Plaintiff and Class members are also entitled to costs and prejudgment interest as permitted by law.

178.    Defendants acted and continue to act maliciously, wantonly, recklessly and with conscious disregard of the known risks of injury to others, including Plaintiff and Class members.

## COUNT IV

### Strict Products Liability – Failure to Warn

179.    Plaintiff repeats and realleges the allegations contained in all preceding paragraphs as if fully set forth herein.

180.    Defendants design, manufacture, formulate, promote, market and/or distribute Flushable Wipes products.

181.    Defendants' Flushable Wipes are used by consumers in a reasonably foreseeable manner and without substantial change in the condition of such products, and Defendants know that consumers purchase and use Flushable Wipes without inspection for defects.

182.    Defendants are aware that the use of Flushable Wipes purchased or otherwise acquired (directly or indirectly) from them would result in their Flushable Wipes being flushed down toilets and subsequently entering sewer lines, pump stations, lift stations, wastewater treatment plants and waste disposal equipment owned and/or operated by Plaintiff and other Class members.

183.    Defendants knew or should have known that if their Flushable Wipes did not break down quickly enough, significant clogging of Plaintiff and Class members' sewer lines, pump stations, lift stations, wastewater treatment plants and waste disposal equipment occurs, making the product unreasonably dangerous.

184.    Despite the known and/or foreseeable risk of clogging sewer lines, pump stations, lift stations, wastewater treatment plants and waste disposal equipment associated with the use of Flushable Wipes, Defendants fail to provide adequate warnings to consumers and other users or to take any other precautionary measures to mitigate those hazards.

185.    Defendants fail to describe such dangers or provide any precautionary statements regarding such hazards in the labeling of their Flushable Wipes products.

186.    As a direct and proximate result of Defendants' failure to warn of the dangers posed by flushing Flushable Wipes, certain of Plaintiff and Class members' wastewater equipment have been and will continue to be clogged by Flushable Wipes.

187.     As a direct and proximate result of the Defendants' acts and omissions as alleged herein, Plaintiff and Class members incur investigation, treatment, remediation and monitoring costs and expenses related to the clogging of sewer lines, pump stations, lift stations, wastewater treatment plants and waste disposal equipment by Flushable Wipes.

## COUNT V

## Negligence

188.     Plaintiff repeats and realleges the allegations contained in all preceding paragraphs as if fully set forth herein.

189.     Defendants have a duty to use due care in the design, manufacturing, formulation, handling, control, disposal, sale, labeling, and instructions for use and disposal of Flushable Wipes to prevent clogging of Plaintiff and Class members' sewer lines, pump stations, lift stations, wastewater treatment plants, and/or waste disposal equipment with Flushable Wipes.

190.     Defendants negligently, carelessly, and recklessly design, manufacture, formulate, handle, label, instruct, control, market, promote and/or sell Flushable Wipes products and/or negligently recommend disposal techniques for Flushable Wipes products.  As a result, they directly and/or proximately cause Plaintiff and Class members' sewer lines, pump stations, lift stations, wastewater treatment plants, and/or waste disposal equipment to become clogged by Flushable Wipes.

191.     As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff and Class members' sewer lines, pump stations, lift stations, wastewater treatment plants, and waste disposal equipment become clogged after Flushable Wipes enter sewer systems and sewage treatment plants.

192.     As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff and Class members incur costs and expenses related to the clogging of sewer lines, pump

stations, lift stations, wastewater treatment plants and waste disposal equipment caused by Flushable Wipes, including costs and expenses associated with unclogging, investigating, treating, remediating and monitoring such clogs and otherwise maintaining sewage systems free from the buildup of Defendants' Flushable Wipes.

193.    For the reasons set forth and specifically alleged above, Defendants are acting maliciously, wantonly, recklessly and with conscious disregard of the known risks of injury to others, including Plaintiff and Class members.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of itself and all others similarly situated, prays for relief and judgment against Defendants as follows:

A.    An order certifying the Classes under the appropriate provisions of Federal Rule of Civil Procedure 23, as well as any appropriate subclasses, and appointing Plaintiff as a representative of the Classes and the undersigned counsel as Lead Counsel to represent the Classes;

B.    An order declaring Defendants' practices to be improper, unfair, unlawful and/or deceptive;

C.    An order enjoining Defendants from marketing and selling their Flushable Wipes as "flushable" until their labeling is truthful or otherwise not deceptive;

D.    An order enjoining Defendants from marketing and selling their Flushable Wipes as being safe for sewer systems until their labeling is truthful or otherwise not deceptive;

E.    An order enjoining Defendants from marketing and selling their Flushable Wipes as being biodegradable until their labeling is truthful or otherwise not deceptive;

F.    An order enjoining Defendants from marketing and selling their Flushable Wipes as capable of breaking down during or after flushing until their labeling is truthful or otherwise not deceptive;

G.      An order seeking appropriate labeling changes to Defendants' non-flushable products to avoid confusion and further damage to the Classes;

H.      An order for pre- and post-judgment interest to the Classes, as allowed by law;

I.      An order for reasonable attorneys' fees and costs to counsel for the Classes if and when pecuniary and non-pecuniary benefits are obtained on behalf of the Classes; and

J.      Granting such other and further relief as is just and proper.

### JURY DEMAND

Plaintiff hereby demands a trial by jury.

DATED:  August 12, 2021                AQUALAW PLC
                                       F. PAUL CALAMITA (ID #12740)


                                              */s/ F. Paul Calamita*
                                       F. PAUL CALAMITA

                                       6 South Fifth Street
                                       Richmond, VA  23219
                                       Telephone:  804/716-9021
                                       804/716-9022 (fax)
                                       paul@aqualaw.com

                                       ROBBINS GELLER RUDMAN
                                         & DOWD LLP
                                       SAMUEL H. RUDMAN
                                       VINCENT M. SERRA (admitted *pro hac vice*)
                                       SARAH E. DELANEY
                                       58 South Service Road, Suite 200
                                       Melville, NY  11747
                                       Telephone:  631/367-7100
                                       631/367-1173 (fax)
                                       srudman@rgrdlaw.com
                                       vserra@rgrdlaw.com
                                       sdelaney@rgrdlaw.com

                                       *Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I, F. Paul Calamita, hereby certify that on August 12, 2021, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.



*/s/ F. Paul Calamita*
F. PAUL CALAMITA