IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Commissioners of Public Works of the City of Charleston (d.b.a. Charleston Water System), Individually and on Behalf of All Others Similarly Situated,<br><br>*Plaintiff*,<br><br>v.<br><br>Costco Wholesale Corporation, CVS Health Corporation, Kimberly-Clark Corporation, The Proctor & Gamble Company, Target Corporation, Walgreens Co., and Wal-Mart, Inc.,<br><br>*Defendants*. | Civil Action No. 2:21-cv-42-RMG<br><br><br>**ORDER AND OPINION** |

Before the Court is Defendants Costco Wholesale Corporation, CVS Health Corporation, The Proctor & Gamble Company, Target Corporation, Walgreen Co., and Wal-Mart, Inc. (collectively "Defendants")'s motion to dismiss Plaintiff the Commissioners of Public Works of the City of Charleston (d.b.a. "Charleston Water System")'s amended complaint (Dkt. No. 108). For the reasons set forth below, the Court denies Defendants' motion.

**Background**

In this putative class action, Plaintiff, a public water and wastewater utility providing services to the Greater Charleston area, on behalf of itself and all others similarly situated, alleges that Defendants Costco Wholesale Corporation ("Costco"), CVS Health Corporation ("CVS"), Kimberly-Clark Corporation ("Kimberly-Clark"), The Proctor & Gamble Company ("P&G"), Target Corporation ("Target"), Walgreen Co. ("Walgreens"), and Wal-Mart, Inc. ("Wal-Mart") design, market, manufacture, distribute, and/or sell wipes labeled as "flushable" which are not actually flushable. Plaintiff alleges that when flushed, Defendants' wipes do not adequately

1

disperse and cause clogs which damage sewer systems across the country, including Plaintiff's. *See, e.g.*, (Dkt. No. 85 ¶¶ 37-40, 48-62).

Plaintiff brings claims for nuisance, trespass, strict products liability—defective design, strict products liability—failure to warn, and negligence. Plaintiff seeks—in addition to reasonable attorney's fees and costs for class counsel—prospective injunctive relief only.

Defendants move to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 108). Plaintiff opposes. (Dkt. No. 117). Defendants filed a reply. (Dkt. No. 119).

Defendants' motion is fully briefed and ripe for disposition.

## **Legal Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits the dismissal of an action if the complaint fails "to state a claim upon which relief can be granted." A claim survives the motion if the complaint provides enough facts to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This is a test of the legal sufficiency of the complaint and, therefore, Rule 12(b)(6) "does not resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Instead, the district court's "inquiry then is limited to whether the allegations constitute a short and plain statement of the claim showing that the pleader is entitled to relief." *Id*. (internal quotation marks and citation omitted). For that analysis, the district court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments"; however, it must "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

## Analysis

**Plaintiff Has Standing to Pursue its Claims Against Defendants**

Defendants first argue that Plaintiff lacks standing to pursue this lawsuit. Defendants argue that Plaintiff's alleged injuries are not "fairly traceable" to Defendants' products. Defendants also argue that because Plaintiff's alleged harms stem from choices made by independent actors— namely consumers who flush deceptively labeled wipes as well as other non-flushable items into the sewer— "neither traceability nor redressability is met." (Dkt. No. 108-1 at 13-14).

Standing is an essential component of a justiciable "case" under Article III. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). Standing implicates the court's subject matter jurisdiction and is governed by Rule 12(b)(1). *Crumbling v. Miyabi Murrells Inlet, LLC*, 192 F. Supp. 3d 640, 642–43 (D.S.C. 2016). "It is well established that standing is a threshold jurisdictional issue that must be determined first because '[w]ithout jurisdiction the court cannot proceed at all in any cause.'" *Covenant Media of N.C., LLC v. City of Monroe, N.C.*, 285 F. App'x 30, 34 (4th Cir. 2008) (quoting *Steel Co.*, 523 U.S. at 94). "To possess the constitutional component of standing, a party must meet three requirements: (1) [the party] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *McBurney v. Cuccinelli*, 616 F.3d 393, 410 (4th Cir. 2010) (citing, *e.g.*, *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice ...." *Id.* The failure to meet this burden constitutes a

jurisdictional defect. *See United States ex rel. Bunk v. Gosselin World Wide Moving, N.V.*, 741 F.3d 390, 402 (4th Cir. 2013).

