IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Commissioners of Public Works of the City of Charleston (d.b.a. Charleston Water System), Individually and on Behalf of All Others Similarly Situated,<br><br>*Plaintiff*,<br><br>v.<br><br>Costco Wholesale Corporation, CVS Health Corporation, Kimberly-Clark Corporation, The Proctor & Gamble Company, Target Corporation, Walgreen Co., and Wal-Mart, Inc.,<br><br>*Defendants*. | Civil Action No. 2:21-cv-42-RMG<br><br>**ORDER AND OPINION** |

Before the Court is Plaintiff's motion for final approval of class action settlement and award of attorneys' fees and expenses. (Dkt. No. 123). For the reasons set forth below, the Court grants Plaintiff's motion.

**Background**

In this putative class action, Plaintiff the Commissioners of Public Works of the City of Charleston (d.b.a. "Charleston Water System") ("Plaintiff"), on behalf of itself and all others similarly situated, alleges that Defendants Costco Wholesale Corporation ("Costco"), CVS Health Corporation ("CVS"), Kimberly-Clark Corporation ("Kimberly-Clark"), The Proctor & Gamble Company ("P&G"), Target Corporation ("Target"), Walgreen Co. ("Walgreens"), and Wal-Mart, Inc. ("Wal-Mart") design, market, manufacture, distribute, and/or sell wipes labeled as "flushable" which are not actually flushable. These wipes allegedly damage sewer systems across the country. Plaintiff brings claims for nuisance, trespass, strict products liability—defective design, strict products liability—failure to warn, and negligence. Plaintiff's original and Amended Complaint

1

seek—in addition to reasonable attorney's fees and costs for class counsel—prospective injunctive relief only. (Dkt. Nos. 1, 85).

On April 26, 2021, Plaintiff moved for preliminary approval of a settlement reached between itself and Kimberly-Clark (the "Parties"). (Dkt. No. 59). Attached to the motion was a full copy of the Parties' Stipulation of Settlement (the "Settlement Agreement"). (Dkt. No. 59-2). At the time Plaintiff filed its motion for settlement approval, Plaintiff's original complaint, (Dkt. No. 1), was its operative pleading.

On June 10, 2021, Kimberly-Clark filed a declaration asserting it had complied with the notice requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715. (Dkt. No. 77).

On July 15, 2021, in response to two letters received by the Court from putative class members, (Dkt. Nos. 80, 81), the Parties agreed to amend the Settlement Agreement's definition of "Plaintiff's Released Claims" to:

> "Plaintiff's Released Claims" means any and all claims of Plaintiff and the Settlement Class Members for injunctive relief that arise from or relate to the claims and allegations in the Complaint, including Unknown Claims, and the acts, facts, omissions, or circumstances that were or could have been alleged by Plaintiff in the Action, including but not limited to all claims for injunctive relief related to any wipe products (flushable and non-flushable) currently or formerly manufactured, marketed, or sold by Kimberly-Clark or any of its affiliates. ***For the avoidance of doubt, "Plaintiff's Released Claims" do not include claims for damages or other monetary relief, including claims for monetary relief under the law of nuisance***.

(Dkt. Nos. 82, 83). The amendment was intended to dispel concerns raised by the Mayor and City Council of Baltimore and Anne Arundel County that the Settlement Agreement released monetary claims against Kimberly-Clark. *See, e.g.*, (Dkt. No. 82 at 2).

On August 12, 2021, Plaintiff filed its Amended Complaint. (Dkt. No. 85).

## The Court Preliminarily Approves the Settlement Agreement

On August 25 and September 9, 2021, the Court held proceedings on Plaintiff's motion for

preliminary approval of class action settlement. During these proceedings, the Parties agreed to supplement the notice procedures delineated in the Settlement Agreement, (Dkt. No. 59-2 § 7), to provide direct, mailed notice to potential Settlement Class Members—specifically 17,297 publicly owned sewage treatment plant operators located in the United States as of August 27, 2021. The Parties also agreed to publish Summary Notice of one-half page in size once in both the print and online editions of the Water Environment Federation's magazine *Water Environment & Technology*. The Parties filed a copy of the proposed postcard notice. (Dkt. No. 97). The Parties also provided a hard copy of the notice for the Court's inspection.

