UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | |
|---|---|
| COMMISSIONERS OF PUBLIC WORKS OF THE CITY OF CHARLESTON (d.b.a. Charleston Water System), Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> COSTCO WHOLESALE CORPORATION, CVS HEALTH CORPORATION, KIMBERLY-CLARK CORPORATION, THE PROCTER & GAMBLE COMPANY, TARGET CORPORATION, WALGREEN CO. and WAL-MART, INC., <br><br> Defendants. | Civil Action No. 2:21-cv-00042-RMG <br><br> <u>CLASS ACTION</u> <br><br> MEMORANDUM OF LAW IN SUPPORT OF: (1) PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS; AND (2) CLASS COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES |

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ................................................................................................1

II.    BACKGROUND OF THE LITIGATION AND SETTLEMENTS ...................................3

       A.    The Litigation................................................................................3

       B.    Summary of the Settlement Negotiations .................................................6

       C.    The Proposed Settlement Class...............................................................6

       D.    Terms of the Settlements .......................................................................7

III.   THE NOTICE SATISFIED RULE 23 AND DUE PROCESS .........................................8

IV.    THE PROPOSED SETTLEMENTS WARRANT FINAL APPROVAL ..........................10

       A.    The Settlements Are Procedurally Fair: Plaintiff and Class Counsel Have
             Adequately Represented the Settlement Class and Engaged in Arm's-
             Length Negotiations with Defendants ....................................................11

       B.    The Settlements Are Substantively Fair: The Relief Provided to the
             Settlement Class Is Adequate and Equitable ...........................................14

             1.    The Costs, Risks, and Delay of Trial and Appeal Support Approval
                   of the Settlements....................................................................14

             2.    The Relief Provided Is Effective and Equitable ...........................15

             3.    The Terms of the Attorneys' Fee Award Are Fair, Reasonable, and
                   in Line with Other Cases..........................................................16

             4.    The Settling Parties Have No Other Agreements ..........................17

             5.    Settlement Class Members Are Treated Equitably.........................17

V.     THE REQUESTED ATTORNEYS' FEES AND EXPENSES ARE
       REASONABLE ..................................................................................................17

       A.    The Requested Attorneys' Fees Are Reasonable and Should Be Granted ............17

             1.    *Barber* Factor No. 1: The Time and Labor Expended by Class
                   Counsel Support the Requested Fee ...........................................19

             2.    *Barber* Factor No. 2: The Novelty and Complexity of the Issues
                   Support the Requested Fee........................................................21

**Page**

3.    *Barber* Factor Nos. 3 and 9: Class Counsel's Experience, Reputation, and Ability, Along with the Skill Required to Perform Their Legal Services, Supports the Requested Fee.....................................22

4.    *Barber* Factor Nos. 8 and 10: The Result Obtained and Undesirability of the Case Support the Requested Fee............................22

5.    *Barber* Factor Nos. 5 and 12: Fee Awards in Similar Cases, and the Customary Fee for Like Work, Support the Requested Fee .....................23

6.    *Barber* Factor No. 4: Class Counsel's Opportunity Costs in Pressing the Litigation Supports the Requested Fee.................................24

B.    The Requested Litigation Expenses Are Reasonable and Should be Granted...................................................................................................24

VI.    THE COURT SHOULD GRANT FINAL CERTIFICATION OF THE SETTLEMENT CLASS .........................................................................25

VII.    CONCLUSION......................................................................................................25

## TABLE OF AUTHORITIES

**Page**

### CASES

*Barber v. Kimbrell's, Inc.*
577 F.2d 216 (4th Cir. 1978) ............................................................ *passim*

*Berry v. LexisNexis Risk & Info. Analytics Grp., Inc.*,
2014 WL 4403524
(E.D. Va. Sept. 5, 2014),
*aff'd sub nom. Berry v. Schulman*, 807 F.3d 600 (4th Cir. 2015)................................... *passim*

*Bowling v. Pfizer, Inc.*,
922 F. Supp. 1261 (S.D. Ohio 1996),
*aff'd*, 102 F.3d 777 (6th Cir. 1996) ...........................................................................19

*Clark v. Duke Univ.*,
2019 WL 2588029
(M.D.N.C. June 24, 2019).........................................................................................15

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974)...................................................................................................8

*Fleming v. Impax Lab'ys Inc.*,
2022 WL 2789496
(N.D. Cal. July 15, 2022).........................................................................................21

*Gaston v. LexisNexis Risk Sols. Inc.*,
2021 WL 2077812
(W.D.N.C. May 24, 2021) ..............................................................16, 20, 23, 24

*Greenspun v. Bogan*,
492 F.2d 375 (1st Cir. 1974) ..................................................................................10

*Hensley v. Eckerhart*,
461 U.S. 424 (1983).................................................................................................19

*Hill v. State St. Corp.*,
2015 WL 127728
(D. Mass. Jan. 8, 2015) ...........................................................................................10

*In re Ferrero Litig.*,
583 F. App'x 665 (9th Cir. 2014) ...........................................................................16

**Page**

*In re Genworth Fin. Sec. Litig.*,
   2016 WL 7187290
   (E.D. Va. Sept. 26, 2016) ........................................................................................16

*In re Genworth Fin. Sec. Litig.*,
   210 F. Supp. 3d 837 (E.D. Va. 2016) ................................................18, 20, 22, 23

*In re Jiffy Lube Securities Litigation*,
   927 F.2d 155 (4th Cir. 1991) ........................................................... *passim*

*In re Massey Energy Co. Sec. Litig.*,
   2014 WL 12656719
   (S.D. W. Va. June 4, 2014) .....................................................................................21

*In re The Mills Corp. Sec. Litig.*,
   265 F.R.D. 246 (E.D. Va. 2009) .............................................................................12

*In re NeuStar, Inc. Sec. Litig.*,
   2015 WL 5674798
   (E.D. Va. Sept. 23, 2015) ..........................................................................11, 12, 13

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005) ...................................................................................19

*In re Sunbeam Sec. Litig.*,
   176 F. Supp. 2d 1323 (S.D. Fla. 2001) ..................................................................22

*In re TJX Co. Retail Sec. Breach Litig.*,
   584 F. Supp. 2d 395 (D. Mass. 2008) ..............................................................22, 23

*Johnson v. Ga. Highway Express, Inc.*,
   488 F.2d 714 (5th Cir. 1974),
   *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989) ........................18

*Kay Co. v. Equitable Prod. Co.*,
   749 F. Supp. 2d 455 (S.D. W. Va. 2010).................................................................20

*Missouri v. Jenkins*,
   491 U.S. 274 (1989)................................................................................................21

*Ressler v. Jacobson*,
   149 F.R.D. 651 (M.D. Fla. 1992)............................................................................22

**Page**

*Sims v. BB&T Corp.*,
    2019 WL 1993519
    (M.D.N.C. May 6, 2019)..................................................................................21, 25

*Stayler v. Rohoho, Inc.*,
    2019 WL 1491873
    (D.S.C. Apr. 4, 2019)..................................................................................18

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
    Rule 23 .......................................................................................... *passim*

Federal Rules of Evidence
    Rule 502(d) ....................................................................................5

Local Civil Rules for the United States District Court of South Carolina
    26.03..............................................................................................5