The Court rejects Defendants' argument that Plaintiff lacks standing to pursue its claims.

First, contrary to Defendants' assertions otherwise, Plaintiff does specifically allege that each Defendant's flushable wipes are likely to cause it future harm. The amended complaint alleges that each defendant's wipes are currently sold in the Charleston area and further alleges in a non-conclusory manner that wipes allegedly marketed as flushable—but which are not actually flushable—clog or otherwise damage sewer systems including Plaintiff's. *See* (Dkt. No. 85 ¶ 100, *et seq.*). On this point, Defendants criticize Plaintiff for not "ma[king] an[] attempt to trace the extent to which . . . [each particular] Defendant's flushable wipes" harms Plaintiff. (Dkt. No. 108-1 at 13-14) (emphasis removed). In effect, Defendants criticize Plaintiff for not pleading the quantitative degree to which each Defendant causes Plaintiff's alleged harms. Such detail, however, is not required to establish standing. *See Bennett v. Spears*, 520 U.S. 154, 168-69 (1997) (noting arguments such as Defendants' fail at the pleading stage because they "wrongly equate[] injury 'fairly traceable' to the defendant with injury as to which the defendant's actions are the very last step in the chain of causation").

Second, the Court rejects Defendants' contention that Plaintiff's alleged harms are the mere result of "unfettered choices made by independent actors not before the court." *See Meyer v. McMaster*, 394 F. Supp. 3d 550, 561 (D.S.C. 2019) (noting that "[t]he traceability and redressability prongs become problematic when third persons not party to the litigation must act in order for an injury to arise or be cured" and further noting that "[r]elief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement."). Here, Plaintiff plausibly alleges that Defendants' products do not

4

perform as advertised and are a significant cause of Plaintiff's injuries. *See, e.g.*, (Dkt. No. 85 ¶¶ 39-40) (alleging Plaintiff retained Barry Orr, "the Sewer Compliance Officer and Sewer Outreach and Control Inspector for the City of London, Ontario and the Canadian Water and Wastewater Association representative on IWSFG, to perform flushability testing on various Flushable Wipes products manufactured and/or sold by Defendants" and that Orr found said wipes generally failed his dispersibility testing); (*Id.* ¶¶ 55, 57) (alleging Plaintiff removes "large quantities" of both flushable and non-flushable wipes from its sewer system). The fact that Orr did not test "actual clogs removed from Plaintiff's [w]astewater system to determine whether they in fact contain flushable wipes," (Dkt. No. 108-1 at 15), is again the type of argument not relevant to determining standing. Further, the fact that other objects might sometimes clog Plaintiff's sewer system, *see* (Dkt. No. 85 ¶ 51 n.36), is irrelevant. A plaintiff is not deprived of standing merely because it alleges a defendant's actions were a contributing cause instead of the lone cause of the plaintiff's injury. *See Libertarian Party of Va. v. Judd*, 718 F.3d 308, 316 (4th Cir. 2013) (finding that plaintiff had standing to challenge a petition-collection ballot-access requirement even though plaintiff's knee injury likely contributed to his failure to collect a sufficient number of signatures); *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 714 (6th Cir. 2015) (holding that plaintiffs had standing to sue federal agencies for a report describing plaintiffs as a gang even though plaintiffs had already been described as a gang by other independent state agencies and noting "courts have held that the fact that a defendant was one of multiple contributors to a plaintiff's injuries does not defeat causation"); *Barnum Timber Co. v. EPA*, 633 F.3d 894, 901 (9th Cir. 2011) (finding that plaintiff had standing to challenge EPA's listing of plaintiff's property as an "impaired water body" because the listing was one contributing factor to the property's decrease in value).

Accordingly, the Court finds that Plaintiff has Article III standing to pursue its claims.