On October 4, 2021, the Court granted Plaintiff's motion for preliminary settlement approval. (Dkt. No. 98).

The Court subsequently issued an order regarding the timeline for proposed settlement. (Dkt. No. 110). The Court set forth October 25, 2021, as the deadline for publication of the Notice of Settlement via press release, U.S. mail, email, and website, and further ordered that Notice of Settlement be published in the November edition of *Water Environment & Technology.* (*Id.* at 1). The Court further ordered that Class Counsel file for final approval of the Settlement Agreement and Class Counsel's application for fees and expenses by December 29, 2021. (*Id.* at 2); *see also* (*id.*) (setting December 29, 2021, as the deadline for filing objections and January 12, 2022, as the deadline for filing reply papers to any objections). A fairness hearing was set for January 24, 2022.

On December 13, 2021, Plaintiff moved for final approval of class action settlement and an award of attorneys' fees and expenses. (Dkt. No. 123).

On January 24, 2022, the Court conducted a hearing for final approval of settlement and an award of attorneys' fees and expenses via teleconference. Both Plaintiff and Kimberly-Clark were present and represented by counsel.

**Analysis**

When a district court preliminarily approves a settlement after a hearing, the proposed settlement enjoys a presumption of fairness. *See Berkley v. U.S.*, 59 Fed. Cl. 675, 681 (2004) ("Settlement proposals enjoy a presumption of fairness afforded by a court's preliminary fairness determination."); *In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995) ("This preliminary determination establishes an initial presumption of fairness...."); *Martin v. Cargill, Inc.*, 295 F.R.D. 380, 383 (D. Minn. 2013) (accord); *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007) (accord); *Gaston v. LexisNexis Risk Sols. Inc.*, No. 516CV00009KDBDCK, 2021 WL 2077812, at *1 (W.D.N.C. May 24, 2021) (accord).

   1. **Certification of Settlement Class**

A settlement class pursuant to Fed. R. Civ. P. 23(b)(2) is hereby certified. The "Settlement Class" is composed of "All STP Operators in the United States whose systems were in operation between January 6, 2018 and the date of preliminary approval [October 4, 2021]." (Dkt. No. 59-2 ¶ 1.23). An "STP Operator" is an entity that "owns and/or operates sewage or wastewater conveyance and treatment systems, including municipalities, authorities, and wastewater districts." (*Id.* at 2).

Further, the Court finds that the Settlement Class satisfies the requirements for class certification under Federal Rule of Civil Procedure 23. The requirements that must be met under Rule 23(a) are (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. In addition, the parties must satisfy one of the subsections of Rule 23(b) for their proposed classes.

The Court confirms its prior holding that the Rule 23(b)(2) Settlement Class satisfies the numerosity requirement of Rule 23(a)(1) as the number of STP Operators in the United States

4

exceeds, at least, 17,000. *See, e.g., Cypress v. Newport News Gen. and Non-Sectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (stating that a class of 18 members met numerosity requirement).

The Court further confirms its prior holding that the commonality requirement of Rule 23(a)(2) is met. The commonality requirement – at least as it relates to a settlement class – is "not usually a contentious one: the requirement is generally satisfied by the existence of a single issue of law or fact that is common across all class members and thus is easily met in most cases." Conte, 1 NEWBERG ON CLASS ACTIONS 5th § 3:18; *see also Tatum v. R.J. Reynolds Tobacco Co.*, 254 F.R.D. 59, 64 (M.D.N.C. 2008) (noting that "[t]he commonality requirement is relatively easy to satisfy") (quoting *Buchanan v. Consol. Stores Corp.*, 217 F.R.D. 178, 187 (D. Md. 2003)). As noted by prior order, the Parties have enumerated various common questions which show the requirement is met. *See* (Dkt. No. 98 at 5-6).