Representative plaintiff, the Commissioners of Public Works of the City of Charleston (d.b.a. "Charleston Water System") ("Plaintiff"), submits this memorandum of law in support of its motion for: (i) final approval of the proposed Settlements, which resolves Plaintiff's common law claims in this class action (the "Litigation") against defendants Costco Wholesale Corporation ("Costco"), CVS Health Corporation ("CVS"), The Procter & Gamble Company ("P&G"), Target Corporation ("Target"), Walgreen Co. ("Walgreens"), and Walmart Inc. ("Walmart" and, collectively, "Settling Defendants") (together with Plaintiff, the "Settling Parties"), brought on behalf of all entities that own and/or operate sewage or wastewater conveyance and treatment systems, including municipalities, authorities and wastewater districts (sewage treatment plant, or "STP Operators") in the United States whose systems were in operation between January 6, 2018 and November 21, 2023, the date of preliminary approval ("Settlement Class" and the "Settlement Class Period"); and (ii) an award of attorneys' fees and expenses.[1]

## I.     INTRODUCTION

The Settlements provide crucial injunctive relief to municipal wastewater systems throughout the country, including commitments by the Settling Defendants to meet a national municipal wastewater industry flushability standard for their flushable wipes, submit to confirmatory testing, and improve the labeling of non-flushable wipes – to resolve all of Plaintiff's Released Claims against the Settling Defendants during the Settlement Class Period – and bring a complete resolution to the Litigation. This nationwide injunctive relief will reduce both the accumulation of wipes in Settlement Class Members' systems and the expenses incurred to address wipes-related clogs. The

---

[1]     Citations and internal quotations are omitted and emphasis is added throughout unless otherwise noted. All capitalized terms that are not otherwise defined herein have the same meanings ascribed to them in the Stipulations of Settlement entered into between Plaintiff and P&G, dated July 13, 2023 ("P&G Agreement") (ECF No. 197-2); Costco, CVS, and Target, dated October 11, 2023 ("Costco, CVS, and Target Agreement") (ECF No. 198-2); Walgreens, dated October 26, 2023 ("Walgreens Agreement") (ECF No. 198-3); Walmart, dated October 26, 2023 ("Walmart Agreement") (ECF No. 198-4); and together with an addendum pertaining to Target, dated November 20, 2023 ("Target Addendum") (ECF No. 203-1) (together, the "Settlement Agreements").

relief will also lessen the costly and time-consuming preventative measures necessary to mitigate future clogging, in addition to improving the safety and efficiency of those systems.

The Settlements follow hard-fought litigation and are the result of extensive arm's–length negotiations between Class Counsel and counsel for six defendants, with the assistance of mediator Michael Ungar, Esq.  Plaintiff and Class Counsel believe the Settlements – which follow and largely parallel a similar settlement with Kimberly-Clark Corporation ("Kimberly-Clark") – present an excellent result for the Settlement Class in the face of substantial uncertainty, and will provide wastewater treatment facilities nationwide with not only significant additional relief from wipes-related clogs and blockages, but will play a critical role in the transformation of the flushable wipes industry for the benefit of the Settlement Class.

On November 21, 2023, the Court granted preliminary approval of the Settlements under Federal Rule of Civil Procedure 23.  ECF No. 204 ("Preliminary Approval Order").  In doing so, the Court found the Settlements were "the result of a fair process" and were "negotiated at arm's length" given the "Parties' experience litigating similar issues and Plaintiff's Counsel's experience negotiating the Kimberly-Clark settlement."  *Id*. at 9.  In addition to preliminarily approving the Settlements, the Court: (i) conditionally certified the proposed Settlement Class; and (ii) found the Notice plan "reasonable and adequate."  *Id*. at 7, 10-11.

Following implementation of the Court-approved Notice plan, to date not a ***single*** Settlement Class Member has filed an objection to ***any*** aspect of the Settlements.  The absence of objections is of particular note here, and weighs heavily in favor of the Settlements, because the Settlement Class consists of municipal sewage treatment systems that are staffed and managed by professionals in the field.  Over 15,000 potential Settlement Class Members identified in the U.S. Environmental Protection Agency's ("EPA") records were notified of the Settlements by First-Class Mail.

- 2 -

Settlement Class Members were also notified about the Settlements through publication in a premier professional publication, as well as by press release, a dedicated settlement website, and email transmittal to state and federal water, wastewater, and/or municipal entities. Thus, the lack of objections and extensive notice plan further support the Settlements.

Class Counsel also respectfully request that the Court approve a fee and expense award totaling $1,900,000, consisting of attorneys' fees of $1,859,691.77, and the payment of litigation expenses and charges of $40,308.23, as compensation for their efforts. Class Counsel's work to date has been wholly contingent on the results obtained in the Litigation. The requested fee and expense award is consistent with awards in similar actions in the Fourth Circuit and throughout the country, and is fully supported by Plaintiff. Since fee awards are designed to encourage counsel to achieve the best possible result for the class, the amount requested in this case is warranted given the exceptional result obtained and the obstacles and risks Class Counsel faced in bringing and prosecuting this case since 2021. Indeed, the requested fee results in a negligible lodestar multiplier of 1.01, substantially lower than multipliers routinely approved in the Fourth Circuit.

Accordingly, Plaintiff requests that the Court enter an order granting final approval of the Settlements, and awarding Class Counsel's requested attorneys' fees and expenses.

## II. BACKGROUND OF THE LITIGATION AND SETTLEMENTS[2]

### A. The Litigation

Class Counsel's investigation began in November 2018, over two years before the filing of the complaint. *See* Jt. Decl. ¶10. Before that time, Plaintiff's counsel, Robbins Geller Rudman & Dowd LLP ("Robbins Geller"), was litigating an analogous case on behalf of a different STP

---

[2]    Further detail about the Litigation and Settlements are detailed in the Joint Declaration of Vincent M. Serra and F. Paul Calamita in Support of Plaintiff's Motion for Final Approval of Class Action Settlements and an Award of Attorneys' Fees and Expenses ("Jt. Decl." or "Joint Declaration"), submitted herewith. The Joint Declaration is an integral part of this submission and, for the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of, *inter alia*: the history of the Litigation; the nature of the claims asserted; the negotiations leading to the Settlements; and the risks and uncertainties of continued litigation, among other things.

Operator against Defendants[3] in the Eastern District of New York – *The Preserve at Connetquot Homeowners Association, Inc. v. Costco Wholesale Corporation, et al.*, No. 2:17-cv-07050-JFB-AYS. *Id.* Plaintiff's expert consultant in *Preserve* – Robert A. Villée, the former Executive Director of the Plainfield Area Regional Sewerage Authority and former chair of WEF – advised Plaintiff in connection with Plaintiff's investigation and the Litigation.