**Plaintiff Properly Alleges Proximate Causation**

Next, Defendants argue that all of Plaintiff's claims fail because Plaintiff has not adequately alleged proximate causation. Repeating arguments like those rejected above, Defendants contend "Plaintiff cannot meet its burden for proving proximate cause because it fails to allege any facts to support a finding that *any* 'particular defendant' is responsible for the City's alleged injury. At best, Plaintiff has alleged that any of the defendants' wipes could be part of the problem, as well as any other number of potential clogging causes identified in its Complaint, such as 'non-flushable items (like wet wipes),' 'grease, oil, hair and waste,' 'toilet bowl scrubbers and even paper towels,' and other 'debris.'" (Dkt. No. 108-1 at 18-19) (internal citations omitted). Ergo, Defendants conclude, Plaintiff is attempting to proceed under a "market share liability" theory—a type of liability Defendants claim is not recognized by South Carolina law. (*Id.* at 19).[1]

The Court denies Defendant's motion on the above point. As noted above, Plaintiff has adequately alleged that each Defendant proximately caused its injuries. *See, e.g.*, (Dkt. No. 85 ¶¶ 39-40; 100, *et seq.*); *S.C. Ins. Co. v. James C. Greene & Co.*, 290 S.C. 171, 176 (Ct. App. 1986) (noting that "if a person's negligence is a proximate cause of an injury to another, the fact that the negligence of a third party concurred with his own negligence to produce the harm does not relieve him of liability. In such cases, both tortfeasors are in breach of a duty of care owed to the plaintiff and, because the negligence of both concurred to produce the injury, both are liable to the full extent of the plaintiff's damages") (internal citation omitted). "Proximate cause does not mean the

---

[1] Market share or "enterprise" liability "impose[s] liability upon each member of an industry who manufactures or produces a product which causes injury or harm to a consumer. The share of liability of each member of the industry [is] measured by reference to that defendant's share of the market for the product." *Namm v. Charles E. Frosst & Co.*, 178 N.J. Super. 19, 34–35, 427 A.2d 1121, 1129 (App. Div. 1981).

sole cause," *Small v. Pioneer Mach., Inc.*, 329 S.C. 448, 464 (Ct. App. 1997) ("The defendant's conduct can be a proximate cause if it was at least one of the direct, concurring causes of the injury."), and Defendants' varied arguments to the contrary—including that Plaintiff is "attempt[ing] to plead around South Carolina's strict proximate cause requirements" by pursuing a market share liability theory—are unconvincing.

Accordingly, Defendants' motion is denied on this point.

**Plaintiff is a "User" of Defendants' Products Under S.C. Code Ann. § 15-73-10**

Defendants argue that both of Plaintiff's strict products liability claims fail because Plaintiff is not a "user" of flushable wipes under S.C. Code Ann. § 15-73-10 (requiring a plaintiff to be a "user" or a "consumer" of a product to recover under a strict liability theory). Defendants also argue that their allegedly flushable wipes cannot be considered to have reached Plaintiff "without substantial change in the condition in which [they were] sold" because the purchasers of the wipes *used* the wipes before flushing them down the toilet. (Dkt. No. 108-1 at 22-23) ("Plaintiff acknowledges that by the time the wipes allegedly cause it harm, they have been used by someone else and contaminated, [and] flushed down a toilet . . . .").

Section 15–73–10 of the South Carolina Code provides that "[o]ne who sells any product in a defective condition unreasonably dangerous to the user or consumer ... is subject to liability for physical harm caused to the ultimate user or consumer...." S.C. Code Ann. § 15–73–10 (2005). This section imposes strict liability upon the manufacturer and seller of a product for an injury to any "user or consumer" if the product reaches the user or consumer without substantial change in the condition in which it is sold. *Id.; Fleming v. Borden, Inc.,* 316 S.C. 452, 457 (1994).

Section 15–73–10 does not define "user." Instead, the South Carolina General Assembly expressly adopted the comments to section 402A of the Restatement of Torts (Second)—which

discuss the meaning of "user"—as the expression of legislative intent for that section. *See* S.C. Code Ann. § 15–73–30 (2005) ("Comments to § 402A of the Restatement of Torts, Second, are incorporated herein by reference as the legislative intent of this chapter.").

Comment *l* to section 402A of the Restatement of Torts (Second), titled "User or consumer," provides in pertinent part:

> [F]or the rule stated in this Section to apply, it is not necessary that the ultimate user or consumer have acquired the product directly from the seller, although the rule applies equally if he does so. He may have acquired it through one or more intermediate dealers. *It is not even necessary that the consumer have purchased the product at all*. He may be a member of the family of the final purchaser, or his employee, or a guest at his table, or a mere donee from the purchaser. The liability stated is one in tort, and does not require any contractual relation, or privity of contract, between the plaintiff and the defendant.
>
> …
>
> *"User" includes those who are passively enjoying the benefit of the product*, as in the case of passengers in automobiles or airplanes, as well as those who are utilizing it for the purpose of doing work upon it, as in the case of an employee of the ultimate buyer who is making repairs upon the automobile which he has purchased.