The Court also confirms its prior holding that the typicality requirement of Rule 23(a)(3) is met. Typicality requires the class representatives' claims to be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality is satisfied if the plaintiff's claim is not "so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of his own individual claim. That is not to say that typicality requires that the plaintiff's claim and the claims of class members be perfectly identical or perfectly aligned." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466–67 (4th Cir. 2006). Here, there is a sufficient link between Plaintiff's claims and those of absent class members. Like absent class members, Plaintiff is a STP Operator which has allegedly suffered damages caused by flushable wipes. *See* (Dkt. No. 85 at 24-36) (describing similar alleged harms suffered by STP Operators outside of South Carolina). In sum, Plaintiff and the Settlement Class Members' claims arise out of the same alleged course of conduct by Kimberly-Clark and are based on identical legal theories.

Further, the Court confirms its prior holding that Plaintiff and their counsel are adequate representatives of the Settlement Class. In reaching this determination, the Court has considered whether Plaintiff will fairly and adequately protect the interests of the class. *Knight v. Lavine*, No. 1:12-CV-611, 2013 WL 427880 at *3, 2013 U.S. Dist. LEXIS 14855 at *9 (E.D. Va. Feb. 4, 2013).

First, the Court confirms the finding that Plaintiff has no interests antagonistic to the interest of other members of the Settlement Class. Moreover, the Settlement Agreement preserves the right of class members to seek monetary damages and non-injunctive relief against Kimberly-Clark.

Second, the Court confirms its finding that proposed Class Counsel are competent to undertake this litigation. Class Counsel have extensive experience in class actions and in actions of a similar nature. Further, Class Counsel have demonstrated vigorous prosecution of the class claims throughout this litigation. Accordingly, the Court is satisfied that Plaintiff and Class Counsel are adequate representatives of the settlement under Rule 23(a)(4).

The Court further confirms its finding that as to the Settlement Class, Kimberly-Clark has acted on grounds generally applicable to the class as a whole. Here, the Settlement Agreement treats all settlement class members equally in granting them the benefits of injunctive relief. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2557, 180 L.Ed.2d 374 (2011) ("The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.") (citation omitted); *see also Berry v. LexisNexis Risk & Info. Analytics Grp., Inc.*, No. 3:11-CV-754, 2014 U.S. Dist. LEXIS 124415 at *34 (E.D. Va. Sept. 5, 2014), affirmed by *Berry v. Schulman*, 807 F.3d 600 (4th Cir. 2015) ("The Court finds that certification of the Rule 23(b)(2) class in this case is appropriate because the injunctive relief

sought is indivisible and applicable to all members of the Rule 23(b)(2) class.") (citation and internal quotation marks omitted). The proposed class action settlement thus satisfies the elements of Rule 23(b)(2).

Accordingly, the Court hereby certifies a settlement class as follows:

Settlement Class: All STP Operators in the United States whose systems were in operation between January 6, 2018 and October 4, 2021.

Excluded from the Settlement Class are counsel of record (and their respective law firms) for any of the Parties, employees of Kimberly-Clark, and any judge presiding over this action and their staff, and all members of their immediate families.

### 2. Appointment of Class Counsel and Class Representative

Having certified the class under Rule 23(b)(2), and having considered the work Plaintiff's counsel has done in identifying and investigating potential claims in this action, counsel's experience in handling complex litigation, counsel's knowledge of the applicable law, and the resources counsel have committed to representing the Settlement Class, the following attorneys are designated Class Counsel under Rule 23(g)(1):

- Frank Paul Calamita, III of Aqua Law PLC; and
- Vincent M. Serra of Robbins Geller Rudman and Dowd LLP.