As part of their investigation, Class Counsel communicated extensively with Plaintiff about its experience dealing with flushable wipes at Plaintiff's facilities, and coordinated with industry experts and consultants – including Mr. Villée and Barry Orr, a prominent wastewater industry specialist and representative of the Canadian Water and Wastewater Association on the International Water Services Flushability Group ("IWSFG"), a group of water associations, utilities and professionals focused on flushability – who advised Class Counsel on the factual bases of Plaintiff's claims. *Id.* ¶11. After over two years of conducting its pre-suit investigation, on January 6, 2021, Class Counsel filed a detailed 59-page, 180-paragraph complaint, setting forth claims for nuisance, trespass, defective design, failure to warn, and negligence on behalf of STP Operators in South Carolina and throughout the country. *Id.*

Plaintiff opposed three separate motions to dismiss, and included with its opposition briefs a declaration from Mr. Orr detailing extensive testing of the Settling Defendants' flushable wipes products and affidavits from representatives of Plaintiff and other wastewater utilities setting forth their experiences with wipes. Jt. Decl. ¶12. Without ruling on the motions, the Court permitted Plaintiff to file an amended complaint and dismissed the Settling Defendants' joint motion to dismiss as moot. *Id.* ¶13. The Amended Complaint, filed on August 12, 2021 (ECF No. 85), seeks injunctive relief to remedy costly and ongoing damage to Plaintiff's wastewater facilities due in

---

[3]     "Defendants" refers to Settling Defendants and Kimberly-Clark, whose settlement with Plaintiff was fully approved by the Court on January 24, 2022. ECF No. 133.

significant part to the inability of Defendants' purportedly "flushable" wipes to break down and disperse sufficiently to pass through Plaintiff and Class members' wastewater systems. Jt. Decl. ¶9. The Amended Complaint added allegations summarizing the results of Mr. Orr's testing and further detailed allegations of injury suffered by Plaintiff and other South Carolina wastewater utilities. *Id*. ¶13. The Settling Defendants then moved to dismiss the Amended Complaint on October 12, 2021. *Id*. ¶14.

On December 1, 2021, the Court denied Costco, CVS, and Target's motion to dismiss the Amended Complaint under the doctrine of primary jurisdiction (*see* ECF No. 121), and on December 13, 2021, denied the Settling Defendants' motion to dismiss for failure to state a claim in its entirety. *See* ECF No. 122. The Court held, *inter alia*, that Plaintiff has standing to pursue its claims against the Settling Defendants and had adequately alleged facts to support a permanent injunction. *See id.* Thereafter, in the first quarter of 2022, the Settling Defendants answered the Amended Complaint, the parties met and conferred and filed their Joint Rule 26(f) Discovery Plan and Rule 26(f) Report and separate Responses to Local Civil Rule 26.03, and served their initial disclosures. Jt. Decl. ¶16. The parties then served document requests and interrogatories, responses and objections thereto, and met and conferred over their respective requests over the next several months. *Id*. They also negotiated a stipulated protective order, a joint protective order under Fed. R. Evid. 502(d) in connection with the production of privileged discovery materials, and an ESI protocol, which they filed with the Court on September 26, 2022. *Id*.

Even before the onset of discovery, and continuing until September 2022, the parties were engaged in frequent and often contentious negotiations regarding the preservation of physical evidence. Plaintiff and Defendants first exchanged correspondence on this topic in March 2021, and between March and August 2022 the Settling Parties exchanged at least seven drafts of a proposed

preservation protocol (or revised terms) and multiple drafts of a related evidentiary stipulation, and participated in numerous meet and confer conferences regarding preservation and evidentiary issues. *Id*. ¶17. Class Counsel's preservation proposals were made in consultation with CWS and Plaintiff's expert consultants and were developed to balance the need for the preservation of physical clog and debris material with the difficulties, practicalities, and logistical complications associated with handling and storing such material, including health and safety considerations and the diversion of significant monetary and human resources of Plaintiff. *Id*.

By September 2022, the parties were far enough along with settlement negotiations (*id*. ¶¶19-27), which they conducted while simultaneously proceeding with their discovery efforts, such that they discussed the prospect of seeking a stay of the Litigation to preserve resources and focus their efforts on global resolution of the Litigation. *Id*. ¶18. On October 6, 2022, the parties filed a Consent Motion for a Stay of Pending Litigation, seeking to pause the Litigation for 60 days to pursue settlement efforts. ECF No. 170. The Court issued an Amended Scheduling Order on October 28, 2022, and as the parties continued their settlement negotiations, the Court stayed the Litigation and the Settling Parties provided multiple status reports to the Court and participated in a teleconference with the Court on September 26, 2023. Jt. Decl. ¶18. Following the conference, the Court issued a Minute Entry requiring all motions for preliminary approval of any settlements to be filed by October 26, 2023, and setting trial for January 8, 2024. ECF Nos. 194-195.

### B.    Summary of the Settlement Negotiations

To avoid repetition, Plaintiff refers the Court to the accompanying Joint Declaration for a detailed discussion of the settlement negotiations leading to the Settlements. Jt. Decl. ¶¶19-27.

### C.    The Proposed Settlement Class

The Settlement Agreements call for certification for settlement purposes of a Settlement Class consisting of "[a]ll STP Operators in the United States whose systems were in operation

between January 6, 2018 and the date of preliminary approval." Settlement Agreements ¶1.22. "STP Operators" are defined in the Settlement Agreements as "entities that own and/or operate sewage or wastewater conveyance and treatment systems, including municipalities, authorities and wastewater districts." *Id*. at 1. The Court conditionally certified the Settlement Class in its Preliminary Approval Order on November 21, 2023. ECF No. 204 at 11.

### D. Terms of the Settlements

The Settlements provide meaningful injunctive relief for STP Operators nationwide in response to Plaintiff's claims, including: (1) commitments by the Settling Defendants to achieve compliance with the wastewater industry's preferred flushability standards, including the IWSFG Publicly Available Specification (PAS) 3: 2020 "Slosh Box" disintegration test ("IWSFG 2020: PAS 3"), for their flushable wipes products; (2) confirmatory testing for two years; and (3) labeling improvements for the Settling Defendants' non-flushable wipes products. The cumulative effect of the Settlements is designed to reduce the accumulation of flushable and non-flushable wipes in Class Members' wastewater systems, along with corresponding wipes-related clogs and backups, and to lessen the financial and human resource burdens associated with addressing such clogs.

*First*, the Settling Defendants commit that the Products they manufacture and/or sell will meet, or currently meet, the current IWSFG 2020: PAS 3 flushability specification by April 1, 2024 (for Costco, CVS, and Walgreens), December 1, 2024 (for Target), and 18 months following the Effective Date (for P&G). Costco, CVS, and Target Agreement ¶2.1(a); Walgreens Agreement ¶2.1(a); Target Addendum at 2; P&G Agreement ¶2.1(a). Walmart commits that it currently meets the IWSFG 2020: PAS 3 flushability specifications. Walmart Agreement ¶2.1(a).

*Second*, the Settling Defendants have agreed to certain testing implementation and monitoring, including two years of confirmatory testing to verify the Products continue to meet the IWSFG 2020: PAS 3 specification upon achieving compliance, with testing to be conducted every

four months, either by: (1) hosting periodic independent testing of the Products; or (2) submitting the Products to a lab for independent testing. Settlement Agreements ¶2.1(b).