Restatement (Second) of Torts § 402A cmt. l (1965) (emphasis added).

In *Bray v. Marathon Corp.,* 356 S.C. 111, 116 (2003)*,* the South Carolina Supreme Court found that an employee who suffered an emotional injury after watching a coworker being crushed by a trash compactor was a "user" of the trash compactor for purposes of section 15–73–10 because she was operating the controls of the defective trash compactor at the time of the accident. Further, in line with comment *o,* the court found that a bystander analysis does not apply to a strict liability cause of action, stating that a "user of a defective product is not a mere bystander but a primary and direct victim of the product defect." *Id.* at 117.

In *Lawing v. Univar, USA, Inc.*, 415 S.C. 209, 225 (2015), the South Carolina Supreme Court held that determining who constitutes a user under § 15-73-10 requires a "case-by-case"

8

analysis. The court specified, however, that "user" does not include all "persons who could foreseeably come into contact with a dangerous product." *Id.* at 224 ("[T]he court of appeals' expansive definition including as a 'user' all 'persons who could foreseeably come into contact with the dangerous nature of a product' could be interpreted as to allow a bystander employee to recover under section 15–73–10."); *Id.* (noting that "including a foreseeability analysis in a determination of whether a plaintiff constitutes a 'user' . . . is improper").

The Court finds that Plaintiff is a user of Defendants' flushable wipes. Per the amended complaint, Defendants' products are sold for consumption in the Charleston area. Defendants label their products as flushable with the knowledge—and intent—that consumers rely upon this representation. Defendants also know that when consumers flush these wipes down their toilets and into the sewer maintained by Plaintiff, Plaintiff *must* handle Defendants' products. Thus, as Defendants affirmatively market to consumers that their flushable wipes are designed, and indeed *should be* disposed of *via* Plaintiff, Plaintiff is a "primary and direct victim" of the alleged defect as contemplated by *Lawing* and *Bray*. *See* Restatement (Second) of Torts § 402A cmt. l. (users include those who "passively enjoy the benefit of the product" as well as those who "utiliz[e] it for the purpose of doing work upon it"); *see also City of Spokane v. Monsanto Co.*, No. 2:15-cv-201-SMJ, 2016 WL 6275164, at *2, 6 (E.D. Wa. Oct. 26, 2016) (city not a "user" of defendant's polychlorinated biphenyls ("PCBs") where PCBs entered plaintiff's wastewater system after migrating out of "original source material" "as the result of [] use and disposal . . . over many years"). Further, to the extent that Defendants argue that their wipes cannot be considered to have reached Plaintiff "without substantial change in the condition in which [they were] sold" because the purchasers of Defendants' wipes *use* the wipes before flushing them into the sewer or because the wipes encounter other substances while in the sewer, the Court rejects the contention as both

misstating Plaintiff's allegations and otherwise inappropriate for consideration at the motion to dismiss stage. *See* (Dkt. No. 117 at 37) ("Defendants seem to argue that Plaintiff is also not a direct victim . . . because their wipes comingle with grease, oil and other waste to create 'ropelike clumps' at Plaintiff's collection facilities, and thus 'the harm is not caused by the product as sold by Defendants.' But that is precisely what Plaintiff alleges – i.e., because Defendants' Flushable Wipes do not sufficiently break down and disperse as advertised, they end up in Plaintiff's wastewater collection system in virtually the same form in which they were sold. Otherwise, the wipes would not be a substantial factor in Plaintiff's ongoing clogs, which they are."); *Atanassova v. Gen. Motors LLC*, No. 2:20-CV-01728-RMG, 2021 WL 683246, at *2 (D.S.C. Feb. 22, 2021) (noting "questions as to whether an injury was caused by a defect in design or whether the defect was created by the subsequent unforeseeable modification of a third party are generally for a jury") (citing *Small v. Pioneer Mach., Inc.*, 329 S.C. 448, 466 (Ct. App. 1997))

Accordingly, Defendants' motion is denied on the above point.

**Plaintiff Adequately Pleads a Design Defect Claim**

Next, Defendants argue that Plaintiff's design defect claim must be dismissed because Plaintiff has failed to plead a feasible or reasonable alternative design.