Plaintiff is appointed Class Representative.

### 3. Final Approval of Proposed Settlement

Under Rule 23(e)(1) the Court will approve a class action settlement if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1). At the preliminary approval stage, the Court made a determination as to the fairness, reasonableness, and adequacy of the settlement terms. Fed. R. Civ. P. 23(e)(2); *see also* Manual for Complex Litigation (Fourth) ("MCL"), § 21.632 (4th ed. 2004). The Fourth Circuit has bifurcated this analysis into consideration of the fairness of

settlement negotiations and the adequacy of the consideration to the class. *In re Jiffy Lube Secs. Litig.*, 927 F.2d 155, 158–59 (4th Cir. 1991). At the preliminary approval stage, the Court found that the settlement was within "the range of possible approval." *Scott v. Family Dollar Stores, Inc.*, No. 3:08-cv-00540-MOC-DSC, 2018 U.S. Dist. LEXIS 41908, at *10 (W.D.N.C. Mar. 14, 2018); *Horton v. Merrill Lynch, Pierce, Fenner & Smith*, 855 F. Supp. 825, 827 (E.D.N.C. 1994) (citing *In Re Mid-Atlantic Toyota Antitrust Litigation*, 564 F. Supp. 1379, 1384 (D. Md. 1983)).

The Fourth Circuit has set forth the factors to be used in analyzing a class settlement for fairness: (1) the posture of the case at the time the proposed settlement was reached, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the settlement negotiations, and (4) counsel's experience in the type of case at issue. *Jiffy Lube*, 927 F.2d at 158–59.

The Court finds that the settlement reached in this case was the result of a fair process. Although negotiated early in the life of this litigation, as outlined in Plaintiff's motion, the proposed settlement was the result of extensive prior communication between the Parties. Namely, in late 2019, Class Counsel informed Kimberly-Clark's counsel that it "was preparing to file a putative class action in federal court on behalf of a nationwide class of STP Operators" (the "Proposed Action"). (Dkt. No. 123-1 at 9-11). These discussions "picked up" on earlier discussions between Class Counsel and Kimberly-Clark which began in *The Preserve at Connetquot Homeowners Association, Inc. v. Costco Wholesale Corporation, et al.*, 2:17-cv-JFB-AYS (E.D.N.Y.). Like the instant action, in *Connetquot* counsel for Plaintiff represented an STP Operator bringing similar claims against "the same Defendants here." (Dkt. No. 59 at 11) (noting that Plaintiff's counsel's consultants in *Connetquot* "received testing data from, and conducted testing in coordination, with Kimberly-Clark in December 2018 in connection with settlement

8

discussions"). Further, in April 2020, counsel for Plaintiff and Kimberly-Clark discussed resolving Plaintiff's Proposed Action as part of an anticipated mediation in another separate, but related case *Kurtz v. Kimberly-Clark Corporation, et al.*, No. 1:14-cv-01142-PKC-RML (E.D.N.Y.), a certified consumer class action on behalf of New York purchasers of Kimberly-Clark and Costco's flushable wipes. (*Id.*). Plaintiff states that on July 15, 2020, in connection with the mediation, Plaintiff provided Kimberly-Clark a formal proposal to resolve the Proposed Action, but that the parties did not reach an agreement at that time. (*Id.*). After the original complaint in this action was filed in January 2021, Plaintiff states the Parties continued to engage in arm-length's settlement discussions which, over the course of the next roughly 3-4 months, led to the Settlement Agreement. (*Id.* at 12); (Dkt. No. 123-1 at 11-12).