*Third*, the Settling Defendants agreed to labeling changes for non-flushable products. Costco, CVS, P&G, Target, and Walgreens agreed to meet the "Do Not Flush" labeling standards set forth in Chapter 590 of Assembly Bill No. 818 ("AB818") of California State – considered the most stringent labeling law in the United States – nationwide to the extent their products are "Covered Products" as defined in AB818. Costco, CVS, and Target Agreement ¶2.1(c)(iii); P&G Agreement ¶2.1(c)(ii); Walgreens Agreement ¶2.1(c)(iii). Walmart has likewise agreed to implement consistent labeling nationwide for its non-flushable products, which will bring these products' labeling in compliance with the aforementioned state law throughout the country. Walmart Agreement ¶2.1(c)(ii). The Settling Defendants also agreed to include "Do Not Flush" symbols or warnings on not only the principal display panel, but also at least two additional panels of packaging for non-flushable baby wipes products. Settlement Agreements ¶2.1(c).

In combination, and coupled with similar relief obtained in the previously-approved settlement with Kimberly-Clark, this injunctive relief should dramatically reduce the wipes-related impacts to public sewer systems nationwide.

## III.    THE NOTICE SATISFIED RULE 23 AND DUE PROCESS

Since the Court conditionally certified the Settlement Class under Federal Rule of Civil Procedure ("Rule") 23(b)(2), Plaintiff was required to provide notice to Settlement Class Members under Rule 23(c)(2)(A). Here, the Notice went beyond those requirements and, instead, met the stricter requirement of Rule 23(c)(2)(B) (applicable only to Rule 23(b)(3) classes), which requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Rule 23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974). The Notice further satisfied Rule 23(e)(1),

which requires that notice be directed "in a reasonable manner to all class members who would be bound."  Rule 23(e)(1)(B).

In granting preliminary approval, the Court approved the notice procedures outlined in the Settlement Agreements, which reflect the supplemental notice procedures agreed to by the parties during Court proceedings on August 25 and September 9, 2021 in connection with the Kimberly-Clark settlement, including: (1) First-Class Mail notice to over 15,000 potential Settlement Class Members consisting of publicly owned STP Operators located in the United States as of November 1, 2023; (2) publication of a Summary Notice in both the print and online editions of WEF's magazine, *Water Environment & Technology*; (3) direct email notice to 23 national and local water organizations; (4) creation of a dedicated settlement website; and (5) publication of a Summary Notice via press release.  *See* ECF No. 204 at 10-11; Jt. Decl. ¶¶29-31; Settlement Agreements ¶¶7.1-7.6.

In accordance with the Preliminary Approval Order and the December 5, 2023 Specialized Scheduling Order for Settlement (ECF No. 206), by the December 15, 2023 deadline for publishing Notice of the Settlements – Class Counsel had emailed Notice to the State wastewater associations and other entities identified in ¶7.2 of the Settlement Agreements, and developed and activated a website dedicated to the Settlements with pertinent information and documents for Settlement Class Members, www.charlestonwipessettlement.com.  Jt. Decl. ¶29.  Additionally, Class Counsel and defense counsel coordinated and caused the Summary Notice to be published in the January 2024 print and online editions of WEF's *Water Environment & Technology* magazine.  *Id*. ¶30.  The Settling Parties also retained the services of Gilardi & Co. LLC ("Gilardi") to provide the Summary Notice by First-Class Mail to Settlement Class Members and issue notice via press release.  *Id*. ¶31.  Gilardi mailed the Summary Notice and issued notice via press release over *Business Wire* on

December 15, 2023.  *Id.*; *see also* Declaration of Ross D. Murray Regarding Notice Dissemination and Publication ("Murray Decl.") ¶¶3-6, submitted herewith.

The Notice apprises Settlement Class Members of their right to, and the deadline by which they must, object to the Settlements and Class Counsel's application for the requested attorneys' fees and expenses.  Jt. Decl. ¶30; Settlement Agreements at Ex. B.  The Notice also states that Settlement Class Members can request to speak about their opinion of the Settlements and/or the request for an award of attorneys' fees and expenses at the Final Approval Hearing, details information about the Settlements and its benefits, and provides further explanation about the various ways to receive additional information about the Settlements.  *Id.*  Additionally, the Notice includes, *inter alia*: (i) a statement indicating the attorneys' fees and expenses that will be sought; (ii) the Settlement Class definition; and (iii) the time and place of the Fairness Hearing.  Settlement Agreements at Exs. B-C; Murray Decl. Exs. A-B.

Overall, the Notice's content and manner of dissemination "'fairly apprise[d] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them.'"  *See Hill v. State St. Corp.*, 2015 WL 127728, at *15 (D. Mass. Jan. 8, 2015) (quoting *Greenspun v. Bogan*, 492 F.2d 375, 382 (1st Cir. 1974)).  In sum, the efforts of Class Counsel "'fairly apprise[d]'" Settlement Class Members about the Settlements consistent with certification of a Rule 23(b)(2) class and in accordance with Rule 23(c)(2)(A) and (e)(1).  *Hill*, 2015 WL 127728, at *15.

## IV.    THE PROPOSED SETTLEMENTS WARRANT FINAL APPROVAL

Rule 23(e) of the Federal Rules of Civil Procedure provides that class action settlements must be presented to the Court for approval.  The Rule further directs that the settlements should be approved if the Court finds it "fair, reasonable, and adequate."  Rule 23(e)(2).

Rule 23(e)(2) articulates specific factors for courts to consider when evaluating settlements

- 10 -

for final approval.  Specifically, courts are called upon to assess whether:

> (A)     the class representatives and class counsel have adequately represented the class;
> (B)     the proposal was negotiated at arm's length;
> (C)     the relief provided for the class is adequate, taking into account:
>> (i)     the costs, risks, and delay of trial and appeal;
>> (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv)    any agreement required to be identified under Rule 23(e)(3); and
> (D)     the proposal treats class members equitably relative to each other.

*Id*.  Subsections 23(e)(2)(A)-(B) of the revised Rule focus on the "procedural" fairness of the settlements, while subsections 23(e)(2)(C)-(D) concern the settlement's "substantive" fairness. Advisory Committee Notes to 2018 Amendment to Rule 23(e)(2).

Overlapping with Rule 23(e)(2)(B) (arm's-length negotiation) and Rule 23(e)(2)(C)(i) (adequacy of the settlements based on the costs, risks, and delay of trial and appeal) is the two-level analysis in the Fourth Circuit set forth in *In re Jiffy Lube Securities Litigation*, 927 F.2d 155, 158-60 (4th Cir. 1991), which "includes an assessment of both the procedural fairness of the settlement negotiations and the substantive adequacy of the settlement itself."  *In re NeuStar, Inc. Sec. Litig.*, 2015 WL 5674798, at *9 (E.D. Va. Sept. 23, 2015).  The procedural fairness factor ensures "that the settlement was reached as a result of good-faith bargaining at arm's length, without collusion." *Jiffy Lube*, 927 F.2d at 158-59.  The substantive adequacy analysis, on the other hand, "'weigh[s] the likelihood of the plaintiff's recovery on the merits against the amount offered in settlement.'" *NeuStar*, 2015 WL 5674798, at *11.  As discussed below, the proposed Settlements satisfy each of the factors identified under Rule 23(e)(2), as well as the Fourth Circuit's "fairness" and "adequacy" analysis.