In a product liability design defect action, the plaintiff must present evidence of a reasonable alternative design. *See Branham v. Ford Motor Co.*, 390 S.C. 203, 225 (2010). "The plaintiff will be required to point to a design flaw in the product and show how his alternative design would have prevented the product from being unreasonably dangerous. This presentation of an alternative design must include consideration of the costs, safety and functionality associated with the alternative design." *Id.* (noting that, "[o]n *retrial*, Branham's design defect claim will proceed pursuant to the risk-utility test....") (emphasis added).

The Court denies Defendant's motion on the above point. In the amended complaint, Plaintiff alleges that Kimberly-Clark's flushable wipes perform "exceedingly better" than the Defendants' flushable wipes and that, per Plaintiff's preliminarily approved settlement[2] with Kimberly-Clark, Kimberly-Clark will produce flushable wipes that meet IWSFG PAS 3 2020 test at 80% dispersibility around May 2022. (Dkt. No. 86 ¶¶ 37, 40). Plaintiff has therefore adequately alleged that alternative designs exist, are feasible, and not merely conceptual. *See Silver v. Bayer Healthcare Pharms., Inc.*, No. 2:19-CV-3495-DCN-MHC, 2021 WL 4472857, at *8 (D.S.C. Sept. 30, 2021) (denying motion to dismiss and noting, "[a]s discussed earlier, Silver alleges in her amended complaint that Eovist should have been designed as a macrocyclic GBCA rather than as a linear GBCA. In response, Bayer contends that this is a 'threadbare allegation[ ]' which 'offers no details of how such a design is even possible' or 'any consideration of the costs, safety and functionality.' But Bayer ignores that [*Branham*] states these are considerations for trial.") (internal citations omitted).

Accordingly, Defendants' motion is denied on this point.

**Plaintiff States a Failure to Warn Claim**

Defendants next argue that Plaintiff's failure to warn claim is deficient for two reasons.[3] First, Defendants argue that Plaintiff has "pleaded itself out of a cognizable warning defect by framing the purported dangers from flushing 'flushable wipes' as open and obvious." Second, Defendants argue that Plaintiff cannot establish proximate causation by showing that a different

---

[2] *Commissioners of Pub. Works of City of Charleston v. Costco Wholesale Corp.*, No. 2:21-CV-42-RMG, 2021 WL 4551105, at *1 (D.S.C. Oct. 4, 2021).

[3] Defendants put forth a third reason that this claim fails—namely that Plaintiff is not a "user" of its products under S.C. Code Ann. § 15-73-10. For the reasons discussed *supra*, however, the Court rejects that argument.

11

warning would have prevented the harm that occurred.

A supplier and manufacturer of a product are liable for failing to warn if they know or have reason to know the product is or is likely to be dangerous for its intended use; they have no reason to believe the user will realize the potential danger; and, they fail to exercise reasonable care to inform of its dangerous condition or of the facts which make it likely to be dangerous. *Holst v. KCI Konecranes Int'l Corp.*, 390 S.C. 29, 43 (Ct. App. 2010)

The Court denies Defendants' motion on the above points. While Plaintiff does allege in the amended complaint that problems associated with wrongfully labeled flushable wipes are familiar to some sewer professionals and consumers, such allegations do not render implausible Plaintiff's otherwise detailed factual allegations that Defendants' products are inaccurately labeled as flushable when they are not and that many, if not most, consumers buy and use Defendants' products with such expectations. *See* (Dkt. No. 117 at 39) ("While reports of harm caused by Defendants' Flushable Wipes undoubtedly exist, those reports are countered by the sale of every package of Defendants' Flushable Wipes containing a label that instructs consumers to flush them because they are purportedly safe for home plumbing and sewer systems. Those same reports have also discussed Defendants' position, often through their trade group INDA, that Flushable Wipes are indeed flushable and contend that harm to municipal wastewater systems is overwhelmingly caused by other improperly flushed items such as baby wipes.") (citing (Dkt. No. 85 ¶¶ 70-71)); *see also Tamayo v. Blagojevich,* 526 F.3d 1074, 1086 (7th Cir. 2008) (noting that a plaintiff "pleads himself out of court when it would be necessary to contradict the complaint in order to prevail on the merits." That condition is not met here because there is nothing contradictory about alleging that a product is defective, that some individuals and entities are aware of the alleged defect, but that many other, if not most, individuals and entities are not).