Therefore, while the Settlement Agreement was negotiated before formal discovery was conducted, the Court finds that the Parties' history of litigating similar, if not identical issues, combined with Plaintiff's counsel's extensive experience of the same, indicate the settlement was negotiated at arm's length. *See In re Lupron Marketing and Sales Practices Litigation*, 228 F.R.D. 75, 94, R.I.C.O. Bus. Disp. Guide (CCH) P 10888 (D. Mass. 2005) ("The storm warnings indicative of collusion are a 'lack of significant discovery and [an] extremely expedited settlement of questionable value accompanied by an enormous legal fee.'") (quoting *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation*, 55 F.3d 768, 801, 31 Fed. R. Serv. 3d 845 (3d Cir. 1995)).

The Settlement Agreement provides for injunctive relief including "(1) enhanced Product[1] performance; (2) confirmatory Product performance testing; (3) Product labeling improvements;

---

[1] The Settlement Agreement defines "Product" as "Kimberly-Clark's Cottonnelle-branded flushable wipes manufactured in the United States, including any FreshCare or GentlePlus-branded Cottonelle flushable wipes." (Dkt. No. 59-2 ¶ 1.19).

and (4) public outreach about flushable and non-flushable wipes." (Dkt. No. 59-1 at 13); (59-2 at 8-14); (Dkt. No. 123-1 at 12-14). The proposed relief consists of:

> [I]njunctive relief in response to Plaintiff's claims, including: (1) enhanced Product performance; (2) confirmatory Product performance testing; (3) Product labeling improvements; and (4) public outreach about flushable and non-flushable wipes.
>
> First, Kimberly-Clark has agreed that its Product will comply with specific testing criteria, including implementing manufacturing improvements to ensure that the Product meets the IWSFG 2020: "PAS 3" flushability specifications by May 1, 2022, and ensuring that the Product currently meets all other IWSFG 2020 specifications and a modified PAS 3 specification of an average pass-through percentage of at least 70% after 30 minutes of testing, with all other parameters remaining the same. Settlement Agreement at ¶2.1(a).
>
> Second, Kimberly-Clark has agreed to certain testing implementation and monitoring, including two years of confirmatory testing to verify that the Product continues to meet the IWSFG 2020 specifications after May 2, 2022, either by: (1) hosting periodic independent testing of the Product; or (2) submitting the Product to a mutually acceptable lab for independent testing beginning May 1, 2022. Settlement Agreement at ¶2.1(b).
>
> Third, Kimberly-Clark has agreed to labeling changes for both flushable and non-flushable products. For flushable products (i.e., the Product), upon verification that the Product meets IWSFG 2020 specifications (including PAS 3), Kimberly-Clark will modify the packaging and websites for the Product to add language specifying the bases or sources for the "flushable" claim that appears on its labeling, including that the Product complies with IWSFG 2020 and INDA GD4 guidelines. Settlement Agreement at ¶2.1(c)(i).
>
> For non-flushable labeling, Kimberly-Clark will add prominent language or illustration on its non-flushable wipes products (e.g., baby wipes) identifying the non-flushable products as "nonflushable" or instructing users not to flush the non-flushable products (e.g., "Do Not Flush"), and will meet the "do not flush" labeling standards set forth in Section 3 of House Bill 2565 of Washington State, enacted March 26, 2020 ("HB2565"). Id. at ¶2.1(c)(ii). Kimberly-Clark also agreed that it would exceed the standards of HB2565 insofar as it will include "do not flush" symbols or warnings on not only the principal display panel, but also at least two additional panels of packaging for "non-flushable" wipes products, and will include certain high contrast coloring to its "Do Not Flush" symbol. *Id.* Significantly, the Washington State labeling legislation is substantively identical to similar legislation in California, Oregon, and Illinois.
>
> Fourth, beyond product improvements and labeling enhancements, Kimberly-Clark has agreed to work with Plaintiff to instruct consumers not to flush non-flushable

>  wipes and to conduct outreach to help educate consumers about which wipes are truly flushable, including promoting its compliance with IWSFG 2020: PAS 3. *Id.* at ¶2.1(b)(i)-(iii).