> **A.     The Settlements Are Procedurally Fair: Plaintiff and Class Counsel Have Adequately Represented the Settlement Class and Engaged in Arm's-Length Negotiations with Defendants**

Plaintiff and Class Counsel have adequately represented the Settlement Class as required by Rule 23(e)(2)(A) by diligently prosecuting this Litigation on their behalf.  Among other things, Plaintiff investigated the relevant factual information and retained and/or consulted with experts in connection with Plaintiff's claims and to perform product testing and analysis and technical research. *See* Jt. Decl. ¶¶10-11.  Furthermore, Class Counsel researched the legal issues underlying Plaintiff's claims, drafted a detailed complaint and Amended Complaint, survived Defendants' motions to dismiss, engaged in discovery, and participated in extensive settlement negotiations with defense counsel, during which the Settling Parties advocated for their respective positions. *Id.* ¶¶10-27.  The result are Settlements comprised of the comprehensive injunctive relief described above, *supra* §II.D.  The facts set out in the Joint Declaration and §II.D. above demonstrate the adequacy, competence and diligence of Class Counsel and Plaintiff, as well as the arms-length nature of the negotiations.  This comprehensive injunctive relief also satisfies both Rule 23(e)(2) and the principles required by *Jiffy Lube*, 927 F.2d at 158-60.

In addition, the Settling Parties achieved the Settlements as the result of good faith, arm's-length negotiations by experienced counsel, satisfying Rule 23(e)(2)(B) and the first part of the Fourth Circuit's *Jiffy Lube* analysis.  The Settling Parties engaged in arm's-length settlement negotiations beginning in 2021 (for certain Settling Defendants), with intensive negotiations for many defendants, often facilitated by Mr. Ungar, taking place for over a year before reaching the Settlements.  The Fourth Circuit considers whether the case has progressed far enough to dispel any wariness of "'possible collusion among the settling parties.'"  *NeuStar*, 2015 WL 5674798, at *10 (quoting *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 254 (E.D. Va. 2009)).  Here, there can be no question the Settlements were the result of arm's-length negotiations in which there is no hint of collusion.  As discussed, the Settling Parties negotiated the terms of the Settlements and/or rejected

or countered numerous offers or counteroffers over the course of many months, and with respect to certain defendants, years. "These adversarial encounters dispel any apprehension of collusion between the parties." *NeuStar*, 2015 WL 5674798, at *10.[4]

Moreover, Class Counsel have litigated several class action suits against certain of the Defendants related to their flushable wipes, the first of which – *Kurtz v. Kimberly-Clark Corp., et al*., No. 1:14-cv-01142-PKC-RML (E.D.N.Y.) – has been pending since 2014 and involved significant discovery. "These factors alone could be enough to demonstrate the fairness of the Settlement[.]" *Berry v. LexisNexis Risk & Info. Analytics Grp., Inc*., 2014 WL 4403524, at *14 (E.D. Va. Sept. 5, 2014), *aff'd sub nom. Berry v. Schulman*, 807 F.3d 600 (4th Cir. 2015) (plaintiff's counsel's involvement in two prior class actions against the same defendants related to the same challenged practices following extensive discovery supported a finding of fairness). This, combined with the significant pre-suit investigation, litigation efforts, discovery, and negotiations with Defendants, gave Plaintiff a meaningful understanding of the merits of its factual allegations, and the strengths and weaknesses of its legal claims.

In sum, Class Counsel brought their extensive experience to bear on the prosecution and settlement of this case. As detailed in the Joint Declaration, Class Counsel have substantial experience in complex class actions, flushable wipes-related litigation, and disputes involving water and infrastructure. Jt. Decl. ¶33. Class Counsel have zealously represented the Settlement Class, and achieved meaningful Settlements after extensive arm's-length negotiations with defense counsel. Moreover, Plaintiff has assisted Class Counsel throughout this process and adequately represented the Settlement Class. *See* Declaration of Mark Cline on Behalf of Charleston Water System ("Pl.

---

[4]     The Fourth Circuit also looks to the extent of discovery. *NeuStar*, 2015 WL 5674798, at *10. Here, Plaintiff engaged in the discovery process and had access to information and data through the parties' settlement negotiations. Further, as described in §II.A., *supra*, and in the Joint Declaration (¶¶10-11), Plaintiff conducted a particularly expansive pre-filing investigation (that continued following the filing of the complaint), including the use of consulting experts.

Decl.") ¶5, submitted herewith; *see also* ECF No. 64-4.  Accordingly, the Settlement satisfies the "procedural" factors outlined in Rule 23(e)(2)(A)-(B) and *Jiffy Lube*.

**B.     The Settlements Are Substantively Fair: The Relief Provided to the Settlement Class Is Adequate and Equitable**

"The relief that the settlement is expected to provide to class members is a central concern" of the analysis under Rules 23(e)(2)(C)-(D).  Notes of Advisory Committee on 2018 Amendment to Rule 23(e)(2)(C)-(D).  This factor overlaps with the Fourth Circuit's analysis of the substantive adequacy of the Settlements.  *Jiffy Lube*, 927 F.2d at 159.

The injunctive relief achieved through the Settlements – in the form of enhanced product performance, confirmatory testing, and labeling improvements – supports the adequacy of the Settlements and its equitable effect.  In addition to providing substantial value to Settlement Class Members through reduced costs and effort to address wipes-related clogs and backups, the Settlements meet the other indicia of "substantive" fairness set forth in Rule 23(e)(2)(C)-(D).

**1.     The Costs, Risks, and Delay of Trial and Appeal Support Approval of the Settlements**

The costs, risks, and delay associated with taking this case to trial – and, inevitably, appeals, weigh in favor of approval.  *See* Rule 23(e)(2)(C)(i).  As an initial matter, the preservation, maintenance, transport, and analysis of physical clog evidence would be a unique and costly requirement of continued litigation.  And the prosecution of this case to trial would require reliance on expert witnesses, including experts in the areas of materials and methods used to manufacture flushable wipes, as well as experts in sewage treatment systems and the causes and effects of materials that obstruct such systems.  Defense counsel would likely challenge the approaches and methodologies of Plaintiff's experts and call their own experts to dispute the findings of Plaintiff's experts.  This would place a battle of experts into the hands of the jury, which is risky for both parties.  The expense of expert witnesses for both sides would be substantial.

If Plaintiff was unsuccessful at any stage of the Litigation, including class certification or summary judgment, this could result in the recovery being significantly delayed, reduced, or lost entirely. *See Clark v. Duke Univ.*, 2019 WL 2588029, at *6 (M.D.N.C. June 24, 2019) (finding that the "likelihoods that the defendants may either prevail in motions practice or at trial or appeal any recovery" would likely have the effect of "delaying (or foreclosing) any benefit to the class members"). Causation issues – highlighted in the Settling Defendants' two joint motions to dismiss – would also be highly contested at summary judgment. Jt. Decl. ¶¶40-41. Ultimately, any judgment would likely present significant legal questions, which the losing parties would likely appeal, adding further cost, risk and delay to these proceedings.

In sum, the "costs, risks, and delay of trial and appeal" strongly favor final approval of the Settlements. Rule 23(e)(2)(C)(i).