Further, the Court rejects Defendants' argument that Plaintiff's failure to warn claim fails because Plaintiff "has not alleged . . . that a [different] warning would have made any difference." Defendants argue: "Plaintiff's theory is that the injury from flushing 'flushable wipes' will occur regardless of whether users are warned of the risks because 'Defendants' Flushable Wipes are not suitable for flushing down a toilet.' Plaintiff alleges the wipes 'are mislabeled as flushable,' but does not allege how a seller could 'warn of the dangers posed by flushing Flushable Wipes,' or how such a warning not to flush 'flushable' wipes would have prevented the harm alleged." (Dkt. No. 108-1 at 30) (internal citations omitted). This argument misstates Plaintiff's allegations. Plaintiff alleges that the labels on Defendants' products are inaccurate and asks that the Court enjoin Defendants from labeling their wipes as "flushable" until it is shown they are in-fact flushable. Defendants' contention that a different warning—namely, an *accurate* warning—would make no difference to consumers is absurd. *See E. Shore Mkts., Inc.*, 213 F.3d at 180 (noting that, at the motion to dismiss stage, the court must "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations").

Accordingly, Defendants' motion is denied on the above point.

**Plaintiff States a Nuisance Claim**

Next, Defendants argue that Plaintiff fails to plead a public nuisance claim because the "lawful sale of a product, even if that product is alleged to be defective, cannot give rise to a public nuisance claim." (Dkt. No. 108-1 at 31-32).

A nuisance is anything which works hurt, inconvenience, or damage; anything which essentially interferes with the enjoyment of life or property. *Neal v. Darby*, 282 S.C. 277, 285 (Ct. App. 1984). To constitute a public nuisance, a nuisance must be in a public place or where the public frequently congregates, or where members of the public are likely to come within the range

of its influence. *Id.* Lawful conduct, however, cannot create a public nuisance. *See Brading v. Cty. of Georgetown*, 327 S.C. 107, 115 (1997).

The Court declines to dismiss Plaintiff's public nuisance claim. In its briefing, Defendants cite a case from the Third Circuit which holds that, under New Jersey law, a public nuisance claim cannot proceed against "manufacturers for lawful products that are lawfully placed in the stream of commerce." *Camden Cty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*, 273 F.3d 536, 540 (3d Cir. 2001) ("On the contrary, the courts have enforced the boundary between the well-developed body of product liability law and public nuisance law. Otherwise, if public nuisance law were permitted to encompass product liability, nuisance law 'would become a monster that would devour in one gulp the entire law of tort.'") (citing *Tioga Public Sch. Dist. v. U.S. Gypsum Co.*, 984 F.2d 915, 921 (8th Cir. 1993)). In response, Plaintiff cites *City of Wyoming v. Procter & Gamble Co.*, 210 F. Supp. 3d 1137 (D. Minn. 2016), a flushable wipes case that, under Wisconsin law, rejected an argument like Defendants'. *Id.* at 1162 ("Here, Plaintiffs allege that Defendants' products are drastically increasing the cost of Plaintiffs' water treatment facilities, and these facilities are used to literally clean the water for the public health. Defendants' main argument to the contrary is that they are not responsible for the literal clogs, but rather the allegedly inadequate or false warnings that indirectly lead to the clogs, and giving an inadequate warning is not an action that may give rise to a public nuisance. The Court finds no basis for this distinction in the law."). Given the conflicting persuasive case law presented by the parties, the Court finds it prudent to allow Plaintiff's nuisance claim to proceed and to determine later, on a full record, whether South Carolina law accepts a nuisance claim premised on the facts asserted in Plaintiff's complaint and those acquired through discovery.

Accordingly, Defendants' motion is denied on the above point.

### Plaintiff States a Trespass Claim

Next, Defendants argue that Plaintiff's trespass claim must be dismissed because Plaintiff fails to plead "willfulness" and a lack of permission to enter. *See* (Dkt. No. 108-1 at 33-34) ("[T]he Amended Complaint fails to state a claim for trespass because the act of flushing is not an unauthorized entry or invasion onto Plaintiff's property. The property at issue—a public sewer system—is not an actual or metaphorical enclosure that the public 'breaks' by the act of flushing.").