(Dkt. No. 123-1 at 12-14).

The Court finds that the Settlement Agreement is clearly adequate. *See Toyota Antitrust Litigation*, 564 F. Supp. at 1384. In an analysis of the adequacy of a proposed settlement, the relevant factors to be considered may include: (1) the relative strength of the case on the merits, (2) any difficulties of proof or strong defenses the plaintiff and class would likely encounter if the case were to go to trial, (3) the expected duration and expense of additional litigation, (4) the solvency of the defendants and the probability of recovery on a litigated judgment, (5) the degree of opposition to the proposed settlement, (6) the posture of the case at the time settlement was proposed, (7) the extent of discovery that had been conducted, (8) the circumstances surrounding the negotiations, and (9) the experience of counsel in the substantive area and class action litigation. *See Jiffy Lube*, 927 F.2d at 159; *West v. Cont'l Auto., Inc.*, No. 3:16-cv-00502, 2018 WL 1146642 at *4, 2018 U.S. Dist. LEXIS 26404 at *10 (W.D.N.C. Feb. 5, 2018).

In this action, all Defendants besides Kimberly-Clark have vigorously disputed Plaintiff's claims. *See* Order and Opinion, (Dkt. No. 121) (denying motion to dismiss Amended Complaint under the doctrine of primary jurisdiction); Order and Opinion, (Dkt. No. 122) (denying motion to dismiss Amended Complaint in its entirety under Fed. R. Civ. P. 12(b)(6)). Plaintiff admits that if Kimberly-Clark had not reached a settlement with Plaintiff, Kimberly-Clark would likely have engaged in similar motion practice. Plaintiff further admits the difficulty in bringing actions such as the instant one, (Dkt. No. 123-1 at 20-21); (Dkt. No. 59-1 at 19-20), and notes that one of Plaintiff's counsel's prior actions against Kimberly-Clark resulted in a dismissal due to a lack of standing, *see Preserve at Connetquot Homeowners Ass'n, Inc. v. Costco Wholesale Corp.*, No.

17CV7050JFBAYS, 2019 WL 337093, at *1 (E.D.N.Y. Jan. 28, 2019). *See also* (Dkt. No. 123-1 at 20-21) (admitting that if this action had proceeded as to Kimberly-Clark and had reached discovery, "hurdles to proving liability," such as proving proximate cause, "would remain" and would necessitate expensive expert testimony). Further, the Court observes that the injunctive relief provided against Kimberly-Clark in the Settlement Agreement mirrors significant portions of the relief which Plaintiff affirmatively seeks in its Amended Complaint. In sum, the likelihood of substantial future costs weighed against the uncertainty of further litigation favors approving the proposed settlement. *See Sims v. BB&T Corp.*, No. 1:15-CV-732, 2019 WL 1995314, at *4-5 (M.D.N.C. May 6, 2019).

The Court received a single objection to the Settlement Agreement. The North Shore Water Reclamation District ("NSWRD") of Gurnee, Illinois filed an objection with the Court whereby it expressed discontent with the fact it could not "opt-out" of the proposed settlement. (Dkt. No. 126 at 2). NSWRD does not substantively dispute, however, that no opt-out mechanism exists as to Rule 23(b)(2) classes. *Berry v. Schulman*, 807 F.3d 600, 612 (4th Cir. 2015) ("[T]he premise behind certification of mandatory classes under Rule 23(b)(2) is that because the relief sought is uniform, so are the interests of class members, making class-wide representation possible and opt-out rights unnecessary."). NSWRD further objects that it did not have the opportunity to "participate" in the negotiation of the settlement. (*Id.* at 1). NSWRD, however, cites no case law in support of its argument—an argument which ignores, and in-fact runs contrary to the operation of Rule 23. *Berry*, 807 F.3d at 612 ("And before a class may be certified under Rule 23(b)(2), of course, a court must find under Rule 23(a)(4)—as the district court did here—that the interests of all of the class members will be fairly and adequately represented by the named plaintiffs and class counsel. Rule 23(e)'s settlement approval process provides additional protection, ensuring that