### 2. The Relief Provided Is Effective and Equitable

The relief described above, *supra* §II.D., provides an effective and far-reaching benefit that extends equitably to all Settlement Class Members. For example, the specific standards that Defendants agreed to meet – the IWSFG 2020: PAS 3 flushability specification, along with confirmatory testing and labeling improvements – provide strong objective evidence of the effectiveness of the Settlements. The relief is equitable because it applies universally to the Products throughout the country, and all Settlement Class Members will thus benefit equally.

Notably, after having been informed of its terms by virtue of the Court-approved notice plan, to date not a single Settlement Class Member has filed an objection to the Settlements. As noted above, *supra* §II.C., the Settlement Class is comprised of all STP Operators in the United States whose systems were in operation between January 6, 2018 and November 21, 2023. The Notice was sent to the professional managers and engineers who operate those systems. Unlike consumer-oriented class action notices, it is necessarily part of the work responsibilities of those STP Operators

- 15 -

who received the Notice to read and evaluate it.  Moreover, it is fair to assume that such entities generally have access to legal counsel to assist in evaluating the Settlements if needed.  Therefore, the Court should consider the absence of objections as strong evidence that the Settlements are both effective and equitable.

### 3.     The Terms of the Attorneys' Fee Award Are Fair, Reasonable, and in Line with Other Cases

As detailed further below, *infra* §V., the terms of the requested attorneys' fees are fair, reasonable, and in line with awards in similar cases.  This also weighs in favor of approval of the Settlements.  *See* Rule 23(e)(2)(C)(iii).  The Notice states that Class Counsel would apply to the Court for an award of attorneys' fees and expenses of up to $1,900,000 (Settlement Agreements at Ex. B at 11).  The proposed attorneys' fee award is substantially below awards and lodestar multipliers in similar injunctive relief cases.  *See Berry*, 2014 WL 4403524, at *6, *15 (approving approximately $5.3 million attorneys' fee award, representing a multiplier of 1.99 times counsel's lodestar, for Rule 23(b)(3) injunctive relief settlement based on the purported "value of the relief to consumers and the dynamic shift that it represents in the industry and the fact that the injunction affords far better substantive rights than the Court or a jury could compel following a complete victory on all of Plaintiff's claims"); *Gaston v. LexisNexis Risk Sols. Inc.*, 2021 WL 2077812, at *7 (W.D.N.C. May 24, 2021) (awarding $5.15 million total fee and expense award in a Rule 23(b)(2) settlement, representing 1.85 lodestar multiplier); *see also In re Ferrero Litig.*, 583 F. App'x 665, 668 (9th Cir. 2014) (approving attorneys' fees for injunctive relief that were "calculated through an assessment of time expended on the litigation, counsel's reasonable hourly rate and any multiplier factors such as contingent representation or quality of work").[5]

---

[5]     With respect to the timing of payment, the Settlement Agreements (¶6.2) provide that such fees and expenses awarded by the Court shall be paid within either 21 or 30 days of entry of the order awarding fees and expenses.  *See In re Genworth Fin. Sec. Litig.*, 2016 WL 7187290, at *2 (E.D. Va. Sept. 26, 2016) (ordering that "attorneys' fees and Litigation Expenses . . . may be paid to Lead Counsel immediately upon entry of this Order").

### 4.    The Settling Parties Have No Other Agreements

Rule 23(e)(2)(C)(iv) requires the disclosure of any other agreements. The Settling Parties have entered into no other agreements here.

### 5.    Settlement Class Members Are Treated Equitably

The final factor under Rule 23(e)(2) is whether Settlement Class Members are treated equitably. Rule 23(e)(2)(D). The injunctive relief benefits all Settlement Class Members – STP Operators nationwide – equitably by reducing the harm caused by wipes, both flushable and non-flushable, thus generally increasing safety and efficiency equally across the Settlement Class. There are no sub-classes and all Settlement Class Members get the same benefits.

Thus, each factor identified under Rule 23(e)(2) and *Jiffy Lube* is satisfied. For all of the foregoing reasons, and for each of the reasons set forth in the accompanying Joint Declaration and the Court's Preliminary Approval Order, the Court should find that the Settlements are fair, adequate and reasonable, and in Settlement Class Members' best interests.

## V.    THE REQUESTED ATTORNEYS' FEES AND EXPENSES ARE REASONABLE

Class Counsel requests that the Court approve an award of attorneys' fees and expenses of $1,900,000 – consisting of $1,859,691.77 in attorneys fees' and $40,308.23 in actual expenses (including Court costs). Class Counsel's efforts have been wholly contingent upon the result achieved. For the reasons discussed above, and those set forth further below, the amount requested in this case is warranted given the exceptional and unprecedented injunctive relief obtained and the significant obstacles and risks Class Counsel faced in bringing and prosecuting this case.

### A.    The Requested Attorneys' Fees Are Reasonable and Should Be Granted

Under Rule 23(h), "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Rule 23(h). Courts in this Circuit generally consider the following factors identified in *Barber v. Kimbrell's, Inc.*

to determine the reasonableness of fee awards in class actions:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

577 F.2d 216, 226 & n.28 (4th Cir. 1978) (adopting factors from *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92-93 (1989)); *see also Stayler v. Rohoho, Inc.*, 2019 WL 1491873, at *3 (D.S.C. Apr. 4, 2019) (Gergel, J.) (finding proposed attorneys' fees reasonable under *Barber* factors). As discussed below, Class Counsel's requested fee satisfies each of the *Barber* factors, and therefore, should be awarded as fair and reasonable in this case.

In addition to the *Barber* factors, the 4th Circuit has confirmed that in settlements under Rule 23(b)(2), a lack of objections by class members as to the fees requested by counsel weighs in favor of the reasonableness of the fees. *See Berry*, 807 F.3d at 618-19; *see also In re Genworth Fin. Sec. Litig.*, 210 F. Supp. 3d 837, 844 (E.D. Va. 2016) (citing *Berry*, 807 F.3d at 618-19). Pursuant to the Preliminary Approval Order, Class Counsel (with the assistance of Gilardi and/or in coordination with defense counsel) mailed copies of the Summary Notice via First-Class Mail to the EPA's list of over 15,000 publicly owned treatment works, published the Summary Notice in the January editions of WEF's *Water Environment & Technology* magazine, emailed notice to 23 prominent wastewater associations and related entities, issued notice via press release, and posted the Notice and other relevant case documents to the Settlements website, https://charlestonwipessettlement.com/. Jt. Decl. ¶¶29-31; Murray Decl. ¶¶3-6. The Notice informed recipients that Class Counsel would ask the Court for attorneys' fees and expenses of up to $1,900,000. Although the deadline for filing

objections is February 14, 2024, thus far, there have been no objections to the requested attorneys' fees. Thus, the reaction of the Settlement Class to date here supports the appropriateness of the requested fee. *See Berry*, 807 F.3d at 618-19 (citing *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) (noting that only two class members objecting to fee request is a "rare phenomenon" and evidence that the district court did not abuse its discretion in awarding fees)).