The unwarrantable entry on land in the peaceable possession of another is a trespass, without regard to the degree of force used, the means by which the enclosure is broken, or the extent of the damage inflicted. *Snow v. City of Columbia*, 305 S.C. 544, 552–53 (Ct. App. 1991) (citing *Lee v. Stewart,* 218 N.C. 287, 10 S.E.2d 804 (1940)). The entry itself is the wrong. *Id.* "Thus, for example, if one without license from the person in possession of land walks upon it, or casts a twig upon it, or pours a bucket of water upon it, he commits a trespass by the very act of breaking the enclosure." *Id.* (citing *Moore v. Duke,* 84 Vt. 401, 80 A. 194 (1911)); 1 G. Addison, A Treatise on the Law of Torts, 388 (Wood ed. 1881); Restatement 2d of Torts, 158, cmt. *i*, illustration 3 (1965). To constitute an actionable trespass, however, there must be an affirmative act, the invasion of the land must be intentional, and the harm caused must be the direct result of that invasion. *Snow*, 305 S.C. at 552–53 (citing *Alabama Power Co. v. C.G. Thompson,* 278 Ala. 367, 178 So.2d 525 (1965)). Trespass does not lie for nonfeasance or failure to perform a duty. *Alabama Power Co.*, 278 Ala. at 367.

The Court finds that the amended complaint states a trespass claim. Plaintiff plausibly alleges that Defendants know or should have known that their flushable wipes are misleadingly labeled, do not disperse as advertised, and enter directly into Plaintiff's sewer system. *See* (Dkt.

15

No. 85 ¶¶ 19, 39-40). The Court finds such actions constitute affirmative or willful acts, even if the actual flushing of the wipes into Plaintiff's sewer system is done by third parties. Further, because consent to enter property is not a defense to trespass "if a wrongful act is done in excess of and in abuse of authorized entry," *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505, 517 (4th Cir. 1999) (internal quotation marks omitted) (interpreting North and South Carolina law), the Court rejects Defendant's claim that the flushing of allegedly mislabeled wipes does not constitute trespass because "the deposit of waste on Plaintiff's property is *invited*." (Dkt. No. 108-1 at 34). *Cf. Ravan v. Greenville County,* 315 S.C. 447 (Ct. App. 1993) (noting that the law of trespass protects the "peaceable possession" of property).

Accordingly, Defendants' motion is denied on the above point.

**Plaintiff States a Negligence Claim**

Next, Defendants argue that Plaintiff's negligence claim fails because Defendants do not owe Plaintiff any duty.

To establish a cause of action for negligence, a plaintiff must show three elements: (1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) damage proximately resulting from the breach of duty. *E.g., South Carolina State Ports Auth. v. Booz-Allen & Hamilton, Inc.,* 289 S.C. 373 (1986). The Court must determine, as a matter of law, whether the law recognizes a particular duty. *E.g., Steinke v. South Carolina Dep't of Labor, Licensing and Regulation,* 336 S.C. 373, 387 (1999). An affirmative legal duty to act exists only if created by statute, contract, relationship, status, property interest, or some other special circumstance. *Carson v. Adgar,* 326 S.C. 212, 217 (1997). Foreseeability of injury, in and of itself, does not give rise to a duty. *Booz-Allen & Hamilton, Inc.,* 289 S.C. at 376.

Currently, the Court declines to dismiss Plaintiff's negligence claim. While foreseeability

16

alone cannot create a duty, s*ee Charleston Dry Cleaners & Laundry, Inc. v. Zurich Am. Ins. Co.*, 355 S.C. 614 (2003), considering the Court's finding that Plaintiff is a "user" of and directly harmed by Defendants' products, the Court believes it prudent to allow Plaintiff's negligence claim to proceed and to evaluate at a later time, on a full factual record, whether a duty exists as between Plaintiff and Defendants under South Carolina law.

Accordingly, Defendants' motion is denied on this point.

**Plaintiff Adequately Alleges Facts to Support a Permanent Injunction**

Defendants next argue that Plaintiff fails to sufficiently allege "irreparable harm" in support of a permanent injunction. Defendants argue that because Plaintiff has allegedly acquired millions of dollars of new equipment to cope with clogs caused by Defendant's flushable wipes, Plaintiff has not adequately alleged the harm caused by Defendants is "irreparable."