12

Rule 23(b)(2) class members receive notice of a proposed settlement and an opportunity to object, and that a 'settlement will not take effect unless the trial judge—after analyzing the facts and law of the case and considering all objections to the proposed settlement—determines it to be fair, adequate, and reasonable.'"). NSWRD states it does "not intend to personally appear, present witnesses and/or testify at the Final Approval hearing," (Dkt. No. 126 at 2), and NSWRD did not in-fact appear at the Court's January 24, 2022, fairness hearing.

By contrast, the Court received various letters of support for the Settlement Agreement. (Dkt. No. 127 a 1-2) (letter of support from the Missouri Cleanwater Agencies, representing "90 percent of Missouri's sewered population"); (*Id.* at 4-8) (letter of support signed by 33 South Carolina water districts); (*Id.* at 10-11) (letter of support from West Virginia Water Quality Association, representing "90 percent of West Virginia's sewered population"); *see also* Plaintiff's Reply to Objections, (Dkt. No. 129) (rebutting NSWRD's objections).

### 4. Notice for The Proposed Settlement Class

As outlined in the Settlement Agreement, (Dkt. No. 59-2 § 7), and as further agreed to by the Parties in proceedings before the Court, "Notice" consisted of the following: (1) First-Class direct mailed notice to the 17, 297 publicly owned sewage treatment plant operators located in the United States as of August 27, 2021; (2) Publication of a Summary Notice, Ex. C, (Dkt. No. 59-2 at 45-46), of one-half page in size once in both the print and online editions of the Water Environment Federation's magazine *Water Environment & Technology*; (3) Transmittal by email of the Notice of Settlement, Ex. B, (Dkt. No. 59-2 at 30-43), to roughly 23 national and local water organizations; (4) a Settlement website; (5) Publication of a Summary Notice via press release issued by the Parties; and (6) notice of the Proposed Settlement to federal and state officials as required by the Class Action Fairness Act of 2005.

As confirmed at the Court's January 24, 2022, hearing, Plaintiff satisfied all Notice requirements. *See* Declaration of Ross D. Murray Regarding Notice Dissemination and Publication, (Dkt. No. 123-6) (regarding first class direct mail and press release); Joint Declaration of Serra and Calamita, (Dkt. No. 123-2 ¶¶ 16-19); (*Id.* at 19) (email notice to wastewater/governmental associations); (*Id.* at 22) (copy of notice by publication in WE&T magazine); Charleston Wipes Settlement Website, http://charlestonwipessettlement.com (last viewed January 24, 2022).

5. **Award of Attorneys' Fees and Costs**

Regarding attorneys' fees and expenses in connection with this Rule 23(b)(2) settlement, Class Counsel has requested a total award of $590,000.00—consisting of $560,655.27 in attorneys' fees and $ 29,344.73 in actual expenses (including Court costs). The Court received no objections to Class Counsel's request for this award. A review of the *Barber* factors that are discussed at length in the Plaintiff's motion, (Dkt. No. 123-1 at 25-30), demonstrates that the proposed award is reasonable and should be approved. With respect to the time and labor required, Plaintiffs' counsel invested over one thousand hours toward successful resolution of this action as between the Parties and the issues presented in the litigation were difficult and complex, as explained *supra*. Given the complexity of the factual and legal issues presented in this case, the preparation, prosecution, and settlement of this case required significant skill and effort on the part of Plaintiff's counsel. Accordingly, the Court grants Class Counsel's request for an award of attorneys' fees and costs.

## Conclusion

For the reasons stated above, the Court **GRANTS** Plaintiff's motion for final approval of class action settlement and an award of attorneys' fees. (Dkt. No. 123).

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

January 24, 2022
Charleston, South Carolina