Moreover, the United States Supreme Court has held that negotiated, agreed-upon attorneys' fee provisions are the ideal toward which the parties should strive. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle the amount of a fee."). Moreover, unlike in a common fund case, the fee amount here will not affect the Settlements' benefits. A decision to reduce or even to refuse to award a fee, while beneficial to the Settling Defendants, will not affect the Settlement Class. *See Berry*, 807 F.3d at 618 (where "there was never any realistic possibility of class-wide monetary relief . . . there is no reason to think that class counsel left money on the table in negotiating this Agreement"). Nor does a negotiated fee present the potential for adversity between counsel and the class that the traditional common fund fee may present, since the negotiated fee is being paid in addition to the class benefits. *See Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261, 1277-78 (S.D. Ohio 1996) (recognizing that divergence of interest can arise in traditional common fund situations), *aff'd*, 102 F.3d 777 (6th Cir. 1996).

1.  ***Barber* Factor No. 1: The Time and Labor Expended by Class Counsel Support the Requested Fee**

The time and diligent effort expended by Class Counsel to achieve the Settlements supports the requested fee. Class Counsel's fee application is based solely on time and labor expended as to the Settling Defendants since April 22, 2022.[6] Since then, Class Counsel have been litigating this case through discovery, negotiating with Defendants and seeking approval of the Settlements. Jt.

---

[6] All time and labor expended before April 22, 2022 was included in Class Counsel's fee application in connection with the Kimberly-Clark settlement. ECF Nos. 123-3 and 123-4.

Decl. ¶¶12-31.  During that time, Class Counsel and their paraprofessionals have expended more than 2,433.8 hours in the prosecution of this Litigation.  *See* Declaration of Vincent M. Serra Filed on Behalf of Robbins Geller in Support of Application for Award of Attorneys' Fees and Expenses ("Robbins Geller Decl.") ¶4 and Ex. A; Declaration of Frank Paul Calamita Filed on Behalf of AquaLaw PLC in Support of Application for Award of Attorneys' Fees and Expenses ("AquaLaw Decl.") ¶4 and Ex. A.  As set forth in more detail in the Joint Declaration, Class Counsel have committed extensive resources to pursuing Plaintiff's claims, consulting with experts, performing complex analyses developing Plaintiff's claims, and negotiating the terms of the injunctive relief provided in the Settlements.  Jt. Decl. ¶¶12-31.

After writing off time in the exercise of billing judgment (including time spent working on Class Counsel's fee and expense application), and omitting time related to work after December 31, 2023 in connection with this application, Class Counsel's combined lodestar is $1,837,877.00, resulting in a 1.01 multiplier to counsel's lodestar.  *See* Robbins Geller Decl. ¶4; AquaLaw Decl. ¶4; Jt. Decl. ¶44.  Courts in this Circuit frequently approve fee requests in injunctive relief actions where plaintiffs' counsel, like Class Counsel here, "expended large amounts of time and labor."  *Berry*, 2014 WL 4403524, at *15.

Moreover, "[d]istrict courts within the Fourth Circuit have regularly approved attorneys' fees awards with 2-3 times lodestar multipliers."  *Genworth*, 210 F. Supp. 3d at 845, n.5 (citing cases approving lodestar multipliers of 2.6 to 2.9); *see also Kay Co. v. Equitable Prod. Co*., 749 F. Supp. 2d 455, 470-71 (S.D. W. Va. 2010) (awarding fee reflecting multiplier of between 2.8 and 3.4 and noting that "Courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee"); *Gaston*, 2021 WL 2077812, at *7 (awarding fees reflecting a "multiplier of approximately 1.85[, which] is less than or similar to those applied in

- 20 -

similar cases"); *Berry*, 2014 WL 4403524, at *15 (awarding fees representing a "multiplier of 1.99[, which] is similar to those applied in similar cases"). The negligible lodestar multiplier here confirms the reasonableness of the requested fee award, as it is well below the range of reasonableness. *See Sims v. BB&T Corp.*, 2019 WL 1993519, at *3 (M.D.N.C. May 6, 2019) (plaintiff's counsel's lodestar "is several million dollars more than the fee request and reflects a multiplier far below the typical range for similar class actions").[7]

### 2. *Barber* Factor No. 2: The Novelty and Complexity of the Issues Support the Requested Fee

The injunctive relief that Class Counsel obtained on behalf of Plaintiff and Settlement Class Members follows and substantively parallels the Court-approved settlement with Kimberly-Clark, which was the first ever commitment by a flushable wipes manufacturer to meet the national municipal wastewater industry standard, along with, *inter alia*, industry-leading labeling improvements for non-flushable products. The Litigation itself, and Class Counsel's efforts to resolve it, were likely a significant factor in the Settling Defendants' efforts to improve the Products. The injunctive relief achieved here (*see supra* §II.D.) includes significant benefits to Settlement Class Members as well as to the public at large. Moreover, had Class Counsel been unable to secure the Settlements, the Settling Defendants would likely continue to assert, including at summary judgment, arguments regarding many of the complex legal and factual issues raised in the briefing of the Defendants' joint motion to dismiss. Jt. Decl. ¶¶40-41. The novelty and complexity of the

---

[7]    Unlike defense counsel, who received ongoing payment, Class Counsel litigated this action entirely on a contingent fee basis, not receiving compensation for their services underpinning this application until awarded by the Court. Class Counsel have expended substantial time and effort to prosecute and settle the Litigation with no guarantee of recovery and where the risk of success was highly speculative. Moreover, Courts in this Circuit and others have awarded Class Counsel attorneys' fees based on their prevailing rates. *E.g.*, *In re Massey Energy Co. Sec. Litig.*, 2014 WL 12656719, at *2 (S.D. W. Va. June 4, 2014) (finding attorneys' fee award representing 2.87 multiplier of counsel's lodestar to be reasonable); *Fleming v. Impax Lab'ys Inc.*, 2022 WL 2789496, at *9 (N.D. Cal. July 15, 2022) (approving Robbins Geller rates and awarding fee request representing 2.6 multiplier). The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989).

issues in the Litigation thus further support the requested fee.

### 3. *Barber* Factor Nos. 3 and 9: Class Counsel's Experience, Reputation, and Ability, Along with the Skill Required to Perform Their Legal Services, Supports the Requested Fee

The result obtained for the Settlement Class stems from the efforts of Class Counsel, whose experience, reputation, diligence, and skill enabled them to thoroughly investigate the facts and oversee the expert testing and analysis underlying Plaintiff's claims, and to negotiate favorable injunctive relief for the Settlement Class under challenging circumstances. *See generally* Jt. Decl.; *Genworth*, 210 F. Supp. 3d at 844 (noting the "skill required in complex cases such as this involving massive discovery efforts and complicated issues of fact and law" weighed in favor of fee award). And Class Counsel showed skill by "litigat[ing] the action and obtain[ing] this excellent settlement without the benefit of any active assistance from any governmental agency." *Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992).

Additionally, the "quality of the opposition the plaintiffs' attorneys faced" during the action is an important consideration in evaluating Class Counsel's skill here. *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1334 (S.D. Fla. 2001). Defense counsel in this Litigation include nationally recognized firms known for their experience in defending cases similar to this one and other class actions, and have been formidable opponents for Class Counsel in this case. Jt. Decl. ¶34. The ability of Class Counsel to obtain such a favorable result despite defense counsel's impressive qualifications confirms the quality of Class Counsel's representation.