A plaintiff seeking a permanent injunction must show that (1) it has suffered irreparable injury; (2) the available legal remedies are inadequate to compensate for that injury; (3) the balance of hardships between the plaintiff and defendant warrants an equitable remedy; and (4) the public interest would not be disserved by a permanent injunction. *Herrera v. Finan*, 176 F. Supp. 3d 549, 568 (D.S.C. 2016), *aff'd,* 709 F. App'x 741 (4th Cir. 2017); *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

The Court rejects Defendants' arguments on this point. Simply put, recurring harms and unreasonable costs and/or complications such as those alleged by Plaintiff constitute irreparable harm. *See Norfolk S. Ry. Co. v. City of Pittsburgh*, 235 F. App'x 907, 910 (3d Cir. 2007) (granting preliminary injunction in nuisance case, emphasizing that "expert witnesses for both parties testified that, without immediate action, more landslides will occur"); *Dominion Carolina Gas Transmission, LLC v. 1.169 Acres, in Richland Cty., S.C. located on Parcel R39100-02-05*, 218

F. Supp. 3d 476, 179-81 (D.S.C. 2016) (granting injunction giving interstate natural gas company easements for a pipeline project, finding it would likely suffer irreparable harm by additional project complication and cost due to delay, and by its customers' reduced ability to meet federal environmental and emissions standards).

Accordingly, Defendants' motion is denied on the above point.

**Plaintiff's Claims May Proceed as to a Nationwide Class**

Last, Defendants—all foreign corporations—argue that S.C. Code Ann. § 15-5-150 (the "door-closing statute") bars Plaintiff from representing a national class.

S.C. Code Ann. § 15-5-150 provides :

An action against a corporation created by or under the laws of any other state, government or country may be brought in the circuit court:

(1) By any resident of this State for any cause of action; or

(2) By a plaintiff not a resident of this State when the cause of action shall have arisen or the subject of the action shall be situated within this State.

S.C. Code Ann. § 15-5-150.  In *Proctor & Schwartz, Inc. v. Rollins*, 634 F.2d 738, 739-40 (4th Cir. 1980), the Fourth Circuit held that a federal court exercising diversity jurisdiction must apply § 15-5-150 unless countervailing federal considerations are present. *See Central Wesleyan College v. W.R. Grace & Co.*, 6 F.3d 177, 186 n.3 (4th Cir. 1993) (finding a countervailing federal interest in consolidating asbestos litigation).  In *Farmer v. Monsanto Corp.*, 353 S.C. 553 (2003), the South Carolina Supreme Court found that the door-closing statute limited the potential class members in a suit against a foreign corporation. 353 S.C. at 558 ("[W]e hold § 15–5–150 controls the eligibility of class members in a class action where the defendant is a foreign corporation.").

The Court denies Defendants' motion on this last point. As this Court has previously noted, many jurisdictions have heard flushable wipes cases.[4] *See, e.g.*, *Pettit v. Proctor & Gamble Co.*, No. 15-cv-2150-RS (N.D. Cal.); *Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 78 (E.D.N.Y. 2015); *City of Wyoming v. Procter & Gamble Co.*, 210 F. Supp. 3d 1137 (D. Minn. 2016); *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 495-96 (E.D.N.Y. 2017); *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018). Further, in its amended complaint, Plaintiff includes specific and detailed factual allegations as to how Defendants' actions affect sewer systems across the country, facts which weigh strongly in favor of declining to apply the door-closing statute. *See* (Dkt. No. 85 ¶¶ 66-99) (describing how Defendants' products harm sewer and wastewater treatment providers in South Carolina, North Carolina, New York, Pennsylvania, Georgia, Florida, Texas, Illinois, Michigan, California, Washington, Massachusetts, Maryland, and Hawaii). Accordingly, the Court declines to apply the door closing because a countervailing federal interest exists in consolidating flushable wipes actions. *See Central Wesleyan College*, 6 F.3d at 186 n.3.

### Conclusion

For the reasons stated above, Defendants' motion to dismiss (Dkt. No. 108) is **DENIED**.

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

December 10, 2021
Charleston, South Carolina

---

[4] S*ee Commissioners of Pub. Works of the City of Charleston (d.b.a. Charleston Water Sys.), Individually & on Behalf of All Others Similarly Situated, Plaintiff, v. Costco Wholesale Corp., et al.*, No. 2:21-CV-42-RMG, 2021 WL 5761688, at *2 (D.S.C. Dec. 2, 2021),