### 4. *Barber* Factor Nos. 8 and 10: The Result Obtained and Undesirability of the Case Support the Requested Fee

Perhaps the "most important factor for a court to consider when making a fee award is the result achieved." *Genworth*, 210 F. Supp. 3d at 843. "[C]lass action litigation should benefit the individuals who have been harmed." *In re TJX Co. Retail Sec. Breach Litig.*, 584 F. Supp. 2d 395, 406 (D. Mass. 2008). Accordingly, a court may judge the reasonableness of the attorneys' fees

relative to the benefits actually provided to class members. *Id.* at 403.

Here, the injunctive relief is an excellent result for the Settlement Class by any measure. As discussed above, the injunctive relief will provide not only economic, efficiency, and safety benefits to Settlement Class Members, but also economic benefits to taxpayers, benefits to all consumers in the form of product improvements and enhanced labeling, and benefits to the general public by reducing the likelihood of residential plumbing clogs. The recovery has been obtained through the considerable efforts of Class Counsel without the expense, delay, and uncertainty of continued litigation against the Settling Defendants. In the end, Plaintiff and the Settlement Class care most about getting a great result. The outstanding result obtained supports Class Counsel's fee request and merits an appropriate fee that encourages counsel to seek excellent results.

Moreover, the result obtained is all the more significant given the fact that three similar class actions seeking nearly identical relief from certain Defendants were dismissed without securing the classwide injunctive relief obtained by Class Counsel here. *See City of Wyo. v. Procter & Gamble Co.*, No. 0:15-cv-02101-JRT-TNL (D. Minn.); *City of Perry, Iowa v. Procter & Gamble Co.*, No. 1:15-cv-08051-JMF (S.D.N.Y.); *Preserve*, No. 2:17-cv-07050-JFB-AYS (E.D.N.Y.). This fact therefore weighs heavily in favor of supporting the requested fee.

### 5. *Barber* Factor Nos. 5 and 12: Fee Awards in Similar Cases, and the Customary Fee for Like Work, Support the Requested Fee

The requested fee award is reasonable in light of significantly larger attorneys' fee awards in recent and similar injunctive relief class actions in the Fourth Circuit. *See, e.g.*, *Gaston*, 2021 WL 2077812, at *7 (approving total attorneys' fee award of $5.15 million for Rule 23(b)(2) settlement, finding that the plaintiffs' counsel "expended large amounts of time and labor," demonstrated skill and achieved an "excellent result" that provides "substantial benefits" to the class, and the defendants "agreed to pay the requested amount"); *Berry*, 2014 WL 4403524, at *6 (approving

- 23 -

award of approximately $5.3 million for Rule 23(b)(2) settlement).

Moreover, district courts in this Circuit have recognized that a fee award that results in a 2-3 times lodestar multiplier is reasonable. *See, e.g.*, *Genworth*, 210 F. Supp. 3d at 845; *see also supra* §§V.A.1. and IV.B.3. Here, the requested fee results in a negligible lodestar multiplier of 1.01, well below the range of lodestar multipliers commonly approved by courts in this Circuit.

### 6. *Barber* Factor No. 4: Class Counsel's Opportunity Costs in Pressing the Litigation Supports the Requested Fee

As noted above, Class Counsel have documented 2,433.8 attorney and paraprofessional hours of time devoted to this case. Such a time commitment represents a significant opportunity cost for Class Counsel, in terms of other cases that could have been handled during the same period. In addition, Class Counsel advanced all of the costs of the Litigation and settlement efforts, including expert and mediation fees. This factor thus supports the court's approval of the requested amount of attorney's fees.[8]

### B. The Requested Litigation Expenses Are Reasonable and Should be Granted

Payment of reasonable litigation expenses to counsel in Rule 23(b)(2) class settlements is both necessary and routine. *See, e.g.*, *Gaston*, 2021 WL 2077812, at *7 (awarding expenses in connection with Rule 23(b)(2) settlement). Class Counsel's expenses and charges here are $40,308.23 and are set forth in the accompanying Class Counsel declarations. Robbins Geller Decl. ¶5 and Ex. B, AquaLaw Decl. ¶5 and Ex. B. These expenses and charges are modest and were reasonable and necessary to the prosecution of the claims and achieving the Settlements.

---

[8]     The remaining *Barber* factors – the attorneys' expectations at the outset of the litigation (No. 6), any time limitations imposed by the client or the circumstances (No. 7), and the length and nature of the professional relationship between the attorneys and client (No. 11), also support the requested fee. As to Class Counsel's expectations at the outset of the Litigation, Class Counsel have represented Plaintiff on a contingency basis and under the ambit of Rule 23, thus Class Counsel expected any fee award to be subject to Court review and only granted if they were successful. Moreover, while there were no time limitations in this Litigation per se, Class Counsel sought to secure the Settlements expeditiously given the circumstances – namely, the continued harm caused by wipes that do not break down sufficiently to pass through Settlement Class Members' systems. Finally, Class Counsel have represented Plaintiff in connection with this litigation for over three years and has worked closely with Plaintiff throughout the process.

The expenses sought here – such as expert and mediation fees, service and filing fees, travel expenses, and charges for research – are precisely the type of expenses which have been awarded in other class actions in the Fourth Circuit.  *See Sims*, 2019 WL 1993519, at *4 ("Reimbursable expenses include expert fees, travel, long-distance and conference telephone, postage, delivery services, settlement costs, and computerized legal research.").  The Settlement Notice advised Settlement Class Members that Class Counsel would seek a fee and expense award of up to $1,900,000, and there have been no objections to date.  Class Counsel respectfully request payment of these reasonable litigation expenses.

## VI.    THE COURT SHOULD GRANT FINAL CERTIFICATION OF THE SETTLEMENT CLASS

In its Preliminary Approval Order, the Court conditionally certified the Settlement Class for settlement purposes, thereby recognizing that Plaintiff had satisfied the requirements of Rules 23(a) and 23(b)(1).  ECF No. 98 at 8.  Since the Court's Preliminary Approval Order, nothing has changed to disturb the Court's conclusion that class treatment is appropriate, and there is good reason and just cause to finally certify the Settlement Class, for settlement purposes, under Rules 23(a) and 23(b)(2).

## VII.    CONCLUSION

Plaintiff respectfully requests that the Court enter an order granting final approval of the Settlements, finally certifying the Settlement Class, and awarding attorneys' fees and expenses of $1,859,691.77 and $40,308.23, respectively.

DATED:  January 31, 2024                    Respectfully submitted,

                                            AQUALAW PLC
                                            F. PAUL CALAMITA (ID #12740)


                                            */s/ F. Paul Calamita*
                                            _____
                                            F. PAUL CALAMITA

6 South Fifth Street
Richmond, VA  23219
Telephone:  804/716-9021
804/716-9022 (fax)
paul@aqualaw.com

ROBBINS GELLER RUDMAN
    & DOWD LLP
SAMUEL H. RUDMAN
VINCENT M. SERRA (admitted *pro hac vice*)
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
vserra@rgrdlaw.com

ROBBINS GELLER RUDMAN
    & DOWD LLP
FRANCIS P. KARAM (admitted *pro hac vice*)
30 Vesey Street, Suite 200
New York, NY  10007
Telephone:  212/693-1058
212/693-7423 (fax)
fkaram@rgrdlaw.com

*Attorneys for Plaintiff*